UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

FILED
OCT 11 2016
CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

| | |
|---|---|
| DOLORES LOZANO; <br> Plaintiff, <br><br> v. <br><br> BAYLOR UNIVERSITY; BAYLOR UNIVERSITY BOARD OF REGENTS; <br> Defendants. | § § § § § § § § § § § § |

Cause No.: W16CA403

JURY TRIAL DEMANDED

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT;

Plaintiff, through her attorneys, submits this Complaint and states the following:

### I.
### PARTIES

1. Plaintiff Dolores Lozano ("Plaintiff") was a student at Baylor University from Fall 2010 to Spring 2014 ("relevant time period").

2. Defendant Baylor University ("Baylor") is an educational institution in the County of McLennan, State of Texas. Baylor University may be served through its Acting President, David E. Garland at Pat Neff Hall, Suite 100, Waco, Texas 76798. During the relevant time period, Baylor University received federal funding through its academic programs and activities.

3. Defendant Baylor University Board of Regents ("Regents") is the official governing body of Baylor University and is charged with operating and governing Baylor, a private university located in Waco, Texas.

4. Baylor and Regents are hereinafter collectively referred to as, "Defendants."

## II.
## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

6. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1342, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

7. Plaintiff brings this action to redress a hostile educational environment pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, ("Title IX"), as more fully set forth herein. This action is also brought pursuant to 42 U.S.C. § 1983 and § 1988, and the Fourth Amendment to the United States Constitution, made applicable to Defendants through the Fourteenth Amendment to the United States Constitution.

8. Baylor receives federal financial assistance and is therefore subject to the mandates of 20 U.S.C. §1681.

9. Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a), to hear and decide claims arising under state law for negligence and gross negligence.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), since Defendants reside or resided in this district during the relevant time period, and the events giving rise to the claims occurred in this district.

### III.
### BACKGROUND FACTS RELEVANT TO ALL COUNTS

11. Plaintiff enrolled at Baylor in the Fall of 2010 as a Communication Science & Disorders major and received scholarships and financial aid assistance.

12. At all times prior to the violent incidents that give rise to this complaint, Plaintiff had no academic or social problems whatsoever, and thrived at Baylor University.

13. Plaintiff began a romantic relationship with Devin Chafin ("Assailant") in 2012.

14. Assailant was, during the relevant time period, a student-athlete on Defendants' football team.

15. Assailant resided at Baylor owned apartment complex, University Parks, during the relevant time period.

16. Shortly after the relationship between Plaintiff and Assailant began, Plaintiff became concerned for the emotional and mental well-being of her then romantic partner.

17. On or about March of 2014, Plaintiff was first assaulted by Assailant ("first assault").

18. The first assault occurred following a verbal argument between Plaintiff and Assailant at Assailant's apartment at the University Parks. Assailant began to raise his voice and threaten Plaintiff. He then slapped, kicked, and slammed Plaintiff against the wall until she fell to the ground. Assailant strangled Plaintiff until she began to lose consciousness.

19. As a result of the first assault, Plaintiff suffered physical injuries, including severe bruising and abrasions.

20. The first assault was made aware to Jeff Lebby ("Lebby"), the Baylor Football Running Back Coach shortly after its occurrence.

21. At the time of reporting the first assault to Lebby, Plaintiff's bruises and abrasions were visibly and noticeably apparent.

22. Shortly after being made aware of the first assault, Lebby told Plaintiff that he would speak to Assailant about the incident. However to Plaintiff's knowledge, no known further reasonable action was taken by Lebby and no report was filed regarding the incident.

23. Shortly after, Plaintiff began to suffer emotional distress as a result of the first assault.

24. In an attempt to recover from her emotional distress, Plaintiff requested absences from her position as Manager of the Acrobatics & Tumbling team by her then-supervisor LaPrise Harris-Williams ("Williams").

