IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| DOLORES LOZANO, | § | |
|---|---|---|
| Plaintiff, | § | |
| v. | § | 6:16-CV-403-RP |
| BAYLOR UNIVERSITY and BAYLOR BOARD OF REGENTS, | § | |
| Defendants. | § | |

## ORDER

Before the Court in the above-entitled action are Defendant's Motion to Dismiss, (Dkt. 5), and Plaintiff's Opposed Motion for Leave to File Amended Complaint, (Dkt. 15). Having considered the motion and responsive filings thereto, relevant law, and the case file, the Court issues the following order.

## I. BACKGROUND

Plaintiff Dolores Lozano ("Plaintiff") filed suit against Defendants Baylor University ("Baylor") and the Baylor University Board of Regents ("the Board of Regents") (collectively, "Defendants") on October 11, 2016. (Compl., Dkt. 1). Plaintiff's complaint alleges violations of Title IX of the Education Amendments Act of 1972 ("Title IX"), 20 U.S.C. § 1681, *et seq.*, as well as the Texas common law doctrines of negligence and gross negligence. (*Id.* ¶ 7, 9). These claims stem from multiple alleged assaults of Plaintiff by Devin Chafin, then a student-athlete and member of Baylor's football team. (*Id.* ¶¶ 13–63).

Baylor filed a Motion to Dismiss on December 22, 2016. (Dkt. 5). Plaintiff filed the instant motion on July 26, 2017. (Dkt. 15). She seeks leave to file her First Amended Complaint, which (1) removes the Board of Regents as a defendant; (2) adds a claim under the Texas common law

1

doctrine of negligent hiring, retention, training, and supervision; and (3) "adds factual and procedural developments that have occurred since the original complaint was filed." (*Id.* ¶ 1; Prop. Am. Compl., Dkt. 16). Baylor objects. (Resp., Dkt. 18).

## II. LEGAL STANDARDS

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the [plaintiff's] grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

Leave to file an amended pleading "shall be freely given when justice so requires," but "is by no means automatic." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) (quoting Fed. R. Civ. P. 15(a)). In deciding whether to grant leave to file an amended pleading, a district court may consider factors such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Wimm*, 3 F.3d at 137, 139. In assessing futility of amendment, the Court should consider whether the proposed amendment could survive a motion to dismiss. *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000) ("[W]e join our sister circuits that have interpreted [futility] to mean that the amended complaint would fail to state a claim upon which relief could be granted.").

## III. DISCUSSION

Baylor argues that Plaintiff's motion for leave to amend should be denied because her proposed amendments are futile. (Resp., Dkt. 18, at 1). Specifically, the university asserts that (1) "Plaintiff's claims remain time-barred"; (2) "none of [Plaintiff's] allegations regarding a non-sexual assault invoke Title IX"; and (3) "the new claim alleging negligent hiring, retention, and supervision does not state a viable claim under Texas law." (*Id.*). The Court considers each of these arguments in turn, incorporating analysis regarding Baylor's motion to dismiss as appropriate.

*A. Statute of Limitations*

Baylor maintains that Plaintiff's Title IX and negligence claims are subject to Texas's two-year statute of limitations and that Plaintiff's claims therefore must have accrued no later than the spring semester of 2014. (Resp., Dkt. 18, at 2). In support of this argument, the university argues that "Plaintiff claims that she reported the alleged assault to several school officials more than two years before she sued" and that she has not "add[ed] any factual assertions that would alter her allegations that she knew that the accused was a Baylor football player and that she knew that Baylor personnel did not respond to her reports." (*Id.*).

The Court agrees that Plaintiff's claims are subject to Texas's two-year statute of limitations. *King–White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 759–61 (2015); Tex. Civ. Prac. & Rem. Code Ann. § 16.003. It does not necessarily follow, however, that her claims are time-barred.

