# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

DOLORES LOZANO;

        Plaintiff,

v.

BAYLOR UNIVERSITY; ART BRILES, in
his individual capacity; IAN MCCAW, in his
individual capacity; and CITY OF WACO.

        Defendants.

Case No.: 6:16-cv-00403

Hon. Robert Pitman

---

## PLAINTIFF DOLORES LOZANO'S RESPONSE IN OPPOSITION TO DEFENDANT IAN MCCAW'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................iii

INTRODUCTION ..............................................................................................................1

FACTUAL BACKGROUND ...............................................................................................1

Baylor University Board of Regents Findings of Fact...........................................................3

LEGAL STANDARD .........................................................................................................4

ARGUMENT AND AUTHORITIES ..................................................................................5

I.   DEFENDANT MCCAW FAILS TO ESTABLISH HIS AFFIRMATIVE
     DEFENSE OF LIMITATIONS AS A MATTER OF LAW ....................................5

II.  MCCAW'S NO-EVIDENCE SUMMARY JUDGMENT MOTION
     SHOULD BE DENIED ..........................................................................................7

     A.   McCaw Owed Lozano An Independent Duty Under Texas'
          Mutli-Factor Test ........................................................................................7

     B.   A Reasonable Jury Could Conclude That McCaw Breached His
          Duty To Lozano ..........................................................................................9

          1.   The Baylor Regents' "Findings of Fact" and public statements
               make summary judgment inappropriate .............................................9

          2.   The evidence demonstrates that McCaw did not – as he
               argues – handle other reports of sexual assault and dating
               violence "appropriately" ..................................................................10

          3.   Conflicting and contradictory testimony related to Lozano's
               report precludes summary judgment  ................................................12

     C.   Chafin's Misconduct Did Not Break The Chain Of Causation And
          Does Not Relieve McCaw Of Liability ........................................................14

          1.   The "attending circumstances" included a pattern of alleged
               sexual assault, interpersonal violence and dating violence
               committed by Baylor football players – a pattern that McCaw
               knew or should have known about but disregarded...........................16

          2.   The "attending circumstances" included Chafin's repeated
               violations of the law, Baylor's student code of conduct, and
               team rules ........................................................................................17

          3.   McCaw Knew and Ignored the Risk that Failing to Enforce
               the Rules Against Football Players Posed to Women,
               Including Lozano ............................................................................19

CONCLUSION AND PRAYER ........................................................................................20

## TABLE OF AUTHORITIES

Case(s)                                                                                                Page(s)

*Amedisys, Inc. v. Kingwood Home Health Care*, LLC,
  437 S.W.3d 512 (Tex. 2013) .................................................................................................... 6

*Bazan v. Hidalgo County*,
  246 F.3d 481 (5th Cir. 2001) .................................................................................................. 5

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................................................................................ 4

*Cf. Abraham v. Raso*,
  183 F.3d 279, 93d Cir. (1999) ................................................................................................ 5

*City of Houston v. Clear Creek Basin Auth.*,
  589 S.W.2d 671 (Tex. 1979) ................................................................................................... 6

*Day v. CUNA Mutual Group*,
  No. 1:19-CV-01188-RP, 2020 WL 8361995 (W.D. Tex. Dec.7, 2020) ...................................... 4

*Deville v. Marcantel*,
  567 F.3d 156 (5th Cir. 2009) .................................................................................................. 4

*Dew v. Crown Derrick Erectors, Inc.*,
  208 S.W.3d 448 (Tex. 2006) .................................................................................................. 15

*Doe v. Boys Clubs of Greater Dallas, Inc.*
  907 S.W.2d 472 (Tex. 1995) .................................................................................................. 15

*Hernandez v. Baylor Univ.*, et al,
  274 F.Supp. 3d 602 (2017) ..................................................................................................... 7

*KPMG Peat Marwick v. Harrison County Housing Finance Corp.*,
  988 S.W.2d 746 (Tex. 1999) ................................................................................................... 5

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  476 U.S. 574 (1986) ................................................................................................................ 4

*Milwaukee v. St. Paul Ry. Co. v. Kellogg*,
  94 U.S. 468 (1876) ................................................................................................................ 15

*Pagayan v. Exxon Mobil Corp.*,
  536 S.W.3d 499 (Tex. 2017) ................................................................................................... 8

*Reeves v. Sanderson Plumbing Prods., Inc.*,
  530 U.S. 133 (2000) ................................................................................................................ 5

*Shlumberger Technology Corp. v. Pasko*,
  544 S.W.3d 830 (Tex. 2018) ................................................................................................... 5

*Stanfield v. Neubaum*,
  494 S.W.3d 90 (Tex. 2016) .................................................................................................... 15

*Thomas v. Great Atl. & Pac. Tea Co.*,
  233 F.3d 326 (5th Cir. 2000) ............................................................................................... 4, 5

*Travis v. City of Mesquite,*
    830 S.W.2d 94 (Tex. 1992)............................................................................................................15

<u>Rules and Statutes</u>

Fed. R. Civ. P. 56(a).......................................................................................................................4

