IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

**FILED**

February 16, 2022

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ **BW**

DEPUTY

| | | |
|---|---|---|
| DOLORES LOZANO, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 6:16-CV-00403-RP |
| | § | |
| BAYLOR UNIVERSITY; ART BRILES; | § | |
| and IAN MCCAW, | § | |
| Defendants. | § | |

## DEFENDANT BAYLOR UNIVERSITY'S REPLY
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Lisa A. Brown
Elizabeth Humphrey
Thompson & Horton LLP
3200 Southwest Freeway, Suite 2000
Houston, Texas 77584
(713) 554-6741 (telephone)
lbrown@thompsonhorton.com
ehumphrey@thompsonhorton.com

Holly G. McIntush
Thompson & Horton LLP
8300 N. MoPac Expwy, Suite 220
Austin, Texas 78759
(512) 615-2351 (telephone)
(512) 682-8860 (fax)
hmcintush@thompsonhorton.com

Leila H. Gary
State Bar of Texas No. 24058790
500 N. Akard Street, Suite 3150
Dallas, Texas 75201
(972) 441-4527
lgary@thompsonhorton.com

**ATTORNEYS FOR DEFENDANT**
**BAYLOR UNIVERSITY**

I.    **Lozano's argument regarding the statute of limitations improperly applies <u>Texas</u> civil procedure.  Under the applicable <u>federal</u> standard, all of her claims fail.**

Lozano argues that Baylor has failed to satisfy its summary judgment burden under *Texas* procedure. Dkt. 218 at 8-9. But *federal* procedure dictates the parties' burdens in this proceeding. Under Rule 56, summary judgment is mandated when the nonmovant fails to produce evidence concerning an essential element *on which she has the burden of proof at trial. Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  As the party contesting a limitations defense, Lozano bears the burden at trial "to establish each element of asserted defenses to the statute of limitations as a matter of federal procedural law." *Silo Restaurant Inc. v. Allied Property & Casualty Ins. Co.*, 420 F.Supp.3d 562, 575 (W.D. Tex. 2019) (citing *FDIC v. Shrader & York*, 991 F.2d 216, 220 (5th Cir. 1993)); *see also N.P.U., Inc. v. Wilson Audio Specialties, Inc.*, 343 F.Supp.3d 661, 664 (W.D. Tex. 2018) (under *Erie* doctrine, federal courts must apply state substantive law and federal procedural law to state law claims). Therefore, to avoid summary judgment, Lozano bears the burden of establishing her affirmative defenses through competent evidence.

Here, summary judgment is warranted regardless of whether state or federal procedure applies. As to Rule 56 in particular, summary judgment is mandated because the evidence shows (i) Lozano's claims accrued prior to **October 11, 2014** (*i.e.*, more than two years prior to the date that she filed suit) and (ii) there is an absence of evidence in support of her affirmative defenses to defeat limitations.

*Lozano's claims are untimely, and no tolling doctrine applies.*    In a Title IX case, the "injury" is the deprivation of educational opportunities caused by deliberate indifference to harassment. *See Kollaritsch v. Mich. St. Univ.*, 944 F.3d 613, 622 (6th Cir. 2019) (citing *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999)).  Lozano's alleged injury occurred in spring 2014: she testified that her grades suffered because she was assaulted by an athlete on a popular team (Dkt. 218-1, ¶6, 39); her complaints allegedly were ignored, exposing her to further assaults (¶17); and the athlete evaded discipline after allegedly speaking with the president and head coach (¶39; Dkt. 204, Ex. 26).

Although these events alone would have caused a reasonable person to inquire further, Lozano knew *much more*. Her testimony and her emails show that she knew in 2012 of "countless accusations" in which she claims Baylor favored athletes and "neglected" its duties in protecting "academic students." Dkt. 204-1, depo. ex. 6. She claims that a close friend in 2011 went to Judicial Affairs with a "serious" injury after a fight with football players and allegedly "nothing was really done." *Id.* She knew in 2012 of instances of athletes raping females purportedly "without consequence." *Id.*, depo. ex. 6 & 16. In 2012, Lozano was so confident of the connection between athlete discipline and student harm that she warned Baylor that her mother was prepared to take "action." *Id.*, depo. ex. 6. Lozano also heard in 2012 or 2013 about an alleged police cover-up to protect athletes. *Id.* at 189-190, 417:22-25. A January 2015 text message confirms Lozano's prior knowledge. Dkt. 204-28. Lozano misses the point of the message, which she only partially quotes. Dkt. 218 at 14. Lozano's text message discusses the 2014 incident with Chafin and then, based on that incident, states that she believes that Baylor "had something to do with" her complaint against Chafin's girlfriend ("I know he [Chafin] met with Kenn [sic] Starr and almost got kicked out."). Dkt. 204-28 (emphasis added).

Lozano downplays her admissions as "anecdotal" (Dkt. 218 at 11-12), but they are far more specific and abundant than those that resulted in a limitations bar in *Piotrowski v City of Houston*, 237 F.3d 567 (5th Cir. 2001), in which a domestic violence victim claimed that the city had a discriminatory policy of favoring wealthy men over female victims. In finding the equal protection claim to be time-barred, the Fifth Circuit noted, for example, that the plaintiff had stated years earlier that "she didn't feel" that she and the ex-boyfriend were "being treated equally" by the city. *Id.* at 577. "**Actual knowledge is not required** 'if the circumstances would lead a reasonable person to investigate further.'" *Id.* at 576. Following *Piotrowski*, the Fifth Circuit rejected delayed accrual in a case in which the plaintiff alleged that she did not know that the defendant had maintained "policies and customs" that caused her injury. *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 762-63 (5th Cir. 2015).

