IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| DOLORES LOZANO, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 6:16-CV-403-RP |
| BAYLOR UNIVERSITY, ART BRILES, *in his individual capacity*, and IAN McCAW, *in his individual capacity*, | § § § § § | |
| Defendants. | § § | |

## ORDER

Before the Court is a motion for summary judgment filed by Defendant Ian McCaw ("McCaw"), (Dkt. 200), and responsive briefing from the parties, (Dkts. 212, 215). Having considered the parties' arguments, the record, and the relevant law, the Court will deny McCaw's motion.

### I. BACKGROUND

**A. Baylor Football Player Assaulted Lozano Who Reported It to Baylor**

Plaintiff Dolores Lozano ("Lozano") brought claims against Baylor University ("Baylor"), Briles, Ian McCaw ("McCaw"), Art Briles ("Briles"), and the City of Waco.[1] (Second Am. Compl., Dkt. 50). Lozano's second amended complaint alleges violations of Title IX of the Education Amendments Act of 1972 ("Title IX"), 20 U.S.C. § 1681, et seq., the Fourteenth Amendment pursuant to 42 U.S.C. § 1983, as well as various state law claims, including negligence. (*Id.* at 32–46). Her claims stem from multiple alleged assaults by Devin Chafin ("Chafin"), then a student-athlete and member of Baylor's football team. Lozano alleges that Baylor, its former football coach Briles,

---

[1] The City of Waco is no longer a defendant in this case. (*See* Order, Dkt. 198).

1

and former Athletic Director McCaw knew about the abuse but did nothing to help her, in large part because Chafin was a member of the football team. (*See id.* at 3–4, 10, 35).

In 2014, when Lozano and Chafin were dating, Chafin assaulted Lozano in Baylor housing—he pushed Lozano down several times, slapped her, kicked her in the stomach, and choked her until she could not breathe. (Lozano Decl., Dkt. 214-1, at 4).[2] Lozano reported the assault to a Baylor tumbling coach who discussed Lozano's injuries with Baylor's Associate Athletics Director and Senior Women's Administrator Nancy Post. (*Id.*); (Williams Aff., Dkt. 214-8, at 2). Baylor football coach Jeff Lebby, who was aware of the assault, responded the assault report by having Chafin do extra weightlifting activities. (Lozano Decl., Dkt. 214-1, at 5). Briles and then-Baylor president Ken Starr ("Starr") also knew of the assault and simply told Chafin to stay away from Lozano. (*Id.*). In April 2014, McCaw learned of the assault when he attended a regular meeting with Post. (McCaw Aff., Dkt. 200-1, at 4). He was told that a Baylor football player named Devin Chafin had grabbed and pushed his girlfriend. (*Id.*).

Within weeks, Chafin assaulted Lozano again—two more times. (Lozano Decl., Dkt. 214-1, at 5–6). Lozano's mother contacted Baylor about her daughter's injuries and was assured that "the football coaches would handle it." (*Id.* at 5). Lozano sought medical treatment for her physical injuries, counseling from the Baylor clinic, and academic assistance from the student life office. (*Id.* at 5–6). Chafin was not disciplined and remained on the Baylor football team for more than two years. (*Id.* at 5).

### B. Baylor's Findings of Fact in 2016

Two years later, Baylor released its Findings of Fact that outlined "specific failings within both the football program and Athletics Department leadership" and identified "significant concerns

---

[2] Because Lozano's declaration is a sealed exhibit, the Court relies on statements in the declaration to the extent Lozano relies on those statements in her publicly-filed response to the motion for summary judgment.

about the tone and culture within Baylor's football program as it relates to accountability for all forms of athlete misconduct." (Findings, Dkt. 212-2, at 3). The Findings of Fact implicated the Athletic Department leadership and the football program overseen people like McCaw oversaw. Related to athletics, the Findings of Fact stated:

- "Leadership challenges and communication issues hindered enforcement of rules and policies, and created a cultural perception that football was above the rules."

- "The University and Athletics Department failed to take effective action in response to allegations involving misconduct by football staff."

