# Exhibit 7

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| DOLORES LOZANO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 6:16-CV-00403-RP |
| BAYLOR UNIVERSITY; ART BRILES; | § | |
| IAN MCCAW; AND CITY OF WACO, | § | |
| | § | |
| Defendants. | § | |

### BAYLOR UNIVERSITY'S PROPOSED JURY INSTRUCTIONS AND VERDICT FORMS

TO THE HONORABLE ROBERT PITMAN, UNITED STATES DISTRICT JUDGE:

At the Court' request, Defendant Baylor University submits its proposed and requested jury charge, instructions, and verdict form as follows. Baylor has attempted to base these questions, definitions, and instructions on the evidence that has been or may be admitted at trial and based on the legal framework stated by the Court. Baylor does not concede that the evidence, or proper application of the law to the evidence, will require submission of these or any other questions, definitions, or instructions. Baylor also objects to the submission of instructions or questions premised on an "official policy" heightened risk pre-assault theory of liability under *Karasek v. Univ. of Calif.,* 956 F.3d 1093, 1112 (9th Cir. 2020). Baylor reserves the right to submit additional questions, definitions, or instructions as appropriate, and to object to these or any other questions, definitions, or instructions prior to submission to the jury at the time of trial.

## GENERAL INSTRUCTIONS

**INSTRUCTIONS FOR BEGINNING OF TRIAL[1]**

Members of the jury panel, if you have a cell phone, smart phone, iPhone, or any other wireless communication device with you, please take it out now and turn it off. Do not turn it to vibrate or silent; power it down. During jury selection, you must leave it off.

There are certain rules you must follow while participating in this trial.

First, you may not communicate with anyone about the case, including your fellow jurors, until it is time to deliberate. I understand you may want to tell your family, close friends and other people that you have been called for jury service so that you can explain when you are required to be in court. You should warn them not to ask you about this case, tell you anything they know or think they know about it, or discuss this case in your presence, until after I accept your verdict or excuse you as a juror.

Similarly, you must not give any information to anyone by any means about this case. For example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell or smart phone, camera, recording device, computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, YouTube, Snapchat, Instagram, or Twitter, or Threads or any other way to communicate to anyone any information about this case until I accept your verdict or until you have been excused as a juror. This includes any information about the parties, witnesses, participants, claims, evidence, or anything else related to this case.

Second, do not speak with anyone in or around the courthouse other than your fellow jurors or court personnel. Some of the people you encounter may have some connection to the case. If you were to speak with them, that could create an appearance or raise a suspicion of impropriety.

Third, do not do any research—on the Internet, in libraries, in books, newspapers, magazines, or using any other source or method. Do not conduct any investigation about this case on your own. Do not visit or view any place discussed in this case and do not use Internet programs or other devices to search for or view any place discussed in the testimony. Do not research any information about this case, the law, or the people involved, including the parties, the witnesses, the lawyers, or the judge, until after you have been excused as jurors. If you happen to see or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect the parties' right to have this case decided only on evidence they know about, that has been presented here in court. If you do any research, investigation or experiment that we do not know about, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process, which includes the oath to tell the truth and cross-examination. It could also be unfair to the parties' right to know what information the jurors are relying on to decide the case. Each of the parties is entitled to a fair trial by an impartial jury, and you must conduct yourself

---

[1]     Fifth Circuit Pattern Jury Instructions—Civil § 1.1 (2020).

so as to maintain the integrity of the trial process. If you decide the case based on information not presented in court, you will have denied the parties a fair trial in accordance with the rules of this country and you will have done an injustice. It is very important that you abide by these rules. Failure to follow these instructions could result in the case having to be retried.

GIVEN:  _____
REFUSED:  _____
MODIFIED AS FOLLOWS:  _____

## PRELIMINARY INSTRUCTIONS TO JURY[2]

You have now been sworn as the jury to try this case. As the judge, I will decide all questions of law and procedure. As the jury, you are the judges of the facts. At the end of the trial, I will instruct you on the rules of law that you must apply to the facts as you find them.

Pay close attention to the testimony and evidence. You may take notes during the trial. Do not allow your note-taking to distract you from listening to the testimony. Your notes are an aid to your memory. If your memory should later be different from your notes, you should rely on your memory. Do not be unduly influenced by the notes of other jurors. A juror's notes are not entitled to any greater weight than each juror's recollection of the testimony.

Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss this case in your presence. This includes your spouse, children, relatives, friends, coworkers, and people with whom you commute to court each day. During your jury service, you must not communicate any information about this case by any means, by conversation or with the tools of technology. For example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell or smart phone, camera, recording device, computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, YouTube, Snapchat, Instagram, Twitter, or Threads or any other way to communicate to anyone any information about this case until I accept your verdict or excuse you as a juror.

Do not even discuss the case with the other jurors until the end of the case when you retire to deliberate. It is unfair to discuss the case before all of the evidence is in, because you may become an advocate for one side or the other. The parties, the witnesses, the attorneys, and persons associated with the case are not allowed to communicate with you. And you may not speak with anyone else in or around the courthouse other than your fellow jurors or court personnel.

Do not make any independent investigation of this case. You must rely solely on what you see and hear in this courtroom. Do not try to learn anything about the case from any other source. In particular, you may not use any electronic device or media, such as a telephone, cell phone, smartphone, or computer to research any issue touching on this case. Do not go online or read any newspaper account of this trial or listen to any radio or television newscast about it. Do not visit or view any place discussed in this case and do not use Internet programs or other devices to search for

---

[2]     Fifth Circuit Pattern Jury Instructions—Civil § 1.2 (2020).

3

or to view any place discussed in the testimony. In sum, you may not research any information about this case, the law, or the people involved, including the parties, the witnesses, the lawyers, or the judge, until after you have been excused as jurors.

There are some issues of law or procedure that I must decide that the attorneys and I must discuss. These issues are not part of what you must decide and they are not properly discussed in your presence. To avoid having you leave the courtroom and to save time, I may discuss these issues with the attorneys at the bench, out of your hearing. When I confer with the attorneys at the bench, please do not listen to what we are discussing. If the discussions require more time, I may have you leave the courtroom until the lawyers and I resolve the issues. I will try to keep these interruptions as few and as brief as possible.

