EXHIBIT 3-A BAYLOR

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| DOLORES LOZANO; | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | Case No.: 6:16-cv-00403 |
| v. | § | |
| | § | |
| BAYLOR UNIVERSITY, | § | Hon. Robert Pitman |
| ART BRILES, *in his individual capacity,* | § | |
| *and* | § | |
| IAN McCAW, *in his individual capacity,* | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

**PLAINTIFF DOLORES LOZANO'S RESPONSE TO
DEFENDANT BAYLOR UNIVERSITY'S MOTION IN LIMINE**

TO THE HONORABLE JUDGE OF THE COURT:

Plaintiff Dolores Lozano files this her Response to Defendant Baylor University's Motion in Limine and in support shows as follows:

**RESPONSES**

1. **Evidence Relating to Alleged Non-Compliance with the Violence Against Women Act and Clery Act.**

2. **Evidence Relating to the Margolis Healy Report**

Baylor seeks to exclude "evidence, testimony and  argument regarding Baylor's compliance or non-compliance with the Clery Act and the Violence Against Women Act (VAWA)," including the Margolis Healy report. Baylor's position is puzzling. In support of its Motion for Summary Judgment  under the heading of "Title IX compliance efforts in 2010-2014;

1

Finding of Facts 2016," Baylor wrote:

> ***On March 7, 2013, Congress reauthorized the Violence Against Women Act ("VAWA")***. See Public Law 113-4, 127 Stat. 54. The VAWA amendments added dating violence, domestic violence, and stalking as reportable offenses under the Clery Act, created certain requirements for school disciplinary hearings, and required schools to annually publish a statement of policy regarding their education programs relating to dating violence, domestic violence, sexual assault, and stalking. 20 14 U.S.C. § 1092(f)(8)(A)(i). The effective date was March 7, 2014. 127 Stat. 54, 64. Implementing regulations were effective July 1, 2015. See 79 Fed. Reg. 62752. ***In May 2013, the University's General Counsel briefed senior administrators, including the Athletic Director, on these changes.*** Ex. 11 at 217-219 & depo. ex. 22. ***In June 2013, Baylor's president formed a task force of administrators to examine university policies and procedures in light of VAWA and other legal developments.*** Ex. 8, ¶ 12. The task force began studying the issues and mapping out a new administrative structure. Id. Meanwhile, in February 2014, the Board of Regents determined that the Baylor police department should be restructured. Ex. 7 at 136:19-25, 221-224. ***In March 2014, the University engaged a higher education consultant, Margolis Healy ("MH"), to review the police department and Title IX policies and procedures.*** Ex. 8, ¶ 13. On April 29, 2014, during the MH review, the Department of Education issued a new 46-page guidance that greatly expanded on the 2011 DCL. Id. at ¶ 14 [hereinafter "Q&A"].
>
> In the summer of 2014, Baylor accepted the police chief's resignation. Ex. 7 at 136-137. ***In September 2014, MH issued a report with recommendations based in part on the VAWA amendments and the April 2014 guidance. MH recognized that Baylor had taken several "significant" steps to comply with ED's guidance but that Baylor would be better served with a more strategic, comprehensive, and integrated approach.*** Ex. 8, ¶ 15 (exhibit I); Ex. 7 at 228:23-25, 229:1-18, 230; Ex. 25 at 39:23-40:5. MH acknowledged the efforts of Bethany McCraw in Judicial Affairs and the "good faith" of the professionals executing their Title IX responsibilities. Ex. 8, ¶ 15. But ***the report also identified deficiencies and made numerous recommendations,*** including hiring a full-time Title IX Coordinator and providing university-wide training. Id. at ¶¶ 15, 17 (exhibit I). Baylor began implementing the recommendations. Id.

(Baylor Motion for Summary Judgment, Dkt. 204 at 17). In short, Baylor argued that it "has presented evidence that shows a concerted, institutional effort by Baylor in the 2013-2014 school year through a task force and engagement of Margolis Healey to comprehensively address dating violence and sexual violence. (Dkt. 204 at p.22)

Baylor has indicated that it expects to make the same argument and offer the same exhibits at trial. Baylor identified Vice President for Student Life Kevin Jackson, who provided the affidavit upon which Baylor relied in its Motion for Summary Judgment, as an expected trial witness. Baylor included on its list of expected exhibits the same documents Jackson authenticated in his affidavit. In fact, in his affidavit, Jackson specifically referred to the Margolis Healy report and its findings:

> The Margolis Healy consultants found that it was "clear" that "the University is committed to taking the necessary steps to ensure compliance" with the law.

(Dkt. 204, Jackson Affidavit Ex. 8, ¶15).

> "While the Margolis Healy report identified deficiencies that needed to be addressed, it did not find or suggest that Baylor as an institution had been deliberately indifferent to reports of sexual misconduct or that it created a heightened risk of sexual assault that was known or obvious."

(Dkt. 204, Jackson Affidavit, Ex. 8, ¶16.)Perhaps most surprising given Baylor's current attempt to exclude the Margolis Healy report, Jackson authenticated a 45-page excerpt of the report he described as "a copy of the report's discussion of Title IX compliance." (Dkt. 204, Jackson Affidavit, Ex. 8, ¶15, Exhibit I). Therefore, Baylor's objection to the report as hearsay is unfounded. Based on Jackson's testimony, the report is not hearsay under Fed. R. Evid. 801(d). Jackson's statements about the report are admissible an opposing party's statement made by the party's agent or employee on a matter within the scope of that relationship. Fed. R. Evid. 801(d)(2)(D). The report itself, in its entirety, is admissible as a statement "that party manifested that it adopted or believed to be true." Fed. R. Evid. 801(d)(2)(B).

Finally, this Court has already recognized the relevance and admissibility of the information Baylor now seeks to exclude. Denying summary judgment, this Court cited the Margolis Healey report, noting the consultants found "Baylor-Wide Infrastructure Issues" and "a

3

number of training deficiencies." (Dkt. 240 at 6). This Court emphasized six of these deficiencies, directly quoting pages from the Margolis Healey report. Ultimately, this Court concluded:

> Between the Margolis Healy investigation and Baylor's Findings of Fact following the Pepper Hamilton investigation, Lozano's evidence sufficiently creates a genuine issue of material fact regarding whether Baylor's official policy violating Title IX created a heightened risk of assault, especially since Lozano's evidence is specific to Baylor's athletic program.

(Dkt. 240 at 18).

Baylor's Motion in Limine Nos. 1, 2, and 3 should be denied.

### 3. **Evidence Relating to the Office for Civil Rights "Dear Colleague Letter" (April 5, 2011)**

Baylor requests the Court exclude evidence, testimony, and argument relating to the specific content of the Dear Colleague Letter (DCL) on the grounds of relevance and unfair prejudice. Baylor admits, however, that the DCL is indeed relevant to show notice. In fact, Baylor itself cites the DCL and explains that it served as the impetus for a number of specific actions.

> ***In April 2011, the U.S. Department of Education (ED) issued a 19-page "Dear Colleague" Letter (DCL) providing new recommendations on how universities should address sexual violence under Title IX.*** Ex. 8, ¶¶ 9-10. Thereafter, Baylor, among other things: assigned Title IX Coordinator responsibilities to Dr. John Whelan, vice president of human resources; sent an email to all students providing the Title IX Coordinator's contact information and crime reporting options; created a "Know Your Rights" hand-out on Title IX for students; arranged for Title IX training for various administrators; developed forms and protocols in Judicial Affairs; and posted victims' rights information on its website. Ex. 3, ¶ 7; Ex. 8, ¶¶ 9-12.

(Baylor Motion for Summary Judgment Dkt. 204 at 13) Baylor concedes it seems, as it must, that the DCL is highly relevant in that it shaped university standards and informed the university's approach to Title IX compliance. Although Baylor references "403(unfair prejudice, confusing the issues or misleading the jury)" in its Motion, it offers no explanation for how admission of the DCL would unfairly prejudice Baylor, how it would confuse the issues or how it would mislead

the jury. Perhaps Baylor does not because it cannot. It simply cannot be disputed that the DCL was the authoritative document in effect during the relevant time period. Baylor's Motion in Limine No, 3 should be denied.

### 4. Evidence Relating to NCAA Investigations or Infractions Decisions

Baylor seeks to exclude "evidence, testimony and  argument regarding any NCAA investigation or infractions decision regarding Baylor, including but not limited to an NCAA decision dated August 11, 2021. Baylor objects to the NCAA report as "unsworn hearsay" that does not qualify under the business records exception of Federal Rule of Evidence 803(6). First, Baylor's hearsay challenge fails because the statements referred to in the NCAA report are not hearsay. Rather, the statements are admissions by a party opponent. *See* FED. R. EVID. 801(d)(2). Admissions by a party opponent are not hearsay if "[t]he statement is offered against a party and is …a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." *Jenkins v. City of San Antonio Fire Dept.*, 12 F.Supp.3d 925 (W.D. Tex. 2014). Any statements made by Baylor employees or trustees to the NCAA in the course of the infractions investigation was made within the scope of their agency or employment. Moreover, Baylor released a statement and posted a link to the full decision on its website admitting that "[a]s part of the NCAA process, the University acknowledged its significant and moral failings related to sexual and interpersonal violence, and we sincerely regret the actions of a few individuals caused harm to so many." (Exhibit A, https://ncaa.web.baylor.edu). Baylor stated on its website: "The University agrees with the enforcement staff and the Committee on Infractions that violations did occur, and we take full responsibility." (Exhibit A, https://ncaa.web.baylor.edu). Accordingly, the NCAA decision is further admissible as a party adoption under Fed. R. Evid. 801(2)(B).

Lozano refers to the NCAA decision to emphasize that Baylor has repeatedly relied on the Findings of Fact, the *Shillinglaw* Answer and the underlying emails and text messages in its defense. The NCAA's inclusion of the Findings of Fact in its decision underscores the point. This Court recognized as much in its denial of Baylor's summary judgment. (Dkt. 240 at p. 18). Baylor's Motion in Limine No. 4 should be denied.

### 5. <u>Evidence Related to Other Third-Party Investigations</u>

Lozano does not intend to elicit testimony or present evidence of the outcome of the third-party investigations Baylor identifies. (Texas Rangers, the Big 12 athletic conference, the U.S. Department of Education, and the Southern Association of Colleges and Schools Commission on Colleges) Evidence should be allowed, however, related to whether a witness participated in and was cooperative with any third-party investigations.

