# EXHIBIT A



# BAYLOR UNIVERSITY BOARD OF REGENTS

## FINDINGS OF FACT

### Summary

In August 2015, Baylor University engaged Pepper Hamilton to conduct an independent and external review of Baylor University's institutional response to Title IX and related compliance issues through the lens of specific cases.  Following an intensive investigation, Pepper provided the Board of Regents with a detailed and comprehensive presentation of its findings and recommendations.  Pepper's findings of fact, as set forth in greater detail in this statement, reflect a fundamental failure by Baylor to implement Title IX of the Education Amendments of 1972 (Title IX) and the Violence Against Women Reauthorization Act of 2013 (VAWA).  Pepper found that Baylor's efforts to implement Title IX were slow, ad hoc, and hindered by a lack of institutional support and engagement by senior leadership.  Based on a high-level audit of all reports of sexual harassment or violence for three academic years from 2012-2013 through 2014-2015, Pepper found that the University's student conduct processes were wholly inadequate to consistently provide a prompt and equitable response under Title IX, that Baylor failed to consistently support complainants through the provision of interim measures, and that in some cases, the University failed to take action to identify and eliminate a potential hostile environment, prevent its recurrence, or address its effects for individual complainants or the broader campus community.  Pepper also found examples of actions by

1

University administrators that directly discouraged complainants from reporting or participating in student conduct processes, or that contributed to or accommodated a hostile environment. In one instance, those actions constituted retaliation against a complainant for reporting sexual assault. In addition to broader University failings, Pepper found specific failings within both the football program and Athletics Department leadership, including a failure to identify and respond to a pattern of sexual violence by a football player, to take action in response to reports of a sexual assault by multiple football players, and to take action in response to a report of dating violence. Pepper's findings also reflect significant concerns about the tone and culture within Baylor's football program as it relates to accountability for all forms of athlete misconduct.

### Overview of Engagement

In August 2015, Baylor University engaged Pepper Hamilton LLP (Pepper) to conduct an independent and external review of Baylor University's institutional response to Title IX and related compliance issues through the lens of specific cases. A Special Committee of the Board of Regents, on behalf of the University, accepted the President and Chancellor's recommendation to engage Pepper in order to ensure objectivity, and Pepper was provided with unfettered access to personnel and data. Pepper's review was detailed, thorough and rigorous. While keeping within the scope of the engagement, Pepper engaged in an open exploration of the issues with no limitation by the University. Pepper conducted document-based interviews to ensure accuracy, integrity and efficiency, and Pepper's findings and recommendations are based on the law, related authority, facts and reasonable inferences from the facts.

Pepper reviewed emails, mobile device data, and documents from current and former Baylor employees. Pepper's review of documents included current and prior policies and

2

procedures, Judicial Affairs and Title IX files related to specific reports and investigations, relevant trial transcripts, personnel files, student records, training and educational materials, prior internal and external audits, Title IX Task Force materials, and other relevant and available information.  In addition to an exhaustive review of data, Pepper interviewed more than 65 individuals, including current employees, former employees, current students, and former students.  The current and former students included individuals who identified as victims/survivors of sexual assault or dating violence.  Pepper interviewed witnesses across multiple departments, including the President's Office, Executive Council, Student Life, Judicial Affairs (now called Student Conduct Administration), the Office of General Counsel, the Athletics Department, the football program, Athletics Compliance, Risk Management, Human Resources, the Counseling Center, Health Services, Baylor University Police Department, the Title IX Office, Faculty Athletic Representatives, the Admissions Office and outside counsel. Many individuals were interviewed more than once to allow for a full and fair opportunity to reconcile and synthesize information in the context of documents and available information from other interviews.

Over the course of the engagement, Pepper provided the Special Committee with detailed and specific information and regular updates.  Earlier this  month, Pepper provided the full Board of Regents with a detailed and comprehensive presentation outlining Pepper's findings of fact and recommendations.  This statement contains the salient findings, which are being shared publicly to reflect transparency and accountability.  The findings discussed below occurred in one or more of the cases reviewed.  This statement also contains Pepper's recommendations, which have been adopted by the Board.