25. Williams was the Head Coach of Acrobatics & Tumbling at Defendant's university.

26. Williams then requested Plaintiff to meet her in William's office where she questioned Plaintiff's absences.

27. During the Williams meeting with Plaintiff, Williams questioned Plaintiff about the visibly and noticeably apparent severe bruises and abrasions.

28. Because Lebby did not appear to take any action, and because Plaintiff was concerned about Assailant's wellbeing as well as her own, Plaintiff confided in Williams and finally told her about the first assault.

29. Williams immediately reported the first assault to her superior, Nancy Post ("Post").

30. Post served in the Senior Women's Administration as Associate Athletics Director during the relevant time period that Plaintiff attended Baylor.

31. Post informed Williams that "being involved with incidents like Lozano's were not [Williams'] responsibility."

32. Despite the severity of what has been reported to Post, she completely disregarded the assault Williams was attempting to report to Post.

33. Post did not advise Williams of any proper or corrective course of action to take.

34. Post did not even advise Williams of any remedial, assistive, and/or affirmative measures to alleviate and/or prevent future harm to Plaintiff.

35. Post essentially did nothing to address Assailant's actions, nor get Assailant the help he desperately needed.

36. No further action was taken by Post, no report was filed, and the incident was disregarded as just another complaint.

37. Due to the lack of willingness of Post to help Plaintiff, Williams then turned to Baylor Sports Chaplain Wes Yeary ("Yeary"), and reported the first assault to him shortly after Williams reported the assault to Post.

38. On or about March of 2014, Yeary met with Plaintiff regarding the first assault. During this meeting Plaintiff's bruises and abrasions were still apparent.

39. During this meeting, Plaintiff reported Assailant's violent actions, concern for her own well-being, and expressed to Yeary that Assailant needed assistance to address his emotional and mental well-being.

40. After concluding the meeting, Yeary supplied Plaintiff with literature to assist her in *her* spiritual self-worth and preservation.

41. Just three weeks after Plaintiff's meeting with Yeary, in the early hours of April 5, 2014, Plaintiff was again assaulted by Assailant ("second assault").

42. During the second assault, Assailant approached Plaintiff in the parking lot of Scruffy Murphy's, a restaurant and bar frequented by Baylor students.

43. Visibly upset and angered about a very personal choice Plaintiff made about her own health and well-being, Assailant slammed Plaintiff's arm against a vehicle in the presence of several of Plaintiff's friends.

44. Plaintiff went to the Defendant Baylor's on-campus clinic to address the injury to her arm, which included scheduling further medical screening and examination.

45. During Plaintiff's visit to the clinic, Plaintiff provided full disclosure of how she became injured, where the injury occurred, and who caused her injury.

46. The clinic staff referred Plaintiff to the on-campus counseling center, again to "assist her in her spiritual self-worth and preservation," as if she was the cause of her own abuse.

47. No further action was taken by anyone at the on-campus clinic, no report was filed with the University, and the incident was disregarded as just another complaint.

48. Again, despite Plaintiff reporting Assailant to the on-campus clinic staff, nothing was done to formally address the matter.

49. After being physically assaulted on two separate occasions and receiving no support or guidance from Defendants, Plaintiff fell into a state of hopelessness and despair which began to affect her studies.

50. After having exhausted all efforts in her unsuccessful attempt to receive sufficient assistance and/or guidance from faculty and administration at Baylor, after having reported two

separate assaults to them where she suffered physical, mental, and emotional injuries, Plaintiff turned to the Waco Police Department (hereinafter referred to as, "Police").

51. On April 11, 2014, Plaintiff filed an incident report with Police to report the assault and specifically named Assailant.

52. At the time of reporting, the dispatched officer with Police took numerous photographs of Plaintiff's injuries.

53. After reporting the assaults to Police, Plaintiff was told that an investigator would follow up with her but she never heard from them.