"Absent tolling, the limitations period runs from the moment a plaintiff's claim 'accrues,'" and while the limitations period is borrowed from state law, "the particular accrual date of a federal cause of action is a matter of federal law." *King-White*, 803 F.3d at 762 (quoting *Frame v. City of Arlington*, 657 F.3d 215, 238 (5th Cir. 2011)). "[U]nder federal law, a claim accrues and the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has

sufficient information to know that he has been injured." *Id.* (quoting *Spotts v. United States*, 613 F.3d 559, 574 (5th Cir. 2010)).

"[A] plaintiff's awareness encompasses two elements: (1) [t]he existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions." *Id.* (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 1995)). "'[A]wareness' [of the existence of the injury and causation] . . . does *not* mean actual knowledge; rather, all that must be shown is the existence of 'circumstances [that] would lead a reasonable person to investigate further.'" *Id.* (quoting *Piotrowski*, 237 F.3d at 576). Thus, for awareness of causation, a plaintiff "must have knowledge of facts that would lead a reasonable person (a) to conclude that there was a causal connection . . . or (b) to seek professional advice, and then, with that advice, to conclude that there was a causal connection between the [defendant's acts] and injury." *Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir. 1983).

Plaintiff states that she was first assaulted by Chafin in March 2014 and that she reported the assault to Jeff Lebby ("Lebby"), a coach with the Baylor football team, "shortly after [the assault's] occurrence." (Compl., Dkt. 1, ¶¶ 17–20; Prop. Am. Compl., Dkt. 16, ¶¶ 15–18). She alleges that the assault was subsequently reported to Acrobatics & Tumbling Head Coach LaPrise Harris-Williams ("Williams"), Associate Athletics Director Nancy Post, Baylor Sports Chaplain Wes Yeary ("Yeary"), and Baylor University President and Chancellor Kenneth Starr.[1] (Compl., Dkt. 1, ¶¶ 28–29, 37; Prop. Am. Compl., Dkt. 16, ¶¶ 26–27, 35, 39). Plaintiff states that Chafin assaulted her again on April 5, 2014, (Compl., Dkt. 1, ¶ 41; Prop. Am. Compl., Dkt. 16, ¶ 42), and that she reported the assault to Baylor's on-campus medical clinic and counseling center, (Compl., Dkt. 1, ¶¶ 44–46; Prop. Am. Compl., Dkt. 16, ¶¶ 46–48). Chafin allegedly assaulted Plaintiff a third time later in the same

---

[1] Plaintiff's original complaint includes no allegations regarding Starr.

4

month, prompting her to again reach out to Williams and Yeary. (Compl., Dkt. 1, ¶¶ 55–56; Prop. Am. Compl., Dkt. 16, ¶¶ 57–58).

### 1. Heightened-Risk Claims

Because Plaintiff makes assertions that implicate the heightened-risk claims at issue in related cases (and because Baylor has not asserted that those heightened-risk claims were inadequately pled), the Court first turns to the application of the statute of limitations to those claims.

Plaintiff alleges that, despite being assaulted in 2014, she "did not become aware that Baylor was required to have a Title IX process until May of 2016, when an [i]nternal [a]udit of the Pepper Hamilton investigation was published." (Compl., Dkt. 1, ¶ 60; Prop. Am. Compl., Dkt. 16, ¶ 65–66 ("Plaintiff had no reason to know or reason to investigate . . . Defendant's obligations under Title IX . . . [or] the protections she was entitled to under Title IX until May of 2016.")).

However, the question is not when Plaintiff knew that she had a legal cause of action. *King-White*, 803 F.3d at 762. Instead, the question is when she knew of "the facts that would ultimately support a claim." *Id.* Had Plaintiff alleged that she did not know of a potential causal connection between Baylor's action (or inaction) and her assaults until the spring of 2016, the statute of limitations may have been tolled. *See Jane Doe 1 et al. v. Baylor University*, No. 6:16-CV-173, 2017 WL 1831996, at *10 (W.D. Tex. March 7, 2017). However, her allegations focus on her knowledge regarding the protections to which she was entitled under Title IX. Because her arguments rely exclusively on when she learned of Baylor's obligations under Title IX, the Court cannot find that Plaintiff's heightened-risk claims accrued late enough to bring her action within the applicable statute of limitations.