EXHIBIT INDEX

1. Declaration of Dolores Lozano and Exhibits
2. Baylor University Board of Regents Findings of Fact
3. Baylor University Report of External and Independent Review: Pepper Hamilton Recommendations
4. Defendants Cary Gray, Ron Murff, and David Harper's Original Answer (*Collin Shillinglaw v. Baylor University, et al*, No. DC-17-01225, in the District Court of Dallas County, Texas, 116th Judicial District)
5. NCAA Baylor University Public Infractions Decision  August 11, 2021
6. Baylor Statement in Response to Art Briles Filing
7. Baylor Statement in Response to Ian McCaw's Deposition
8. Affidavit of La Prise Harris-Williams
9. Todd Patulski's Notes
10. Ian McCaw Text Messages
11. Ian McCaw Email Messages
12. Declaration of Nancy Post (Document 204-7 filed with Baylor University's Motion for Summary Judgment)
13. Odell James Written Warning
14. Crystal Whittington Email to Coach Art Briles
15. Jim Doak Emails
16. Martha Lou Scott, Bethany McCraw, and Sarah Dorrell Emails
17. Judicial Affairs Data for 2013-14 School Year
18. Department of Athletics Personnel Policies and Procedures
19. Waco Police Department Incident Report 11-5366
20. Waco Police Department Incident Report 11-8683
21. Waco Police Department Incident Report 11-11248
22. Waco Police Department Incident Report 11-20323
23. Waco Police Department Incident Report 12-1178
24. Waco Police Department Incident Report 12-6584
25. Waco Police Department Incident Report 12-6721
26. Waco Police Department Incident Report 12-7639
27. Waco Police Department Incident Report 12-11008
28. Waco Police Department Incident Report 13-650
29. Waco Police Department Incident Report 13-7995
30. Waco Police Department Incident Report 13-1228
31. Waco Police Department Incident Report 13-19152
32. Waco Police Department Incident Report 13-21538
33. Waco Police Department Incident Report 14-24111
34. Excerpts from Deposition Transcript of Ian McCaw
35. Excerpts from Deposition Transcript of Art Briles
36. Excerpts from Deposition Transcript of Collin Shillinglaw
37. Excerpts from Deposition Transcript of Wes Yeary
38. Excerpts from Deposition Transcript of Nancy Post
39. Excerpts from Deposition Transcript of Odell James
40. Excerpts from Deposition Transcript of Jeff Lebby
41. Excerpts from Deposition Transcript of Devin Chafin

v

42.     Excerpts from Deposition Transcript of James Cary Gray
43.     Excerpts from Deposition Transcript of Ronald Dean Murff

**TO THE HONORABLE JUDGE OF THE COURT:**

Plaintiff Dolores Lozano files this Response in Opposition to Defendant Ian McCaw's Motion for Summary Judgment and in support shows the Court as follows:

## INTRODUCTION

This case arises out of Plaintiff Dolores Lozano's tragic experience as a victim of dating violence and domestic abuse. Lozano suffered multiple physical assaults at the hands of Devin Chafin, a Baylor University football player, while both were students at Baylor. Lozano brought suit against Baylor University, former Baylor head football coach Art Briles, former Baylor Athletic Director Ian McCaw and the City of Waco. In her Second Amended Complaint, as to Defendant McCaw, Lozano asserts claims under Texas law for negligence. Defendant McCaw first moved to dismiss Lozano's claim against him under Federal Rule of Civil Procedure 12(b)(6). This Court denied the motion. (Dkt. 105).

Lozano is only one of more than a dozen former Baylor students to bring a lawsuit in the wake of the so-called sexual assault scandal that broke in May 2016. During the firestorm that followed, Defendants Baylor, McCaw and Briles used the media, discovery disputes in the *Jane Doe* litigation and other litigation to advance each's own narrative, attack each other's credibility, shift blame and obfuscate the facts– all while ignoring the young women, including Lozano, who are seeking redress for the wrongs Baylor, its regents, McCaw and Briles publicly acknowledge. These tactics cannot be ignored as the Court now examines Defendant McCaw's Motion for Summary Judgment. The credibility issues raised by the defendants' public finger pointing alone require denial of his motion. A jury must sort out the extent to which Baylor, McCaw and Briles each bear responsibility for the "fundamental failures" that caused Lozano's injuries.

## FACTUAL BACKGROUND

Star Baylor University running back Devin Chafin violently assaulted fellow Baylor student Dolores Lozano in March 2014. During an argument at his Baylor-provided housing, Chafin pushed

Lozano down several times, slapped her, kicked her in the stomach and choked her until she could not breathe. (Ex. 1, Lozano Decl. ¶20). Left bruised and battered, Lozano reported the assault to Baylor's Acrobatic and Tumbling Coach La Prise Williams who in turn discussed Lozano's injuries with Baylor Associate Athletics Director and Senior Women's Administrator Nancy Post and Baylor Director of Sports Ministry and team chaplain Wes Yeary. (Ex. 1, Lozano Decl. ¶24). Post told Williams not to get involved.(Ex. 8, LaPrise Harris Williams Aff. ¶11). Yeary met with Lozano and, after hearing details of Chafin's physically and verbally abusive behavior as well as his substance abuse, provided her spiritual counseling. (Ex. 1, Lozano Decl. ¶25). Yeary gave Lozano a book by a Christian women's author and told her he would follow up with Chafin. (Ex. 1, Lozano Decl. ¶25). Baylor running back coach Jeff Lebby, who was aware of the assault the night it occurred and who knew of Chafin's drug and alcohol use, did nothing save giving Chafin extra work with weights. (Ex. 1, Lozano Decl. ¶26). Chafin told Lozano that Coach Art Briles and then-Baylor President Ken Starr were made aware of the assault. (Ex. 1, Lozano Decl. ¶26) . Chafin indicated that both Briles and Starr told him to stay away from her but took no further action. (Ex. 1, Lozano Decl. ¶26). Within weeks, Chafin assaulted Lozano twice more. (Ex. 1, Lozano Decl. ¶¶27, 37). Lozano's mother contacted the Baylor Athletic Department to report her daughter's assaults. (Ex. 1, Lozano Decl., ¶28-29). She was assured that "the football coaches would handle it." (Ex. 1, Lozano Decl., ¶29). Lozano's mother complied with the department's request and provided photographs of the bruises Chafin's assault caused via text message to a football coach. (Ex. 1, Lozano Decl., ¶29). Lozano sought medical treatment for injuries, counseling from the Baylor clinic and counseling center and academic assistance from the student life office. (Ex. 1, Lozano Decl., ¶¶32-33 )(Ex.16). Chafin was never disciplined and remained an active member of the Baylor football team for two more years – until the cover up of rampant sexual assault and domestic abuse within the football program was exposed in the media and Baylor

released its "Findings of Fact" based on an investigation by the law firm of Pepper Hamilton. (Ex. 1, Lozano Decl., ¶¶31, 47).