2

Lozano's analysis of how limitations applies to a "policy" claim is undermined by *Beckwith v. City of Houston*, 790 F. App'x 568, 571 (5th Cir. 2019), *cert. denied*, 140 S.Ct. 127 (2020), in which rape victims claimed that a city, "with deliberate indifference," maintained an unconstitutional "policy, practice and/or custom" of not testing rape kits, enabling rapists to rape other women, including the plaintiffs. The plaintiffs allegedly were raped in 2011 but did not sue until 2017. *Id.* at 570. They argued that their claims did not accrue until 2016 when they were notified that their rape kits had not been tested. The Fifth Circuit found that, even if the relevant injury was the delayed testing rather than the rapes by third parties, plaintiffs knew by the end of 2011 that they had provided rape kits and had not received test results and, further, that a reasonable person would have followed up with police. *Id.* at 573, 575.

Lozano's personal experiences and knowledge of "countless" other incidents also readily distinguishes her case from *Hernandez v. Baylor University*, 274 F.Supp.3d 602, 615 (W.D. Tex. 2017), a motion-to-dismiss case in which a freshman alleged that she was raped by an athlete, was unaware that the athlete was involved in prior incidents, "had no reason to suspect" that Baylor's alleged indifference "played a role in her assault," and had "*no other reason*" to suspect that Baylor knew of the athlete's prior assaults. *Id.* at 617 (emphasis added). There are no allegations in *Hernandez* that the plaintiff was assaulted after being rebuffed by Baylor or that she was aware of preferential treatment of athletes. Lozano's attempt to distinguish *Wilson v. Texas Christian University*, 2021 WL 4197263, *6 (N.D. Tex., Sept. 15, 2021), likewise is unavailing. *Wilson's* analysis of accrual of an "official policy" claim is directly on point and follows *Piotrowski* and *King-White*.

## II.   Lozano relies on hearsay and other inadmissible evidence.

Lozano relies heavily on hearsay, speculation, and other inadmissible evidence. In particular, her declaration repeats alleged statements from Devin Chafin about his alleged conversations with Lebby, Briles, and Starr. Dkt. 218-1, ¶¶ 12, 19, 23, 26, 29. Baylor has filed specific Objections to

Lozano's inadmissible evidence.

No evidence supports Lozano's undated hearsay that Ken Starr was "made aware" of "the assault." Dkt. 218 at 2. Lozano admits she does not even know when Chafin allegedly spoke to Starr, while Chafin denies they even spoke. Dkt. 204-1 at 142; Dkt. 204-14 at 78:12-24. Lozano's vague hearsay does not rebut sworn testimony of Chafin, Lebby, and Briles to the contrary. Dkt. 204 at 5 n.3.; *see, e.g., Ruvalcaba v. Angleton Indep. Sch. Dist.,* 2022 WL 3490592, *5 (5th Cir., Feb. 4, 2022) (plaintiff's unsubstantiated assertion could not rebut principal's sworn affidavit to the contrary).

Lozano claims that she told Dr. Martha Lou Scott on April 10, 2014, that "the assaults had been reported to Devin's coach, Coach Williams, and Wes Yeary," but her declaration does not state who made the reports, when they were made, or what was reported. Dkt. 218, Ex. 1, ¶¶ 34, 37, 25. Her declaration also vaguely avers that she told Williams "what had happened" without saying when or what was reported. Dkt. 218 at 2; Dkt. 218-1, ¶¶ 24, 38. *Cf. Harrison v. Klein Indep. Sch. Dist.*, 2021 WL 1305871, at *5 (5th Cir., April 7, 2021) (plaintiff's allegations lacked "dates or other concrete information" regarding conversations with school staff); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042 n. 6 (5th Cir. 1996) (plaintiff failed to identify "what was said, to whom it was said, or even who made" hostile comments). Williams likewise does not state when Lozano reported the three incidents that allegedly occurred between March and April. Dkt. 218, Ex. 14.

Lozano incorrectly suggests that her vague evidence should be construed in her favor. But a court resolves factual controversies in favor of the nonmoving party only "when both parties have submitted *evidence* of contradictory facts. *We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.*" *Wallace,* 80 F.3d at 1048 (emphasis in original). Lozano also claims that "credibility issues" bar summary judgment. Dkt. 218 at 2. But a court may not make credibility determinations under Rule 56. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000). Evaluating the *competence* of her evidence does not involve making credibility determinations.

**Lozano's sham declaration.** A plaintiff may not manufacture a question of fact by submitting a "sham" declaration that contradicts, without explanation, her deposition testimony. *Drake v. Spring Indep. Sch. Dist.*, 2021 WL 3176081, *5 (5th Cir., July 27, 2021). For example:

- Lozano alleges that she "repeatedly reached out" on unknown dates to Jeff Lebby about Chafin's "escalating drug use." Dkt. 218-1 ¶17. But Lozano <u>testified</u> that she spoke with Lebby just ***once*** and that she recalled only discussing Chafin's ***academics***. Dkt. 204-1 at 66:11-18, 139, 365, 64:7-25, 65:2-16, 382.