- "The choices made by football staff and athletics leadership, in some instances, posed a risk to campus safety and the integrity of the University."

- "In certain instances, including reports of a sexual assault by multiple football players, athletics and football personnel affirmatively chose not to report sexual violence and dating violence to an appropriate administrator outside of athletics."

- "Football staff conducted their own untrained internal inquiries, outside of policy, which improperly discredited complainants and denied them the right to a fair, impartial and informed investigation, interim measures or processes promised under University policy."

- "The football program's separate system of internal discipline reinforces the perception that rules applicable to other students are not applicable to football players, improperly insulates football players from appropriate disciplinary consequences, and puts students, the program, and the institution at risk of future misconduct."

- "The football program failed to identify and maintain controls over known risks, and unreasonably accepted known risks."

- "Leadership in football and the athletics department did not set the tone, establish a policy or practice for reporting and documenting significant misconduct."

- "The lack of reporting expectations resulted in a lack of accountability for player misconduct and employee misconduct."

(Findings, Dkt. 212-2). Following the Findings, Baylor published Pepper Hamilton's 105 recommendations. (PH recommendations, Dkt. 212-3). Baylor then took personnel action which ultimately resulted in the resignation or termination of Starr, McCaw, Briles, and Director of Football Operations Collin Shillinglaw.

### B. Procedural History

Lozano initially brought claims against Baylor and the Baylor University Board of Regents in October 2016. (Compl., Dkt. 1). A year later, Lozano filed an amended complaint, (Dkt. 16), and then a first amended complaint, (Dkt. 24). In response, Baylor filed a motion to dismiss. (Dkt. 29). In January 2018, Lozano sought to amend her complaint to, among other modifications, add Briles, McCaw, and the Waco Police as defendants, (Dkt. 46), which the Court granted in July 2018, (Order, Dkt. 49). Lozano's second amended complaint, which is the live pleading, was filed on July 24, 2018. (Dkt. 50). Against McCaw, she asserts state common law tort claims of negligence and seeks damages for personal injuries. (*Id.* at 34–39). In his motion for summary judgment, McCaw argues that Lozano's claims against him are time-barred under the applicable two-year statute of limitations period and Lozano's negligence claims must be dismissed. (Mot. Summ. J., Dkt. 200).

### II. LEGAL STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). "A fact issue is 'material' if its resolution could affect the outcome of the action." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he moving party may [also] meet its burden by simply pointing to an absence of evidence to support the nonmoving party's case." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 544 (5th Cir. 2005). The burden then shifts to the nonmoving party to establish the existence of a

4

genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin Alliance v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000). Courts must view the summary judgment evidence in the light most favorable to the nonmovant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

### III. DISCUSSION

#### A. Lozano's Suit Is Not Time-Barred

McCaw moves the Court to grant summary judgment in his favor as Lozano's claims against him are time-barred under the applicable two-year statute of limitations period. (Mot. Summ. J., Dkt. 200); *see* Tex. Civ. Prac. & Rem. Code § 16.003. According to McCaw, Lozano's claims accrued in March and April 2014, and she did not timely seek to add McCaw to the case until January 2018 and therefore her claims against McCaw were brought outside the limitations period. (Mot. Summ. J., Dkt. 200, at 8–11). Lozano counters that McCaw fails to establish his limitations defense as a matter of law based on his failure to conclusively establish that Lozano's claims accrued prior to the release of the Findings of Fact. (Resp., Dkt 212, at 11–13).

**1. Statute of Limitations Claim Accrual**

"Absent tolling, the limitations period runs from the moment a plaintiff's claim 'accrues,'" and while the limitations period is borrowed from state law, "the particular accrual date of a federal cause of action is a matter of federal law." *King-White*, 803 F.3d at 762 (quoting *Frame v. City of Arlington*, 657 F.3d 215, 238 (5th Cir. 2011)). "[U]nder federal law, a claim accrues and the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Id.* (quoting *Spotts v. United States*, 613 F.3d 559, 574 (5th Cir. 2010)). "[A] plaintiff's awareness encompasses two elements: (1) The existence of