The trial will now begin. Lawyers for each side will make an opening statement. Opening statements are intended to assist you in understanding the significance of the evidence that will be presented. The opening statements are not evidence.

After the opening statements, the plaintiff will present her case through witness testimony and documentary or other evidence. Next, the defendants will have an opportunity to present their case. The plaintiff may then present rebuttal evidence. After all the evidence is introduced, I will instruct you on the law that applies to this case. The lawyers will then make closing arguments. Closing arguments are not evidence, but rather the attorneys' interpretations of what the evidence has shown or not shown. Finally, you will go into the jury room to deliberate to reach a verdict.

Keep an open mind during the entire trial. Do not decide the case until you have heard all of the evidence, my instructions, and the closing arguments.

It is now time for the opening statements.

GIVEN: _____
REFUSED: _____
MODIFIED AS FOLLOWS: _____

## GENERAL INSTRUCTIONS FOR JURY CHARGE[3]

It is my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

If I have given you the impression during the trial that I favor a particular party, you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts of this case. Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence. The statements of the parties' lawyers are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not evidence. You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom.  You may not be influenced by passion, prejudice, or sympathy you might have for the plaintiff or the defendant in arriving at your verdict. Do not let bias, prejudice or sympathy play any part in your deliberations. A governmental entity and all other persons are equal before the law and must be treated as equals in a court of justice.

You may not be influenced by passion, prejudice, or sympathy you might have for the plaintiff or the defendants in arriving at your verdict. In this case, one of the defendants is a private university. All parties are equal before the law and a university is entitled to the same fair consideration that you would give an individual person.[4]

GIVEN: _____
REFUSED: _____
MODIFIED AS FOLLOWS: _____

---

[3]      Fifth Circuit Pattern Jury Instructions—Civil § 3.1 (2020).
[4]      Fifth Circuit Pattern Jury Instructions—Civil § 2.16 (Bias—Corporate Party Involved) (2020).

## NO INFERENCE FROM FILING SUIT[5]

The fact that a person filed a lawsuit and is in court seeking damages creates no inference that the person is entitled to a judgment. Anyone may assert a claim and file a lawsuit. The act of filing a claim in a lawsuit, by itself, is not evidence and does not in any way tend to establish the truth of the claim.

GIVEN: _____
REFUSED: _____
MODIFIED AS FOLLOWS: _____

## BURDEN OF PROOF: PREPONDERANCE OF THE EVIDENCE[6]

Plaintiff Dolores Lozano has the burden of proving her case by a preponderance of the evidence. The phrase preponderance of the evidence means that, when you have considered all the evidence that has been admitted, you are persuaded that something is more likely true than not true. If you find that Dolores Lozano has failed to prove any element of her claim by a preponderance of the evidence, then she may not recover on that claim.

GIVEN: _____
REFUSED: _____
MODIFIED AS FOLLOWS: _____

---

[5]     Fifth Circuit Pattern Jury Instructions—Civil § 3.6 (2020).
[6]     Fifth Circuit Pattern Jury Instructions—Civil § 3.2 (2020).

**EVIDENCE**[7]

In determining whether Dolores Lozano has met the burden of proof by a preponderance of you may, unless otherwise instructed, consider the testimony of the witnesses, the documents and other exhibits admitted into evidence, stipulated facts, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of a person who observed an event. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

A "stipulation" is an agreement. When there is no dispute about certain facts, the attorneys may agree or "stipulate" to those facts. You must accept a stipulated fact as evidence and treat that fact as having been proven here in court, even if no evidence has been specifically offered regarding those facts.

The parties have stipulated to the following facts:

**[*Insert stipulated facts once finalized*]**

You also must accept as proven facts of which the court takes judicial notice. The court has taken judicial notice that:

**[*Insert judicially noticed facts if any*]**

Objections are not evidence. Lawyers have a right and sometimes an obligation to object when they believe that the evidence being offered is improper. At times, I sustained objections to questions without permitting the witness to answer or sustained an objection to an exhibit without admitting it. You must ignore the question or the exhibit and must not try to guess what the information might have been. Do not be influenced by the Court's overruling or sustaining an objection.

Do not consider or discuss any evidence that was not admitted in the courtroom. Testimony and exhibits that I disallowed or instructed you to disregard are not evidence and must not be considered. When testimony or an exhibit is admitted for a limited purpose, you may consider that testimony or exhibit only for the specific limited purpose for which it was admitted.[8]

Some exhibits contain markings that black out a name, sentence, or paragraph.  In some instances, names have been replaced with a pseudonym due to the privacy interests of persons who

---

[7]     Fifth Circuit Pattern Jury Instructions—Civil §§ 3.3 (Evidence), 2.3 (Stipulations of Fact), 2.4 (Judicial Notice) (2020).

[8]     Fifth Circuit Pattern Jury Instructions—Civil §§ 2.6 (Limiting Instruction).

are not part of the case.[9]  Do not try to guess what information has been blackened out or conduct independent investigation about the exhibit.

GIVEN:  _____
REFUSED: _____
MODIFIED AS FOLLOWS: _____

---

[9]       Proposed to ensure compliance with the Court's protective order, Dkt. 90, and the Court's prior FERPA orders.

**DEMONSTRATIVE EVIDENCE**[10]

Some of the parties have displayed charts, summaries, timelines, slide shows, or diagrams. These exhibits are used for convenience to help explain facts in the case. They are not evidence or proof of any facts.  If your recollection of the evidence differs from the exhibit, rely on your recollection.

GIVEN:  _____
REFUSED:  _____
MODIFIED AS FOLLOWS:  _____

**TRANSCRIPT OF RECORDED CONVERSATION**[11]

You were shown Exhibit ___ which is a typewritten transcript of an oral conversation.  The transcript also purports to identify the speakers who took part in the conversation.