### 6. <u>*Lozano's Hearsay Testimony About What Devin Chafin Allegedly Told Her*</u>

According to Baylor, the Court should prohibit Lozano from testifying about "her conversations with, and written communication from Devin Chafin." Exceptions to the hearsay rule apply. First, evidence introduced to prove merely that notice was given is not offered to prove the truth of the matter asserted therein and, therefore, is not hearsay. *United States v. Cent. Gulf Lines, Inc.*, 747 F.2d 315, 319 (5th Cir. 1984). Lozano may testify as to Chafin's statements to her that he told Baylor coaches and Baylor's president about the assaults not to prove the truth of the matter asserted but to show notice and to show that Lozano *believed* that Baylor coaches and administrators were aware of the assaults. Next, Chafin's statements about the assaults, along with the other statements Baylor identifies (e.g., a car accident, a car purchase, medical treatment, use of drugs and alcohol) are statements against interest, which are excepted from the hearsay rule under FED. R. OF EVID. 804(b)(3). Text messages represent contemporaneous conversation and are

present sense impressions excepted from the hearsay rule under FED. R. EVID. 803(1). Baylor's

Motion in Limine No. 6 should be denied.

### 7. <u>Lozano's Hearsay Testimony About What Shawna Chafin Allegedly Told Her</u>

Agreed.

### 8. <u>Evidence of Devin Chafin's Citations, Arrest, or Criminal Convictions</u>

Baylor seeks to exclude evidence, testimony, and argument regarding three instances in

which Devin Chafin was arrested or convicted of drug or alcohol offenses. In support of this

motion in limine, Baylor cites Rule 401, 402, 403, 404, 608 and 609.  As a threshold matter,

Lozano does not intend to offer Chafin's criminal history as character evidence under Rule 608 or

for the purpose of impeachment under Rule 609. Likewise, Lozano does not intend to offer

Chafin's criminal history of alcohol related offenses as character evidence under Rule 404 to

establish a propensity to commit acts of violence. Rather, Lozano maintains this evidence shows

that Baylor, Baylor's athletic department, and Baylor's football program failed to impose

discipline on male student athletes and establishes Baylor's de facto policy that male student

athletes were above the rules. Baylor's response to Chafin's offenses is consistent with its response

– or lack of response – to myriad other offenses committed by athletes. This Court has recognized

that Chafin's offenses were in fact relevant to Lozano's claim:

> For the 2013-2014 school year, Baylor logged charges of misconduct for 27 football
> players, including sexual assaults. ***Specific to Chafin, when he was arrested in
> Oklahoma in 2016 for having drugs and an open container of alcohol in his car,
> Briles said that it was "Chafin's first arrest in over a four-year period," which he
> knew was not true.*** (Briles Depo, Dkt. 214-47

(Dkt. 232 at 11-12). Baylor's Motion in Limine No. 8 should be denied.

### 9. <u>Evidence of Alleged Juvenile Misconduct by Devin Chafin While He Was Still In High School</u>

Baylor seeks to exclude an email exchange between a teacher in Devin Chafin's hometown

alerting Art Briles to his drug use in the Spring of 2012 just before he enrolled at Baylor. Although Baylor argues the email exchange is not relevant "to any issue of consequence," it is relevant and this Court has already recognized as much:

> *In fact, the football coaches were on notice of his potential substance abuse back in 2012.*(Email to Briles from Chafin's teacher, Dkt. 214-22).

(Dkt. 232 at 12).

Briles thanked the woman for the information and assured her the athletic staff would look into immediately. The email exchange is not hearsay. It is not offered for the truth of the matter asserted but rather to show notice. Again, this evidence is relevant to and is consistent with the Baylor football program's practice of overlooking misconduct. Baylor's Motion in Limine No. 9 should be denied.

### 10. <u>Hearsay from an Unnamed Student Who Spoke to a Coach About Baylor Women</u>

Agreed.

### 11. <u>Hearsay and Speculation Regarding the Baylor Bruins Program</u>

Agreed.

### 12. <u>Evidence of Liability Insurance/Indemnification</u>

Agreed.

### 13. <u>Evidence Relating to Other Lawsuits and Claims against Baylor University, Art Briles, or Ian McCaw</u>

Baylor seeks to exclude evidence, testimony and argument regarding other lawsuits or claims involving Baylor University, Art Briles or Ian McCaw, including *Jane Doe 1 et al v. Baylor Univ.*, No. 6:16-cv-00173-RP, and *Hernandez v. Baylor Univ.*, 6:16-CV-69-RP.

Baylor's request is too broad. Claims by other women involving allegations of sexual assault, dating violence or student athlete misconduct are relevant to the issues in this case and in

fact essential to proving Lozano's heightened risk and negligence claims. Notably, after the filing of this Motion, Baylor issued a statement to the media regarding settlement of the Jane Doe cases:

> We are deeply sorry for anyone connected with the Baylor community who has been harmed by sexual violence. While we can never erase the reprehensible acts of the past, we pray this agreement will allow these 15 survivors to move forward in a supportive manner.

https://wacotrib.com/ap/sports/baylor-settles-years-long-federal-lawsuit-in-sexual-assault-scandal-that-rocked-baptist-school/article_3306d3b7-dc06-5642-9a4b-f0b30bac0b10.html

Baylor continues to issue press releases to rehabilitate its image to the public and continues to expect that it will not face accountability for its statements. Baylor's Motion in Limine No. 13 should be denied.

**14.  <u>Evidence Regarding Settlements or Settlement Negotiations in this Case</u>**

Agreed.

**15.  <u>Evidence of Damages that Lozano Did Not Disclose in her Rule 26 Disclosures</u>**

Rule 26(a)(1)(A)(iii) of the Federal Rules of Civil Procedure requires parties to disclose a "computation of each category of damages claimed by the disclosing party. However, the Fifth Circuit has found that some compensatory damages "are necessarily vague and are generally considered a fact issue for the jury" and "may not be amenable to kind of calculation disclosure contemplated by Rule 26(a)(1)(C). *Williams v. Trader Pub.Co.*, 218 F.3d 481, 486 n.3 (5th Cir. 2000). Although general damages are not always quantifiable, the non-disclosing party is entitled to notice of the category of damages sought and evidence upon which the same will be based. *Meeks v. United States*, No. SA-14-CA-356-OLG, 2015 WL 12657105 (W.D. Tex. Oct. 16, 2015). When a plaintiff does not disclose a specific amount sought for general damages during discovery but is not seeking to "quantify her damages at trial with a previously undisclosed dollar value," a plaintiff is not foreclosed from seeking damages at trial and asking the finder of fact to fix the

amount of non-economic damages. *Merrill v. Waffle House*, 227 F.R.D. 467, 470 (N.D. Tex. 2005).

### (a) "Educational Loss" Damages

Compensatory damages that are not based on specific monetary harm but stem directly from the lost opportunities suffered as a result of discrimination can serve as a basis for damages in cases brought under Spending Clause cases, including Title IX. *Doe v. Fairfax Cnty. Sch. Bd.*, No. No. 1:18-cv-00614-MSN-IDD, 2023 WL 424265, *4 (E.D. Va. Jan. 25, 2023). *See Montgomery v. District of Columbia*, No. 19-1028, 2022 WL 1618741, at *29, n.39 (D.D.C. May 23, 2022)(allowing recovery for lost opportunity under ADA and Rehabilitation Act and holding that "the Court will not usurp the role of the jury and attempt to quantify such damages"; *Chaitram v. Penn. Med.-Princton Med. Ctr,* No. 21-17583 (MAS)(TJB), 2022 WL 16821692 (D.N.J. Nov. 8, 2022)(allowing recovery for loss of meaningful access to participate in medical care); *Nancy Roe v. Purdue Univ.,* No. 4:18-cv-89-JEM (N.D. Ind. Sept. 23, 2022)(ECF No. 140, instructing jury to "determine the amount of money that will fairly compensate [plaintiff] for any injury that you find she sustained as a direct result of being denied equal access to educational opportunities").

### (b) Emotional Distress Damages

Since compensatory damages for emotional distress are necessarily vague and are considered a fact issue for the jury, they may not be amenable to the kind of calculation disclosure contemplated by the rule imposing a duty to disclose during discovery. *Hovanec v. Miller*, 331 F.R.D. 624 (W.D. Tex. 2019). Lozano does not intend to suggest a specific amount of damages for emotional distress to the jury.

### 16. <u>Evidence or References to Punishing the Defendants or Awarding Punitive Damages</u>
*"Punishing the Defendants"*

10

First, Baylor argues the Court "should exclude evidence arguments, or testimony concerning the hierarchal power dynamics, "institutional betrayal," and "David v. Goliath" type of arguments." Citing Rule 403 and a single case, Baylor asserts that such evidence "is unfairly prejudicial." Baylor's reliance on *Moore v. Ashland Chemical* 126 F.3d 679 (5th Cir. 1997) is misplaced and misleading. First, Defendant Baylor declares that "[e]vidence *is* unfairly prejudicial if 'it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, triggers other mainsprings of human action, or may cause a jury to base its decision on something other than the established propositions of the case.'" (Dkt. 255-8 at 10)(quoting *Moore,* 126 F.3d at 692) (*emphasis added*). In *Moore*, the Fifth Circuit actually merely offered an "example." The Court specifically used the word *may* in place of *is*, indicating any of these dangers that *may* accompany some prejudicial evidence are not an absolute bar to admissibility, only that they *may* be grounds for exclusion under Fed. R. Evid. 403. Second, this cherry-picked quotation concerning jury inflammation with prejudicial evidence is immediately preceded with strong caution from the court that Fed. R. Evid. 403 is an "*extraordinary* remedy to be used *sparingly*[.]" *Moore*, 126 F.3d at 37. Third, Defendant Baylor conveniently omits the citations on which the quotation is based. All three are criminal cases concerning admissibility of inflammatory evidence and lower courts' abuse of discretion under Fed. R. Evid 403. *United States v. Bowers*, 660 F.2d 527 (5th Cir. 1981)(finding no abuse of discretion by admitting photos of a badly beaten deceased child); *United States v. Osum*, 943 F.2d 1394, 1404 (5th Cir. 1991)(affirming admission of extrinsic evidence of intent to commit mail fraud); *United States v. Kang*, 934 F.2d 621, 628 (5th Cir. 1991)(finding court abused its discretion by allowing hearsay statements concerning a defendant's predisposition to commit tax fraud). None of these cases are in any way factually analogous to this case and moreover concern questions of criminal culpability not civil liability.

Moreover, Baylor's motion is vague and overly broad. The terms "hierarchal power dynamics" and "David v. Goliath – type" are vague. Baylor fails to identify any specific evidence or testimony it claims would be unfairly prejudicial. Argument is not evidence. Baylor's objections are more appropriate for trial. *See Unicolors, Inc. v. J&M Hennes & Mauritz*, L.P., No.2:16-cv-02322-AB(Skx), 2017 WL 11489792,*8 (C.D. Ca. Nov. 15, 2017); *Holloway v. County of Orange,* No. SA CV 19-01514-DOC (DFM), 2022 WL 18278384 (C.D. Ca. Nov. 23, 2022).