3

## Failure to Prioritize, Recognize, Implement and Resource Title IX

Baylor failed to effectively implement Title IX in the wake of the U.S.
Department of Education's Office for Civil Rights (OCR) April 4, 2011 "Dear Colleague
Letter," the passage of the Violence Against Women Reauthorization Act of 2013 (VAWA), and
related authority and guidance. While individual administrators identified emerging and
evolving Title IX and VAWA requirements, the University as a whole failed to prioritize Title
IX implementation. Implementation efforts were slow, ad hoc, diffuse, and uncoordinated.
Senior leadership failed to recognize the significance of the national context, including evolving
guidance from OCR and high profile examples of institutional failures at peer institutions. As a
result, Baylor lacked the sufficient infrastructure and an informed policy. The administration
instead relied upon existing personnel until November 2014, and existing processes (the Student
Code of Conduct and Civil Rights Policy) until August 2015, when Baylor's Sex Discrimination,
Sexual Violence, and Sexual Harassment Policy was adopted. The administrators tasked with
implementing Title IX prior to November of 2014 had a limited understanding of the dynamics
of sexual violence and existing barriers to reporting on Baylor's campus, including the impact of
other campus policies regarding the prohibition of alcohol and extra-marital sexual intercourse.
The insufficient dedication of resources and support to the University's Title IX function led to
limited visibility of Title IX on campus.

Baylor's institutional response failed to integrate Title IX and VAWA
requirements. Prior to the 2014-2015 academic year, Baylor failed to provide training and
education to students; failed to identify and train responsible employees under Title IX; failed to
provide clear information about reporting options and resources on campus; failed to have a
centralized process for ensuring that all reports reached the Title IX Coordinator; failed to

4

impose appropriate interim measures in many cases; failed to appropriately evaluate and balance institutional safety and Title IX obligations against a complainant's request for anonymity or that no action/investigation be pursued against; failed to conduct prompt, equitable, adequate, and reliable investigations; failed to give complainants access to full range of procedural options under the policy; and failed to take sufficient action to identify, eliminate, prevent and address a potential hostile environment in individual cases. Institutional failures at every level of Baylor's administration directly impacted the response to individual cases and the Baylor community as a whole.

## Many Factors Impeded Effective Implementation of Title IX

Baylor's senior leadership lacked consistent or meaningful engagement in the University's Title IX functions. The composition and functioning of the Executive Council did not provide effective leadership for integration of Title IX compliance responsibilities across all University functions. The University lacked a proactive compliance function that would have identified the nature of the risks attendant to sexual and gender-based harassment and violence and interpersonal violence, the likelihood of occurrence, and the adequacy of existing controls to ensure an informed and effective institutional response. In addition to their many other responsibilities, administrators assumed elements of the Title IX function on an ad hoc basis, which impeded timely implementation of rapidly evolving Title IX and VAWA mandates. The University did not maintain systems or protocols to coordinate information or keep centralized records necessary to fulfill compliance mandates, and the University did not carefully review roles and responsibilities of Title IX implementers to assure that there was no actual or perceived conflict within the assigned multiple roles held by many Title IX administrators.

5

The University did not provide sufficient institutional support for Title IX functions.  Prior to November 2014, the Title IX Coordinator position was assigned to senior administrators, each of whom already had a full profile of professional responsibilities.  The administrators in those roles lacked the necessary training, experience and frame of reference to meaningfully implement Title IX responsibilities.  They also lacked the necessary time, resources or infrastructure to meaningfully implement Title IX responsibilities.  Moreover, when the University hired a full-time Title IX Coordinator in November 2014, the University underestimated the level of infrastructure and resources that would be necessary for successful implementation.  The Title IX Coordinator did not have sufficient institutional support from senior leadership, or experienced and trained supervision, necessary to promote timely and effective implementation.  Despite the hiring of two full-time investigators, Baylor's Title IX Coordinator did not have sufficient or qualified support within the Title IX Office.  Because of the overwhelming need for education and training, the Title IX Coordinator and staff did not have sufficient time or resources to focus on building the infrastructure of the office, drafting internal operating procedures and template communications, or managing the influx of new reports.  In addition, as of the spring of 2015, there were no clear protocols for documentation or consistency in practice across implementers.

## Inadequate Institutional Response to Sexual Violence under Title IX/VAWA

A high-level audit was conducted of all known reports of sexual harassment and sexual assault reported through Baylor's student conduct processes for three academic years: 2012-2013, 2013-2014, and 2014-2015.  The overwhelming majority of cases did not move forward to an adjudicative hearing, with only an extremely limited number of cases resulting in a finding of responsibility or significant sanction.  Many complainants did not move forward with

BU_Lozano_0008972

the University's Title IX process, and the University failed to appropriately weigh a request not to move forward against the University's Title IX obligation to investigate or otherwise determine what occurred.  The University failed to conduct sufficient inquiry into individual barriers to participation, which in some instances were directly related to barriers created by conversations with University personnel that discouraged, rather than encouraged, participation in the University's Title IX processes.  Even in those cases where a complainant did choose to move forward, Baylor did not pursue hearings in the majority of reports, sometimes because of an erroneous determination that Baylor did not have jurisdiction in off campus matters or because the investigator in Judicial Affairs improperly determined that there was not a preponderance of the evidence based on an inadequate or uninformed investigation.  As a consequence, in some cases, the University failed to take action to identify and, as needed, eliminate a potential hostile environment, prevent its recurrence, or address any effects on the individual complainant or broader campus community.