54. Plaintiff's calls to Police went unreturned, and again, she felt irrelevant and alone.

55. Later that month in April 2014, Plaintiff was assaulted by Assailant for the third time ("third assault"). Following another argument between Assailant and Plaintiff in Assailant's apartment, Assailant forcibly and aggressively grabbed Plaintiff and slammed her to the ground.

56. With no one else to turn to, Plaintiff again sought help from Williams. Williams advised Plaintiff to continue to follow up with the police, and again notified Yeary.

57. Despite reporting the assaults to various members of Baylor faculty members, staff and administration, Plaintiff was never contacted by any faculty member, staff, or administrative personnel to commence an investigation, to reasonably address Assailant's actions and well-being, or to reasonably address the harm Plaintiff suffered from the assaults.

58. Although Williams vehemently requested that Post do something to help Plaintiff, no further action was taken, and subsequently Williams was forced to resign one year later after voicing her discontent with the administrators.

59. In fact, if it were not for Williams fighting on her behalf, Plaintiff would have been completely on her own.

60. Plaintiff was never advised of any procedure or Title IX process to address her situation, and did not become aware that Baylor was required to have a Title IX process until May of 2016, when an Internal Audit of the Pepper Hamilton investigation was published, revealing that:

   a. Baylor failed to effectively implement Title IX in the wake of the U.S. Department of Education's Office for Civil Rights (OCR) April 4, 2011 "Dear Colleague Letter;"
   b. [Baylor] failed to conduct prompt, equitable, adequate, and reliable investigations;
   c. The University failed to take action to identify and eliminate a potential hostile environment, prevent its recurrence, or address its effects for individual complainants or the broader campus community;
   d. University administrators…directly *discouraged complainants* from reporting or participating in student conduct processes; and
   e. Baylor's students lacked awareness of the range of conduct prohibited under Title IX and of University policies, resources or reporting options . . . [which] led to significant underreporting by students and missed opportunities by administrators to respond appropriately to reports.

61. Due to the lack of a Title IX process and an unwillingness of Baylor officials, faculty, and administration to support and assist Plaintiff, Plaintiff suffered and continues to suffer severe mental and emotional injuries.

62. Due to the lack of assistance and lack of protections Title IX provides, Defendants' actions amount to severe egregious and wanton acts that allowed Plaintiff and many other female member of the student body to sustain severe physical and emotional injuries.

63. Defendants acted in an egregious manner that amounts to a severe underserving of Baylor's female student body and inhuman to common modern standards society expects.

## IV.
## CAUSES OF ACTION

### COUNT 1:
### VIOLATION OF TITLE IX
### 20 U.S.C. § 1681, et seq.

64. Plaintiff re-alleges and re-incorporates the allegations contained in paragraphs 1 through 63 above as though fully set forth herein and further pleads that Defendants' acts and omissions violated 20 U.S.C § 1681.

65. Plaintiff pleads all elements needed to sustain a Title IX violation, in that:

   a. Plaintiff is a member of a protected class;
   b. Plaintiff was subjected to harassment or discrimination on the basis of gender;
   c. An appropriate person had actual knowledge of the harassment or discrimination;
   d. Defendant and/or their agents, servants, directors, regents, and officers acted with deliberate indifference to known acts of harassment discrimination;
   e. The discrimination was so severe, pervasive and offensive that it barred the victim's access to an educational opportunity or benefit and created an abusive hostile educational environment for Plaintiff; and
   f. Defendant is a Title IX funding recipient.

66. Several members of Baylor faculty, staff, and administration including Post, Yeary, Whipple, and Lebby had actual knowledge of the harassment against Plaintiff as a result of direct reports of the assaults made to them on multiple occasions:

      a. Plaintiff's report of the first assault to Lebby;

      b. Plaintiff's report of the first assault to Williams;

      c. Williams' report of the first assault to Post;

      d. Williams' report of the first assault to Yeary;

      e. Plaintiff's meeting with Yeary regarding the first assault;

      f. Plaintiff's report of the second assault to on-campus clinic staff;

      g. Williams' final report of the third assault to Yeary.