### 2. Post-Reporting Claims

As noted above, Plaintiff alleges that she was assaulted three times during the spring semester of 2014. The third alleged assault occurred in late April, although the exact date of the

5

incident is unclear. (Compl., Dkt. 1, ¶ 55; Prop. Am. Compl., Dkt. 16, ¶ 57). Plaintiff alleges that she informed Williams and Yeary of that assault. (Compl., Dkt. 1, ¶ 56; Prop. Am. Compl., Dkt. 16, ¶ 58). Within some reasonable time after those reports, at the very latest, Plaintiff would have understood that Baylor's deliberate indifference was the cause of her post-reporting injuries or could reasonably have been expected to "inquire further." *See King-White*, 803 F.3d at 761–63; *see also Samuelson v. Or. State Univ.*, 162 F. Supp. 3d 1123, 1127, 1134 (D. Or. 2016) (finding that a plaintiff was time-barred from bringing a claim because she "learned of [the university's] deliberate indifference to her report of rape when [the university] was in fact deliberately indifferent to her own report of the assault").

The Court has previously declined to find that the statute of limitations barred the post-reporting claims of plaintiffs who were assaulted in April 2014 but did not file suit against Baylor until June 2016. *Jane Doe 1 et al.*, 2017 WL 1831996, at *11. In doing so, the Court noted that it was "quite possible that [one of the plaintiff's] claim did not accrue until the fall semester." *Id.* Here, however, Plaintiff did not file suit until October 11, 2016. Plaintiff has alleged no facts supporting an inference that her communications with Baylor could conceivably have extended the relevant time—specifically, the time at which she would have understood that Baylor's deliberate indifference was the cause of her post-reporting injuries or could reasonably have been expected to inquire further—through October of the semester following her assaults.

### 3. Negligence and Gross Negligence Claims

Plaintiff's original complaint asserted claims under the Texas common law doctrines of negligence and gross negligence. (Compl., Dkt. 1, ¶¶ 77, 88). Baylor argues in its motion to dismiss that those claims were time-barred, (Mot. Dismiss, Dkt. 5, at 13), and now maintains that the proposed amended complaint does not cure that defect, (Def. Resp. Mot. Leave, Dkt. 18, at 2).

6

Specifically, Baylor argues that "the relevant knowledge for purposes of accrual is the plaintiff's knowledge of her own assault." (Mot. Dismiss, Dkt. 5, at 13).

The Court is unpersuaded. Plaintiff's negligence claims involve not just her own assaults, but also Baylor's "duty to provide assistance after acts of violence have occurred." (Compl., Dkt. 1, ¶ 83; Prop Am. Compl., Dkt. 16, ¶ 97). While Baylor insists that "the relevant knowledge for purposes of accrual is the plaintiff's knowledge of her own assault," (Mot. Dismiss, Dkt. 5, at 13), it supports that assertion with a case in which the plaintiffs alleged they were assaulted by the defendant. *Bradly v. Phillips Petroleum Co.*, 527 F. Supp. 2d 625, 640 (S.D. Tex. 2007). Here, Plaintiff was assaulted by a third party; her negligence claims involve Baylor's actions leading up to and following that assault. As Baylor has not provided any additional arguments in support of its position, the Court declines to find that Plaintiff's negligence claims are time-barred.

### 4. Equitable Tolling

Plaintiff argues that the Court should toll the statute of limitations for claims it would otherwise find to be time-barred. (Pl.'s Resp. Mot. Dismiss, Dkt. 7, at 10 ("[E]quitable tolling principles such as the discovery rule and fraudulent concealment . . . forestall the expiration of the limitations period.")).