## Baylor University Board of Regents
## Findings of Fact

Released on May 26, 2016, the "Baylor University Board of Regents Findings of Fact" outlined "specific failings within both the football program and Athletics Department leadership" and identified "significant concerns about the tone and culture within Baylor's football program as it relates to accountability for all forms of athlete misconduct." (Ex.2). In addition to admitting "institutional failures at every level of Baylor's administration," the Regents specifically implicated the Athletic Department leadership, *i.e.*, McCaw, [1] and the football program he oversaw. The Regents highlighted the following Findings of Fact related to athletics:

- "Leadership challenges and communication issues hindered enforcement of rules and policies, and created a cultural perception that football was above the rules."

- "The University and Athletics Department failed to take effective action in response to allegations involving misconduct by football staff."

- "The choices made by football staff and athletics leadership, in some instances, posed a risk to campus safety and the integrity of the University."

- "In certain instances, including reports of a sexual assault by multiple football players, athletics and football personnel affirmatively chose not to report sexual violence and dating violence to an appropriate administrator outside of athletics."

- "Football staff conducted their own untrained internal inquiries, outside of policy, which improperly discredited complainants and denied them the right to a fair, impartial and informed investigation, interim measures or processes promised under University policy."

- "The football program's separate system of internal discipline reinforces the perception that rules applicable to other students are not applicable to football players, improperly insulates football players from appropriate disciplinary consequences, and puts students, the program, and the institution at risk of future misconduct."

- "The football program failed to identify and maintain controls over known risks, and unreasonably accepted known risks."

---

[1] (Ex. 43, Murff 186/14-187/9).

- "Leadership in football and the athletics department did not set the tone, establish a policy or practice for reporting and documenting significant misconduct."

- "The lack of reporting expectations resulted in a lack of accountability for player misconduct and employee misconduct."

(Ex. 2). Following the release of the Findings of Fact, Baylor published Pepper Hamilton's 105 Recommendations and embarked on a very public campaign to restore the university's image. (Ex. 3). Responding to Pepper Hamilton's investigation, Baylor took personnel action which ultimately resulted in the resignation and/or termination of Baylor President Ken Starr, Director of Athletics Ian McCaw, Head Football Coach Art Briles and Director of Football Operations Collin Shillinglaw.

## **LEGAL STANDARD**

"Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Day v. CUNA Mutual Group*, No. 1:19-CV-01188-RP, 2020 WL 8361995 (W.D. Tex. Dec.7, 2020)(quoting Fed. R. Civ. P. 56(a)). The party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Then, and only then, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 476 U.S. 574, 585-87 (1986).

"Summary judgment is ***not*** appropriate when 'questions about the credibility of key witnesses loom …large' and the evidence could permit the trier-of-fact to treat their testimony with 'skeptical scrutiny.'" *Deville v. Marcantel*, 567 F.3d 156, 165 (5thCir. 2009)(quoting *Thomas v. Great Atl. & Pac. Tea Co.*, 233 F.3d 326, 331 (5th Cir. 2000)(emphasis added). While a motion for summary judgment cannot be defeated solely by conclusional allegations that a witness lacks credibility, "when the circumstances

are conducive to lying, well-supported suspicion of mendacity may serve as a legitimate basis for the factfinder's reasonable inferences concerning the ultimate facts at issue." *Thomas,* 233 F.3d at 326.

A court "should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, *at least to the extent that evidence comes from disinterested witnesses.*'" *Bazan v. Hidalgo County,* 246 F.3d 481, 492 (5th Cir. 2001)(quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 151 (2000))(emphasis in original). In *Bazan,* the trial court denied a police officer's motion for summary judgment on the issue of qualified immunity finding a genuine issue of material fact existed as what actually happened and whether his actions were reasonable. *Id.* at 483. The officer appealed. This Court noted that the evidence the officer claimed to be "uncontradicted and unimpeached" came for the most part, if not exclusively, from an interested witness – the officer himself. *Id.* at 492. *Cf. Abraham v. Raso,* 183 F.3d 279, 287 93d Cir. 1999)("Cases that turn crucially on the credibility of witnesses' testimony in particular should *not* be resolved on summary judgment.")(emphasis added).

## ARGUMENT AND AUTHORITIES

I.    **DEFENDANT MCCAW FAILS TO ESTABLISH HIS AFFIRMATIVE DEFENSE OF LIMITATIONS AS A MATTER OF LAW.**

Defendant McCaw's effort to dispose of Lozano's claims against him based on limitations fails at its inception. McCaw conveniently ignores the burden he bears under well-established Texas law: A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish the defense. *KPMG Peat Marwick v. Harrison County Housing Finance Corp.,* 988 S.W.2d 746, 748 (Tex. 1999). Thus, the defendant must (1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pleaded or otherwise been raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered the nature of its injury. *Id*; *see also, Shlumberger Technology Corp. v. Pasko,* 544 S.W.3d 830, 834 (Tex. 2018)("In cases in

which the plaintiff pleads the discovery rule, the defendant moving for summary judgment on limitations bears the additional burden of negating the rule."). If, and only if, the movant first establishes that the statute of limitations bars the action, the nonmovant must then adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671. 678 (Tex. 1979). "If the movant does not conclusively establish its defense, then the burden does not shift to the nonmovant, and the nonmovant need not respond or present any evidence." *Amedisys, Inc. v. Kingwood Home Health Care*, LLC, 437 S.W.3d 512 (Tex. 2013)(internal quotations omitted).