- Her declaration indicates the abuse started before March 6. Dkt. 218-1, ¶18. But she testified that Chafin never threatened or hit her prior to March 6. Dkt. 204-1 at 197.

- Lozano alleges "no one" from Baylor checked on her after her police report. Dkt. 218-1 ¶36. But her deposition and emails attached to her response show that Baylor social worker Sarah Ritter met with or emailed her on April 17 and 23 and gave her a card with the Judicial Affairs phone number. Dkt. 204-1 at 150, 151, 153:9-13; Dkt. 218-20, Ex. 34D, p. 75921, and Ex. 34C, p. 1782. (Lozano also met with a Baylor counselor on April 23. Dkt. 204-1, depo. ex. 16, p. 9038.)

- Lozano avers that she "repeatedly reached out" to chaplain Wes Yeary about Chafin's alleged drug use. Dkt. 218-1, ¶17. But Lozano testified that she spoke to Yeary only after the incidents. Dkt 204-1 at 338:10-13; Dkt. 218-1 ¶25. Any suggestion that Lozano spoke to Yeary about drugs *prior* to the incidents must be rejected.

### III.    The Margolis Healy report does not create a question of material fact as to any claim.

Lozano quotes extensively from a 2014 compliance review by consultant Margolis Healy that looked at Title IX and recent changes to the Violence Against Women Act (VAWA), which amended the Clery Act. Dkt. 218 at 3-5; Dkt. 204, Ex. 8 ¶14 (Ex. I – MH report). **But "evidence regarding compliance or noncompliance" with VAWA/Clery "shall not be admissible as evidence in *any* proceeding of *any* court**," except a federal agency enforcement action. 20 U.S.C. § 1092(f)(14)(B) (emphasis added). The Clery portions of the report are inadmissible. Dkt. 218-4, pp. 5, 6, 46-101. In addition to relying on inadmissible evidence, Lozano's argument is misleading and ultimately immaterial. *First*, although MH identified deficiencies and areas of concern, substantial portions of the report analyzed whether Baylor was compliant with a *brand new,* 46-page federal guidance that was issued on April 29, 2014, *after* the second assault. Dkt. 204, Ex. 8 ¶14. MH also

looked at VAWA Amendments that went into effect March 7, <u>2014</u>.  MH repeatedly refers to the April 2014 guidance, VAWA, and "evolving best practices."  *Id.* (Ex. I, at 5, 9, 12, 22, 27, 33, 34-36, 39, 43).  Lozano quotes findings without noting that they related to new guidance, such as findings regarding training and the designation of "responsible employees."  *See* Dkt. 218 at 3 and Dkt. 204, Ex. 8, ¶14 (Ex. I at 12, 34-39, and item 36).  ***Second***, Lozano ignores the fact that (i) "dating violence" was not part of Clery until the VAWA amendments and (ii) Clery expressly states that it does not create a "standard of care" and cannot give rise to civil liability. 20 U.S.C. § 1092(f)(6); P.L. 113-4, 127 Stat. 54.  She also disregards the fact that **VAWA did not amend Title IX (a separate statute altogether)** and that, as of April 2014, the DOE had not given notice to universities that *Title IX* encompassed dating violence.  *See* Dkt. 204 at 16.  ***Third***, because MH's report was issued after Lozano graduated, Baylor did not have the benefit of its findings before Lozano was assaulted. *Cf. Doe v. Union Coll.*, 2020 WL 1063063 (N.D.N.Y., March 3, 2020) (pre-assault plaintiff must show that school was "on actual notice" that its policies and responses to sexual assault were deficient and that school's "subsequent failure to remedy these policies" caused her assault).

## IV.    Plaintiff fails to raise a material fact question on her pre-assault claim.

*Lozano cites <u>no</u> evidence.*  Although Lozano argues that "fact issues" preclude dismissal of her pre-assault claim, she does not cite a single exhibit in her briefing on this claim. Dkt. 218 at 14-18.  Lozano suggests that the assertions in her pleading are sufficient. *See, e.g., id.* at 15, 16.  But pleadings are not evidence.  *Gallagher v. Vokey*, 860 F. App'x 354, 358 (5th Cir., July 1, 2021) (citing *Wallace*, 80 F.3d at 1047).  She also tepidly argues on page 18 of her response that there might be some other plausible theory of liability but she identifies *no evidence* in support of any other plausible theory. Lozano has failed to identify specific evidence in the record and to articulate the precise manner in which that evidence supports her claim.  *See Celotex*, 427 U.S. at 324.

As this Court previously recognized, the ultimate question in a Title IX case is whether the defendant intentionally discriminated on the basis of sex.  Dkt. 105 at 10-11, 13. "[S]chools are liable only for *intentional* sex discrimination." *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 358 (5th Cir. 2020) (emphasis in original).  Proving intentional discrimination that caused injury is Lozano's burden. Baylor is not required to negate this or *any* element of her claims; the movant "merely [is] required to demonstrate an absence of evidence." *Wallace,* 80 F.3d at 1049 n.8.