5

the injury; and (2) causation, that is, the connection between the injury and the defendant's actions." *Id.* (quoting *Piotrowski*, 237 F.3d at 576). "'[A]wareness' [of the existence of the injury and causation] . . . does not mean actual knowledge; rather, all that must be shown is the existence of 'circumstances [that] would lead a reasonable person to investigate further.'" *Id.* (quoting *Piotrowski*, 237 F.3d at 576). Thus, for awareness of causation, a plaintiff "must have knowledge of facts that would lead a reasonable person (a) to conclude that there was a causal connection . . . or (b) to seek professional advice, and then, with that advice, to conclude that there was a causal connection between the [defendant's acts] and injury." *Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir. 1983).

### 2. McCaw's Affirmative Defense Fails

On summary judgment, McCaw has the burden to conclusively establish his defense of limitations. *KPMG Peat Marwick v. Harrison County Housing Finance Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). He must (1) conclusively prove when the cause of action accrued and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when Lozano discovered, or in the exercise of reasonable diligence, should have discovered the nature of her injury. *Id.*; *see also Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 834 (Tex. 2018) ("In cases in which the plaintiff pleads the discovery rule, the defendant moving for summary judgment on limitations bears the additional burden of negating the rule.").

This Court previously rejected McCaw's motion to dismiss based on limitations, stating: "[T]he nature of [Lozano's] claim against McCaw is that he oversaw an inadequate disciplinary system that was designed to obstruct genuine investigation or public discovery of widespread physical and sexual assault by Baylor student/athletes. The Court finds at this stage, Lozano plausibly alleges that she could not have discovered her negligence claims against Baylor and McCaw

until the Pepper Hamilton Findings of Fact were published." (Order, Dkt. 105, at 50). The Court importantly added: "If summary judgment evidence establishes that Lozano's state law claims against Baylor and McCaw accrued before the Pepper Hamilton Findings of Fact were published, the defendants will be entitled to summary judgment." (*Id.*).

In his summary judgment motion, McCaw repeats verbatim the same argument he advanced in his motion to dismiss. (*Compare* Mot. Summ. J., Dkt. 200, at 8–10 *with* Mot. Dismiss, Dkt. 61, at 5–8). McCaw adds only one piece of information to support his defense on summary judgment, an email Lozano sent to Baylor's Office of Judicial Affairs in 2012 when she complained she had been slandered and cyberbullied by a Baylor basketball player. (Dkt. 200, at 11). In that email, Lozano expresses her disbelief that even though other students had previously made complaints about athletes, the Judicial Affairs Board did not seem to be protecting students. (Lozano Email, Dkt. 200-1, at 50–53). Based on that email, McCaw infers that Lozano "was in possession of information causing her to believe that Baylor regularly failed to respond to complaints of violence made against Baylor student-athletes and failed to protect students from abusive or assaultive conduct by student-athletes." (Mot. Summ. J., Dkt. 200, at 11). McCaw immediately then concludes that Lozano's claims against McCaw are therefore time-barred. (*Id.*).

McCaw asks this Court to infer from Lozano's observation that "Baylor neglected their duties to protect their students"—in relation to her complaint about slander and cyberbullying in 2012—that Lozano had sufficient information that should have prompted her to inquire—in relation to her report of a violent assault by a football player—about possible misconduct by Baylor officials in 2014. The Court may not draw inferences in favor of McCaw, as the movant. Lacking that inference, which the Court also finds unreasonable, McCaw has not met his burden of conclusively establishing an accrual date for Lozano's claims before the Findings of Fact were

7

published. *See KPMG Peat Marwick*, 988 S.W.2d at 748. McCaw's limitations defense fails as a matter of law.

### B. Lozano's Negligence Claims

McCaw argues that Lozano's negligence claims against him must be dismissed because: (1) McCaw did not owe any legal duty to Lozano; (2) there is no evidence that McCaw breached any duty to Lozano; and (3) as a matter of law, no alleged acts or omissions of McCaw were the proximate cause of Lozano's claimed injuries. (Mot. Summ. J., Dkt. 200, at 12).