I have admitted the transcript for the limited purpose of aiding you in following the content of the conversation as you listen to the recording and to aid in identifying the speakers. If you should determine that the transcript is in any respect incorrect or unreliable, you should disregard it to that extent.

GIVEN:  _____
REFUSED:  _____
MODIFIED AS FOLLOWS:  _____

---

[10]    Fifth Circuit Pattern Jury Instructions—Civil §§ 2.7 (charts), 2.8 (Demonstrative Exhibits) (2020).
[11]    Fifth Circuit Pattern Jury Instructions—Civil §§ 2.14 (Transcripts of Recorded Conversations).

**WITNESSES**[12]

You alone are to determine the questions of credibility or truthfulness of the witnesses and the parties.  In weighing the testimony of the witnesses, you may consider:

- the witness's manner and demeanor on the witness stand;
- the witness's memory;
- any feelings about or interest in the case the witness may have;
- any prejudice or bias about the case that he or she may have;
- any motive he or she may have to testify a certain way;
- the consistency or inconsistency of his or her testimony considered in the light of the circumstances, such as:
  - Has the witness been contradicted by other credible evidence?
  - Has he or she made statements at other times and places contrary to those made here on the witness stand?
- the extent to which the testimony is consistent with any evidence that you believe.

You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action or an employee of a party, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

Certain testimony has been presented to you through deposition. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition. Prior to this trial, attorneys representing the parties in this case had the opportunity to question witnesses under oath, and the witness's testimony was recorded by a court reporter and sometimes on video.  The questions and answers have been read or shown to you today. This deposition testimony is entitled to the same consideration and weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

In determining the weight to give to the testimony of any witness, you may consider whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony given at the trial.

---

[12]     Fifth Circuit Pattern Jury Instructions—Civil §§ 3.4 (Witnesses), 2.11 (Impeachment by Witness's Inconsistent Statements), 2.13 (Deposition Testimony) (2020).

In deciding whether to believe a witness, you may consider that people sometimes hear or see things differently and sometimes forget things. You need to consider whether a contradiction is an innocent mis-recollection or lapse of memory or an intentional falsehood. The significance may depend on whether the testimony has to do with an important fact in the case or with an unimportant detail.

The fact that a witness has talked with a party, lawyer, or party's representative does not, of itself, reflect adversely on the testimony of the witness. A party, lawyer, or representative of a party has a right to interview a witness to learn what testimony the witness will give.

During this trial, I have asked questions of one or more witnesses. Do not assume that, because I asked questions, the witness is more important than other witnesses or that I hold any opinion on the matters I asked about or what the outcome of the case should be.

GIVEN: _____
REFUSED: _____
MODIFIED AS FOLLOWS: _____


## SIMILAR ACTS[13]

Evidence that an act was done in the past at another time or on another occasion is not evidence or proof that the act was done at a subsequent time.

Evidence that Dolores Lozano or Devin Chafin acted in a particular way on one occasion does not prove that they acted in a particular way on another occasion. Likewise, evidence that Baylor University, Ian McCaw, or Art Briles acted in a particular way on one occasion does not prove that they acted in a particular way on another occasion.

Then how may you consider evidence of similar acts?

You may consider evidence of similar acts for the limited purpose of showing a witness's or party's *[motive], [intent], [knowledge], or [absence of mistake or accident],* which are at issue in this case.

Such evidence may not be considered for any other purpose. You may not use the evidence to consider or reflect the witness's or party's character.

GIVEN: _____
REFUSED: _____
MODIFIED AS FOLLOWS: _____

---

[13]     Fifth Circuit Pattern Jury Instructions—Civil § 2.10 (2020).

**EXPERT WITNESSES**[14]

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field is permitted to state their opinion on those technical matters. However, you are not required to accept that opinion. You should judge this testimony in the same way that you judge the testimony of any other witness.

GIVEN: _____
REFUSED: _____
MODIFIED AS FOLLOWS: _____

---

[14]     Fifth Circuit Pattern Jury Instructions—Civil § 2.10 (2020).

**TITLE IX CLAIM**

Dolores Lozano asserts a claim against Baylor University based on Title IX of the Education Amendments Act of 1972. Title IX prohibits discrimination on the basis of sex in a university's education programs and activities. Title IX's protections apply both to female students and male students. "Sex discrimination" includes student harassment that is based on sex.[15] A physical assault can be sexual harassment if it is based on the student's sex.[16]

Title IX is not violated merely because students engage in sex-based misconduct[17] or fail to follow university rules.[18] Title IX is violated only if a university employee with authority to take corrective action has actual knowledge of sex-based misconduct and the employee responds with deliberate indifference that subjects a student to behavior so severe, pervasive, and objectively offensive that it effectively denies the student equal access to educational opportunities and benefits.[19] The university must have substantial control over the offending student and the context in which the sexual misconduct occurred.[20]

In this case, Ms. Lozano alleges that Baylor University maintained an official policy of deliberate indifference to student reports of sexual misconduct and that this alleged policy caused Devin Chafin to assault Lozano on March 6, 2014. Baylor denies that it maintained such a policy, and it denies that any of its policies or actions caused the alleged assault.

Liability based on an official policy requires proof of a policy statement, regulation, or decision officially adopted by the entity's officers or those whose edicts may fairly be said to

---

[15]    *See Wolfe v. Fayetteville Sch. Dist.*, 648 F.3d 860, 864-865 (8th Cir. 2011) (approving jury instruction requiring that plaintiff prove that harasser was motivated by plaintiff's gender); *Sanches v. Carrollton–Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (Title IX claim requires discrimination on the basis of "sex"; claim motivated by personal animus is not covered).

[16]    *Ruvalcaba v. Angleton Indep. Sch. Dist.*, 2022 WL 340592, *5 (5th Cir., Feb. 4, 2022) ("generalized bullying" not covered by Title IX); *see, e.g., Doe v. Huntington Indep. Sch. Dist.*, 2020 WL 10317505, *5 (E.D. Tex., Oct. 5, 2020) (rejecting heightened risk claim based on "culture of hazing"); *Doe v. Elson S. Floyd College of Medicine at Wash. St. Univ.*, 2020 WL 4043975, * 8 (E.D. Wash., July 17, 2020) (rejecting claim based on plaintiff's allegations that her boyfriend was "aggressive and angry toward her" during breakup and overturned a coffee table); *cf. DeGroote v. Ariz.*, 2020 WL 1035774, *6, *10 (D. Ariz., Feb. 7, 2020) (dating violence was actionable where offender used sexual slurs and demanded sex).