Argument asking the jury to "send Baylor  University a message" may be allowed when discussing exemplary damages. *See Braun v. Clean Harbors Envt'l Servs., Inc*., No. 1:14-cv-524, 2016 WL 7551201, at *4 (E.D. Tex. May, 6, 2016); *Aikens v. Central Oregon Truck Co. Inc*., No. 4:20-cv-00567, 2021 WL 4312720 (E.D. Tex. Sept. 22, 2021)(citing Smith v. Wade, 461 U.S. 30, 54 (1983)).

Finally, with regard to "Institutional betrayal," this is term recognized in the field of psychology and about which Lozano's expert Julia Babcock offered opinions in her report and about which she may testify.

### *"Punitive Damages"*

A pleading that states a claim for relief must contain...a demand for the relief sought." Fed. R. Civ. P. 8(a). "Nowhere in Rule 8 does it indicate that the parties must include magic words to ensure a claim, on either liability or damages. Rather, Rule 8 simply requires a party to make a "short and plain statement of the claim showing that the pleader is entitled to relief." *Resman, LLC v. Karya Prop. Mgmt., LLC*, No. 4:19-CV-00402, 2020 WL 5884798, *2 (E.D. Tex. October 1, 2020). "The plain language of Rule 8 does not purport to require pleadings so specific as to constitute an essentially 'magic word' recitation of each claim and request for damages." *Id*. Rather, the pleading standard set out in Rule 8(a) is a liberal one...." *Jiminez v. Regius Verus*

*Foods, LLC*, No. 5:14-CV-1021-DE, 2015 WL 128157, at *1 (W.D. Tex. January 2, 2015). The notice requirement of 8(a)(3) is typically satisfied by stating which kinds of relief the plaintiff is seeking: injunctive, declaratory, or monetary. *See Seven Words LLC v. Network Solutions*, 260 F.3d 1089, 1098 (9th Cir. 2001).  In short, a claim for punitive or exemplary damages is not considered a separate claim or cause of action; rather, it is a *remedy* that is requested with a cognizable cause of action.

Moreover,  "Rule 8(a)(3) must be read in conjunction with Rule 54(c), which makes clear that in nondefault cases a plaintiff is not limited by his complaint's ad damnum clause in seeking final judgment."  Wright & Miller, 10 Fed. Prac. & Proc. Civ. § 2662 (3d ed). Rule 54(c) provides that a "final judgment should grant the relief to which a party is entitled, even if the party has not demanded that relief in its pleadings," which, in effect, "limits the significance of Rule 8(a)(3)'s requirement of a demand for judgment once the litigation has begun." Fed. R. Civ. P. 54(c); *Old Republic Ins. Co. v. Employers Reinsurance Corp.*, 144 F.3d 1077, 1081 (7th Cir. 1998). *See also*, *Lasslett v. Tetra Tech, Inc.*, No. 2:13-CV-072-AM-CW, 2015 WL 13805125, (W.D. Tex. Feb. 20, 2015). Therefore, in federal court, "punitive damages can be awarded without being specifically pleaded, so long as the facts pleaded show the wrong complained of was inflicted with malice, oppression or like circumstances." *Watson v. Provident Life & Acc. Ins. Co*., No. 3:088-Cv-2065-G9BD0, 2009 WL 1437823, at *4 (N.D. Tex. May 22, 2009)(citing *Guillen v. Kuykendall*, 470 F.2d 745, 747 (5th Cir. 1972)(internal quotations omitted).

Here, Lozano included "punitive damages" among the remedies she was seeking in her prayer.

> WHEREFORE, Plaintiff prays for damages; **punitive damages**; costs; interest; **statutory/civil penalties according to law**; attorney's fees and costs of litigation, pursuant to 42 U.S.C §1988 or other applicable law; and such other relief as the court deems appropriate and just.

(Dkt.50)

By statute, a plaintiff may obtain exemplary damages if she proves by clear and convincing evidence that the harm resulted from fraud, malice or gross negligence. Tex. Civ. Prac. & Rem. Code § 41.003(a). To show gross negligence, the plaintiff must prove that (1) when viewed objectively from the defendant's standpoint at the time of the event, the act or omission involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others and (2) the defendant had actual, subjective awareness of the risk involved but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others. *Garcia v. Zimmerman*, No. 1:21-CV-01063, 2023 WL 5539654 (W.D. Tex. Aug. 28, 2023)(citing *U-Haul Int'l, Inc. v. Waldrip,* 380 S.W.3d 118, 137 (Tex. 2012).  In her Second Amended Complaint, Lozano cited Defendants Baylor, McCaw and Briles' "intentional and negligent acts and omissions" (Dkt. 50, ¶171),  which  included but are not limited to the following:

- deliberately insulating players from being implicated in any wrongdoing by police or campus administration(Dkt. 50, ¶41)

- failing to address and actively concealing from the public specific acts of violence and sexual violence committed by Baylor football players, (Dkt. 50, ¶53)

- routinely and deliberately failing to discipline players implicated in reports of sexual assaults and domestic abuse (Dkt. 50, ¶78)

- taking affirmative steps to maintain internal control over discipline of players and to actively divert cases from the student conduct or criminal processes(Dkt. 50, ¶78)

- maintaining a policy of accepting high-risk transfers from other football programs without conducting due diligence: (Dkt. 50, ¶78)

Lozano pled, quoting Baylor's Finding of Facts:

"With knowledge and notice of the inordinate number of assaults, Baylor deliberately failed to address the risk, as found by the Baylor Findings, which explain, "Once aware of a potential pattern of sexual violence, the University failed

14

to take prompt and effective action to protect campus safety and protect future victims from harm. (Dkt. 50, ¶85)

In sum, Lozano prayed for punitive damages and her Complaint is replete with allegations that would support an award of punitive damages under Texas law. Baylor's Motion in Limine No. 17 should be denied.

17. **Evidence Relating to Emotional Distress and Punitive Damages Under Title IX**

Lozano does not seek recovery of emotional distress or punitive damages under Title IX. However, this is an issue to be addressed in the jury instructions and charge. Since these damages are available remedies under Lozano's negligence claims, such evidence may not be excluded.

18. **Evidence Relating to the Cost of Construction of Baylor's Football Stadium, Baylor's Endowment, Coach and Employee Salaries, or Other University Expenditures**

Lozano alleges that Baylor prioritized building and sustaining a successful football program and thereby increasing its revenues over implementing Title IX and protecting the safety of its female students. The evidence Baylor seeks to exclude in this Motion in Limine supports these allegations. *See Birchfield v. Texarkana Memorial Hosp. d/b/a Wadley Hosp.*, 747 S.W.2d 361 (1987)(holding evidence of financial condition of hospital admissible to demonstrate hospital's ability to provide proper facilities). Baylor argues only that this evidence may "arouse the juror's passion" or "encourage assessment of damages on some other basis than that provided by law." (Dkt. 255-8 at 10). The mere fact that Baylor believes the evidence is prejudicial is no reason to exclude it. "It is not enough simply to show that the evidence is prejudicial as virtually all evidence is prejudicial or it is not material." *United States v. Clark*, 577 F.3d 273  (5th Cir. 2009).  Moreover, the "situation and the sensibilities of the parties" and the defendant's wealth may be considered as factors in an award of exemplary damages. Texas Pattern Jury Charge 28.C.

15

Baylor's Motion in Limine No. 18 should be denied.

19. **Evidence of Anxiety or Stress Caused by this Litigation**

Agreed so long as the exclusion applies to all parties.

20. **Evidence Relating to Title IX Exemptions Asserted by Baylor University**

Lozano generally agrees to the exclusion of evidence related to Baylor's formal request for and receipt of a religious based exemption from the United States Department of Education, including its recent request arising out complaints filed with the Office for Civil Rights by LGBTQI+ students. Lozano does not agree, however, that evidence of Baylor's religious affiliation should be excluded. Baylor brands itself as a Christian university and consistently refers to the high moral standards and values its students and staff are claimed to embody. Baylor itself refers to its "institutional values" in the Findings of Fact. (Dkt. 214-6 at 11). Baylor's religious affiliation is highly relevant in this case.

21. **Evidence Regarding the Murder of a Basketball Player in 2003**

Agreed.

22. **Evidence of Student Misconduct Incidents That Are Not Similar to the Assaults Experienced by Lozano**

23. **Evidence of Student Misconduct Incidents That Do Not Involve Football Players or That Occurred Prior to June 2012**

24. **Alleged Misconduct by Baylor Employees or Athletes Occurring After May 2014**

Through Motion in Limine Nos. 22, 23, 24, Baylor seeks to exclude evidence the Court has already determined relevant and admissible – and, notably, evidence that Baylor itself offered in support of its summary judgment. Baylor essentially attempts to limit the evidence to reports of domestic or dating violence committed by Baylor football players between June 2012 and May 2014 that were known to Devin Chafin. The Court has already rejected Baylor's attempts to

unreasonably narrow the evidence.

In response to Defendants Baylor and McCaw's Motion to Dismiss, the Court held that Lozano had sufficiently alleged that "Baylor's practices in handling **student reports of physical and sexual assault by football players** constituted a policy of intentional discrimination and created a heightened risk of physical or sexual assault for female students." (Dkt. 105 at 15).

At summary judgment, the Court rejected Baylor's argument that "Lozano cannot rely on an amalgam of sexual assaults, incidents of male-on-male violence, and other dissimilar acts" and that she "can only win her claim if she shows similar incidents of assaults occurring before hers." (Order Denying Baylor MSJ, Dkt. 240 at 20). The Court found "there is no such requirement." (Dkt. 240 at 20). Citing the Findings of Fact, the Court concluded that "Lozano has presented evidence that she suffered injuries as a result of Baylor's policy of deliberate indifference to **reports of assaults**."  (Dkt. 240 at 18). The Court noted that "it also appears that Baylor had superior knowledge of the risk posed by Chafin given Lozano's **evidence of Baylor's previous knowledge of other assaults by football players, the football program's response to those assaults**, and Chafin's first and second assaults of Lozano." (Order Denying Baylor's Motion for Summary Judgment, Dkt. 240 at 22, n.3)

The Court further relied on other incidents in denying McCaw's motion for summary judgment:

> In 2013, McCaw was aware of assaults by football players because he was involved in handling one of them as shown by text messages and a written reprimand from McCaw. (*See* McCaw Texts, Dkt. 214-10; McCaw memo, Dkt. 214-13). That incident of assault followed **three previous reports to the Waco Police Department involving the same player for violent behavior**. (Police reports, Dkts. 214-32,33,35) **For the 2013-14 school year, Baylor logged charges of misconduct for 27 football players, including sexual assaults**. (Data, Dkts. 214-28, 29).