With respect to sexual assault investigations conducted by Judicial Affairs, staff members in Judicial Affairs applied a very "by the book" student conduct approach that treated all respondents equally, regardless of their status as a student-athlete.  However, this rigid approach was not trauma-informed and was overly reliant on the perceived consistency or inconsistency of complainant's statements to the exclusion of other relevant considerations.  The investigations reviewed were wholly inadequate to fairly and reliably evaluate whether sexual violence had occurred.  While individual administrators sought professional training opportunities, they were not adequately trained in the dynamics of sexual and gender-based harassment and violence, dating violence, domestic violence, stalking, the neurobiological impacts of trauma, the evaluation of credibility, consent and the role of alcohol as it relates to

7

consent and alcohol-facilitated sexual assault.  In addition, the investigations were conducted in the context of a broader culture and belief by many administrators that sexual violence "doesn't happen here."  Administrators engaged in conduct that could be perceived as victim-blaming, focusing on the complainant's choices and actions, rather than robustly investigating the allegations, including the actions of the respondent.  In many instances, student conduct investigators conducted cursory investigations and failed to identify and interview readily apparent witnesses or gather relevant evidence.  Student conduct investigators also applied the preponderance of the evidence standard of proof in an inconsistent manner, and in many instances, required a far greater level of proof than preponderance.

Prior to the 2014-2015 academic year, Baylor failed to conduct adequate training and education for its students and employees, and Baylor had not created an atmosphere that fostered reporting and participation in the Title IX process.  Baylor's students lacked awareness of the range of conduct prohibited under Title IX and of University policies, resources or reporting options.  A lack of clearly identified reporting mechanisms, combined with insufficient training and attention to sexual and gender-based harassment and violence and other forms of interpersonal violence, may have led to significant underreporting by students and missed opportunities by administrators to respond appropriately to reports.  The University's approach to issues related to alcohol or other drug use by students created barriers to reporting.  In addition, prior to August 2015, the University did not have a written amnesty policy for alcohol or other drug violations when reporting misconduct.  Perceived judgmental responses by administrators based on a complainant's alcohol or other drug use or prior consensual sexual activity also discouraged reporting or continued participation in the process.

8

Prior to the creation of the Title IX office in November 2014, once reports were received, Baylor failed to consistently identify or impose appropriate interim protective measures. In many instances, Baylor's responses to the needs of individual complainants were uncoordinated and ad hoc, and complainants received inconsistent and inadequate support. In some instances, the burden was placed on complainants to identify and obtain appropriate interim measures. Administrators failed to exercise appropriate oversight of interim measures, think holistically about the needs of complainants, follow through and follow up with complainants, provide complainants with continued access to educational opportunities, and take sufficient steps to retain complainants as University students.

Baylor did not have a system or protocol for either the consistent coordination of information between and among implementers, or for consistent, centralized sharing of information and documentation that would have allowed the University to track, identify, investigate or address a pattern of sexual violence at the earliest opportunity. Once aware of a potential pattern of sexual violence, the University failed to take prompt and effective action to protect campus safety and protect future victims from harm. Further, Baylor failed to consider patterns, trends or climate-related concerns that would enable the University to take prompt and responsive action to individual and community concerns. Baylor failed to identify, eliminate, prevent or address a potential hostile environment in individual cases, and took insufficient steps with respect to both individual complainants and broader community remedies.

In some instances, administrative responses and campus processes caused significant harm to complainants. Actions by an University administrator within BUPD and an administrator within an academic program contributed to, and in some instances, accommodated or created a hostile environment, rather than taking action to eliminate a hostile environment.

9

## Barriers to Implementation of Title IX within Baylor's Football Program

Baylor failed to maintain effective oversight and supervision of the Athletics Department as it related to the effective implementation of Title IX.  Leadership challenges and communications issues hindered enforcement of rules and policies, and created a cultural perception that football was above the rules.  In addition to the issues related to student misconduct, the University and Athletics Department failed to take effective action in response to allegations involving misconduct by football staff.  Further, despite the fact that other departments repeatedly raised concerns that the Athletics Department's response to student or employee misconduct was inadequate, Baylor administrators took insufficient steps to address the concerns.