67. With the exception of Williams, these faculty, staff, and administration members acted with deliberate indifference when they failed to further report the assaults or follow up with Plaintiff in any way.

68. The most egregious actions evident were rendered by Post, who advised Williams that affairs of this nature were not her responsibility and Williams should not intervene or participate in attempting to assist Plaintiff in any possible manner.

69. Plaintiff's educational performance suffered as a result of these assaults against her, essentially barring her access to the educational benefits that the University intends to offer its students.

70. Defendants' acts and failure(s) to act amounted to discrimination on the basis of gender to an extent that created an abusive and hostile educational environment for Plaintiff. Multiple Baylor administrators, officials, and faculty members failed to adequately respond to Plaintiff's reports on multiple occasions after having direct and actual knowledge of the assaults. The Defendants inexcusable disregard amounted to a deliberate indifference toward the violence that had occurred, was occurring, or was likely to occur again.

71. Defendants and its faculty, staff and administration had actual knowledge of the assaults on Plaintiff and the failure to investigate and/or failure to take remedial, assistive,

corrective, and affirmative measures in a timely manner are inconsistent with federal and state law.

72. The Defendants' failure to promptly and appropriately respond to the alleged assault resulted in gender discrimination against Plaintiff, being excluded from participation in, being denied the benefits of, and being subjected to discrimination in the Defendants' education program in violation of Title IX.

73. Defendants failed to take immediate and effective remedial, assistive, and corrective steps to resolve the complaints of the assault, and instead acted with deliberate indifference towards Plaintiff.

74. Defendants persisted in its unlawful and injurious actions and inactions even after it had actual knowledge of the harm suffered by Plaintiff.

75. Defendants engaged in a pattern and practice of behavior designed to discourage and dissuade students who have been assaulted from seeking prosecution and protection consistent with federal and state law.

76. This policy and/or practice constituted disparate treatment of females and had a disparate impact on female students.

## COUNT 2:
## TEXAS TORT LAW – NEGLIGENCE

77. Plaintiff re-alleges and re-incorporates the allegations contained in paragraphs 1 through 63 above as though fully set forth herein and further pleads that Defendants' acts and omissions constitute negligence.

78. Defendants have a duty to exercise reasonable care to avoid foreseeable harm to Plaintiff. In this case Defendants breached their duty by failing to exercise reasonable care. Furthermore, Defendants failed to exercise the degree of care expected of them, as a University,

in order to minimize the risk of harm to Plaintiff. As a direct proximate result of the Defendants' breach of this duty, Plaintiff suffered damages.

79. Defendants owed Plaintiff, as a student of Baylor, a duty of reasonable care.

80. Defendants owed Plaintiff, as a student of Baylor, a duty to obey applicable law described herein.

81. Defendants owed Plaintiff, as a student of Baylor, a duty to provide a safe learning environment.

82. Defendants owed Plaintiff, as a student of Baylor, a duty to provide adequate safeguards and protection against known acts of violence.

83. Defendants owed Plaintiff, as a student of Baylor, a duty to provide assistance after acts of violence have occurred.

84. Defendants breached their duty owed to Plaintiff by engaging in conduct including, but not limited to:

   a. Failing to properly hire, train and retain officers, staff and faculty as to proper methods to deal with reports of assaults, investigate same and accommodate victims accordingly;

   b. Failing to assure adequate staff training to meet the behavior and social needs of all individuals, including assault victims;

   c. Failing to supervise faculty and staff to ensure proper supervision, control, restraint and monitoring of student athletes;

   d. Failing to appropriately monitor to ensure that student athletes are not brought on to campus without regard to the safety of other students;

   e. Failing to implement safeguards for female students adequate to protect them from foreseeable criminal and anti-social activities; and

    f. Ratifying the sexual misconduct of student athletes by University officials by failing to discourage such behavior in prior instances.