With respect to the application of the discovery rule, which the Court considers only in relation to Plaintiff's heightened-risk claims,[2] the Court is again constrained by Plaintiff's focus on when she was "made aware of Defendant's obligations pursuant to Title IX." (*See, e.g.*, *id.* at 13–15). Plaintiff alleges that Defendants' dismissive attitude toward her reports represents a "cold display of indifference," (*see id.* at 13), but indifference is not the relevant standard. Rather, Plaintiff must show that "the nature of the injury incurred [was] inherently undiscoverable." *King-White v. Humble Ind. School. Dist.,* 803 F.3d 754, 764 (5th Cir. 2015). "'Discovery' does not mean 'actual knowledge of the

---
[2] In no situation would the discovery rule toll the statute of limitations with respect to Plaintiff's post-reporting claims, as she was necessarily aware of those injuries when they occurred.

7

particulars of a cause of action,' but whether the plaintiff has 'knowledge of facts which would cause a reasonable person to diligently make inquiry to determine his or her legal rights.'" *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 402–03 (5th Cir. 1998) (quoting *Vaught v. Showa Denko K.K.*, 107 F.3d 1137, 1140, 1141–42 (5th Cir. 1997)). Because Plaintiff's arguments relate only to when she learned of her rights under Title IX, the Court is unable to conclude that the discovery rule should operate to toll the statute of limitations.

The Court now turns to the doctrine of fraudulent concealment, which could apply both to Plaintiff's heightened-risk and post-reporting claims. Fraudulent concealment is an equitable doctrine that acts to toll the statute of limitations after a cause of action accrues. *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 67 (Tex. 2011). The doctrine requires a plaintiff to show that the defendant "actually knew a wrong occurred, had a fixed purpose to conceal the wrong, and did conceal the wrong." *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 927 (Tex. 2011).

With respect to Plaintiff's heightened-risk claims, the Court is unconvinced that the doctrine of fraudulent concealment could apply. Nowhere does Plaintiff allege any facts—or, indeed, make any substantive argument—suggesting that Baylor deceitfully concealed its wrongdoing. The Court is, yet again, hamstrung by Plaintiff's focus on when she was made aware of Defendant's obligations under Title IX.

Plaintiff makes more detailed arguments regarding the applicability of the fraudulent concealment doctrine to her post-reporting claims. Specifically, she asserts that her report of the first incident to Lebby, who "did nothing at all," "supports the assertion that either Lebby denied that the Plaintiff was physically abused or that he discouraged the Plaintiff from pursuing the matter because he erroneously believed that [Chafin] did nothing wrong"; that the "extreme degree of indifference" and lack of investigation following reports to Post "supports the assertion that Post denied that the Plaintiff was physically abused or did not follow up whatsoever based on the belief

8

that [Chafin] did nothing wrong"; and that Yeary's response to Plaintiff's reports "supports the assertion that Yeary also denied the Plaintiff was physically abused or did not follow up whatsoever based on the belief that [Chafin] did nothing wrong." (Pl.'s Resp. Mot. Dismiss, Dkt. 7, at 14). According to Plaintiff, these assertions illustrate that Baylor staff attempted to deceive Plaintiff into thinking "that there was no basis for her to pursue a legal cause of action." (*Id.* at 15).

The doctrine of fraudulent concealment, however, requires Plaintiff to show that Defendant did in fact conceal the wrong in question—that is, that she was in fact deceived into thinking that she was not injured by Baylor's response to her reports of sexual assault.[3] As Plaintiff has not made any allegations or argument on that point, the Court must conclude that she is not entitled to the protection of the fraudulent concealment doctrine.

Given the above analysis, the Court concludes that Plaintiff's Title IX claims are time-barred. With respect to those claims, Plaintiff's Motion for Leave to Amend is **DENIED** and Baylor's Motion to Dismiss is **GRANTED**. Plaintiff's negligence and gross negligence claims, however, are not necessarily time-barred. With respect to those claims, the disposition of Plaintiff's Motion for Leave to Amend and Baylor's Motion to Dismiss depends on the parties' arguments on the merits.