Here, this Court rejected McCaw's motions to dismiss based on limitations, recognizing:

> [T]he nature of [Lozano's] claim against McCaw is that he oversaw an inadequate disciplinary system that was designed to obstruct genuine investigation or public discovery of widespread physical and sexual assault by Baylor student/athletes. The Court finds at this stage, Lozano plausibly alleges that she could not have discovered her negligence claims against Baylor and McCaw until the Pepper Hamilton Findings of Fact were published.

(Dkt. 105 at 50). Notably, the Court added: "***If*** *summary judgment evidence establishes that Lozano's state law claims against Baylor and McCaw accrued before the Pepper Hamilton Findings of Fact were published, the defendants will be entitled to summary judgment.*" (Dkt 105 at 50)(emphasis added). Offering evidence that falls far short, McCaw fails to meet his burden to offer any evidence to establish an earlier accrual date.

In support of his Motion for Summary Judgment, McCaw largely repeats ***verbatim*** the same argument he advanced in his failed Motion to Dismiss. Compare Dkt. 200, pages 8 -10 with Dkt. 61, pages 5-8. He cites the same authorities and refers to the same paragraphs in Lozano's Second Amended Complaint; indeed, the current motion differs in only one respect. In his Motion for Summary Judgment, McCaw refers to a 2012 email Lozano sent to Baylor's Office of Judicial Affairs in which she complained she had been slandered by a student-athlete. (Dkt. 200. McCaw MSJ at 11). McCaw contends the email demonstrates that, years before her physical assault, "Plaintiff was in possession of information causing her to believe that Baylor regularly failed to respond to complaints

of violence made by Baylor student-athletes and failed to protect students from abusive or assaultive conduct by student-athletes." (Dkt. 200 at 11). McCaw then summarily concludes that "[b]ecause Plaintiff's claims against McCaw accrued more than two years before she originally filed suit in this case and almost four years before she sued Ian McCaw, they are time barred." (Dkt. 200 at 11). Presumably, McCaw asks this Court to infer from Lozano's general observations that "Baylor neglected their duties to protect their students" in 2012 that she had sufficient information that should have prompted her to inquire about possible misconduct by Baylor officials in 2014. Not only is such an inference unreasonable, the Court is not permitted to draw *any* inferences in favor of the movant. McCaw has simply failed to meet his summary judgment burden to establish that Lozano's claims accrued prior to the release of the Findings of Fact. He has not conclusively established the accrual date for Lozano's claims against him and therefore the burden has not shifted. McCaw's limitations defense fails as a matter of law.

## II.   MCCAW'S NO-EVIDENCE SUMMARY JUDGMENT MOTION SHOULD BE DENIED.

### A.  McCaw Owed Lozano An Independent Duty Under Texas' Multi-Factor Test

McCaw again recycles the argument he advanced in his Motion to Dismiss – which in turn was taken in large part verbatim from his motion to dismiss in in *Hernandez v. Baylor Univ.*, et al, 274 F.Supp. 3d 602 (2017).  Repeating the same argument – verbatim now for a third time -- McCaw not only ignores this Court's opinion in *Hernandez,* he ignores the Court's order refusing to dismiss Lozano's negligence claims in this case. (Dkt. 105). The disingenuousness of McCaw's "copy and paste" approach to drafting his summary judgment is perhaps best illustrated by a footnote: In footnote 3 on page 13 of his motion for summary judgment – in language identical to footnote 4 on page 14 of his motion to dismiss --  McCaw writes:

> "This Court has already found in this case that there is no special relationship between a university and its students; that substantially similar negligence claims as those being asserted in the Second Amended Complaint failed to implicate a legal duty

of care; **and has dismissed those claims against Baylor ... Similar conclusions are compelled as to the negligence claims against McCaw."**

(Dkt. 200, McCaw MSJ at 13, n.3). McCaw cites the Court's *September 2017* ruling dismissing Lozano's negligence claims as plead in her *First Amended Complaint*. Incredulously, McCaw fails to even acknowledge this Court's *September 2019* ruling in which the Court determined that, in her *Second Amended Complaint, Lozano "plausibly alleged her negligence claims against [him]" and against Baylor*. (Dkt. 105 at 39, 41). Instead, McCaw seems to simply re-argue his motion to dismiss, insisting that he does not owe Lozano a duty as a matter of law. This Court has already determined that -- under the facts alleged and now established --  he does.

This Court explained that, "to determine whether a defendant has a duty of care, Texas courts consider 'the risk, foreseeability, and likelihood of injury weighted against the social utility of the actor's conduct, the magnitude of the burden guarding against the injury, and the consequences of placing the burden on the defendant.'" (Dkt. 105 at 40)(citing *Pagayan v. Exxon Mobil Corp.*, 536 S.W.3d 499, 504 (Tex. 2017).  Applying this multi-factor test, the Court identified allegations in Lozano's complaint that support imposition of a duty on McCaw (Dkt. 105 at 41); those allegations are now facts supported by evidence:

- McCaw was "responsible for overseeing all of Baylor's athletic programs, including Baylor's football team," and he "had the authority to discipline any and all Baylor coaches as well as all Baylor student-athletes."  (Ex.18).

- McCaw knew or should have known about her first assault through his employees. (See discussion and references to the record below).

- It was foreseeable and likely that Chafin would continue to assault Lozano without intervention. (See discussion and references to the record below).

- McCaw oversaw an "ad hoc, internal system of discipline" for football players including Chafin. (See discussion and references to the record below).