There is no evidence giving rise to a reasonable inference that Baylor intended to discriminate against women through its disciplinary policies and practices. *Cf. Doe v. Univ. of Tenn.*, 2021 WL 4724187, *2 (E.D. Tenn. Sept. 9, 2021) (rejecting claim that the school had created a "[p]aternalistic system to protect men"); *Doe v. Mont. St. Univ.*, 2020 WL 3452103, *4 (D. Mont., June 24, 2020) (rejecting claim that underfunding and undertraining Title IX staff and placing an "an unreasonably high burden of proof on victims" constituted discrimination against women).

And none of Lozano's evidence rebuts the declarations of four Baylor Student Life officials that demonstrate that Baylor actively sought to prevent interpersonal violence during the relevant period and did not maintain a *policy* of deliberate indifference. Baylor's uncontested declarations show that Baylor maintained a victim's rights website; sent an email to every student in September 2013 on how to report complaints; created a "Report It!' website and distributed a brochure on reporting to every Baylor employee; trained staff on sexual violence prevention at the apartments where Chafin and Lozano lived; gave Title IX training to Judicial Affairs staff; periodically offered prevention training programs for students between 2011-2013, including "Breaking the Silence" and the "Do Something!" campaign (Dkt. 204-5, Ex. C-F); created a campus-wide task force in June 2013 to update all Title IX policies; and hired Margolis Healy.  Dkt. 204-2; 204-5; 204-6; 204-10, ¶13-14. Regardless of alleged past incidents, the evidence does not raise a material fact question as to the existence of a *policy* of deliberate indifference in the **spring of 2014** that caused Chafin to assault Lozano.

7

*No evidence of a policy of deliberate indifference to sexual misconduct.* Lozano's insistence that she can prove a "policy" claim based on any bad acts involving the football program flies in the face of the statutory language. Title IX proscribes only sex discrimination, and bullying and offensive acts are not "the kind of harassment 'on the basis of sex' with which Title IX is concerned." *Ruvalcaba v. Angleton Indep. Sch. Dist.,* 2022 WL 340592, *5 (5th Cir., Feb. 4, 2022); *see also Doe v. Univ. of Ky.*, 959 F.3d 246 (6th Cir. 2020) (Title IX plaintiff "must plead 'actionable sexual harassment'"). *Karasek* makes plain that the plaintiff must prove deliberate indifference to "reports of *sexual* misconduct." *Karsek v. Regents of Univ. of Calif.*, 956 F.3d 1093, 1112 (9th Cir. 2020) (emphasis added.) In response, Lozano attempts to write "sex" out of Title IX. Moreover, she ignores the very concept of "policy" and the necessity of "disaggregating" different types of policies so that the relationship between the policy and the injury can be evaluated. *Cf. Piotrowski*, 237 F.3d at 579-81 (explaining in a § 1983 domestic violence case that "each policy" must be "specifically identified").

Although some dating violence cases involve sexual misconduct, this is not one of them.[1] There is no hint of animus "inextricably" linked to Lozano's sex as in *Prasad.* Lozano testified that, on March 6, 2014, she and Chafin argued after Lozano became "upset" that he might use drugs with visitors in the apartment. Dkt. 204-1 at 86:5-8. This prompted Lozano to tell Chafin that she was "glad" about the abortion because he would be a bad father, and their fight followed. *Id.* at 86:17-19.[2] Lozano does not rebut Chafin's sworn testimony that she was confrontational and slapped him, and she does not allege that Chafin ever said anything disparaging about the pregnancy. Dkt. 204-14 at 62:15-66:19. As to the incident at Scruffy's and the vague and undated third incident, Lozano provides

---

[1]  The cases cited by Lozano involved pervasive sexual animus. *See, e.g., DeGroote v. Ariz.,* 2020 WL 1035774, *6, *10 (D. Ariz., Feb. 7, 2020) (offender's messages called plaintiff a "dumb ass hoe" and demanded sex); *Prasad v. George Washington Univ.*, 390 F.Supp.3d 1, 25 (D.C.D.C. 2019) (offender called plaintiff a "dirty whore" and threatened to "f--- [her] mercilessly").

[2]  Baylor does not blame Lozano for the alleged assault. Baylor's point is that the incident was not motivated by sex-based animus.

no evidence of sex-based animus.  Dkt. 204-1 at 118, 121-122, depo. ex. 13; Dkt. 218-1, Ex. A-3 (CITY 000632).  Finally, even if a policy of deliberate indifference to dating violence were actionable, Lozano has not shown a pattern of incidents that was "known or obvious" to officials with authority to remediate the policy. The record contains three prior dating violence reports, all of which occurred in prior school years.  Dkt. 218, Ex. 21, 25, 28; Dkt. 201-21, Ex. 19.

*No causation.*  This Court has recognized that a Title IX plaintiff must do more than show the occurrence of sexual assaults among Baylor students; she must show that her own injuries were "in fact caused by any official policy or custom of the university."  Dkt. 105 at 11; *Karasek*, 956 F.3d at 1114 (proving causation is "difficult"). Proof of deliberate indifference is not enough; while such proof may show the defendant's "culpability," the plaintiff must still show a causal link between the policy and her specific injury.  *See Piotrowski*, 237 F.3d at 579-80.  As discussed in further detail in Section VII below, beyond her own conjecture, Lozano presents no evidence that the handling of any past cases (whether sexual assault or dating violence) *caused* Chafin to assault Lozano.