#### 1.   McCaw Owed a Legal Duty to Lozano Under Texas Negligence Law

To state a cause of action for negligence under Texas law, a plaintiff must prove: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; and (3) the defendant's breach of duty was the proximate cause of an injury to the plaintiff. *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009); *Urbach v. United States*, 869 F.2d 829, 831 (5th Cir. 1989). The existence of a duty is a question of law for the court to decide. *Centeq Realty, Inc., v. Siegler*, 899 S.W.2d 195 at 197 (Tex. 1995). A plaintiff may not maintain a tort cause of action against an employee of an organization unless the employee or agent owes a duty of care to the plaintiff that is independent of that owed by the company or organization. *See, e.g.*, *Leitch v. Hornsby*, 935 S.W.2d 114 at 117–18 (Tex. 1996). When the alleged acts or omissions of an employee/agent are within the employee/agent's scope of employment, the employee/agent is acting on behalf of the company or organization. *Id.* at 118.

McCaw, recycling an argument he made in his motion to dismiss, contends Lozano has not alleged McCaw owed her any duties independent of Baylor's duties to her. (Mot. Summ. J., Dkt 200, at 13–15). On that motion to dismiss, the Court found that Lozano had plausibly alleged her negligence claims against McCaw. (Order, Dkt. 105, at 39, 41). The Court explained that "to determine whether a defendant has a duty of care, Texas courts consider 'the risk, foreseeability, and

8

likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant.'" (*Id.* at 40) (quoting *Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 504 (Tex. 2017); *see also Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602, 619 (W.D. Tex. 2017)). The allegations that the Court found sufficient to support Lozano's negligence claim are now supported by the evidence.

After reviewing the evidence and considering the "risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden" on McCaw, this Court holds that McCaw owed Lozano a duty of care based on the circumstances of the facts of this case.[3] *Pagayon*, 536 S.W.3d at 504. McCaw had an independent duty of care to her under Texas's multi-factor test because, as Athletic Director, McCaw knew about the first assault through his employees, (McCaw Aff., Dkt. 200-1, at 7); it was foreseeable that Chafin would continue to assault Lozano without intervention, (*see* McCaw Texts, Dkt. 214-10; McCaw memo, Dkt. 214-13; Police reports, Dkt. 214-20, 21, 23; Judicial Affairs data, Dkt. 214-17); McCaw had the authority to take action, (Athletics Policies & Procedures, Dkt. 214-18); there was no social utility in protecting a student who assaulted other students; and intervening would not have posed a substantial burden on McCaw.

### 2. Lozano Raises a Genuine Fact Issue about McCaw's Alleged Breach of His Duty of Care

McCaw contends Lozano has no summary judgment evidence that he breached his duty of care to Lozano. Lozano counters that the following sets of evidence create a fact issue: (1) the

---

[3] McCaw presses the Court to find that McCaw had no special relationship with Lozano and therefore no duty to protect her. (See Mot. Summ. J., Dkt. 200, at 14–15). McCaw seems to be confusing the duty of care required under state negligence law and the duty of care that can arise when a plaintiff raises a substantive due process claim. The Court is not deciding whether a special relationship existed between McCaw and Lozano for the purposes of determining whether he, as a state actor, had a duty to protect her from harm.

9

Findings of Fact and Baylor's public statements and McCaw's "vehement dispute" of the Findings of Fact and public counterattack of Baylor's narrative, (*see* Baylor Statement on McCaw Depo., Dkt. 214-7); (2) McCaw's handling of another report about a sexual assault of a volleyball player by multiple football players, (*see, e.g.*, McCaw Emails, Dkt. 214-17, 18, 19); (3) and differing and potentially contradictory testimony about the response at Baylor to Lozano's report of Chafin's April 2014 assault, (Post Depo., Dkt. 214-50; McCaw Aff., Dkt. 200-1; Shillinglaw Depo., Dkt. 214-48; Yeary Depo., Dkt. 214-49).