[17]    *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 641-643 (1999).

[18]    *I.L. v. Houston Indep. Sch. Dist.*, 776 F. App'x 839, 843-844 (5th Cir. 2019) ("The law does not require schools to expel or suspend any student accused of sexual harassment to avoid liability"); *see generally Davis,* 526 U.S. at 648-649 ("Schools are not required to "purg[e]" their campuses of sexual harassment to avoid liability but, rather, must respond to known peer harassment in a manner that is "not clearly unreasonable.").

[19]    The institution's "own deliberate indifference" must cause the discrimination. *Davis*, 526 U.S. at 642-643; *Lozano v. Baylor Univ.*, 408 F.Supp.3d 861, 880 (W.D. Tex. 2019) (a plaintiff must do more than show "misconduct that happened to occur [at the school] among its students").

[20]    *Davis,* 526 U.S. 629 at 643-645.

represent official policy.[21] A policy also may arise in the form of a widespread practice that, although not formally adopted, is so common and well-settled as to represent official policy as an expected, accepted practice.[22]

A successful showing of a widespread practice requires similarity and specificity; the prior acts must be fairly similar to the act alleged in the case.[23] In addition, as an institution of higher education, Baylor can receive information and act only through individuals.[24] Thus, in this case, the

---

[21]  A policy typically consists of a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the entity's officers and encompasses the actions of the entity's "lawmakers" as well as "those whose edicts or acts may fairly be said to represent official policy." *Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 754 (5th Cir. 1993), quoting *Monell v. Dep't of Soc. Svs. of N.Y.*, 436 U.S. 658, 690 (1978).

[22]  *See Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009) (the incidents "'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice"); Fifth Circuit Pattern Jury Instructions—Civil § 10.5 (2020) (definition under 42 U.S.C. § 1983). The Supreme Court has expressly analogized to 42 U.S.C. § 1983 when deciding liability under Title IX. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 264, 291 (1998). Numerous courts have relied on Section 1983 to define "official policy" liability under Title IX. *See, e.g.*, *Simpson v. Univ. of Colo. at Boulder*, 500 F.3d 1170, 1177-78 & 1184-85 (10th Cir. 2007) (analogizing to Section 1983 and finding that university could be held liable under Title IX based on the deliberate indifference of a head coach who was a policymaker); *D.G. v. Tucson Unified Sch. Dist.*, 2020 WL 7041348 (D. Ariz., Nov. 30, 2020) (citing *Simpson* and holding that "the same standards" of Section 1983 apply to Title IX policy claim); *Vander Pas v. Board of Regents*, 2022 WL 1597423 (E.D. Wis., May 19, 2022) (following *Simpson* and holding that Title IX official policy claim will look to Section 1983 law).

[23]  *See generally Hicks-Fields v. Harris County*, 860 F.3d 803, 810 (5th Cir. 2017). In discrimination cases, incidents involving third parties are not relevant unless the third parties are similarly situated to the plaintiff. *See generally Wyvill v. United Companies Life Ins. Co.*, 212 F.3d 296, 303 (5th Cir. 2000) (holding in a Title VII case that incidents involving other employees "cannot establish that discrimination was a company's standard operating procedure unless those employees are similarly situated to the plaintiff"). The relevance of evidence of discrimination against other employees depends in part on "how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008).

[24]  *Rosa H.*, 106 F.3d at 659 (stating that a school board "knows and acts only through individuals"); *I.F. v. Lewisville Indep. Sch. Dist.*, 2017 WL 4506804, *3 (E.D. Tex., June 20, 2017) (approving jury instruction in Title IX retaliation case that "LISD is a legal entity and can only know about a report, and can only act or not act through its officers and employees, who are authorized to take action about such a report or to decide whether to take action on the report under the circumstances existing at the time"). In *Karasek v. Univ. of Calif.*, 956 F.3d 1093, 1112 (9th Cir. 2020), the court held that liability may be based on a "heightened risk" that is "known or obvious," but it did not identify *to whom* the risk must be known or obvious. This is a major omission. The trial court must instruct the jury on which officials can act for the university. *See generally Rosa H.*, 106 F.3d at 652, n. 1 (explaining that school district's proposed jury instruction failed to "specify what actors count as 'the school district'"). A jury instruction that fails to identify which officials are authorized to bind Baylor improperly exposes the university to potential liability based upon "employees'

plaintiff must prove: (i) an official with authority to change policy[25] knew of a widespread practice of employee deliberate indifference to reports of sex-based dating violence that was so common and well-settled as to represent official policy as an expected, accepted practice of the university,[26] (ii) the official knew that the alleged policy created a particularized and substantial risk of serious harm to the plaintiff,[27] and (iii) the official was deliberately indifferent to the risk, which caused injury to the plaintiff.[28]  The plaintiff must prove that the university maintained the policy despite the knowledge of a substantial risk of serious harm.[29]  Negligent oversight is not enough.[30]

    In this case, Lozano has the burden of proving by a preponderance of the evidence that each of the following occurred:

---

independent actions," which is a prohibited basis of liability. *See Gebser*, 524 U.S. at 283, 285-88, 290-91.

[25]    The Fifth Circuit distinguishes officials who have the power to "reformulate district sexual harassment policies or publicly 'repudiate th[e] conduct'" from those who merely have the duty to report wrongdoing. *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 365 (5th Cir. 2020). This approach "locates the acts of subordinates to the board at a point where the board's liability and practical control are sufficiently close to reflect its intentional discrimination. … ; it decides who acts for the board*.*" *Rosa H.,* 106 F.3d at 660 (emphasis added); *see also Simpson,* 500 F.3d at 1177-78 & 1184-85 (identifying employees who are policymakers and those whose edicts or acts may fairly be characterized as representing official policy); *D.G. v. Tucson Unified Sch. Dist.*, 2020 WL 7041348, *8 (D. Ariz., Nov. 30, 2020) (applying *Simpson*).

[26]    "'[W]ithout actual knowledge, the policy itself would not be *deliberately* indifferent.'" *Doe v. Plainfield Comm. Consol. Sch. Dist.,* 2023 WL 2428870 (N.D. Ill., March 9, 2023) (citations omitted) (emphasis in original).

[27]    *Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 53 F.4th 334, 341-42 (5th Cir. 2022) (holding in a pre-assault deliberate indifference case that actual knowledge of a particularized risk to the plaintiff is an essential element and that the risk to the plaintiff must be "substantial"). Even if the school failed to properly implement Title IX, the plaintiff did not "connect this failure to the District's knowledge about her in particular." *Id.*

[28]    The inquiry is "whether the defendant-institution's policy or custom inflicted the injury of which the plaintiffs complain." *Jane Doe 1 et al v. Baylor Univ.*, 240 F.Supp.3d 646, 661 (W.D. Tex. 2017); *Doe v. Union Coll.*, 2020 WL 1063063 (N.D.N.Y., March 3, 2020) (pre-assault plaintiff must show that school knew its policies and responses to sexual assault were deficient and that the school's "subsequent failure to remedy these policies" was the proximate cause of her assault); *see also Trudeau v. Univ. of N. Tex.*, 2021 WL 2908164, at *2 (5th Cir. July 9, 2021) (applying "but for" causation in a Title IX retaliation case); *Sheppard v. Visitors of Va. St. Univ.*, 993 F.3d 230, 237 (4th Cir. 2021) (applying "but for" causation in a Title IX discriminatory discipline case).

[29]    *See, e.g., Barlow v. State of Washington*, 2022 WL 2256318 (9th Cir., June 23, 2022) ("Barlow's evidence at most shows that the University policies that permitted Culhane to transfer campuses were deficient; the evidence does not show that the University maintained those policies despite a known or obvious risk of sexual misconduct.").

[30]    The official must know the "danger of harassment and choose[] not to alleviate that danger." *Rosa H.*, 106 F.3d at 659.  Responses that are "inept, erroneous, ineffective, or negligent" do not constitute deliberate indifference and will not support liability. *I.F. v. Lewisville Indep. Sch. Dist* , 915 F.3d 360, 369 (5th Cir. 2019) (citations omitted).

1)     Baylor had a widespread practice of deliberate indifference to reports of sex-based dating violence that was so common and well-settled as to represent official policy as an expected, accepted practice of the university.

2)     A Baylor official with authority to change the policy had actual knowledge that the alleged policy created a particularized and substantial risk of harm to the plaintiff, and the official responded with deliberate indifference.

3)     Lozano was assaulted on March 6, 2014, by Devin Chafin.

4)     The assault was based on Lozano's sex.

5)     Baylor had substantial control over both Chafin and the context in which the assault occurred.

6)     The alleged conduct was so severe, pervasive, and objectively offensive that it effectively deprived Lozano of access to the educational opportunities or benefits provided by Baylor.

7)     Baylor's policy caused the assault.


GIVEN: _____

REFUSED: _____

MODIFIED AS FOLLOWS: _____

**NEGLIGENCE**

Dolores Lozano claims that Baylor, Briles, and McCaw were negligent and that their alleged negligence was the proximate cause of an assault on April 5, 2014, at Scruffy Murphy's and an assault in Devin Chafin's apartment in late April 2014. Lozano further alleges that Baylor was negligent in supervising and training Briles and McCaw.

To recover damages for the alleged negligence of Defendants, Dolores Lozano must prove by a preponderance of the evidence that the Defendants owed her a duty of care; (2) Defendants breached that duty; and (3) the breach of duty was the proximate cause of an injury to Lozano, if any. With respect to Lozano's claim against Baylor based on negligent supervision and training, Lozano must prove by a preponderance of the evidence that Baylor failed to use ordinary care in supervising or training Art Briles and Ian McCaw and that Briles and McCaw committed a negligent act which was the proximate cause of Lozano's injuries, if any.

The terms "negligent" or "negligence" mean the failure to use ordinary care, that is failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.[31]

You are instructed that, in the absence of a special relationship, a person or organization has no legal duty to protect another from the criminal acts of a third person or to control the third person's conduct.[32]   In general, a university does not have a special relationship with its adult students nor a generalized duty to control or supervise their interactions with each other.[33]

"Proximate cause" encompasses both foreseeability and cause-in-fact.[34] Foreseeability means that the act or omission complained of must be such that a person using ordinary care would have foreseen that the injury, or some similar injury, might reasonably result therefrom.[35]  Cause-in-fact means a cause, unbroken by any new and independent cause, that was a substantial factor in bringing about an injury, and without which cause such injury would not have occurred.[36]  Cause-in-fact is not shown if the defendant's negligence did no more than furnish a condition which made the injury possible.[37]

---

[31]     Texas Pattern Jury Charge, § 2.1 (Negligence) (2022).

[32]     *See Trammel Crow Central Tex. Ltd v. Gutierrez*, 267 S.W.2d 9, 12 (Tex. 2008).

[33]     *Lozano v. Baylor Univ. et al*, 408 F.Supp.3d 861, 893 (W.D. Tex. 2019); *Boyd v. Texas Christian Univ., Inc.*, 8 S.W.3d 758 (Tex. App. – Fort Worth 1999, no pet.).

[34]     Dkt. 240 at 26; Texas Pattern Jury Charge, § 2.4 (Proximate Cause) (2022); § 3.1 (New and Independent Cause) (2022).

[35]     Texas Pattern Jury Charge, § 2.4 (Proximate Cause) (2022); § 3.1 (New and Independent Cause) (2022).

[36]     Texas Pattern Jury Charge, § 2.4 (Proximate Cause) (2022); § 3.1 (New and Independent Cause) (2022); Dkt. 240 at 26-27.

[37]     Dkt. 240 at 26-27; *see also, e.g., Barton v. Whataburger, Inc.*, 276 S.W.3d 456, 462 (Tex. App.—Houston [1st Dist.] 2008, pet. den.) (individual's prior convictions for selling cocaine and failing to pay child support did not make his participation in an aggravated robbery reasonably foreseeable; the evidence must show more than conduct that creates an opportunity to commit crime; the

There may be more than one proximate cause of an event, but if an act or omission of a person who is not a party to the suit was the sole proximate cause of an occurrence, then no act or omission of any party to the lawsuit could have been a proximate cause.[38]

A new and independent cause of an injury is the act or omission of a separate and independent agent, not reasonably foreseeable, that destroys the causal connection, if any, between the act or omission inquired about and the injury in question.[39]

The criminal conduct of a third-party is a superseding cause relieving a defendant from liability, unless the criminal conduct was a foreseeable result of the defendant's alleged negligence.[40]

GIVEN: _____
REFUSED: _____
MODIFIED AS FOLLOWS: _____

---

evidence must show that the defendant committed negligent acts and knew or should have known that, because of the negligent acts, the crime (or one like it) might occur).

[38]   Texas Pattern Jury Charge, § 3.2 (Sole Proximate Cause) (2022).
[39]   Texas Pattern Jury Charge, § 3.1 (New and Independent Cause) (2022).
[40]   *Urbach v. United States*, 869 F.2d 829, 833 (5th Cir. 1989).

## STATUTE OF LIMITATIONS

You will need to determine whether Lozano filed this lawsuit within the time allowed by law. This period of time is known as the statute of limitations. A party asserting negligence or Title IX claims must file their suit within two years after the day the claim "accrues." Lozano filed this lawsuit on October 11, 2016.

**Accrual of negligence claims[41]:** A negligence claim accrues when a wrongful act causes an injury, regardless of when the injured party learns of the injury and regardless of whether all of the resulting damage from the injury has occurred.[42] The claim accrues even if the injured person did not know the specific nature of each wrongful act by a defendant that may have caused the injury.[43]

**Accrual of Title IX claim:** A Title IX claim accrues the moment the individual becomes aware that she has suffered an injury or has sufficient information to know that she has been injured and is aware of the connection between the other party's actions and that injury.[44] Lozano is considered to have been aware of the existence of the injury and the causal connection when the circumstances would have led a reasonable person to investigate further; actual knowledge is not required.[45]

The Defendants contend that, prior to October 11, 2014, Lozano knew, or through the exercise of reasonable diligence should have known, of the existence of her injury and the connection, if any, between Baylor's actions and her injury.

Lozano contends that Baylor fraudulently concealed the existence of her claims from her until May 26, 2016, and that her claims were filed within two years of that date. When a party has fraudulently concealed the facts forming the basis of the plaintiff's claim, accrual is tolled until the party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to

---

[41]     Accrual of the state law claims is decided under state law, while accrual of the federal claim is decided in accordance with federal law. *See generally Timberlake v. A.H. Robins Co.*, 727 F.2d 1363, 1365–66 (5th Cir. 1984) (looking to state law to determine accrual of state law claim); *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 762 (5th Cir. 2015) (although the statute of limitations in a Title IX case relies on Texas law, accrual is determined under federal law).

[42]     *See generally Milton v. Stryker Corp.*, 551 F. App'x 125, 127 (5th Cir. 2014); *Doe v. St. Stephen's Episcopal Sch.*, 382 F. App'x 386, 389 (5th Cir. 2010) ("To bring a suit, it is not necessary for the victim to connect the abuse to any subsequent psychological injuries or understand the full extent of his injuries.").

[43]     *Texas Soil Recycling, Inc. v. Intercargo Ins. Co.*, 273 F.3d 644, 650 (5th Cir. 2001) (citing *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 749 (Tex. 1999)); *Mayzone v. Missionary Oblates of Mary Immaculate of Tex.*, 2014 WL 3747249, at *4 (Tex. App.—San Antonio July 30, 2014, pet. den.).

[44]     *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 762 (5th Cir. 2015); *Piotrowski v. City of Houston*, 237 F.3d 567, 577 (5th Cir. 2001).

[45]     *King-White,* 803 F.3d at 762.

make inquiry, which, if pursued, would lead to discovery of the concealed cause of action.[46] Fraudulent concealment requires proof that the party knew the plaintiff was wronged, the party used deception to conceal the wrong, and the plaintiff reasonably relied on the deception.[47] Failure to act in the face of knowledge of abuse does not constitute deception or fraudulent concealment.[48]

Defendants bear the burden of proving by a preponderance of the evidence that Lozano did not bring suit within the applicable two-year time period. Lozano bears the burden of proving that the Defendants engaged in fraudulent concealment and that, as a result, despite her exercise of due diligence, she could not discover the factual basis for her claims prior to October 14, 2014.[49]

The statute of limitations and fraudulent concealment must be proven as to each Defendant separately. In other words, Lozano's claims could be barred against one defendant but not another.

GIVEN: _____
REFUSED: _____
MODIFIED AS FOLLOWS: _____

---

[46]    *Id.*, citing *Borderlon v. Peck*, 662 S.W.2d 907, 908 (5th Cir. 1983); *Marcus & Millichap Real Estate Investment Services of Nevada Inc. v. Triex Texas Holdings LLC*, 659 S.W.3d 456, 463 (Tex. 2023); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 750 (Tex. 1999).

[47]    *ExxonMobil Corp. v. Lazy R Ranch LLP*, 511 S.W.3d 538, 554 (Tex. 2017) (plaintiff must show "that the defendant actually knew the plaintiff was in fact wronged and concealed that fact to deceive the plaintiff"); *Tipton v. Brock*, 431 S.W.3d 673, 681 (Tex. App. – El Paso 2014, pet. den.) ("The elements of fraudulent concealment are: (1) the existence of the underlying tort; (2) the defendant's knowledge of the tort; (3) the defendant's use of deception to conceal the tort; and (4) the plaintiff's reasonable reliance on the deception.").

[48]    *King-White*, 803 F.3d at 764 (holding that "failure to act in the face of knowledge of abuse" was insufficient to establish fraudulent concealment; plaintiff must show active concealment); *Marcus & Millichap Real Estate Investment Services of Nevada Inc. v. Triex Texas Holdings LLC*, 659 S.W.3d 456, 463 (Tex. 2023) (evidence did not support conclusion that defendants "actively misled" plaintiff).

[49]    *Draughon v. Johnson*, 631 S.W.3d 81, 90 (Tex. 2021) (plaintiff bears the burden of proving a tolling defense).

**CONSIDER DAMAGES ONLY IF NECESSARY**[50]

If Dolores Lozano has proven her claims by a preponderance of the evidence, you must determine the damages to which she is entitled.  Do not interpret the fact that I am giving instructions about damages as an indication in any way that I believe that she should, or should not, win this case. It is your task first to decide whether the three defendants are liable. I am instructing you on damages only so that you will have guidance in the event you decide that one or more defendants is liable and that Lozano is entitled to recover money from any of the defendants.

### Compensatory Damages (In General)

If you find that any Defendant is liable, then you must determine an amount that is fair compensation for the portion of damages caused by that Defendant. These damages are called compensatory damages. You may award compensatory damages against a defendant only if Lozano proves that particular defendant's wrongful conduct proximately caused an injury to Lozano.

The damages that you award must be fair compensation for all of Lozano's damages, no more and no less. Damages are not allowed as a punishment and cannot be imposed or increased to penalize any Defendant. You should not award compensatory damages for speculative injuries, but only for those injuries that Lozano has actually suffered or that Lozano is reasonably likely to suffer in the future.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. Lozano must prove, by a preponderance of the evidence, (i) she suffered an injury and (ii) the amount of damages incurred as a result of that injury. This is true regardless of the category of damages.  There must be a reason given for why the amount sought or obtained is reasonable and just, and it must be a rational reason grounded in the evidence presented at trial.

### A.     Damages under Title IX

Under Title IX, you may award damages only for losses that you find were proximately caused by Baylor's discriminatory conduct, if any. Title IX damages are those that compensate for the loss of educational opportunities and benefits at Baylor.[51] In this case, Dolores Lozano alleges that she did not receive academic accommodations in the spring semester of 2014.

Title IX damages do not include compensation for emotional distress, pain and suffering, and mental anguish.[52] Title IX damages in this case do not include lost wages or loss of earning capacity or employment opportunities. [53]

---

[50]     Fifth Circuit Pattern Jury Instructions—Civil § 15.1 (2020).

[51]     *Davis*, 526 U.S. at 650–51, 654.

[52]     *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S.Ct. 1562 (2022) (emotional distress damages are not recoverable).

[53]     Dolores Lozano has expressly disclaimed these damages.

GIVEN: _____
REFUSED: _____
MODIFIED AS FOLLOWS: _____

### B.   Damages/Negligence

Lozano's damages for negligence, if any, include expenses that may have been incurred because of her injury, including any compensatory damages for the physical injury, pain and suffering, and mental anguish that she alleges to have suffered because of a defendant's wrongful conduct.

The term "mental anguish" implies a relatively high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger. The plaintiff must provide direct evidence of the nature, duration, and severity of her mental anguish, establishing a substantial disruption in the plaintiff's daily routine.[54] The damages requested must be supported by a rational reason grounded in the evidence.[55]

Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss.[56] You may not award damages against these defendants for an injury if another person was the sole proximate cause of that injury.[57]

GIVEN: _____
REFUSED: _____
MODIFIED AS FOLLOWS: _____

---

[54]   *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444-445 (Tex. 1995).

[55]   *Gregory v. Chohan*, No. 21-0017, 2023 WL 4035886 (Tex., June 16, 2023), a plurality of the Texas Supreme Court held that, because mental anguish and emotional distress claims are compensatory (rather than punitive or exemplary) (*id.* at *2), "there must be . . . a *reason given* for why the amount sought or obtained is reasonable and just. And it must be a rational reason grounded in the evidence." *Id.* at *10. "No matter the source of the mental anguish or loss of companionship suffered, our precedent is clear that 'there must be . . . evidence to justify the amount awarded' in compensatory damages…." *Id.* at *7 (quotation omitted).

[56]   *In Re Rudolph Automotive LLC*, --- S.W.3d ---, 2023 WL 4035804, *9 (Tex., June 16, 2023).

[57]   *Perez v. DNT Global Star, L.L.C.*, 339 S.W.3d 692, 699 (Tex. App. – Houston [1st Dist.] 2011, no pet.).

**MITIGATION OF DAMAGES**[58]

A person who claims damages resulting from the wrongful act of another has a duty under the law to use reasonable diligence to mitigate her damages, that is, to avoid or to minimize those damages.

If you find that any defendant is liable and that Lozano has suffered damages, Lozano may not recover for any item of damage which she could have avoided through reasonable effort. If you find that the defendants proved by a preponderance of the evidence that Lozano unreasonably failed to take advantage of an opportunity to lessen her damages, you should deny her recovery for those damages that she would have avoided had she taken advantage of the opportunity.

You are the sole judge of whether the plaintiff acted reasonably in avoiding or minimizing her damages. An injured plaintiff may not sit idly by when presented with an opportunity to reduce her damages. However, she is not required to exercise unreasonable efforts or incur unreasonable expenses in mitigating the damages. The defendant has the burden of proving the damages that the plaintiff could have mitigated.  In deciding whether to reduce the plaintiff's damages because of her failure to mitigate, you must weigh all the evidence in light of the particular circumstances of the case, using sound discretion in deciding whether the defendant has satisfied its burden of proving that the plaintiff's conduct was not reasonable.

GIVEN: _____
REFUSED: _____
MODIFIED AS FOLLOWS: _____

---

[58]     Fifth Circuit Pattern Jury Instructions—Civil (2020) §§ 15.5 (Mitigation of Damages).; 11.14 (Title VII and ADA Damages) (modified); 11.18 (ADEA Damages) (modified).

**DELIBERATION**

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

When you go into the jury room to deliberate, you may take with you a copy of this charge and the exhibits that I have admitted into evidence. You must select a presiding juror to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous. After you have reached a unanimous verdict, your [presiding juror] must fill out the answers to the written questions on the verdict form and sign and date it. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the [presiding juror] should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

You have been provided a verdict form with questions for you as a jury to answer. All answers must be based on a preponderance of the evidence.

Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question carefully without considering who will win. Do not discuss or consider the effect your answers will have.

Do not answer questions by drawing straws or by any method of chance. Do not trade or bargain your answers such as agreeing to answer a question a particular way in exchange for another juror voting a particular way.

You may now proceed to the jury room to begin your deliberations.

GIVEN: _____
REFUSED: _____
MODIFIED AS FOLLOWS: _____

## **VERDICT FORM**

**Question No. 1 – Statute of Limitations (Title IX)**

Has Baylor University proven by a preponderance of the evidence that, prior to October 11, 2014, Dolores Lozano knew or should have known of her injury, if any, and the causal connection between her injury and Baylor's actions?

**Answer "Yes" or "No":** _____

> **If you answered "Yes," proceed to question on page ____.   If you answered "No," proceed to question ____.**

**Question No. 2 – Fraudulent Concealment (Title IX)**

Has Dolores Lozano proven by a preponderance of the evidence that the Defendants fraudulently concealed facts forming the basis of her claims and that, despite her exercise of due diligence, she reasonably relied on that concealment and could not have discovered the factual basis for her claims prior to October 14, 2014?

**Answer "Yes" or "No":** _____

> **If you answered "Yes," answer the question on page ____.   If you answered "No," proceed to question ____.**

**Question No. 3 – Title IX**

Has Plaintiff Dolores Lozano proven by a preponderance of the evidence each of the following:

1) Baylor had a widespread practice of deliberate indifference to reports of sex-based dating violence that was so common and well-settled as to represent official policy as an expected, accepted practice of the university.
2) A Baylor official with authority to change the policy had actual knowledge that the alleged policy created a particularized and substantial risk of harm to the plaintiff, and the official responded with deliberate indifference.
3) Lozano was assaulted on March 6, 2014, by Devin Chafin.
4) The assault was based on her sex.
5) Baylor had substantial control over Chafin and the context in which the assault occurred.
6) The alleged conduct was so severe, pervasive, and objectively offensive that it effectively deprived Lozano of access to the educational opportunities or benefits provided by Baylor.
7) Baylor's policy caused the assault.

**Answer "Yes" or "No": _____**

> **If you answered "Yes," answer the question on page _____.  If you answered "No," proceed to question _____.**

**Question No. 4 – Title IX Damages**

What sum of money, if paid in cash now, would fairly and reasonably compensate Dolores Lozano for damages under Title IX, if any, you have found were caused by Baylor University?

**Answer in dollar and cents, if any.**

> **$_____**

> **If you answered "Yes," continue to the next page.  If you answered "No," continue to page __.**

**Question No. 5 – Statute of Limitations (Negligence)**

Have the Defendants proven by a preponderance of the evidence that Dolores Lozano knew or should have known of her injury, if any, prior to October 11, 2014?

**Answer "Yes" or "No": _____**

> **If you answered "Yes," answer the question on page _____.   If you answered "No," proceed to question _____.**

**Question No. 6 – Fraudulent Concealment (Negligence)**

Has Dolores Lozano proven by a preponderance of the evidence that the Defendants fraudulently concealed facts forming the basis of her claims and that, despite her exercise of due diligence, she reasonably relied on that concealment and could not have discovered the factual basis for her claims prior to October 14, 2014?

**Answer "Yes" or "No": _____**

> **If you answered "Yes," answer the question on page _____.   If you answered "No," proceed to question _____.**

**Question No. 7 - Negligence**

Did the negligence, if any, of those named below proximately cause the following assaults alleged by Dolores Lozano?

**Assault on April 5, 2014**                    **Assault in late April 2014**

Dolores Lozano                                  Dolores Lozano
**Yes_____        No_____**                      **Yes_____        No_____**


Baylor University                               Baylor University
**Yes_____        No_____**                      **Yes_____        No_____**


Art Briles                                      Art Briles
**Yes_____        No_____**                      **Yes_____        No_____**


Ian McCaw                                       Ian McCaw
**Yes_____        No_____**                      **Yes_____        No_____**


**If you answered "Yes" to Question ____ for more than one party, then answer the following question. Otherwise, do not answer the following question.**

**Question No. 8 – Negligence (Responsibility):**

Assign percentages of responsibility only to those parties you found caused or contributed to the injury. The percentages you find must total 100 percent. The percentages must be expressed in whole numbers. The percentage of responsibility attributable to a party is not necessarily measured by the number of acts or omissions found. The percentage attributable to any party need not be the same percentage attributed to that one in answering another question.

For each person you answered "Yes" for in Questions _____ find the percentage of responsibility attributable to each:

1.  Dolores Lozano:           _____%

2.  Baylor University:        _____%

3.  Art Briles:               _____%

4.  Ian McCaw:                _____%

   **Total**              **100%**

**Question No. 9 – Negligence/Damages**

What sum of money, if paid now in cash, would fairly and reasonably compensate Dolores Lozano for her injuries, if any, that resulted from the injury in question?

Consider the elements of damages listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you find.

Answer separately, in dollars and cents, for damages, if any.

1.    Mental anguish/psychological harm sustained in the past.
      **Answer:**

2.    Mental anguish/psychological harm that, in all reasonable probability, Dolores Lozano will sustain in the future.
      **Answer:**

3.    Medical expenses in the past.
      **Answer:**

4.    Medical expenses that, in all reasonable probability, Dolores Lozano will sustain in the future.
      **Answer:**

5.    Pain and suffering in the past:
      **Answer:**

## CERTIFICATE

We, the jury, have answered the above questions and return them to the Court as our verdict.

_____
Foreperson of the Jury

Signed on October _____, 2023