And, denying summary judgment for Briles, the Court pointed to evidence of "Briles' acts of concealment and failure to report violence and sexual violence." (Dkt. 230

at 12-13). The Court cited the deposition testimony of Cary Gray and the Answer filed by

Gray and Ron Murff to former Baylor Director of Football Operations Colin Shillinglaw's

defamation lawsuit, which included "a laundry list" of instances. (Dkt. 230 at 13).

And, again, Baylor again seeks to prevent Lozano from offering the same evidence that

Baylor itself has relied on and purportedly intends to rely on at trial. In support of its Motion for

Summary Judgment, Baylor offered Exhibit 6, "Excerpt from Baylor's Amended Response to Art

Briles Interrogatories.".(Baylor Motion for Summary Judgment Dkt. 204, Ex. 6)  Exhibit A to

Baylor's Responses to Interrogatories describes Pepper Hamilton's review "of actual case handling

…through the lens of specific cases." Exhibit A includes details of five cases involving assaults

that allegedly occurred in 2011, 2012, 2013 and 2014. The review covered the administration and

the athletic department staff's handling of these reports through 2015.

Finally, and importantly, Lozano has alleged fraudulent concealment. Baylor may not limit

Lozano from offering evidence of Baylor employee misconduct that occurred after May 2014.

Indeed, it is employee misconduct that occurred and continued to occur until May 2016 when the

Findings of Fact were released Baylor that provide evidence of fraudulent concealment.

Baylor's Motion in Limine No. 24 should be denied.

### 25. <u>Evidence relating to the May 2016 "Findings of Fact" Document</u>

Without citing a single rule of evidence, Baylor seeks to exclude the Baylor Board of

Regents May 2016 Findings of Fact. Baylor does not identify which of the statements in the 13-

page document it contends are legal conclusions. There are none.

The only statements that even address Title IX a are simply observations that Baylor's

efforts to "*implement*" Title IX were "slow, ad-hoc, diffused and uncoordinated." (Dkt. 214-6).

Absent from the Findings of Fact are any statements that can be construed as legal conclusions

that Baylor *violated* Title IX.  Likewise, Baylor strains to find legal authority to support its argument but finds none. Baylor cites  a footnote in the Fifth Circuit's opinion, *Hoyt v. Lane Constr. Co.*, 927 F.3d 287, 299 n.5 (5th Cir. 2019) for the West headnote proposition that "legal conclusions may not be used as evidentiary admissions." (Dkt. 255-8 at 14).  Actually, in *Hoyt*, the Court considered an issue of improper joinder and in the footnote merely criticized district court's reliance on "its own conclusion that the state court would not grant summary judgment absent no possibility of recovery." *Id*. This case hardly supports Baylor's position here. The remaining two cases are no more helpful:  In *Muccie v. Dailey*, the Montana district court addressed the scope of expert testimony permitted under Rule 702. No. CV-20-66-BU-BMM, 2022 WL 1746755 (D. Mont. May 31, 2022). The court concluded that a purported Title IX  expert's 79-page report in which she "interpreted and applied" specific Title IX requirements and opined that the school violated the statute was inadmissible. *Id*. at * 2. In *Eagleston v. Guido*, the Second Circuit rejected the testimony of a current police commissioner regarding the arrest policies of a former police commissioner – policies about which he admitted he knew nothing about. 41 F.3d 865 (2nd Cir. 1994). The Second Circuit concluded that "the legal insights concerning a policy that may or may not have prevailed before he became Police Commissioner" were not admissible. Neither of these cases involve testimony or documents analogous to the Findings of Fact.

Baylor further contends that the Findings of Fact contain "legal conclusions based Baylor's compliance or noncompliance with the Clery Act the VAWA amendments." Again, Baylor does not identify the purported "legal conclusions."  Again, there are none. A reference to the Violence Against Women Reauthorization Act of 2013 (VAWA) appears only twice. Both times VAWA is mentioned only in passing as part of broader statements regarding Baylor's efforts to "implement" Title IX. (Dkt. 214-6 at pp. 1, 4). The Clery Act is mentioned only once in a general statement:

"As a result, some football coaches and staff abdicated responsibilities under Title IX and Clery."

These statements are simply not legal conclusions that Baylor violated VAWA and the Clery Act.

As the Court has already recognized, Baylor's Findings of Fact are central to Lozano's

case. First, this Court recognized Baylor's release of the Findings of Fact as the accrual date for

Lozano's – and other plaintiffs – claims:

> "[T]he Court finds it plausible that Lozano had no reason to further investigate her heightened risk claim and discover the nature of her injury ***until the release of Baylor's Findings of Fact*** and the subsequent media coverage of 2016."

(Order denying Baylor's Motion for Summary Judgment, Dkt. 240 at 10).

Notably, Baylor **did not object** to the Findings of Fact when Lozano offered the document

as Exhibit 6 in support of her opposition to Baylor's Motion for Summary Judgment. (Dkt. 214).

(Baylor's Objections Dkt. 222). Only now, after more than seven years of boasting about

transparency and insisting that the Regents themselves drafted the 13-page document, does Baylor

attempt to recharacterize the "findings of fact" as "conclusions of law." It is more simple: The

Baylor Regents Findings of Fact are admissions by a party opponent. Again, as the Court has

recognized:

> "[T]wo Baylor Regents both testified they reviewed the Findings of Fact before their release and did not see anything that needed to be revised. (Gray Depo. Dkt. 214-54, at 14-15; Murff Depo. Dkt. 214-55, at 3). In fact, the Regents said the Findings of Fact were "accurate" and "fair" and represented a "full disclosure." (Gray Depo., Dkt. 214-54, at 15; Murff Depo., Dkt, 214-55, at 5).

(Order denying McCaw's Motion for Summary Judgment, Dkt. 232 at 10).  The Findings of Fact

are admissible in their entirety as adopted admissions under Fed. R. Evid.802(d)(2)(B).

The Court repeatedly cited to the Findings of Facts in its orders denying summary judgment

to all three defendants, including quoting facts "related to athletics." (Baylor Order, Dkt. 240 at

6,7,26); (McCaw Order, Dkt. 232 at 2,3, 10); (Briles Order, Dkt. 230 at 10-12). The Findings of

Fact are just that – facts.

      Baylor's Motion in Limine No. 25 should be denied.

**26. <u>Evidence Related to Subsequent Remedial Measures</u>**

      Rule 407 provides, in relevant part, that "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove … culpable conduct." Fed. R. Evid. 407. However, the Fifth Circuit long ago held that evidence of subsequent remedial measures is admissible as "proof of subsidiary issue in this case, such as knowledge of the dangerous condition." *Rozier v. Ford Motor Co*., 573 F.2d 1332, 1342 (5th Cir. 1978). The rule of exclusion is based "on a social policy of encouraging people to take, or least not discouraging them from taking, steps in furtherance of added safety." Invoking the exclusion when "the measure is taken not out of a sense of social responsibility" but because the remedial measure is required in any event by a "superior authority" is "particularly inappropriate." *Rozier*, 573 F.2d at 1343. Homing in on the precise language of the rule as amended in 1997, the Fifth Circuit further narrowed the rule and explained: "The admission of evidence of changes made merely to improve a product, as distinguished from remedial measures that make an 'injury or harm less likely to occur' is not barred by the rule." *Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416 (5th Cir. 2006). Recently, in *Novick v. Shipcom Wireless, Inc*., the Fifth Circuit held that employer's internal audit and reclassification of employees from exempt to nonexempt was not a subsequent remedial measure and was admissible in an action under the Fair Labor Standards Act (FLSA). 946 F.3d 735, 740 (5th Cir. 2020). The Fifth Circuit reasoned: " Because Shipcom is legally obligated to take these measures to comply with the FLSA, excluding evidence of [the plaintiff's] reclassification to nonexempt status would not further a social policy of encouraging employers to correctly classify their employees in the future." *Id.* The same is true of the evidence

of recommendations made by Margolis Healey and Pepper Hamilton Baylor seeks to exclude. Moreover, Baylor has defended itself – and intends to continue to defend itself at trial – by showing "a concerted, institutional effort by Baylor in the 2013-2014 school year – through a task force and engagement of Margolis Healey – to comprehensively address dating violence and sexual violence." (Dkt. 204 at 22).   See also Plaintiff's Response to Baylor Motion in Limine Nos. 1-3.

Baylor's Motion in Limine No. 26 should be denied.

### 27. Opinion Testimony by Undesignated Experts

Agreed so long as the exclusion applies to all parties.

### 28. References to the Golden Rule

Baylor's motion is overbroad. "The use of the Golden Rule argument is improper only to issues of damages. It is not improper when urged on the issue of ultimate liability." *Stokes v. Decambre*, 710 F.2d 1120, 1228 (5th Cir. 1983). *See also, Aikens v. Central Oregon Truck Co. Inc.*, No. 4:20-cv-00567, 2021 WL 4312720 (E.D. Tex. Sept. 22, 2021). Therefore, Baylor's Motion in Limine should be granted only as to argument on the issue of damages.

### 29. Pre-Trial Court Rulings, Including the Ruling on the Motions in Limine

Agreed so long as the exclusion applies to all parties.

### 30. References to Certain Discovery Responses and Objections to Discovery

Agreed so long as the exclusion applies to all parties. Lozano notes that both she and Defendant Briles have identified Baylor's Fourth Amended Answers to Briles Interrogatories and Exhibit A to the Interrogatories as exhibits. Lozano does not intend her agreement for this exclusion to apply to this exhibit.

### 31. Assertions of Privilege During Discovery

Agreed so long as the exclusion is applied to all parties.

**32. Argument Regarding Discovery Disputes or Documents Withheld from Discovery**

Agreed so long as the exclusion is applied to all parties.

**33. Comments about the University's Lawyers or Cost of Defense**

Agreed.

**34. Reference to the Jury Serving as a Vehicle of Social Change**

Baylor's request that the Court preclude Lozano from arguing or suggesting that the jury may use its verdict as a mechanism through which to affect social change or to send a message to other members of the community, including Baylor is overbroad. Lozano is permitted to ask the jury to "send a message with respect to [her] request for punitive damages." *Williams v. McDermott Int'l Inc.*, No. 2:20-CV-00277, 2022 WL 1664552 (W.D. La. May 25, 2022). Baylor's Motion in Limine No. 34 should be denied as it applies to punitive damages.

**35. Counsel's Personal Beliefs During Argument**

Agreed so long as the exclusion is applied to all parties.

**36. Demonstrative Evidence that was not Previously Shown to the University**

Opposed. Demonstrative evidence may created during trial.

**37. Third Party Hearsay in University Student Files**

Baylor seeks wholesale exclusion of a category of documents defined only as "University Student Files." Baylor objects to hearsay in "student files of third-party students, Title IX files, student conduct files or the like." As Baylor acknowledges, the documents appear to be business records and the broad hearsay objections Baylor asserts to their contents are too general and vague. *Cortez v. Burlingame v. Galveston County,* No. 3:18-CV-00183, 2020 WL 2062263 (S.D. Tex. 2020). "Simply screaming 'hearsay' at the top of your lungs without pointing out the alleged hearsay statement is insufficient." *Id*.

Baylor's Motion in Limine No. 37 should be denied and Baylor should be required specifically identify the objectionable statements if and when they are offered.

### 38. Allegations Regarding Chafin's Prior Girlfriend

Citing Rule 404(b), Baylor seeks to exclude evidence, testimony and argument regarding Devin Chafin' impregnating a former girlfriend  or that the prior girlfriend terminated a pregnancy. Rule 404(b) provides that "[e]vidence of any other crime, wrong or act is not admissible to prove a person's character in order to show that on a particular person acted in accordance with the character."  This evidence is not character evidence. This evidence is relevant to show Lozano's state of mind when she made the decision to terminate her own pregnancy and is admissible for that purpose. Baylor's Motion in Limine No. 38 should be denied.

### 39. Allegations of Comment by Former Baylor Regent Richard Willis

Agreed.


Dated:  September 22, 2023                    Respectfully submitted,


                                             */s/ Sheila P. Haddock*
                                             Sheila P. Haddock
                                             Attorney-in-charge
                                             Texas State Bar No. 00790810
                                             Sheila@zalkin.com
                                             Alexander S. Zalkin (*pro hac vice*)
                                             alex@zalkin.com
                                             Irwin M. Zalkin (*pro hac vice*)
                                             irwin@zalkin.com
                                             THE ZALKIN LAW FIRM, P.C.
                                             10590 W Ocean Air Drive, Ste. 125
                                             San Diego CA  92130
                                             Telephone: (858) 259-3011
                                             Facsimile: (858) 259-3015

                                             Zeke O. Fortenberry
                                             Texas State Bar No. 24061361
                                             zeke@fortenberryfirm.com

Fortenberry Firm PLLC
18333 Preston Rd, Suite 375
Dallas, TX 75252
Telephone: (469)626-7373
Facsimile: (469)716-4190

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2023, I electronically filed the foregoing paper with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record in this matter.

*/s/ Sheila P. Haddock*
Sheila P. Haddock
Attorney-in-charge
Texas State Bar No. 00790810
Sheila@zalkin.com
THE ZALKIN LAW FIRM, P.C.
10590 W Ocean Air Drive, Ste. 125
San Diego CA  92130
Telephone: (858) 259-3011
Facsimile: (858) 259-3015

# EXHIBIT A





# NCAA Decision

*August 11, 2021*

Dear Baylor Family:

Since our University was first chartered in 1845, we have strived in every possible way to stay true to our Christian mission and to live by our core convictions, including a commitment to *support, encourage and expect excellence in all undertakings*. Excellence is our expectation at Baylor in all aspects of our University, yet excellence must also come with virtue and integrity.

Today, Baylor University received the NCAA Committee on Infractions' Public Infractions Decision. This is the final step in a more than five-year, cooperative enforcement process that began in 2016. The Committee on Infractions hearing panel could not conclude that Baylor violated NCAA rules when some employees failed to report allegations of and address sexual and interpersonal violence committed on our campus. As part of the NCAA process, the University acknowledged its significant and moral failings related to sexual and interpersonal violence, and we sincerely regret the

actions of a few individuals caused harm to so many. We must remember that the prospect of NCAA penalties pales in comparison to the suffering of the survivors of such horrific assaults.

The NCAA committee did find the University had violated NCAA rules related to impermissible benefits for a student-athlete, the use of a student-host group as impermissible recruiters of student-athletes, and the failure of a former assistant director of football operations to participate in the NCAA investigation process. The NCAA committee classified the case as Level II-standard for the school and Level I-standard for the former assistant director of football operations.

The committee used the Division I membership-approved infractions penalty guidelines to prescribe the following measures:

- Four years of probation.
- A $5,000 fine.
- A reduction to 30 football official visits during the 2021-22 academic year.
- A three-week ban on unofficial visits in football during the 2021-22 academic year.
- A two-week ban on football recruiting communication during the 2021-22 academic year.
- A reduction of football evaluation days by three during fall 2021 and by 10 during spring 2022.
- A five-year show-cause order for the former assistant director of football operations. During that period, any NCAA member school employing him must restrict him from any athletically related duties unless it shows cause why the restrictions should not apply.
- A vacation of all records in which student-athletes competed while ineligible in the 2011 season. The University must provide a written report containing the contests impacted to the NCAA media coordination and statistics staff within 14 days of the public release of the decision.

The University agrees with the enforcement staff and the Committee on Infractions that

violations did occur, and we take full responsibility. Our internal and external legal teams will review the full report and the University will decide on its next steps, if any.  A detailed timeline of Baylor's NCAA process since 2016 can be found at ncaa.web.baylor.edu/timeline.

Baylor is a proud member of the NCAA and of the Big 12 Conference and is committed to sportsmanship, integrity and following the rules. A key aspect of our current University strategic plan is to provide a transformational education for our students: *"At Baylor, learning is more than just what happens in the classroom."* That same principle applies to our growth as a University, as we must learn from our mistakes. While the NCAA process found violations that occurred between 2011 and 2016, we can confidently say Baylor is a much different University today than it was three, five and certainly 10 years ago. We appreciate the NCAA committee's recognition of the University's swift and wide-ranging response several years ago, which demonstrated Baylor's dedication to functioning with integrity, fostering a culture of compliance, and ensuring a commitment to institutional control. We made key personnel transitions in a variety of roles across campus, not solely in Athletics. We implemented a new culture in Athletics and campuswide. We identified and implemented best practices in Title IX policies and procedures. And we demand an ongoing adherence to ethics and accountability from each and every employee.

While today is an important reminder for our University, we are confident in a bright future for Baylor based on integrity and excellence.

Sincerely,

Linda A. Livingstone, Ph.D.
President

Mack B. Rhoades, IV
Vice President and Director of Athletics

## Timeline

# Timeline

Baylor proactively initiated contact with the NCAA regarding potential violations on May 25, 2016, and appeared before the NCAA Committee on Infractions Dec. 14-15, 2020.

**VIEW TIMELINE**

# Press Conference

President Livingstone and Vice President and Director of Athletics Rhoades meet with the media.

**VIDEO: PRESS CONFERENCE**

# NCAA Findings

- NCAA Press Release
- NCAA Report

**GENERAL INFORMATION**     ACADEMICS & RESEARCH     ADMINISTRATION     ADMISSIONS     GATEWAYS FOR

About Baylor

Athletics

Ask Baylor

Bookstore

Calendar

Campus Map

Directory

Give Light

Give to Baylor

Illuminate

News

Pro Futuris

Search

Social Media

Accessibility

Anonymous Reporting

Annual Fire Safety and Security Notice

Cost of Attendance

Digital Privacy

Legal Disclosures

Mental Health Resources

Report It

Title IX

Copyright © Baylor® University. All rights reserved.
Baylor University • Waco, Texas 76798 • 1-800-229-5678

EXHIBIT 3-B McCAW

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

DOLORES LOZANO;                        §
                                       §
                    Plaintiff,         §
                                       §
                                       §   Case No.: 6:16-cv-00403
v.                                     §
                                       §
BAYLOR UNIVERSITY,                     §   Hon. Robert Pitman
ART BRILES, *in his individual capacity,* §
*and*                                  §
IAN McCAW, *in his individual capacity,* §
                                       §
                    Defendants.        §
                                       §
                                       §
_____ §


## PLAINTIFF DOLORES LOZANO'S RESPONSE TO
## DEFENDANT IAN MC CAW'S MOTION IN LIMINE

TO THE HONORABLE JUDGE OF THE COURT:

Plaintiff Dolores Lozano files this her Response to Defendant Baylor University's Motion in Limine and in support shows as follows:

## RESPONSES

**1. Opposed.**

McCaw's Motion in Limine No. 1 begins with a single paragraph 125-word nonsensical run on sentence followed by more than a page of string cites and parentheticals quoting the United States Constitution and the Federal Rules of Civil Procedure. It ends with what appears to be motion to dismiss based on lack of Article III standing. This is not a Motion in Limine. It should be denied.

1

**2. Opposed**.

McCaw seeks to exclude "any mention or reference to other lawsuits, litigation or claims against Baylor University, Ian McCaw or Art Briles." McCaw's s request is too broad. Claims by other women involving allegations of sexual assault, dating violence or student athlete misconduct are relevant to the issues in this case and in fact essential to proving Lozano's heightened risk and negligence claims. Notably, after the filing of the parties' motions in limine, Baylor issued a statement to the media regarding settlement of the 15 Jane Doe cases *(Jane Doe 1 et al v. Baylor Univ.*, No. 6:16-cv-00173-RP):

> We are deeply sorry for anyone connected with the Baylor community who has been harmed by sexual violence. While we can never erase the reprehensible acts of the past, we pray this agreement will allow these 15 survivors to move forward in a supportive manner.

> https://wacotrib.com/ap/sports/baylor-settles-years-long-federal-lawsuit-in-sexual-assault-scandal-that-rocked-baptist-school/article_3306d3b7-dc06-5642-9a4b-f0b30bac0b10.html

Baylor continues to issue press releases to rehabilitate its image to the public and continues to expect that it will not face accountability for its statements. McCaw's Motion in Limine No. 2 should be denied.

**3. Agreed so long as the exclusion applies to all parties.**

**4. Agreed so long as the exclusion applies to all parties.**

**5. Agreed so long as the exclusion applies to all parties.**

**6. Agreed so long as the exclusion applies to all parties.**

**7. Agreed so long as the exclusion applies to all parties.**

**8. Agreed so long as the exclusion applies to all parties.**

**9. Agreed so long as the exclusion applies to all parties.**

**10. Opposed.**

Lozano alleges that Baylor prioritized building and sustaining a successful football program and thereby increasing its revenues over implementing Title IX and protecting the safety of its female students. The evidence McCaw seeks to exclude in this Motion in Limine supports these allegations. *See Birchfield v. Texarkana Memorial Hosp. d/b/a Wadley Hosp.*, 747 S.W.2d 361 (1987)(holding evidence of financial condition of hospital admissible to demonstrate hospital's ability to provide proper facilities). McCaw argues that this evidence is irrelevant and serves only to "improperly inflame and/or prejudice the jury." (Dkt. 251-8 at 6). The mere fact that McCaw believes the evidence is prejudicial is no reason to exclude it. "It is not enough simply to show that the evidence is prejudicial as virtually all evidence is prejudicial or it is not material." *United States v. Clark*, 577 F.3d 273  (5th Cir. 2009).  Moreover, the "situation and the sensibilities of the parties" and the defendant's wealth may be considered as factors in an award of exemplary damages. Texas Pattern Jury Charge 28.C. McCaw's Motion in Limine No. 10 should be denied.

## 11. Opposed.

McCaw seeks to exclude "evidence, testimony and  argument regarding any NCAA Baylor University Public Infractions Decision of August 11, 2021. McCaw first argues the Decision contains hearsay and hearsay within hearsay. McCaw's hearsay challenge fails because the statements referred to in the NCAA report are not hearsay. Rather, the statements are admissions by a party opponent. *See* Fed. R. Evid. 801(d)(2). Admissions by a party opponent are not hearsay if "[t]he statement is offered against a party and is …a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." *Jenkins v. City of San Antonio Fire Dept.*, 12 F.Supp.3d 925 (W.D. Tex. 2014). Any statements made by Baylor employees or trustees to the NCAA in the course of the infractions investigation was made within the scope of their agency or employment. Moreover, Baylor

released a statement and posted a link to the full decision on its website admitting that "[a]s part of the NCAA process, the University acknowledged its significant and moral failings related to sexual and interpersonal violence, and we sincerely regret the actions of a few individuals caused harm to so many." (Exhibit A, https://ncaa.web.baylor.edu).  Baylor stated on its website: "The University agrees with the enforcement staff and the Committee on Infractions that violations did occur, and we take full responsibility." (Exhibit A, https://ncaa.web.baylor.edu). Accordingly, the NCAA decision is further admissible as a party adoption under Fed. R. Evid. 801(2)(B).

Lozano refers to the NCAA decision to emphasize that Baylor has repeatedly relied on the Findings of Fact, the *Shillinglaw* Answer and the underlying emails and text messages in its defense. The NCAA's inclusion of the Findings of Fact in its decision underscores the point. This Court recognized as much in its denial of Baylor's summary judgment. (Dkt. 240 at p. 18). McCaw's Motion in Limine No. 11 should be denied.

**12. Opposed.**

Law enforcement incident reports are not offered for the truth of the matters asserted by the statements within the reports for the purposes of showing notice. The incident reports support Lozano's allegation that Baylor maintained a de facto policy of ignoring misconduct and failing to impose discipline on male students. The Court has recognized as much and cited the police reports. (Order denying McCaw's Motion for Summary Judgment Dkt. 232 at 11). Moreover, Lozano intends to call as witnesses Waco police officers to testify regarding their reports. McCaw's Motion in Limine No. 12 should be denied.

**13. and 14.  Opposed**.

Through Motion in Limine Nos. 22, 23, 24, Baylor seeks to exclude evidence the Court has already determined relevant and admissible – and, notably, evidence that Baylor itself offered

in support of its summary judgment. Baylor essentially attempts to limit the evidence to reports of domestic or dating violence committed by Baylor football players between June 2012 and May 2014 that were known to Devin Chafin. The Court has already rejected Baylor's attempts to unreasonably narrow the evidence.

In response to Defendants Baylor and McCaw's Motion to Dismiss, the Court held that Lozano had sufficiently alleged that "Baylor's practices in handling **student reports of physical and sexual assault by football players** constituted a policy of intentional discrimination and created a heightened risk of physical or sexual assault for female students." Dkt. 105 at 15.

At summary judgment, the Court rejected Baylor's argument that "Lozano cannot rely on an amalgam of sexual assaults, incidents of male-on-male violence, and other dissimilar acts" and that she "can only win her claim if she shows similar incidents of assaults occurring before hers." (Order Denying Baylor MSJ, Dkt. 240 at 20). The Court found "there is no such requirement." (Dkt. 240 at 20). Citing the Findings of Fact, the Court concluded that "Lozano has presented evidence that she suffered injuries as a result of Baylor's policy of deliberate indifference to **reports of assaults**." (Dkt. 240 at 18). The Court noted that "it also appears that Baylor had superior knowledge of the risk posed by Chafin given Lozano's **evidence of Baylor's previous knowledge of other assaults by football players, the football program's response to those assaults**, and Chafin's first and second assaults of Lozano." (Dkt, 240 at 22, n.3)

The Court further relied on other incidents in denying McCaw's motion for summary judgment:

> In 2013, McCaw was aware of assaults by football players because he was involved in handling one of them as shown by text messages and a written reprimand from McCaw. (*See* McCaw Texts, Dkt. 214-10; McCaw memo, Dkt. 214-13). That incident of assault followed **three previous reports to the Waco Police Department involving the same player for violent behavior**. (Police reports, Dkts. 214-32,33,35) **For the 2013-14 school year, Baylor logged charges of misconduct for**

***27 football players, including sexual assaults***. (Data, Dkts. 214-28, 29).

(Order Denying McCaw's Motion for Summary Judgment,, Dkt. 232- at 11). The Court concluded that reports of misconduct ranging from drug and alcohol arrests to assaults, to domestic abuse/dating violence to rape are attending circumstances that made Chafin's acts of violence foreseeable. (Dkt. 232 at 12)

And, denying summary judgment for Briles, the Court pointed to evidence of "Briles' acts of concealment and failure to report violence and sexual violence." (Dkt. 230 at 12-13). The Court cited the deposition testimony of Cary Gray and the Answer filed by Gray and Ron Murff to former Baylor Director of Football Operations Colin Shillinglaw's defamation lawsuit, which included "a laundry list" of instances. (Dkt. 230 at 13).

And, again, Baylor and McCaw seek to prevent Lozano from offering the same evidence they have relied on and purportedly intend to rely on at trial. In support of its Motion for Summary Judgment, Baylor offered Exhibit 6, "Excerpt from Baylor's Amended Response to Art Briles Interrogatories" along with Exhibit A to the Response. (Dkt.202, Ex.6). Exhibit A to Baylor's Response describes Pepper Hamilton's review "of actual case handling …through the lens of specific cases." Exhibit A includes details of five cases involving assaults that allegedly occurred in 2011, 2012, 2013 and 2014. The review covered the administration and the athletic department staff's handling of these reports through 2015. With regard to McCaw, the Court has already specifically rejected his argument that evidence drawn from 2015 is irrelevant, noting that McCaw himself offered such evidence. (Order denying McCaw's Motion for Summary Judgment, Dkt. 232 at 10).

Finally, and importantly, Lozano has alleged fraudulent concealment. Baylor may not limit Lozano from offering evidence of Baylor employee misconduct that occurred after May 2014.

Indeed, it is employee misconduct that occurred and continued to occur until May 2016 when the Findings of Fact were released Baylor that provide evidence of fraudulent concealment.

McCaw's Motion in Limine Nos. 13and 14 should be denied.

### 15. Opposed

Without citing a single rule of evidence, McCaw seeks to exclude the Baylor Board of Regents May 2016 Findings of Fact. McCaw does not identify which of the statements in the 13-page document it contends are legal conclusions. There are none.

The only statements that even address Title IX a are simply observations that Baylor's efforts to "*implement*" Title IX were "slow, ad-hoc, diffused and uncoordinated." (Dkt. 214-6). Absent from the Findings of Fact are any statements that can be construed as legal conclusions that Baylor *violated* Title IX.   Likewise, McCaw strains to find legal authority to support its argument but finds none. McCaw cites  a footnote in the Fifth Circuit's opinion, *Hoyt v. Lane Constr. Co.*, 927 F.3d 287, 299 n.5 (5ᵗʰ Cir. 2019) for the West headnote proposition that "legal conclusions may not be used as evidentiary admissions." (Dkt. 255-8 at 14).   Actually, in *Hoyt*, the Court considered an issue of improper joinder and in the footnote merely criticized district court's reliance on "its own conclusion that the state court would not grant summary judgment absent no possibility of recovery." *Id*. This case hardly supports Hoyt's position here. The remaining two cases are no more helpful:  In *Muccie v. Dailey*, the Montana district court addressed the scope of expert testimony permitted under Rule 702. No. CV-20-66-BU-BMM, 2022 WL 1746755 (D. Mont. May 31, 2022). The court concluded that a purported Title IX  expert's 79-page report in which she "interpreted and applied" specific Title IX requirements and opined that the school violated the statute was inadmissible. *Id*. at * 2. In *Eagleston v. Guido*, the Second Circuit rejected the testimony of a current police commissioner regarding the arrest policies of a

former police commissioner – policies about which he admitted he knew nothing about. 41 F.3d 865 (2nd Cir. 1994). The Second Circuit concluded that "the legal insights concerning a policy that may or may not have prevailed before he became Police Commissioner" were not admissible. Neither of these cases involve testimony or documents analogous to the Findings of Fact.

McCaw further contends that the Findings of Fact contain "legal conclusions based Baylor's compliance or noncompliance with the Clery Act the VAWA amendments." Again, McCaw does not identify the purported "legal conclusions."  Again, there are none. A reference to the Violence Against Women Reauthorization Act of 2013 (VAWA) appears only twice. Both times VAWA is mentioned only in passing as part of broader statements regarding Baylor's efforts to "implement" Title IX. (Dkt. 214-6 at pp. 1, 4). The Clery Act is mentioned only once in a general statement: "As a result, some football coaches and staff abdicated responsibilities under Title IX and Clery." These statements are simply not legal conclusions that Baylor violated VAWA and the Clery Act.

As the Court has already recognized, Baylor's Findings of Fact are central to Lozano's case. First, this Court recognized Baylor's release of the Findings of Fact as the accrual date for Lozano's – and other plaintiffs – claims:

> [T]he Court finds it plausible that Lozano had no reason to further investigate her heightened risk claim and discover the nature of her injury **until the  release of Baylor's Findings of Fact** and the subsequent media coverage of 2016.

(Order denying Baylor's Motion for Summary Judgment, Dkt. 240 at 10).

> Lozano plausibly alleges that she could not have discovered her negligence claims against Baylor and McCaw **until the Pepper Hamiton Findings of Fact were published.**

(Order denying McCaw's Motion for Summary Judgment, Dkt, 232 at 6).

Notably, neither Baylor nor McCaw objected to the Findings of Fact when Lozano offered

the document in support of her oppositions to their motions for summary judgment. (Dkt. 214).

Only now, after more than seven years of Baylor's boasting about transparency and insisting that

the Regents themselves drafted the 13-page document, do the defendants attempt to recharacterize

the "findings of fact" as "conclusions of law." It is more simple: The Baylor Regents Findings of

Fact are admissions by a party opponent. Again, as the Court has recognized:

> [T]wo Baylor Regents both testified they reviewed the Findings of Fact before
> their release and did not see anything that needed to be revised. (Gray Depo. Dkt.
> 214-54, at 14-15; Murff Depo. Dkt. 214-55, at 3). In fact, the Regents said the
> Findings of Fact were "accurate" and "fair" and represented a "full disclosure."
> (Gray Depo., Dkt. 214-54, at 15; Murff Depo., Dkt, 214-55, at 5).

(Order denying McCaw's Motion for Summary Judgment, Dkt. 232 at 10).  The Findings of Fact

are admissible in their entirety as adopted admissions under Fed. R. Evid.802(d)(2)(B).

The Court repeatedly cited to the Findings of Facts in its orders denying summary judgment

to all three defendants, including quoting facts "related to athletics." (Baylor Order, Dkt. 240 at

6,7,26); (McCaw Order, Dkt. 232 at 2,3, 10); Briles Order, Dkt. 230 at 10-12). The Findings of

Fact are just that – facts.

McCaw's Motion in Limine No. 15 should be denied.

**16. Agreed so long as the exclusion applies to all parties.**


Dated:  September 22, 2023                        Respectfully submitted,

                                                  */s/ Sheila P. Haddock*
                                                  Sheila P. Haddock
                                                  Attorney-in-charge
                                                  Texas State Bar No. 00790810
                                                  Sheila@zalkin.com
                                                  Irwin M. Zalkin (*pro hac vice*)
                                                  irwin@zalkin.com
                                                  THE ZALKIN LAW FIRM, P.C.
                                                  10590 W Ocean Air Drive, Ste. 125
                                                  San Diego CA  92130

Telephone: (858) 259-3011
Facsimile: (858) 259-3015

Zeke O. Fortenberry
Texas State Bar No. 24061361
zeke@fortenberryfirm.com
Fortenberry Firm PLLC
18333 Preston Rd, Suite 375
Dallas, TX 75252
Telephone: (469)626-7373
Facsimile: (469)716-4190

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 22, 2023, I electronically filed the foregoing paper with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record in this matter.

*/s/ Sheila P. Haddock*
Sheila P. Haddock
Attorney-in-charge
Texas State Bar No. 00790810
Sheila@zalkin.com
THE ZALKIN LAW FIRM, P.C.
10590 W Ocean Air Drive, Ste. 125
San Diego CA  92130
Telephone: (858) 259-3011
Facsimile: (858) 259-3015

EXHIBIT A



## NCAA Decision

 

# NCAA Decision

*August 11, 2021*

Dear Baylor Family:

Since our University was first chartered in 1845, we have strived in every possible way to stay true to our Christian mission and to live by our core convictions, including a commitment to *support, encourage and expect excellence in all undertakings*. Excellence is our expectation at Baylor in all aspects of our University, yet excellence must also come with virtue and integrity.

Today, Baylor University received the NCAA Committee on Infractions' Public Infractions Decision. This is the final step in a more than five-year, cooperative enforcement process that began in 2016. The Committee on Infractions hearing panel could not conclude that Baylor violated NCAA rules when some employees failed to report allegations of and address sexual and interpersonal violence committed on our campus. As part of the NCAA process, the University acknowledged its significant and moral failings related to sexual and interpersonal violence, and we sincerely regret the

actions of a few individuals caused harm to so many. We must remember that the prospect of NCAA penalties pales in comparison to the suffering of the survivors of such horrific assaults.

The NCAA committee did find the University had violated NCAA rules related to impermissible benefits for a student-athlete, the use of a student-host group as impermissible recruiters of student-athletes, and the failure of a former assistant director of football operations to participate in the NCAA investigation process. The NCAA committee classified the case as Level II-standard for the school and Level I-standard for the former assistant director of football operations.

The committee used the Division I membership-approved infractions penalty guidelines to prescribe the following measures:

- Four years of probation.
- A $5,000 fine.
- A reduction to 30 football official visits during the 2021-22 academic year.
- A three-week ban on unofficial visits in football during the 2021-22 academic year.
- A two-week ban on football recruiting communication during the 2021-22 academic year.
- A reduction of football evaluation days by three during fall 2021 and by 10 during spring 2022.
- A five-year show-cause order for the former assistant director of football operations. During that period, any NCAA member school employing him must restrict him from any athletically related duties unless it shows cause why the restrictions should not apply.
- A vacation of all records in which student-athletes competed while ineligible in the 2011 season. The University must provide a written report containing the contests impacted to the NCAA media coordination and statistics staff within 14 days of the public release of the decision.

The University agrees with the enforcement staff and the Committee on Infractions that

violations did occur, and we take full responsibility. Our internal and external legal teams will review the full report and the University will decide on its next steps, if any.  A detailed timeline of Baylor's NCAA process since 2016 can be found at ncaa.web.baylor.edu/timeline.

Baylor is a proud member of the NCAA and of the Big 12 Conference and is committed to sportsmanship, integrity and following the rules. A key aspect of our current University strategic plan is to provide a transformational education for our students: *"At Baylor, learning is more than just what happens in the classroom."* That same principle applies to our growth as a University, as we must learn from our mistakes. While the NCAA process found violations that occurred between 2011 and 2016, we can confidently say Baylor is a much different University today than it was three, five and certainly 10 years ago. We appreciate the NCAA committee's recognition of the University's swift and wide-ranging response several years ago, which demonstrated Baylor's dedication to functioning with integrity, fostering a culture of compliance, and ensuring a commitment to institutional control. We made key personnel transitions in a variety of roles across campus, not solely in Athletics. We implemented a new culture in Athletics and campuswide. We identified and implemented best practices in Title IX policies and procedures. And we demand an ongoing adherence to ethics and accountability from each and every employee.

While today is an important reminder for our University, we are confident in a bright future for Baylor based on integrity and excellence.

Sincerely,

Linda A. Livingstone, Ph.D.
President

Mack B. Rhoades, IV
Vice President and Director of Athletics

## Timeline



# Timeline

Baylor proactively initiated contact with the NCAA regarding potential violations on May 25, 2016, and appeared before the NCAA Committee on Infractions Dec. 14-15, 2020.

**VIEW TIMELINE**

## Press Conference

President Livingstone and Vice President and Director of Athletics Rhoades meet with the media.

**VIDEO: PRESS CONFERENCE**

## NCAA Findings

- **NCAA Press Release**
- **NCAA Report**

**GENERAL INFORMATION**      ACADEMICS & RESEARCH      ADMINISTRATION      ADMISSIONS      GATEWAYS FOR

About Baylor

Athletics

Ask Baylor

Bookstore

Calendar

Campus Map

Directory

Give Light

Give to Baylor

Illuminate

News

Pro Futuris

Search

Social Media

Accessibility

Anonymous Reporting

Annual Fire Safety and Security Notice

Cost of Attendance

Digital Privacy

Legal Disclosures

Mental Health Resources

Report It

Title IX

Copyright © Baylor® University. All rights reserved.

Baylor University • Waco, Texas 76798 • 1-800-229-5678

EXHIBIT 3-C BRILES

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| DOLORES LOZANO; | § | |
| | § | |
| Plaintiff, | § | |
| | § | Case No.: 6:16-cv-00403 |
| v. | § | |
| | § | |
| BAYLOR UNIVERSITY, | § | Hon. Robert Pitman |
| ART BRILES, *in his individual capacity,* | § | |
| *and* | § | |
| IAN McCAW, *in his individual capacity,* | § | |
| | § | |
| Defendants. | § | |
| | § | |

**PLAINTIFF DOLORES LOZANO'S RESPONSE TO**
**DEFENDANT ART BRILES' MOTION TO EXCLUDE**
**OR, IN THE ALTERNATIVE, MOTION IN LIMINE**

TO THE HONORABLE JUDGE OF THE COURT:

Plaintiff Dolores Lozano files this her Response to Defendant Art Briles' Motion to Exclude or in the Alternative Motion in Limine and in support shows as follows:

**RESPONSES**

1. **News Media Articles or Reports Regarding Briles, the "Baylor Sexual Assault Scandal," and Plaintiff's Allegation**

The request to exclude evidence of or reference to all news articles or reports published by any media outlet "regarding Briles, the "Baylor Sexual Assault Scandal," and Plaintiff's Allegations" is overbroad and premature. While as a general rule, newspaper articles are hearsay, they may be admissible under an exception to the hearsay rule. For example, the articles may be admitted to show notice. *See Roque v. Harvel*, 1:17-CV-932-LY-SH, 2019 WL 5265292, *10

1

(W.D. Tex. Oct. 16, 2019)(admitting newspaper articles to show the City of Austin had notice of complaints of discriminatory policing and excessive use of force)(collecting cases). Cf. *United States v. Chavis*, 772 F..2d 100, 105 (5th Cir. 1985)(holding Texas Attorney General consumer protection complaint files were admissible as proof of notice to company). To the extent the articles or reports include statements by Baylor, Briles or McCaw, they are not hearsay and may be admitted as admissions by a party opponent. *See Cole GP CCPT II, LLC v. Kenlan Development*, *LLC*, 2009 WL 87416 (N.D. Miss. Jan.12, 2009)(finding newspaper article citing comments by a partner in the defendant company was not hearsay under Fed. R. Evid. 801(d)(2)). Briles' Motion in Limine No.1 should be denied.

### 2. Hearsay Statements of Devin Chafin

Briles' effort to exclude wholesale all statements by Devin Chafin as hearsay is improper. Briles makes the bold assertion that "[a]ny conversations Plaintiff had with Chafin are hearsay to which no exclusion or exemption applies, and should be excluded." (Dkt.253-9 at 2). Unless Briles identifies the specific statements and the context in which the statements were made, the Court is unable to make a determination. Depending on the content and the context of the statement, exceptions to the hearsay rule may in fact apply. First, evidence introduced to prove merely that notice was given is not offered to prove the truth of the matter asserted therein and, therefore, is not hearsay. *United States v. Cent. Gulf Lines, Inc*., 747 F.2d 315, 319 (5th Cir. 1984). Lozano may testify as to Chafin's statements to her that he told Baylor coaches about the assaults not to prove the truth of the matter asserted but to show notice and to show that Lozano *believed* that Baylor coaches and administrators were aware of the assaults. Next, Chafin's statements about the assaults, along with the other statements about his misconduct, are statements against interest, which are excepted from the hearsay rule under FED. R. OF EVID. 804(b)(3). Other statements could

be present sense impressions excepted from the hearsay rule under FED. R. EVID. 803(1). Briles' Motion in Limine No. 2 should be denied. Any hearsay objections should be raised at the appropriate time.

### 3. Hearsay Statements Regarding Chafin's Alleged Pre-College Behavioral Issues.

Briles seeks to exclude an email exchange between a teacher in Devin Chafin's hometown alerting Art Briles to his drug use in the Spring of 2012 just before he enrolled at Baylor. Although Baylor argues the email exchange is not relevant "to any issue of consequence," it is relevant and this Court has already recognized as much:

> ***In fact, the football coaches were on notice of his potential substance abuse back in 2012.***(Email to Briles from Chafin's teacher, Dkt. 214-22).

(Dkt. 232 at 12).

Briles thanked the woman for the information and assured her the athletic staff would look into immediately. The email exchange is not hearsay. It is not offered for the truth of the matter asserted but rather to show notice. Again, this evidence is relevant to and is consistent with the Baylor football program's practice of overlooking misconduct. Briles' Motion in Limine No. 3should be denied as to the email.

### 4. Evidence of Chafin's Citations, Arrests, or Criminal Convictions

Briles seeks to exclude evidence, testimony, and argument regarding three instances in which Devin Chafin was arrested or convicted of drug or alcohol offenses. In support of this motion in limine, Baylor cites Rule 401, 402, 403, 404, 608 and 609.  As a threshold matter, Lozano does not intend to offer Chafin's criminal history as character evidence under Rule 608 or for the purpose of impeachment under Rule 609. Likewise, Lozano does not intend to offer Chafin's criminal history of alcohol related offenses as character evidence under Rule 404 to establish a propensity to commit acts of violence. Rather, Lozano maintains this evidence shows

that Baylor, Baylor's athletic department, and Baylor's football program, including Briles, failed to impose discipline on male student athletes and establishes Baylor's de facto policy that male student athletes were above the rules. Baylor's response to Chafin's offenses is consistent with its response – or lack of response – to myriad other offenses committed by athletes. Further, this evidence shows that Briles was aware of Chafin's misconduct. This Court has recognized that Chafin's offenses were in fact relevant to Lozano's claim:

> For the 2013-2014 school year, Baylor logged charges of misconduct for 27 football players, including sexual assaults. ***Specific to Chafin, when he was arrested in Oklahoma in 2016 for having drugs and an open container of alcohol in his car, Briles said that it was "Chafin's first arrest in over a four-year period," which he knew was not true.*** (Briles Depo, Dkt. 214-47)

(Dkt. 232 at 11-12). Briles' Motion in Limine No. 4 should be denied.

### 5. Evidence of student misconduct incidents that are not similar to the assaults experienced by Plaintiff.

Baylor seeks to exclude evidence the Court has already determined relevant and admissible – and, notably, evidence that Baylor and McCaw offered in support of their motions for summary judgment and that Briles indicates he plans to rely on at trial.

In response to Defendants Baylor and McCaw's Motion to Dismiss, the Court held that Lozano had sufficiently alleged that "Baylor's practices in handling ***student reports of physical and sexual assault by football players*** constituted a policy of intentional discrimination and created a heightened risk of physical or sexual assault for female students." Dkt. 105 at 15.

At summary judgment, the Court rejected Baylor's argument that "Lozano cannot rely on an amalgam of sexual assaults, incidents of male-on-male violence, and other dissimilar acts" and that she "can only win her claim if she shows similar incidents of assaults occurring before hers." (Order Denying Baylor MSJ, Dkt. 240 at 20). The Court found "there is no such requirement." (Dkt. 240 at 20). Citing the Findings of Fact, the Court concluded that "Lozano has presented

4

evidence that she suffered injuries as a result of Baylor's policy of deliberate indifference to *reports of assaults*." (Dkt. 240 at 18). The Court noted that "it also appears that Baylor had superior knowledge of the risk posed by Chafin given Lozano's *evidence of Baylor's previous knowledge of other assaults by football players, the football program's response to those assaults*, and Chafin's first and second assaults of Lozano." (Order Denying Baylor's Motion for Summary Judgment, Dkt. 240 at 22, n.3)

The Court further relied on other incidents in denying McCaw's motion for summary judgment:

> In 2013, McCaw was aware of assaults by football players because he was involved in handling one of them as shown by text messages and a written reprimand from McCaw. (*See* McCaw Texts, Dkt. 214-10; McCaw memo, Dkt. 214-13). That incident of assault followed *three previous reports to the Waco Police Department involving the same player for violent behavior*. (Police reports, Dkts. 214-32,33,35) *For the 2013-14 school year, Baylor logged charges of misconduct for 27 football players, including sexual assaults*. (Data, Dkts. 214-28, 29).

And, denying summary judgment for Briles, the Court pointed to evidence of "Briles' acts of concealment and failure to report violence and sexual violence." (Dkt. 230 at 12-13). The Court cited the deposition testimony of Cary Gray and the Answer filed by Gray and Ron Murff to former Baylor Director of Football Operations Colin Shillinglaw's defamation lawsuit, which included "a laundry list" of instances. (Dkt. 230 at 13).

Briles seeks to prevent Lozano from offering the same evidence that Baylor relied on and that he himself purportedly intends to rely on at trial. In support of its Motion for Summary Judgment, Baylor offered Exhibit 6, "Excerpt from Baylor's Amended Response to Art Briles Interrogatories" along with Exhibit A to the Response. (Dkt. 204, Ex. 6) Exhibit A to Baylor's Response describes Pepper Hamilton's review "of actual case handling …through the lens of specific cases." Exhibit A includes details of five cases involving assaults that allegedly occurred in 2011, 2012, 2013 and 2014. The review covered the administration and the athletic department

staff's handling of these reports through 2015. Briles includes the same documents on his exhibit list. (Dkt. 253-4, Exhibit No. 4).

Finally, Briles' argument that "sexual misconduct and dating violence are factually and legally distinct" is misplaced. This is not a premises liability case. Briles' liability for negligence is analyzed under Texas' multi-factor duty test, which includes consideration of the "attending circumstances." *Stanfield v. Neubaum*, 484 S.W.3d 90, 97 (Tex. 2016). The Court has already concluded that reports of misconduct ranging from drug and alcohol arrests to assaults, to domestic abuse/dating violence to rape are attending circumstances that made Chafin's acts of violence foreseeable. (Order Denying McCaw's Motion for Summary Judgment, Dkt. 232 at 12). And with respect to Baylor, the Court has concluded that Title IX's prohibition against discrimination on the basis of sex includes sexual harassment, sexual assault and dating violence.

Briles' Motion in Limine No. 5 should be denied.

### 6. Undisclosed Evidence and Witnesses

This Motion in Limine is compound, overbroad and confusing.

To the extent Defendant Briles seeks to exclude Plaintiff from mentioning, referencing or offering evidence that was disclosed by other parties, she objects. Plaintiff is not limited to her own disclosures.

Next, Briles seeks to improperly limit Plaintiff's evidence regarding her "losses or damages" to "those specifically disclosed in her discovery responses" and mistakenly writes: "Plaintiff [sic] should not permit Plaintiff to introduce evidence or testimony that is contrary to Plaintiff's written discovery responses." (Dkt. 253-9 at 7). To the extent Briles suggests that Plaintiff was required to quantify her losses or provide a calculation of her damages in her discovery responses, Briles is wrong. While Rule 26(a)(1)(A)(iii) of the Federal Rules of Civil

6

Procedure requires parties to disclose a "computation of each category of damages claimed by the disclosing party,  the Fifth Circuit has found that some compensatory damages "are necessarily vague and are generally considered a fact issue for the jury" and "may not be amenable to kind of calculation disclosure contemplated by Rule 26(a)(1)(C).  *Williams v. Trader Pub.Co.*, 218 F.3d 481, 486 n.3 (5th Cir. 2000). Although general damages are not always quantifiable, the non-disclosing party is entitled to notice of the category of damages sought and evidence upon which the same will be based. *Meeks v. United States*, No. SA-14-CA-356-OLG, 2015 WL 12657105 (W.D. Tex. Oct. 16, 2015). When a plaintiff does not disclose a specific amount sought for general damages during discovery but is not seeking to "quantify her damages at trial with a previously undisclosed dollar value," a plaintiff is not foreclosed from seeking damages at trial and asking the finder of fact to fix the amount of non-economic damages. *Merrill v. Waffle House*, 227 F.R.D. 467, 470 (N.D. Tex. 2005).

To the extent that Briles asks the Court to exclude testimony from undisclosed expert witnesses, Plaintiff agrees – so long as the exclusion applies to all parties.

Finally, because Briles' request that the Court exclude evidence of "any other alleged problems, complaints or lawsuits"  is vague and overbroad, Plaintiff objects.

**7.  Requests to Produce or Agree**

Agreed, so long as the exclusion applies to all parties.

**8.  Suggestions Regarding Liability Insurance**

Agreed.

**9.  Settlement Negotiations or Offers**

Agreed, so long as the exclusion applies to all parties.

**10. References to Certain Discovery Responses or Objections to Discovery**

**11. Assertions of Privilege During Discovery**

Agreed, so long as the exclusion applies to all parties.

**12. Argument Regarding Discovery Disputes or Documents Withheld from Discovery**

Agreed, so long as the exclusion applies to all parties.

**13. Comments about Briles Lawyer's or Costs of Defense**

Agreed, so long as the exclusion applies to all parties.

**14. References to the Jury Serving as a Vehicle for Social Change**

**15. Counsel's Personal Beliefs During Argument**

Agreed, so long as the exclusion applies to all parties.

**16. Demonstrative evidence that was not previously shown to Briles**

Opposed. Demonstrative evidence may be created during the trial.


Dated:  September 22, 2023                    Respectfully submitted,


                                              */s/ Sheila P. Haddock*
                                              Sheila P. Haddock
                                              Attorney-in-charge
                                              Texas State Bar No. 00790810
                                              Sheila@zalkin.com
                                              Irwin M. Zalkin (*pro hac vice*)
                                              irwin@zalkin.com
                                              THE ZALKIN LAW FIRM, P.C.
                                              10590 W Ocean Air Drive, Ste. 125
                                              San Diego CA  92130
                                              Telephone: (858) 259-3011
                                              Facsimile: (858) 259-3015

                                              Zeke O. Fortenberry
                                              Texas State Bar No. 24061361
                                              zeke@fortenberryfirm.com
                                              Fortenberry Firm PLLC
                                              18333 Preston Rd, Suite 375
                                              Dallas, TX 75252
                                              Telephone: (469)626-7373
                                              Facsimile: (469)716-4190

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2023, I electronically filed the foregoing paper with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record in this matter.

*/s/ Sheila P. Haddock*
Sheila P. Haddock
Attorney-in-charge
Texas State Bar No. 00790810
Sheila@zalkin.com
THE ZALKIN LAW FIRM, P.C.
10590 W Ocean Air Drive, Ste. 125
San Diego CA  92130
Telephone: (858) 259-3011
Facsimile: (858) 259-3015