Baylor failed to take appropriate action to respond to reports of sexual assault and dating violence reportedly committed by football players.  The choices made by football staff and athletics leadership, in some instances, posed a risk to campus safety and the integrity of the University.  In certain instances, including reports of a sexual assault by multiple football players, athletics and football personnel affirmatively chose not to report sexual violence and dating violence to an appropriate administrator outside of athletics.  In those instances, football coaches or staff met directly with a complainant and/or a parent of a complainant and did not report the misconduct.  As a result, no action was taken to support complainants, fairly and impartially evaluate the conduct under Title IX, address identified cultural concerns within the football program, or protect campus safety once aware of a potential pattern of sexual violence by multiple football players.

BU_Lozano_0008976

In addition, some football coaches and staff took improper steps in response to disclosures of sexual assault or dating violence that precluded the University from fulfilling its legal obligations.  Football staff conducted their own untrained internal inquiries, outside of policy, which improperly discredited complainants and denied them the right to a fair, impartial and informed investigation, interim measures or processes promised under University policy. In some cases, internal steps gave the illusion of responsiveness to complainants but failed to provide a meaningful institutional response under Title IX.  Further, because reports were not shared outside of athletics, the University missed critical opportunities to impose appropriate disciplinary action that would have removed offenders from campus and possibly precluded future acts of sexual violence against Baylor students.  In some instances, the football program dismissed players for unspecified team violations and assisted them in transferring to other schools.  As a result, some football coaches and staff abdicated responsibilities under Title IX and Clery; to student welfare; to the health and safety of complainants; and to Baylor's institutional values.

In addition to the failures related to sexual assault and dating violence, individuals within the football program actively sought to maintain internal control over discipline for other forms of misconduct.  Athletics personnel failed to recognize the conflict of interest in roles and risk to campus safety by insulating athletes from student conduct processes.  Football coaches and staff took affirmative steps to maintain internal control over discipline of players and to actively divert cases from the student conduct or criminal processes.  In some cases, football coaches and staff had inappropriate involvement in disciplinary and criminal matters or engaged in improper conduct that reinforced an overall perception that football was above the rules, and that there was no culture of accountability for misconduct.

11

BU_Lozano_0008977

The football program also operates an internal system of discipline, separate from University processes, which is fundamentally inconsistent with the mindset required for effective Title IX implementation, and has resulted in a lack of parity vis-à-vis the broader student population. This informal system of discipline involves multiple coaches and administrators, relies heavily upon individual judgment in lieu of clear standards for discipline, and has resulted in conduct being ignored or players being dismissed from the team based on an informal and subjective process. The ad hoc internal system of discipline lacks protocols for consistency with University policy and is wholly undocumented. The football program's separate system of internal discipline reinforces the perception that rules applicable to other students are not applicable to football players, improperly insulates football players from appropriate disciplinary consequences, and puts students, the program, and the institution at risk of future misconduct. It is also inconsistent with institutional reporting obligations.

The football program failed to identify and maintain controls over known risks, and unreasonably accepted known risks. Leadership in football and the athletics department did not set the tone, establish a policy or practice for reporting and documenting significant misconduct. The lack of reporting expectations resulted in a lack of accountability for player misconduct and employee misconduct. Further, no attempt was made to understand the root causes of behavior or steps necessary to prevent its recurrence. In addition, in one instance, in response to concerns about misconduct by football players that could contribute to a hostile environment, an academic program that required interaction with the football program improperly restricted educational opportunities for students, rather than take steps to eliminate a potential hostile environment.

12

**<u>Failure to Implement or Follow Consistent Transfer Protocols</u>**

Baylor did not consistently conduct due diligence with respect to potential transfers.  In at least one identified instance, the process reflected a failure to conduct appropriate due diligence and assessment of risk regarding past criminal or student conduct and an affirmative decision not to seek additional information about an athlete's prior criminal or student conduct records.  Baylor did not adhere to a consistent protocol regarding transfers and importantly, Baylor did not consistently follow previously implemented processes regarding criminal background checks, request for records of any prior college disciplinary actions, and character reference screening forms.

**<u>Conclusion</u>**

The University has taken and will take additional steps to address the deficiencies noted in the findings of fact.  The Board has already adopted Pepper's recommendations, which are set forth in a separate document.

13

BU_Lozano_0008979