85. In addition to the facts and circumstances asserted by Plaintiff, the Internal Audit of the Pepper Hamilton investigation outlines the multiple ways in which Defendants breached their duty, including:

    a. Failing to properly and timely report incidents of claims consistent with federal law;

    b. Failing to adequately monitor and supervise departments, including athletic departments, to ensure compliance with protections and standards for prevention, reporting and investigating;

    c. Failing to discover, develop, and/or implement basic safeguards designed to prevent and/or minimize incidents of assault;

    d. Failing to properly investigate and/or monitor persons accused of assault to ensure additional events did not occur;

    e. Failing to adopt and implement adequate safeguards to prevent known assaults occurring on campus;

    f. Tolerating assailants on campus despite reports to the Administration and/or its officials of their identities;

    g. Failing to adopt a program to promote awareness of crimes on/off campus for the safety of their students;

    h. Failing to adopt and enforce procedures for students to follow if they become assault victims, including who should be contacted, the importance of retaining evidence, and to whom the offense should be reported;

    i. Failing to inform victims that they have the option of reporting the assault to law enforcement authorities and that they will receive assistance from the institution in the process;

    j. Failing to put in place an accurate routine procedures to notify the campus community about serious criminal activity that is likely to be a threat to students and employees;

    k. Failing to adopt and periodically review procedures to make sure they are adequate to address complaints of serious misconduct;

    l. Failing to develop a clear policy about which kinds of offenses will be handled internally and which will be turned over to the criminal authorities; and

    m. Failing to make the goal of protecting the campus community from sexual assaults and harassment an integral part of the institution's day-to-day mission of providing a safe and secure learning and working environment.

86. The above enumerated breach of duties was the proximate cause of substantial injury and damage to Plaintiff, as more specifically described herein. These damages include, great pain of mind and body, physical injury, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life.

87. All acts or omissions of Defendants constitutes negligence, negligent failure to warn, train and/or educate, gross negligence, negligence per se, willful and wanton conduct, recklessness, and demonstrate a reckless disregard for the safety of Plaintiff and the student body at Baylor University.

## COUNT 3:
## TEXAS TORT LAW – GROSS NEGLIGENCE

88. Plaintiff re-alleges and re-incorporates the allegations contained in paragraphs 1 through 63 above as though fully set forth herein and further pleads that Defendants' acts and omissions constitute gross negligence.

89. The acts or omissions, when viewed objectively from Defendants' standpoint at the time they occurred, involved an extreme degree of risk considering the probability and magnitude of the potential harm to others, and Defendants had actual, subjective awareness of the risk.

90. Despite acquiring knowledge of the assaults on multiple occasions, with the exception of Williams, various faculty member, staff, and administration had actual knowledge of the assaults Plaintiff was subjected to. Furthermore, in each instance of acquiring such actual knowledge no faculty member, staff, and administration was given the authority to conduct nor conducted an investigation or take any remedial, assistive, corrective or affirmative measures to rectify the situation.

91. The acts and omissions, involved an extreme degree of risk, and Defendants had actual and subjective awareness of this extreme degree of risk. These acts of gross negligence proximately caused Plaintiff's injuries and damages. Additionally, Defendants are directly liable for the grossly negligent acts and omissions of Defendants and/or their agents, servants, directors, regents, and officers.

92. Defendants failing to rectify or attempting to rectify involved an extreme degree of risk which subjected Plaintiff to assaults on three different occasions despite having knowledge of the first assault. Plaintiff's injuries are the proximate result of Defendants failing to take any remedial, assistive, or corrective measures whatsoever.

93. In addition to the foregoing, the conduct of Defendants in failing to provide Plaintiff adequate and mandated protections the law provides was with extreme degree of indifference. Defendants acted with reckless disregard for the rights of others, thus injuring Plaintiff.

94. As an official in the Senior Women's Administration, Post's actions equates to and is the epitome of an extreme degree of deliberate indifference towards the Plaintiff and female student body.

95. All acts or omissions of Defendants constitutes negligence, negligent failure to warn, train and/or educate, gross negligence, willful and wanton conduct, recklessness, and demonstrate a reckless disregard for the safety of Plaintiff and the female student body at Baylor University.

## COUNT 4:
## EXEMPLARY/PUNITIVE DAMAGES

96. Plaintiff re-alleges and re-incorporates the allegations contained in paragraphs 1 through 63 above as though fully set forth herein and further pleads that Defendants' acts and omissions warrants the award of exemplary and/or punitive damages.

97. The wrong done by Defendants and/or their agents, servants, directors, regents, and officers was aggravated by the kind of conduct for which the law allows the imposition of exemplary damages, in that Defendants' conduct, when viewed objectively from Defendants' standpoint at the time of the conduct, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and Defendants were actually, subjectively aware of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others. Plaintiff, therefore, seeks exemplary and/or punitive damages in an amount within the jurisdictional limits of the Court.

98. As a direct proximate result of the acts or omissions described above, Plaintiff has been injured, sustained damages, and requests compensation in a sum far in excess of the minimum jurisdictional limits of this Court. Each and all of the violations of the standard of care outlined herein were a proximate cause of damages, injuries and harm to Plaintiff.

99. In addition, Plaintiff seeks pre-judgement interest, post-judgment interest, costs of court, and such other and any other relied to which Plaintiff may be entitled.

## V.
## ATTORNEYS FEES

100. Plaintiff requests award of their reasonable and necessary attorneys' fees and litigation costs for this action. See, e.g., 42 U.S.C. §§ 1983 & 1988.

## VI.
## REQUEST FOR PERMANENT INJUNCTION

101. Plaintiff seeks a mandatory injunction ordering the Defendants to refrain from unlawful discrimination and/or retaliation, ordering Defendants to undertake and rectify any and all Title IX violations and/or inequities, ordering Defendants and its athletic department to refrain from creating and condoning a hostile and discriminatory environment against individuals on the basis of sex by immediately ceasing deliberate indifference to violence and assaults; and cease interference with the disciplinary process in favor of students who were charged with unlawful conduct.

## VII.
## JURY DEMAND

102. Plaintiff asserts her rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

## VIII.
## RELIEF REQUESTED

103.     For all of the foregoing reasons, Plaintiff respectfully request that the Court enter judgment against Defendants consistent with the relief requested herein, and for any and all relief Plaintiff may show they are entitled including actual damages, compensatory damages, nominal damages, court and litigation costs, expert fees, attorneys' fees, statutory interest and injunctive relief.

Dated: October 10, 2016.

                              Respectfully submitted,

                              **FARRELL & PATEL, ATTORNEYS AT LAW**

                                        /s/ Joey M. McCall
                                        **Joey M. Mccall**
                                        FL Bar No.:101135
                                        JMMcCall@FarrellPatel.com

                                        **Ricky K. Patel**
                                        FL Bar No.:88769
                                        RPatel@FarrellPatel.com

                                        2701 Ponce De Leon, Suite 300
                                        Coral Gables, FL 33134
                                        Telephone: (305) 300-3000
                                        Facsimile: (800) 946-6711

                                        *Attorneys for Plaintiff Dolores Lozano*

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
Dolores Lozano

**DEFENDANTS**
BAYLOR UNIVERSITY; BAYLOR UNIVERSITY BOARD OF REGENTS

**(b)** County of Residence of First Listed Plaintiff    Harris
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    McLennan
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Farrell & Patel, Attorneys at Law, 2701 Ponce De Leon Blvd., Suite 300
Coral Gables, FL 33134

Attorneys *(If Known)*
W16CA403

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | | | | | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
20 U.S.C. § 1681
Brief description of cause:
VIOLATION OF TITLE IX

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** *(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE
10/11/2016

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____