*B. Negligence and Gross Negligence*

The Court's jurisdiction over Plaintiff's state law claims is supplemental to its federal question jurisdiction. 28 U.S.C. § 1367(a). A federal court exercising supplemental jurisdiction over state law claims must apply the substantive law of the state in which it sits. *Sommers Drug Stores Co. Emp. Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 353 (5th Cir. 1989) (citing *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 (1938)). As a result, this Court must apply Texas law to the state law claims discussed

---

[3] Contrary to Defendant's assertions, the relevant inquiry is not whether Plaintiff was deceived into thinking that she had not been abused. The cases Baylor cites in support of that proposition involve situations in which the abuser was an employee of the defendant. *See Doe v. St. Stephen's Episcopal Sch.*, 382 F. App'x 386, 390 (5th Cir. 2010); *Doe v. Roman Catholic Archdiocese of Galveston-Hous. ex rel. Dinardo*, 362 S.W.3d 803, 814 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The instant case relies on a different theory of liability.

9

herein. In resolving issues of Texas state law, federal courts look to decisions of the Texas Supreme Court. *Hux v. S. Methodist Univ.*, 819 F.3d 776, 780 (5th Cir. 2016). If that court has not ruled on the issue, the federal court must make what is known as an "Erie guess"—that is, it must predict what the Texas Supreme Court would do if faced with the facts currently before the federal court. *Id.* Generally, state intermediate courts' decisions are the strongest indicator of what a state supreme court would do. *Id.* at 780–81.

In Texas negligence law, liability "is premised on duty, a breach of which proximately causes injuries, and damages resulting from that breach." *Thapar v. Zezulka*, 994 S.W.2d 635, 637 (Tex. 1999). Whether a legal duty exists is therefore a threshold question; if there is no duty, there can be no liability. *Id.* In evaluating the existence of a legal duty, courts may consider the existence of either a general duty or special duty.

### 1. General Duty

As a general matter, there is no duty to control the conduct of third persons. *See Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). However, in determining whether a defendant was under a duty, a court may consider several interrelated factors. *Id.* These include the "risk, foreseeability, and likelihood of injury [to plaintiff] weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant." *Id.* Of these, foreseeability is the most important consideration. *Id.*

Generally speaking, "a person has no legal duty to protect another from the criminal acts of a third person." *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). Plaintiff urges the Court to disregard that principle here, arguing that "there are exceptions to this rule." (Pl.'s Resp. Mot. Dismiss, Dkt. 7, at 18). She focuses, in particular, on foreseeability. (*Id.*). However, the Texas Supreme Court has made clear that "[f]oreseeability is the beginning, not the end, of the analysis in

determining the extent of the duty to protect against criminal acts of third parties." *Lefmark Mgmt. Co. v. Old*, 946 S.W.2d 52, 59 (Tex. 1997). "[O]nce foreseeability is established, 'the parameters of the duty must still be determined.'" *UDR Tex. Props., L.P. v. Petrie*, 517 S.W.3d 98, 101 (quoting *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.3d 749, 756 (Tex. 1998)).

"In determining whether the occurrence of certain criminal conduct on a landowner's property should have been foreseen," courts applying Texas law "should consider whether any criminal conduct previously occurred on or near the property, how recently it occurred, how often it occurred, how similar the conduct was to the conduct on the property, and what publicity was given the occurrences to indicate that the landowner knew or should have known about them." *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.3d 749, 757 (Tex. 1998). If a court determines that the instance of criminal conduct in question was foreseeable, it must then consider the unreasonableness of the risk of the conduct's occurrence. *UDR Tex. Props.*, 517 S.W.3d at 102. "A risk is unreasonable when the risk of a foreseeable crime outweighs the burden placed on property owners—and society at large—to prevent the risk." *Id.* at 103.

In the instant case, Plaintiff alleges three assaults by Chafin. The first occurred in March 2014 at Chafin's Baylor-owned apartment. (Compl., Dkt. 1, ¶ 18; Prop. Am. Compl., Dkt. 16, ¶¶ 13, 16). The second occurred in April 2014 at Scruffy Murphy's, a restaurant and bar not owned by Baylor. (Compl., Dkt. 1, ¶¶ 41–42; Prop. Am. Compl., Dkt. 16, ¶ 44). The third, which occurred later in April, took place at the same Baylor-owned apartment referenced above. (Compl., Dkt. 1, ¶ 55; Prop. Am. Compl., Dkt. 16, ¶ 57). Even adopting Plaintiff's proposed theory, Baylor could not be held responsible for the first or second assaults. It is conceivable, however, that the factors Texas courts use to assess foreseeability—proximity, recency, frequency, similarity, and publicity—would permit a court to conclude that Plaintiff's third assault was foreseeable by Baylor. The analysis, then, turns on whether the risk to Plaintiff was unreasonable—that is, whether it would be preferable to

11

impose upon Baylor, as a property owner, the burdens necessary to prevent or reduce the risk of the crime in question than to accept the risk that such a crime could occur. *UDR Tex. Props.*, 517 S.W.3d 98 at 103. Plaintiff offers no argument regarding the unreasonableness of the risk that she would be assaulted by Chafin a third time.[4] The Court, though troubled by Plaintiff's allegations and injuries, cannot conclude that Baylor owed Plaintiff a general duty under Texas negligence law. *See, e.g.*, *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 769–70 (finding the risk of criminal conduct unreasonable when a bar fight broke out and the bar "had actual and direct knowledge that a violent brawl was imminent" and noting that the "duty arose not because of prior similar criminal conduct but because [the premises] was aware of an unreasonable risk of harm at the bar that very night").

2. Special Duty

The general rule that there is no duty to control the conduct of third persons does not apply when a special relationship exists between the actor and the third person that imposes a duty on the actor to control the third person's conduct. *Phillips*, 801 S.W.2d at 525. Such special relationships traditionally include those between an employer and employee or between a parent and child. *Id.* Here, Plaintiff argues that a special relationship exists between Baylor and its students. (Pl.'s Resp. Mot. Dismiss, Dkt. 7, at 19). The Court disagrees.

The Texas Supreme Court, while noting that universities may be held liable for negligent failure to protect in some circumstances, has not specifically addressed the special relationship doctrine in the context of students and universities. *See generally Delaney v. Univ. of Houston*, 835 S.W.2d 56 (Tex. 1992) (reversing a trial court's grant of summary judgment to a college and leaving open the possibility that the university could be liable for failing to replace defective locks on the

---

[4] *UDR*, the case relied on by the Court for much of this analysis, was not decided until after Plaintiff filed her response to Baylor's Motion to Dismiss. The *UDR* court, however, noted both that (1) the Texas Supreme Court's "precedents are unambiguous: the foreseeability and unreasonableness inquiries are distinct"; and (2) the individual assaulted in that case "ha[d] been on notice at every stage of this case that he must argue and offer evidence of unreasonableness." *UDR Tex. Props.*, 517 S.W.3d 98 at 103.

12

doors of a dormitory, thereby enabling an intruder to enter and sexually assault a student). Intermediate Texas courts, however, have declined to hold that the relationship between a private university and its adult students constitutes a special relationship, *see Boyd v. Tex. Christian Univ., Inc.*, 8 S.W.3d 758, 760 (Tex. App.—Fort Worth 1999, no writ), as have most courts surveying state law on this issue, *see, e.g.*, *Freeman v. Busch*, 349 F.3d 582, 587–88 (8th Cir. 2003) ("[S]ince the late 1970s, the general rule is that no special relationship exists between a college and its own students because a college is not an insurer of the safety of its students").

Because the Court is bound to follow state negligence law, it concludes that Baylor had no duty to Plaintiff and therefore cannot be held liable for either negligence or gross negligence. With respect to these claims, Defendant's Motion to Dismiss is **GRANTED**. Because no facts in Plaintiff's Proposed Amended Complaint cure that defect, the proposed amendment is futile. As to these claims, Plaintiff's Motion for Leave to Amend is therefore **DENIED**.

### C. Negligent Hiring, Retention, Training, and Supervision

The Court turns now to whether Plaintiff's proposed amended complaint states a viable claim for negligent hiring, retention, and supervision under Texas law.

Plaintiff alleges that Baylor breached its duty, as an employer, to adequately hire, train, and supervise employees. (Prop. Am. Compl., Dkt. 16, at 17). Her proposed amended complaint states that the university "failed to adequately train, make aware, or inform" employees—including Associate Athletics Director Nancy Post, Sports Chaplain Wes Yeary, and Football Running Back Coach Jeff Lebby—as to "any Title IX procedures or policies," (*id.* ¶ 108), and failed to adequately supervise those employees with respect to the same procedures or policies, (*id.* ¶ 109).[5] She argues that Baylor failed to meet the standard of care for universities in hiring, retaining, training, and

---

[5] Plaintiff makes similar allegations with respect to an individual named "Whipple," but neither provides that individual's full name nor identifies his or her position at Baylor. (Prop. Am. Compl., Dkt. 16, ¶¶ 107–09).

13

supervising its employees "by failing to comply with [f]ederal and [s]tate law," (*id.* ¶ 112), and that she suffered damages as a "direct proximate result" of Baylor's breach of its duty, (*id.* ¶ 113).

"To establish a claim for negligent training, a plaintiff must prove that a reasonably prudent employer would have provided training beyond that which was given and that failure to do so caused his injuries." *Dangerfield v. Ormsby*, 264 S.W.3d 904, 912 (Tex. App.—Fort Worth 2008, no pet.). Plaintiff's proposed amended complaint seeks to meet that burden by pointing to Baylor's alleged failure to comply with state and federal law. (Prop. Am. Compl., Dkt. 16, ¶ 112). Plaintiff alleges that Baylor failed to:

- "Properly hire, train and retain officers, staff and faculty as to proper methods to deal with reports of assaults, investigate same and accommodate victims accordingly";
- "Assure adequate staff training to meet the behavior and social needs of all individuals, including assault victims";
- "Supervise faculty and staff to ensure proper supervision, control, restraint and monitoring of student athletes";
- "Appropriately monitor to ensure that student athletes are not brought [onto] campus without regard to the safety of other students"; and
- "Implement safeguards for female employees adequate to protect them from foreseeable criminal and anti-social activities."

(*Id.* ¶ 119).

In response, Baylor argues that Plaintiff's efforts to base her negligence claims "on an alleged failure to comply with Title IX or federal regulatory guidance" is a "backdoor attempt at negligence *per se* [and] a misguided effort to get around Title IX's requirement that plaintiffs prove 'deliberate indifference,' a higher standard than negligence." (Resp., Dkt. 18, at 8). Plaintiff makes no argument in response, save that the issue is "particularly deserving of full briefing through the appropriate motions." (Reply, Dkt. 19, at 5).

The Court agrees with Plaintiff. It is, at this stage, unclear that Plaintiff's negligent hiring, retention, training, and supervision claims would necessarily not survive a motion to dismiss and that granting leave to amend and add those claims should therefore be denied as futile. With respect

14

to the portion of the proposed amended complaint involving those claims, Plaintiff's Motion for Leave to Amend is therefore **GRANTED**.

## IV. CONCLUSION

For the reasons stated herein, **IT IS HEREBY ORDERED** that:

- With respect to Plaintiff's Title IX claims, negligence claims, and gross negligence claims, Plaintiff's Motion for Leave to Amend is **DENIED** and Baylor's Motion to Dismiss is **GRANTED**; and
- Plaintiff's Motion for Leave to Amend is **GRANTED** with respect to her claim for negligent hiring, retention, and supervision.

**IT IS FURTHER ORDERED** that Plaintiff file her First Amended Complaint, consistent with the terms of this order, on or before October 13, 2017.[6]

**SIGNED** on September 28, 2017.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

---

[6] Plaintiff's Proposed Amended Complaint does not include any claims against the Board of Regents. (*See* Mot. Leave, Dkt. 15, ¶ 1). The Court expects Plaintiff's First Amended Complaint to reflect the same.