- McCaw sanctioned, "untrained, informal investigations" of reports that Chafin and other football players have committed sexual and physical violence. (See discussion and

references to the record below).

- McCaw used informal investigations of sexual assaults and domestic violence "as a means of creating the appearance that Athletic Department and football staff were responsive to such complaints, while actually improperly discredited complainants and allowing football players to escape responsibility." (See discussion and references to the record below).

## B.  A Reasonable Jury Could Conclude That McCaw Breached His Duty To Lozano

### 1.  The Baylor Regents' "Findings of Fact" and public statements make summary judgment inappropriate.

The Baylor University Board of Regents Findings of Fact and public statements coupled with McCaw's vehement dispute of the findings and public counterattack provide evidence that – at a minimum – raises a genuine issue of material fact regarding McCaw's breach. (Ex.2). Baylor published the Findings on its website and has repeatedly touted the document as evidence of its transparency. Baylor Regent Cary Gray testified in his deposition that he was provided a draft and asked to review the Findings of Fact prior to the document's release on May 26, 2016. (Ex.42, Gray 253/15-254/15). He confirmed that he reviewed the draft and "did not see anything [he] disagreed with." (Ex. 42, Gray 253/24- 254/15). Further, he testified that has not learned any information since the release that would undermine the Findings of Fact. (Ex. 42, Gray 254/16-23). According to Gray, the Findings of Fact is "accurate and its fair and its full disclosure." (Ex. 42, Gray 254/16-23). Similarly, former Baylor Regent Ron Murff testified in his deposition that he reviewed the Findings of Fact before their release and did not make any suggestions for revisions. (Ex 43, Murff 154/18-23). Murff unequivocally affirmed the Findings of Fact: "I would stand by these findings as still accurate as at the time we wrote them." (Ex.43, Murff 169/5-6) Likewise, both Gray and Murff endorsed and adopted the facts set forth in their Original Answer filed in *Collin Shillinglaw v. Baylor University, et al*, No. DC-17-01225, in the District Court of Dallas County, Texas, 166th Judicial District. (Ex. 4).

Baylor and its Regents have continued to rely on the Findings of Fact, the *Shillinglaw* Answer and the underlying emails and text messages in responding to investigations and inquiries to other bodies, including the NCAA.[2] Baylor consistently pushes back when McCaw and Briles claim that they have been unfairly blamed for what were university-wide failures (Ex. 6)(Ex. 7). By attempting to shift blame and control the public narrative,  Defendants have created fact issues that can only be resolved by a jury.

###### 2. The evidence demonstrates that McCaw did not – as he argues – handle other reports of sexual assault and dating violence "appropriately."

McCaw offers as "undisputed facts" a description of his handling of a report of sexual assault by a volleyball player and posits that the evidence demonstrates that the report "was responded to by [him] appropriately." (Dkt. 200, McCaw MSJ at 3-4, 18-19).  He apparently asks the Court to infer that because he [allegedly] handled the volleyball player's report "appropriately," he also handled Lozano's report "appropriately" and therefore he cannot be negligent. McCaw disingenuously relies on the deposition testimony of former Baylor Regents Cary Gray and Ron Murff for absolution. McCaw maintains that neither were aware of "any other instance where [he] was contemporaneously aware that a student was making a complaint of sexual violence against a Baylor student-athlete…or was aware that there were allegations that reports of violence against students were not being handled properly or to the satisfaction of the complainant." (Dkt. 200, McCaw MSJ at 19).  He claims that Murff "is not aware of any instance in which McCaw concealed or covered up a report of sexual assault or domestic violence at Baylor University." (Dkt. 200, McCaw MSJ at 19). These facts are neither "undisputed" nor are they dispositive of  McCaw's liability in this case. Whatever Gray or Murff may or not been aware of at the time of their depositions, the communications between McCaw, Briles and other athletic department staff tell a different story. McCaw may feign ignorance now but

---

[2] In turn, the NCAA repeatedly cited the Findings of Fact in its August 11, 2021 final decision. (Ex. 5).

email and text messages written at the time of the events reveal he was far more savvy and far more involved with these matters than he portends.[3]

Relying on his own affidavit, McCaw offers carefully crafted select facts regarding a female volleyball player's report of sexual assault by multiple football players in an effort to demonstrate that he handled reports of sexual assault and interpersonal matters "appropriately." It is interesting that McCaw would invite further scrutiny of his involvement in this particular matter.  Review of McCaw's deposition testimony, email and text messages reveals not only that he knew more about the incident than he claims he did, he also took affirmative steps to cover it up.

Although McCaw suggests that he was unaware of the circumstances surrounding the volleyball player's complaint until Barnes mentioned it to him when she transferred, email communication reflects that he was informed in early April 2013. (Ex. 11E). He even noted that the name of one of the players mentioned was "coming up frequently and associated with bad news." (Ex.11E). He asserts that he had  no further knowledge of the complaint until 2015 and testified in his deposition that Baylor administrator Reagan Ramsower asked him to contact former Baylor volleyball coach Jim Barnes to "just go through the sequence of events as related to the volleyball player" and to share his response with then Title IX Coordinator Patty Crawford. (Ex. 34, McCaw Depo at 132/9- 133/16). In his August 26, 2015 email to Crawford, ███████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████ (Ex.11F). ████████

██████████████████████████████████████████████

---

[3] McCaw's email communications reflect that he  was directly involved, along with Defendant Briles, in several football players' disciplinary appeals to President Starr. (Ex. 11A-11D). Text messages exchanged with Collin Shillinglaw and Briles reveal that he was similarly directly involved in other disciplinary matter and  in arranging for legal representation for football players, (Ex. 10A, 10B, 10C).

████████████████████████ (Ex.11F).  ████████████████████████████████████

████████████████████████████████  ████████████████████████████████████

██████████████████████████████ (Ex.2. 11F).

Shortly after noon  the following day, August 27, 2015, McCaw sent an email with a decidedly different tone and purpose. (Ex. 34, McCaw Depo at 135/25-138/3)(Ex.11G). In an "update" to a message Baylor President Ken Starr, Vice President and Chief Operating Officer Reagan Ramsower, Vice President for Marketing and Communications  John Barry and Baylor's in-house counsel Charles Beckenhauer and Chris Holmes, McCaw detailed his efforts to silence the young woman and shut down media interest in her story.

I have spoken with Coach Barnes a few times this morning.

*With my encouragement,* **he contacted the former volleyball player in Minnesota and asked her not to proceed with the story.** Earlier this morning, he said she had "stopped responding to calls" from the reporter. Most recently, she asked the reporter if there will be a story and was told "we're still investigating and don't know." She reiterated to Coach Barnes that she will not talk anymore.

*While we are not out of the woods, this is an encouraging development.*

Ian

(Ex.11G). Notably, Crawford, the Title IX Coordinator attempting to finally investigate the report, was not a recipient of this "update."

### 3. Conflicting and contradictory testimony related to Lozano's report precludes summary judgment.

LaPrise Williams told her supervisor, Nancy Post, via telephone that she had noticed bruising on Lozano's arm and questioned her about it. (Ex. 38, Post Depo 23/1-12). Lozano shared with her that her boyfriend Devin Chafin had assaulted her. (Ex.38 Post Depo 23/1-12). Post told Williams that "as an interpersonal relationship that – you know, between the boyfriend and the girlfriend that, you know, she – I mean, needed to encourage  -- encourage her to work that out and to be safe and make sure she was okay. But that was not – you know that was not her – her responsibility as the head

coach." (Ex. 38, Post 23/1-12; 24/4-12). In her affidavit offered in support of Baylor University's Motion for Summary Judgment, Post attests that she advised Williams that Lozano should report the assault to the police and Williams responded that she would encourage Lozano to do so. (Ex. 12, ¶7).

According to Post, she "immediately" made Todd Patulski and Ian McCaw aware of what Coach Williams told her. (Ex. 38, Post Depo 24/23-25/7). Post testified that she spoke with Patulski and McCaw –together and in person. She relayed that "Coach Williams had contacted [her] regarding a student manager who had had an interpersonal relationship difficulty with her boyfriend …and that the boyfriend had been identified as a Baylor football player." (Ex.38, Post Depo 25/21-26/9). Post testified that she shared with them that Coach Williams had indicated "*there was bruising***."** (Ex.38, Post Depo 26/5-9). Post recalled that both thanked her for the information but did not instruct her to take any further action nor did either indicate that they planned to take any further action.

Post recalled that she spoke with Patulski a second time – this time in the presence of Director of Football Operations Collin Shillinglaw – to advise him that Williams had called her again to report that Lozano's mother would be reaching out to someone in football. (Ex. 38, Post Depo 31/2-5; 31/14-32/14).

Post attested that, <u>at some point later, "in April or May,"</u> Williams shared with her that Lozano had in fact gone to the police.

McCaw presents the discussion differently in support of his Motion. According to McCaw, it was Patulski who prompted Post to share Williams' report with him during a "regularly scheduled Monday afternoon meeting." (Dkt. 200-1, McCaw Aff. ¶ 8). Contrary to Post's description of "bruising," McCaw attests that Post said Lozano had been "*grabbed and pushed*" by her boyfriend Devin Chafin. (Ex.34, McCaw Depo 159/20-160/10). McCaw flatly denied that Post indicated that Lozano had bruises. (Ex.34, McCaw Depo 160/11-13). In his affidavit, McCaw claims "Mr. Patulski contacted the football office to alert them of the matter," but Patulski and Post "indicated they had

not heard anything following the referral of the matter to the police." (McCaw Aff. ¶8).  In his deposition, McCaw testified that he and Patulski had several conversations in which Patulski reported that he had spoken with both Shillinglaw and Yeary about Chafin and Lozano. (Ex. 34, McCaw Depo at 161/1- 25). Yeary denied ever speaking with Patulski about Lozano or Chafin and Shillinglaw claimed he was "not sure" whether he spoke with him.. (Ex. 36, Shillinglaw Depo at  117/17-20);(Ex. 37, Yeary Depo at 53/5-8).

Yeary tells yet another story. Yeary recalled that Williams called him and asked if he would meet with Lozano to offer her "encouragement and maybe spiritual counsel." (Ex.37, Yeary Depo at 42/9-24.) According to Yeary, he met with Lozano twice and after the second meeting he reached out to Chafin at her request. (Ex.37, Yeary Depo at 47/13-22; 49/5-14). Yeary testified that following his meeting with Chafin, he followed up with Jeff Lebby. (Ex.37, Yeary Depo at 51/3-52/3). Yeary was certain that Lebby was aware of Chafin's violent incidents with Lozano. (Ex. 37, Yeary Depo at 51/16-18; 83/4-18; 85/3-10). As for Lebby, he denies or claims to not recall any conservations with anyone – including Chafin – about the assaults or Chafin's drug use. (Ex. 40, Lebby Depo at 52/4-53/1).

### C.  Chafin's Misconduct Did Not Break The Chain Of Causation And Does Not Relieve McCaw Of Liability.

McCaw contends that "[a]s a matter of law Plaintiff cannot raise a genuine issue of material fact that any alleged negligence of McCaw was the proximate cause of her alleged injuries." (Dkt. 200, McCaw Motion at 18). McCaw maintains that "Devin Chafin's criminal conduct is a superseding cause that breaks the chain of causation and relives McCaw of any liability to Plaintiff, as a matter of law." (Dkt. 200, McCaw Motion at 19). McCaw insists that there is no evidence that Chafin's actions were foreseeable and, therefore, he argues, "Plaintiff has no evidence to raise any genuine issue of material fact as to the preclusive effect of Chafin's intervening criminal acts." *Id.* McCaw offers an oversimplified analysis of the law and misapplies proximate cause principles.

14

A new and independent, or superseding cause is one that "intervene(s)" between the original wrong and the final injury such that the injury is attributed to the new cause rather the first and more remote cause." *Stanfield v. Neubaum*, 494 S.W.3d 90, 97 (Tex. 2016)(quoting *Dew v. Crown Derrick Erectors, Inc.*, 208 S.W.3d 448.450 (Tex. 2006)(plurality op.). In contrast, a concurring cause "concurs with the continuing and co-operating original negligence in working the injury," leaving the causal connection between the defendant's negligence and the plaintiff's harm intact. *Id.* at 98. "In evaluating the existence of a superseding cause, the question always is, was there an unbroken connection? Would the facts constitute a continuous succession of events so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury?" *Id.* (internal quotations omitted). An intervening cause supersedes the original negligence when it "alters the natural sequence of events," and operates entirely independently of the defendant's negligent act or omission. *Id.* at 99. However, if the intervening cause and its probable consequences are a reasonably foreseeable result of the defendant's negligence, the intervening cause is a concurrent cause as opposed to a superseding or new and independent cause. *Id.*

"'Foreseeability' means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others." *Travis v. City of Mesquite*, 830 S.W.2d 94, 97 (Tex. 1992). *See also, Doe v. Boys Clubs of Greater Dallas, Inc.* 907 S.W.2d 472, 478 (Tex. 1995). Foreseeability does not require that a person anticipate the precise manner in which the injury will occur once he has created a dangerous situation through his negligence. *Travis,* 830 S.W.2d at 97. Therefore, although the criminal conduct of a third party *may* be a superseding cause which relieves the negligent actor from liability, the actor's negligence is not superseded and will not be excused when the criminal conduct is a foreseeable result of such negligence. *Id.* (citations omitted). "Foreseeability is *a **highly fact-specific inquiry*** that must be determined '***in light of the attending circumstances***,' not in the abstract." *Stanfield*, 494 S.W.3d at 98 (quoting *Milwaukee v. St. Paul Ry. Co. v. Kellogg*, 94 U.S.

468, 475 (1876)(emphasis added).

Here, McCaw again claims ignorance, arguing that the slight evidence he offers "establishes that [he] did not commit any acts of negligence which would have made it foreseeable to him that criminal assaults by student-athletes would result from his conduct." (Dkt. 200, McCaw MSJ at 19). Here, contrary to McCaw's claim, the evidence related to Lozano's report and Chafin's conduct, when viewed "in light of the attending circumstances," presents a genuine issue of material fact for the jury to decide whether Chafin's actions were foreseeable.

1. **The "attending circumstances" included a pattern of alleged sexual assault, interpersonal violence and dating violence committed by Baylor football players – a pattern that McCaw knew or should have known about but disregarded.**

From 2011 and 2014, the Waco Police Department recorded at least _**14**_ reports of violent conduct allegedly committed by Baylor football players – not including Devin Chafin. (Exs. 19-29, 31-33). The reports include seven allegations of sexual assault, three allegations of domestic violence, and four allegations of assault.

A September 2013 report of an assault perhaps best illustrates the athletic department's – and McCaw's –approach to reports of violence committed by football players. (Ex. 31) Notably, the report reflects an attempt by athletic department employee Odell James to interfere with the investigation and intimidate the complainant who alleged he had been assaulted by stand-out player Ahmad Dixon. (Ex. 31). Although McCaw attempted in his deposition to minimize his knowledge of the incident and James' conduct (Ex. 34, McCaw Depo at 90/20-91/5), text messages reveal that he was aware of the incident immediately after it occurred and that he was directly involved in arranging for legal representation for the player. (Ex. 10). James received a mild written reprimand from McCaw. (Ex.13). However, both James and McCaw testified that McCaw really had nothing to do with writing or delivering the reprimand. (Ex. 34, McCaw Depo at 99/4-100/10)(Ex. 39, James Depo at 50/7-14). James testified that another athletics administrator simply handed him the memo without explanation

or discussion. (Ex. 39, James Depo at 50/15-18; 50/24-21/24). In his deposition, McCaw dismissed the incident, excusing Dixon's conduct by explaining that he had been the victim of a burglary and confirming that Dixon was not suspended from any games. (Ex. 34, McCaw Depo at 91/11-94/6; 97/15-98/4). This 2013 incident followed _three_ previous reports to Waco police involving Dixon– one involving an assault (Ex. 20); one involving domestic violence (Ex.21) and one involving sexual assault (Ex. 23). There is no evidence that Dixon suffered any consequences for any of these alleged assaults.

These 14 reports do not include reports to Baylor Police Department. Although McCaw suggests that reports of violence committed by Baylor football players were somehow lost in the Baylor police department, communications from former Baylor Police Chief Jim Doak indicate otherwise. ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████ (Ex. 15A).

Finally, for the 2013-2014 school year alone, Baylor's Judicial Affairs office logged charges of misconduct against 41 athletes – 27 of which were football players. (Ex. 17A). And notably, two incidents in October 2013 were logged "for future reference" in which football players were alleged to have committed sexual assault. (Ex. 17B); (Ex. 15B) These attending circumstances cannot be ignored when considering the foreseeability of Chafin's assault of Lozano in the first instance or the repeated assaults that occurred after McCaw was notified of the March 2014 assault. A reasonable jury could conclude that, in the absence of accountability or consequence, it was foreseeable that football players – including Chafin – would commit acts of violence.

### 2. The "attending circumstances" included Chafin's repeated violations of the law, Baylor's student code of conduct, and team rules.

In March 2016, Chafin was arrested in Oklahoma after he was pulled over for speeding and police found marijuana and an open container of alcohol in his vehicle. Chafin was suspended from the team but Briles defended him in a local news story: "He'll be back. It's his first offense in over a

four-year period, and he had some bad judgment, just like a lot of us do…It's about representing yourself, your family, the Baylor community and making wise decisions. He's remorseful but there will also be some punishment phases that go along with that remorse." (Ex. 35, Briles Depo at 149/6-150/11, ex.11). Although Briles told the media that the 2016 arrest was Chafin's "first offense," it was not and the Baylor athletic department knew it was not.

Even before Lozano expressed her concerns about Chafin's drug and alcohol use, indeed even before Chafin enrolled in Baylor in 2012, Baylor football coaches were on notice of his potential problem with substance abuse. ██████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████ (Ex. 14). ██████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████ (Ex. 35, Briles Depo at 151/4-152/2). ████████████████████████████████

██████████████████████████████████████████████████████████

(Ex. 41, Chafin Depo 48/17-20).

█████████████████████████████████████████████████████

████████████████████████████████████████████████ (Ex. 41, Chafin Depo at 156/15-21). ████████████████████████████████████████████████████

█████████████ (Ex. 41/Chafin Depo at 158/13-25). ████████████████████

█████████ (Ex. 41, Chafin Depo at 158/18-21; 159/8-18). ████████████████████

████████████████████████████████████████ (Ex. 30)(Ex.41 Chafin Depo at 160/19-161/16. ████████████████████████████████████████████████████

████████████████ (Ex. 41, Chafin Depo at 49/12-17; 161/5-11). Yeary testified that he saw Chafin in the "discipline area" during workouts "multiple times." (Ex. 37,Yeary Depo at  55/7-19).

No meaningful disciplinary action was taken when Chafin violated the law or Baylor's student code of conduct. No matter the conduct, "plate pushes" were the only consequence. A reasonable jury could conclude that, as a result, it was foreseeable that Chafin's substance abuse would continue to escalate and that it was foreseeable that – given the hyper aggressive and "above the rules" environment in which he lived – Chafin's verbal abuse would turn physical and that he would assault Lozano.

### 3. McCaw Knew and Ignored the Risk that Failing to Enforce the Rules Against Football Players Posed to Women, Including Lozano.

McCaw focuses narrowly on whether and to whom he passed along information he received regarding allegations of sexual assault or dating violence. McCaw consistently attempts to shield himself from responsibility for mishandling reports of sexual assault and dating violence by claiming he did not understand Title IX. McCaw's defense rests on his assertion that until Baylor's "inaugural Title IX training" on September 16, 2014, he had a limited understanding of Title IX and the Clery Act and was unaware that he was required to report sexual assault, interpersonal violence or dating violence to anyone. (Ex.34, McCaw Depo at 46/4-47/20; 57/14-20). McCaw insists that Baylor failed to provide him or the athletic department staff training or instruction on handling reports of violence prior to the "wake-up call" that occurred after the Margolis Healy review and report. (Ex. 34, McCaw Depo at 212/5-23). McCaw's feigned ignorance again misses the mark.

McCaw acknowledged in his deposition that he was aware that a sexual assault task force had been formed in 2013 and that Nancy Post, Senior Women's Athletic Director, served as the Athletic Department's representative. (Ex. 34, McCaw Depo at 214/10-20; 215/18-216/14). But perhaps most telling is a **July 9, 2014** email in which McCaw details his conversation with the criminal defense attorney he arranged to represent a Baylor football player indicted on a charge of sexual assault. (Ex. 11A). After discussing the proposed strategy and reiterating his and Briles desire to "keep this matter out of the media," McCaw concluded: **"This may be more information than you want, but *I know***

19

*Title IX matters are especially sensitive."*   Trained or not, McCaw knew the significance of having an athlete indicted on a charge of sexual violence  – at least from public relations perspective.  And, trained or not, based on the clear pattern of violence committed by football players, McCaw should have known that he had a duty to take action to stop the violence and prevent its recurrence – not simply arrange for lawyers and keep things quiet.

## CONCLUSION AND PRAYER

For these reasons, Plaintiff Dolores Lozano respectfully requests the Court deny defendant McCaw's Motion for Summary Judgment and allow her claims of negligence against him to proceed to trial.


Dated:  January 3, 2022                          Respectfully submitted,

                                                 */s/ Sheila P. Haddock*
                                                 Sheila P. Haddock
                                                 State Bar of Texas No. 00790810
                                                 sheila@zalkin.com
                                                 Alexander S. Zalkin (*pro hac vice*)
                                                 alex@zalkin.com
                                                 Irwin M. Zalkin (*pro hac vice*)
                                                 irwin@zalkin.com

                                                 THE ZALKIN LAW FIRM, P.C.
                                                 12555 High Bluff Drive, Ste. 301
                                                 San Diego CA  92130
                                                 Telephone: (858) 259-3011
                                                 Facsimile: (858) 259-3015

                                                 *Attorneys for Plaintiff Dolores Lozano*

## CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2022, I electronically filed the foregoing paper with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record in this matter.

THE ZALKIN LAW FIRM, P.C.


*/s/ Sheila P. Haddock*
Sheila P. Haddock (#00790810)
sheila@zalkin.com
THE ZALKIN LAW FIRM, P.C.
12555 High Bluff Drive, Ste. 301
San Diego CA  92130
Telephone: (858) 259-3011
Facsimile: (858) 259-3015