*No substantial control.*  Because the Court previously dismissed Lozano's post-reporting assault claims, any dispute regarding the response to the first assault or the cause of the second and third assaults is immaterial. Dkt. 20 at 6 (dismissing claims based on post-reporting injuries).  However, summary judgment also would be warranted as to the Scruffy's incident because there is *no* evidence that it occurred in an "education program or activity" of Baylor.  Dkt. 204 at 22 (citing *Davis*, 526 U.S. at 643-645); *Karasek*, 956 F.3d at 1112 (the harassment must occur "in a context subject to the school's control").  Lozano did not respond to Baylor's argument on this point; further, she admitted at her deposition that Baylor has no affiliation with Scruffy's. Dkt. 204-1 at 124:16-19. On similar facts, the Ninth Circuit held that a university could not be held liable for an athlete's off-campus rape, despite prior incidents.  *See Brown v. Arizona*, 2022 WL 212030, *8-9 (9th Cir., Jan. 25, 2022). General disciplinary authority did not establish control over the context of plaintiff's assault. *Id.* at 6-7.

9

*Legal conclusions in the Findings of Facts are not evidence.*  Lozano's response quotes from the Regents' Findings of Fact that were released on May 26, 2016, including the assertion that there was a "fundamental failure" to implement Title IX and VAWA.  Dkt. 218 at 5.  Evidence regarding compliance or noncompliance with VAWA is inadmissible.  20 U.S.C. § 1092(f)(14)(B).  Further, legal conclusions are not admissible under Rule 801(d)(2)(D) and do not create a question of fact.[3]  Finally, findings related to Baylor's administrative compliance are irrelevant.  *See, e.g., Kirk v. School Bd. of City of Monroe*, 2021 WL 4928292 (W.D. La., Oct. 21, 2021) (adverse DOE findings did not create fact issue; liability must be determined using "jurisprudential standards").

## V.  Lozano misapprehends Baylor's negligence arguments. The question is whether she has presented *evidence* in support of each element on which she bears the burden of proof.  She has not.

As this Court has acknowledged, Texas courts are reluctant to impose a duty to protect a third party from the criminal conduct of another third party absent extraordinary circumstances, such as where a party "has superior knowledge of the risk or the right to control the actor whose conduct caused the harm" or took affirmative steps that made the risk greater.  *See* Order, Dkt. 105 at 34 (quotations omitted). Lozano's claims fail because, among other reasons, it is undisputed that Lozano's knowledge of Chafin's behavior was superior to Baylor's, Baylor's ability to discipline was only after-the-fact, and there is no evidence giving rise to any reasonable inference that Baylor took affirmative steps to make the risk greater than it would have been had Baylor done nothing all all.[4]  *See* id. at 34-

---

[3] *See generally Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 299 n. 5 (5th Cir. 2019) (legal conclusions may not be used as evidentiary admissions); *Eagleston v. Guido*, 41 F.3d 865, 873–74 (2d Cir. 1994) (police commissioner's views on whether a policy violated the law "would be inadmissible because they are legal conclusions concerning an ultimate issue in the case"); *Nowell v. City of Cincinnati*, 2006 WL 2619846, at *6-7 (S.D. Ohio Sept. 12, 2006) (ruling that "ultimate legal conclusion" by county's legal counsel would be redacted from report on legality of an arrest).

[4] Lozano focuses almost exclusively on whether Baylor should have controlled Chafin.  But whether a duty exists is not a case-specific inquiry but, rather, turns on whether a duty should be imposed "on a *particular class* of actors." *Douglas v. Hardy*, 600 S.W.3d 358, 368 (Tex. App.—Tyler 2019, no pet.) (emphasis added). The question here is whether universities generally have a legal duty to control their

35 (quoting *Golden Spread Council, Inc. No. 562 of Boy Scouts of Am. v. Akins*, 926 S.W.2d 287, 291 (Tex. 1996) and other cases).

*Lozano has not raised a fact issue as to knowledge or affirmative increase in risk.* Baylor is not required to prove that it did *not* know about the March incident before the Scruffy's incident or that it did *not* affirmatively increase the risk to Lozano.  Baylor's burden is merely to show the "absence of evidence."   *Wallace*, 80 F.3d at 1049 n. 8. Lozano's vague and undated averments, speculation, and inadmissible hearsay do not raise a question of fact.  *See* text, *supra*, at 4-5.  Moreover, even if Lozano had reported the first assault to Baylor, this would not show that Baylor's knowledge was *superior* to Lozano's. Lozano did not respond to this argument or identify evidence to the contrary.

*Drug and alcohol use do not make a violent crime foreseeable.* Texas law is clear: non-violent crimes do not render a violent crime foreseeable. *See, e.g., Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 796–97 (Tex. 2006); *Loram Maint. of Way, Inc. v. Ianni*, 210 S.W.3d 593, 594 (Tex. 2006); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) (employee's prior DWI convictions did not make sexual assault foreseeable). Even in a premises liability case, similarity of the prior incidents is essential to establish foreseeability. *See Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 757 (Tex. 1998). Moreover, Lozano has no evidence that *any* Baylor official had knowledge of drug/alcohol use that was *superior* to her own.  Lozano testified that, long before the first alleged assault, she saw Chafin use drugs, and she admits that she helped *conceal* an alleged drug episode from the coaches. Dkt. 218-1, Lozano Decl. ¶¶16, 11, 13; Dkt. 204-1, depo. 59:10-24.

*Allegations of different types of crimes over four years do not make violent crimes foreseeable as to Chafin specifically or football players generally.* Lozano identifies 14 Waco PD reports involving seven other football players in disparate incidents in disparate locations in McLennan

_____

students' dating relationships. *See generally Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 504 (Tex. 2017) (duty analysis "determine[s] how the class of cases in which the duty applies is to be defined").

County between 2009 and 2014.[5]  In the absence of evidence that Chafin *in particular* had violent tendencies before the first assault, this evidence is immaterial.  Lozano cites no cases supporting liability against a university for the criminal acts of a third party based on the criminal acts of *other* third parties.  Beyond the premises liability context, in which courts look at the landowner's knowledge of criminal activity in a specific location, Plaintiff has not identified any other context in which courts would look at offenders who did not harm the plaintiff. *Cf. Capece v. Navisite, Inc.*, 2002 WL 31769032, at *6 (Tex. App.—Austin, Dec. 12, 2002, no pet.) (in employment context, "Texas courts have declined to expand the duty to include situations in which the employer either had no knowledge of the *employee's condition or tendencies* or did not affirmatively exercise control over the employee") (emphasis added).  And even in premises liability cases, courts cabin in liability by considering the *recency and frequency* of *similar* crimes on or in the close vicinity of a landowner's property.  *See Timberwalk*, 972 S.W.2d at 759 (considering proximity, publicity, recency, frequency, and similarity of crimes); *Park v. Exxon Mobil Corp.*, 429 S.W.3d 142, 147 (Tex. App.—Dallas 2014, pet. denied) (citation omitted) (evaluating whether there are "numerous prior crimes … concentrated within a short time span").

Thus, for example, the Texas Supreme Court has recognized that domestic violence and stranger sexual assault are intrinsically different. *See Timberwalk*, 972 S.W.2d at 758 ("a spate of domestic violence in the complex does not portend third party sexual assaults or robberies").  The reports cited by Lozano show three domestic violence incidents in the preceding three years. Dkt. 218-19 at Ex. 21, 25, & 28.  Her evidence does not show that the first two incidents were reported to Baylor.  *Cf. Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 411(5th Cir. 2015) (no fact issue where "the record is unclear whether any disciplinary action was taken" and where "plaintiffs failed to adduce evidence as to the extent of the district's responses").  Moreover, even if Plaintiff's theory were viable

---

[5] One of the incidents occurred *after* Lozano graduated and therefore is clearly immaterial.  Dkt. 218-19, Ex. 33.  One involved an alleged sexual assault in 2009 that was not reported until three years later. *Id.* at Ex. 27.  Two involved male-on-male fights in 2011 and 2013.  *Id.* at Exs. 20, 31.

and even if one considered all of the Waco reports, the number of incidents would be insufficient as a matter of law. *Cf. Trammell Crow Cent. Tex., Ltd. v. Gutierrez*, 267 S.W.3d 9, 17 (Tex. 2008) (10 violent crimes in two years preceding shooting death at mall insufficient to put owner on notice that murder would occur as part of robbery on premises). Nor does the Judicial Affairs data that Plaintiff cites create a factual dispute; only four of the reported incidents involved assaults. Dkt. 218-25.

> *Even if Chafin's alleged assaults were foreseeable, there is no evidence that Baylor took affirmative steps that made it more likely that Chafin would assault Lozano.* Lozano asserts that Baylor did not properly discipline other football players and that "the absence of accountability or consequence," made violence by football players foreseeable. Dkt. 218 at 26. But Baylor's alleged *failure to act* is not an *affirmative act* by Baylor toward Lozano. *See generally Otis*, 668 S.W.2d at 309 (Tex. 1983) (tort law distinguishes "between action and inaction in defining the scope of duty"). And even if the student conduct code prohibited the behavior at issue, adoption of an internal policy is not, without more, an affirmative act and does not create a duty to ensure individuals comply with that policy to protect third parties. *See Est. of Catlin v. Gen. Motors Corp.*, 936 S.W.2d 447, 451 (Tex. App.—Houston [14th Dist.] 1996, no pet.).

There is no evidence showing affirmative steps to control, such as an employer who exercised control over an employee who was too intoxicated to safely do his job by removing him from his post, accompanying him to his car, "and sending him out on the highway, even though he had foreseen the possibility of an accident." *Otis*, 668 S.W.2d at 309.

Lozano points to allegations involving *other players,* including a hearsay report that an athletics staff member "intimidate[d]" a man who allegedly was assaulted by a football player over allegedly stolen property. Dkt. 218 at 25. (Undisputed evidence shows that the staff member received a written reprimand. Dkt. 212-13.) Lozano also points to text messages that allegedly show that some coaches sought to keep allegations out of the media. Dkt. 218 at 26. Lozano does not point to any evidence

that any of these types of actions were (a) affirmative steps meant to protect her, or any other victim, or (b) made the risk greater <u>to Lozano</u>.  *See* Section VII, *infra*,

**VI.     Lozano misstates this Court's order and the law on negligent training/supervision.**

Citing this Court's Order, Lozano suggests her only burden is to provide "evidence that the plaintiff's injuries were brought about by reason of the employment of the incompetent servant [employee] and [were], in some manner job-related" and that she need not show that McCaw, Briles, or any specific employee breached a duty to Lozano. Dkt. 218 at 29-30 (citing Dkt. 105 at 38). But the quotation from the Court's opinion relates only to a plaintiff's burden in proving that <u>the employee's tort</u> and <u>the plaintiff's injury</u> are related to the employment.  Dkt. 105 at 38 (quoting *Dieter v. Baker Serv. Tools*, 739 S.W.2d 405, 408 (Tex. App.—Corpus Christi 1987, writ den.). The *Dieter* court analyzed the level of connection to employment that must be shown under a *respondeat superior* theory of liability versus that which must be shown under a negligent training theory. 739 S.W.2d at 407. Both *Dieter* and this Court acknowledged that, in a negligent training case, an employee must have committed a tort. Because the employee in *Dieter* assaulted someone, there was no question whether the employee committed a tort. *See id.* at 408. This Court specifically cited Lozano's allegation of tortious conduct by Briles and McCaw as fulfilling this element: "She has alleged that both McCaw and Briles committed an actionable tort of negligence against her." [6] Dkt. 105 at 37, 38 (citing Dkt. 50, ¶ 163).

Lozano argues that "[n]o authority supports the addition of a second layer of duty analysis as Baylor advocates; rather, '[the focus is on the negligence of the employer rather than the employee, as the unreasonable risk of harm to third parties results from the employer's failure to exercise due care.'" Dkt. 218 at 37 (quoting *Silvas v. Harrie*, 2018 WL 5733187, at *1 (W.D. Tex. Aug. 28, 2018), *adopted at* 2018 WL 6427345 (W.D. Tex. Oct. 4, 2018).  The facts and analysis in *Silvas* demonstrate the flaw in

---

[6]  Lozano argues that the tortious act need not have been committed by McCaw or Briles, but she does not point to any evidence of any tortious act by any other athletics employee.

Lozano's argument. In *Silvas,* the employee violated a duty while driving when he "swerved … to avoid hitting feral hogs, but collided with Plaintiff's motorcycle." In contrast to a *respondeat superior* claim, which holds an employer *vicariously* liable for his employee's actions, a negligent training claim holds employers *directly* liable for their own negligence which proximately caused the *employee* to negligently injure the plaintiff.  *See id.* (stating that "it is necessary, *but not sufficient* [for plaintiff] to show that the employer had negligent employment practices; a negligent hiring claim requires that some *harmful or negligent conduct of an employee*—one hired pursuant to the defendant's negligent hiring or supervision practices—proximately caused the injury complained of") (emphasis added). Two of Lozano's opinions involve auto accidents, and the employers did not contest vicarious liability, leaving no question that the employee owed a duty of care. *See FTS Int'l Servs., LLC v. Patterson*, 2020 WL 5047913, at *4 (Tex. App. Aug. 26, 2020); *JBS Carriers, Inc. v. Washington,* 564 S.W.3d 830, 842–43 (Tex. 2018). Likewise, in *Waffle House, Inc. v. Williams*, neither side questioned that an employee had assaulted the plaintiff. 313 S.W.3d 796, 803 (Tex. 2010) ("The issue before us … is not whether Williams has a viable tort claim against a *coworker.*") (emphasis in original). Plaintiff has not identified any authority that would excuse her obligation to prove a *tortious* act by a Baylor employee or that would entitle her to skip the threshold question of duty.

## VII.   There is no evidence of causation as to any of Lozano's claims.

Lozano's failure to point to specific competent evidence that Baylor's actions or inactions were the cause-in-fact of her injuries is fatal to all her claims. *See generally* Dkt. 105 at 10 ("In evaluating [Title IX policy] claims, courts must consider whether the defendant-institution's policy or custom inflicted the alleged injury."); *Doe*, 907 S.W.2d at 477.  The Fifth Circuit has stated that "neither mere logical possibility nor after-the-fact conjecture is an acceptable substitute for the requisite record evidence." *Harrison*, 2021 WL 1305871, at *5 (while it was "logically conceivable" that providing supplemental staff for a disabled student "would have prevented" plaintiff's abuse, the record did not

contain "sufficient Rule 56 evidence validating that theory").

Lozano argues that a plaintiff can prove cause-in-fact for her negligence claims by circumstantial evidence. Dkt. 218 at 38.  But Lozano does not point to *any* evidence—direct or circumstantial.  Causation "may not be established by mere conjecture, guess, or speculation." *Douglas*, 600 S.W.3d at 368 (citation omitted). Nor can the act be "a remote cause"; the evidence "must justify the conclusion that such injury was the natural and probable result thereof." *Id.*  The cases cited by Lozano highlight the deficiencies in her proof.  In *Doe v. Tenant Landlord Connection Properties*, 2020 WL 6304996 at *11 (Tex. App.—Dallas 2020, pet. dism.), the mother of a sex assault victim testified that, had she known to check the sex offender website and learned a sex offender lived in the complex, she would not have rented an apartment. This testimony supported causation; that is, had defendant's employee been trained to refer potential residents to the website, the family would not have rented, and the daughter would not have been assaulted. *Id.* at *11. Likewise, in *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 774 (Tex. 2010), there was lay and expert testimony that a violent bar brawl fight would have been prevented by a security presence and responding "during the ninety minutes that the two antagonistic groups were confronting each other."

Unlike the plaintiffs in *Tenant* and *Del Lago*, Lozano does not identify any *specific* action, policy, or program that, if performed differently, would have prevented the first, second, or third alleged assaults. Even assuming that some reports were mishandled in prior semesters, there is no evidence connecting those incidents to Lozano's or Chafin's conduct. There is no evidence that Chafin knew about other incidents which caused him to assault Lozano.[7]  Lozano's conjecture is not evidence. As

---

[7] Lozano alleges that she learned in 2016 that a friend of Chafin's was accused of sexual assault.  Dkt. 218-1, ¶ 51. There is no evidence in the record that Chafin or Baylor was aware of this allegation at the time in question.  The alleged victim "adamantly" told Waco police in 2013 she was not raped, and she identified no suspects in her initial report to Waco police.  Dkt. 218, ex. 29; Dkt. 218, ex. 9, nterrog. no. 16, p. 19, ¶ 8.  After learning the accused's name in 2015, Baylor investigated and expelled the individual. Dkt. 218, ex. 9, interrog. no. 16, p. 19.

for Tevin Elliott (Lozano's response at 12-13), he was removed from the football team and expelled in the spring of 2012 and convicted in criminal court in January 2014, three months *before* Lozano's alleged assault in March 2014.  Dkt. 204, Ex. 6, ex. A to interrogatories, pages 8-9.  There is no evidence that these events caused Chafin to assault Lozano. Second, there is no evidence that a particular response—even expulsion—*would have* prevented Lozano and Chafin from interacting at Scruffy's bar. That a different response *could have* is not enough. Third, even after filing a police report and telling a Baylor social worker that she was going to pursue charges, Lozano voluntarily returned to Chafin's apartment, testifying that she returned because she still loved him. Dkt. 204-1 at 422:22-25, 424:18-21. Finally, there is no direct sequence of events that proves causation, like the slippery floor in a store that caused the plaintiff to fall and land on his back.  *See, e.g., Hernandez v. Wal-Mart Stores Tex.,* 2017 WL 9291961, at *7 (W.D. Tex. 2017).

*Baylor does not concede the foreseeability element of proximate cause.* The foreseeability analysis is the same for both duty and proximate cause. *Del Lago Partners, Inc. v. Smith,* 307 S.W.3d 762, 774 (Tex. 2010). Because Baylor's motion argued and demonstrated that Chafin's alleged behavior was not foreseeable, this argument applies with equal force to its negligence argument. *See, e.g., Stow v. Slammin 4, LLC,* 2016 WL 3134520, at *6 (Tex. App.—Houston [14 Dist.] June 2, 2016, review den.).

IN CONCLUSION, Baylor prays that the Court will grant summary judgment and dismiss all claims.

Respectfully submitted,

**THOMPSON & HORTON LLP**

By:   /s/ *Lisa A. Brown*
     Lisa A. Brown
     State Bar of Texas No. 03151470
     Elizabeth Humphrey
     State Bar of Texas No. 24083217
     Phoenix Tower, Suite 2000
     3200 Southwest Freeway
     Houston, Texas 77027-7554
     lbrown@thompsonhorton.com
     ehumphrey@thompsonhorton.com
     (713) 554-6741 (telephone)

     Holly G. McIntush
     Texas Bar No. 24065721
     8300 N. MoPac Expwy, Suite 220
     Austin, Texas 78759
     (512) 615-2350 (telephone)
     (512) 682-8860 (fax)
     hmcintush@thompsonhorton.com

     Leila H. Gary
     State Bar of Texas No. 24058790
     500 N. Akard Street, Suite 3150
     Dallas, Texas 75201
     lgary@thompsonhorton.com

**COUNSEL FOR DEFENDANT
BAYLOR UNIVERSITY**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was served upon opposing counsel on February 15, 2022, via the Court's ECF/CMF electronic filing and service system as follows:

Sheila Haddock
Alexander Zalkin
Irwin Zalkin
The Zalkin Law Firm, P.C.
10590 W. Ocean Air Drive, Suite 125
San Diego, California 92130
(858) 259-3011 (Tel.)
(858) 259-2015 (Fax)
sheila@zalkin.com
alex@zalkin.com
irwin@zalkin.com

Tom Nesbitt
Scott DeShazo
Laura J. Goodson
DeShazo & Nesbitt, LLP
809 West Avenue
Austin, Texas 78701
(512) 617-5560 (Tel.)
(512) 617-5563 (Fax)
tnesbitt@dnaustin.com
sdeshazo@dnaustin.com
lgoodson@dnaustin.com

Thomas P. Brandt
Stephen D. Henninger
Fanning, Harper, Martinson, Brandt &
Kutchin, P.C.
Two Energy Square
4849 Greenville Ave., Ste. 1300
Dallas, Texas 75206
(214) 369-1300 (Tel.)
(214) 987-9649 (Fax)
tbrandt@fhmbk.com
shenninger@fhmbk.com

J. Reid Simpson
Hartline Barger LLP
1105 Wooded Acres Dr., Suite 402
Waco, Texas 76710
(361) 866-8027 (Tel.)
(361) 866-8039 (Fax)
rsimpson@hartlinebarger.com

Darrell L. Barger
Hartline Barger LLP
1980 Post Oak Blvd., Suite 1800
Houston, Texas 77056
(713) 759-1990 (Tel.)
(713) 652-2419 (Fax)
dbarger@hartlinebarger.com

Ernest Cannon
P.O. Box 1193
Stephenville, Texas 76401
(254) 918-1006
Ernestcannon1@yahoo.com

*/s/ Lisa A. Brown*
Lisa A. Brown

4884-1813-9145, v. 1