In his reply, McCaw argues that the Findings of Fact are insufficient to raise any fact issue that McCaw breached his duty of care to Lozano because he was not personally identified and the allegations are "generalized, non-specific allegations." (Reply, Dkt. 215, at 4–5). To the contrary, two Baylor Regents both testified they reviewed the Findings of Fact before their release and did not see anything that needed to be revised. (Gray Depo., Dkt. 214-54, at 14–15; Murff Depo., Dkt. 214-55, at 3). In fact, the Regents said the Findings of Fact were "accurate" and "fair" and represented a "full disclosure." (Gray Depo., Dkt. 214-54, at 15; Murff Depo., Dkt. 214-55, at 5). With respect to his handling of the volleyball player's sexual assault, McCaw argues that evidence is not relevant to his alleged breach of his duty of care to Lozano and the evidence is drawn from 2015, after Chafin assaulted Lozano. Yet, McCaw, in his own summary judgment motion, offers argument and evidence to demonstrate that he handled that matter appropriately. (Mot. Summ. J., Dkt. 200, at 3–4, 18–19). Finally, McCaw asserts that the "conflicting and contradictory testimony" regarding the response to Lozano's report of her assault are "differences in recollection" that do not create a fact issue concerning McCaw's testimony about what happened. (Reply, Dkt. 215, at 6–7). The Court disagrees. The many examples of potentially conflicting testimony, including McCaw's, create a fact issue about McCaw's alleged breach of his duty of care. Even if there could be disagreement about

one of these fact issues, Lozano raises at least one, if not several, genuine issues of material fact that foreclose summary judgment in favor of McCaw.

### 3. Chafin's Actions Did Not Break the Chain of Causation

McCaw argues that Lozano "cannot raise a genuine issue of material fact that any alleged negligence of McCaw was the proximate cause of her injuries." (Mot. Summ. J., Dkt. 200, at 18). Specifically, Chafin's criminal conduct is a "superseding cause that breaks the chain of causation," and Lozano lacks evidence that Chafin's actions were foreseeable. (*Id.* at 19). A superseding cause is one that may "intervene[ ] between the original wrong and the final injury such that the injury is attributed to the new cause rather than the first and more remote cause." *Stanfield v. Neubaum*, 494 S.W.3d 90, 97 (Tex. 2016) (quoting *Dew v. Crown Derrick Erectors, Inc.*, 208 S.W.3d 448, 450 (Tex. 2006) (plurality op.)). Criminal conduct can be a superseding cause. However, it is not a superseding cause if the criminal conduct was a foreseeable result of the defendant's alleged negligence. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 550 (Tex. 1985). "Foreseeability is a highly fact-specific inquiry that must be determined 'in the light of the attending circumstances,' not in the abstract." *Stanfield*, 494 S.W.3d at 98 (quoting *Texas & P. Ry. Co. v. Bigham*, 90 Tex. 223, 227 (1896)).

In 2013, McCaw was aware of assaults by football players because he was involved in handling one of them as shown by text messages and a written reprimand from McCaw. (*See* McCaw Texts, Dkt. 214-10; McCaw memo, Dkt. 214-13). That incident of assault followed three previous reports to the Waco Police Department involving the same player for violent behavior. (Police reports, Dkts. 214-32, 33, 35). For the 2013-14 school year, Baylor logged charges of misconduct for 27 football players, including sexual assaults. (Data, Dkts. 214-28, 29). Specific to Chafin, when he was arrested in Oklahoma in 2016 for having drugs and an open container of alcohol in his car, Briles said that it was Chafin's "first offense in over a four-year period," which he knew was not true. (Briles Depo., Dkt. 214-47). In fact, the football coaches were on notice of his potential

substance abuse back in 2012. (Email to Briles from Chafin's teacher, Dkt. 214-22). From these attending circumstances, a reasonable jury could conclude that it was foreseeable that Chafin would commit acts of violence or additional acts of violence. Lozano thus has raised a genuine issue of material fact for the jury to decide whether Chafin's action were foreseeable.

## IV. CONCLUSION

For these reasons, McCaw's Motion for Summary Judgment, (Dkt. 200), is **DENIED**.

**SIGNED** on September 30, 2022.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE