IN the UNITED STATES DISTRICT COURT
FOR the WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| DOLORES LOZANO, | § | |
| | § | |
| Plaintiff, | § | 6:16-CV-403-RP |
| v. | § | |
| | § | |
| BAYLOR UNIVERSITY, | § | |
| ART BRILES, in his individual capacity, and | § | |
| IAN McCAW, in his individual capacity, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANT ART BRILES' MOTION FOR
JUDGMENT AS A MATTER OF LAW**

Pursuant to Federal Rule of Civil Procedure 50, Defendant Art Briles ("Briles" or "Defendant") files this Motion for Judgment as a Matter of Law and, respectfully shows the Court:

### BRIEF SUMMARY OF FACTS AND CLAIMS

Dolores Lozano ("Lozano") alleges that in 2014 she was assaulted three times—off campus—by her then-boyfriend Devin Chafin, a Baylor football player. She further asserts that Briles, the Baylor football coach at the time, breached a duty to her regarding these assaults. She asserts negligence and negligent supervision and training claims against Briles. Defendant Art Briles, categorically denies and rejects that he owed a duty, breached any duty, or that he caused any injury to Lozano.

### STATEMENT OF GROUNDS OF MOTION FOR JUDGMENT

Lozano cannot establish any of her claims as there is legally insufficient evidence to support elements of her claims for negligence, or the evidence conclusively demonstrates that Briles is entitled to judgment is as a matter of law as follows:

## I.      Limitations bars Lozano's claims.

Lozano's claims are barred by the two-year statute of limitations. The evidence demonstrates conclusively that the discovery rule is inapplicable and there is no legally sufficient evidence to support application of the discovery rule; if it did, the evidence conclusively demonstrates that her claims accrued at the time she received her alleged injury in April 2014. Her claims are time-barred as she did not sue Briles until 2018. Alternatively, the evidence conclusively shows that a reasonable inquiry by Lozano after the injury would have revealed the claims made in this lawsuit.

## II.     Lozano's evidence is legally insufficient to support a negligence claim.

Lozano cannot support the required elements to prove negligence. Specifically, the evidence establishes conclusively that Briles owed no duty to Lozano, nor did he breach any nonexistent duty, resulting from injuries caused by the assaultive conduct of a third party. There is no legally sufficient evidence to support either a finding of cause-in-fact or proximate cause. Lozano fails to identify what, if any, acts or omissions of Briles would have made any difference in this case.

There is no legally sufficient evidence of future medical or psychological costs, as the testimony in support is too speculative, lacks sufficient foundation for recovery, and there is no evidence of present value of the purported costs. In addition, there is no allocation of the need for future psychological care as to Briles' acts or omissions as compared to any other defendant.

## III.    Gross negligence and punitive damages.

There is no legally sufficient evidence to support a finding for gross negligence or a finding of punitive damages and no legally sufficient evidence to establish liability for punitive damages. See Tex. Civ. Prac. & Rem. Code § 41.001–41.008. In addition, the evidence demonstrates conclusively that there is no claim for punitive damages and Defendants are exempt.

**IV.     Lozano waived her claim by failing to plead and prove it as a premises claim.**

Lozano's failure to plead and prove her case as a premises case waives her claim. The basic negligence issues become immaterial considering the law under the circumstances of this case.

In sum, all her claims fail or are otherwise barred as a matter of law.

### FACTUAL BACKGROUND

This case arises out of three alleged domestic assault incidents involving Lozano and her then-boyfriend Devin Chafin, a former Baylor football player. (Doc. No. 50 at 3). The alleged assaults occurred in March-April of 2014, and all occurred off-campus. The first and third incidents took place in Chafin's apartment, and the second incident took place at the Scruffy Murphy's bar.

Not a single witness has testified that they informed Briles about Lozano's allegations in 2014 or 2015; there is no evidence to even suggest that Briles knew of Lozano's allegations in 2014 or 2015. Further, Briles' superiors (Ian McCaw and Todd Patulski) were aware of Lozano's allegations long before Briles was made aware of them, as shown:

- Late March/early April 2014 – Coach LaPrise Williams: Lozano reports the first incident to her coach.
- Late March/early April 2014 – Nancy Post: Williams informs Post that Lozano was allegedly assaulted by Chafin, her football player boyfriend.
- Late March/early April 2014 – Ian McCaw and Todd Patulski: Post states that she immediately informed McCaw/Patulski of the Lozano allegations once she found out that Lozano's boyfriend was a football player.
- Late March/early April 2014 – Wes Yeary: Williams refers Lozano to Yeary and Lozano tells him about the allegations.
- April 9, 2014 – Collin Shillinglaw: Lozano's mother sent Shillinglaw pictures of Lozano's injuries via text.
- April 9, 2014 – Lozano reports the allegations to the Baylor counseling center.
- April 10, 2014 – Martha Lou Scott: Lozano speaks to Martha Lou Scott (associate vice-president of Student Life) about the allegations against Chafin;
- April 10, 2014 – Judicial Affairs (Bethany McCraw): Martha Lou Scott emails McCraw informing her of Lozano's allegations against Chafin and that Lozano is planning on reporting the incident to the Waco P.D.
- April 11, 2014 – Waco P.D.: Lozano reports the allegations to the Waco P.D.

- Spring/Summer 2016 – Jeff Lebby: Lebby states that he first found out about the Lozano allegations in 2016. The only Lozano-related matter he knew of in 2014 was Lozano's pregnancy by Chafin. This is supported by Chafin's testimony.
- May 2016 – Art Briles: McCaw makes Briles aware of Lozano's allegations.

On July 24, 2018, four years beyond the two-year limitations period, Lozano filed her Second Amended Complaint, naming Briles as a Defendant for the first time, asserting negligence, and negligent training and supervision claims. (Doc. No. 50 at 34-36, 38).

## LEGAL STANDARD

"Judgment as a matter of law may be granted when a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." *Hurst v. Lee Cnty., Miss.*, 764 F.3d 480, 483 (5th Cir. 2014). "In practice, a party has been fully heard when he rests his case." *Echeverria v. Chevron USA Inc.*, 391 F.3d 607, 610 (5th Cir. 2004). "There is no legally sufficient evidentiary basis when the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict." *U.S. ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, 748 F. Supp. 2d 95, 103 (W.D. Tex. 2010). The court should "consider all of the evidence in the light most favorable to the nonmovant, drawing all factual inferences in favor of the non-moving party, and leaving credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts to the jury." *Hurst*, 764 F.3d at 483.

## ARGUMENTS AND AUTHORITIES

### I.    Lozano's claims against Briles are barred by limitations.

Lozano's negligence claims against Briles are state law claims. "Federal courts apply Texas statutes of limitation, along with any accompanying rules regarding accrual and tolling." *Note Inv. Group, Inc. v. Associates First Capital Corp.*, 83 F. Supp. 3d 707, 731 (E.D. Tex. 2015).

In Texas, negligence claims must be brought "not later than two years after the day the cause of action accrues." *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 750 (Tex. 1999). "[A] cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996) (Legal injury rule). "Limitations usually commence at the time of the tortious behavior . . . " *Whiddon v. Chase Home Fin., LLC,* 666 F. Supp. 2d 681, 688 (E.D. Tex. 2009).

Because the statute of limitations is an affirmative defense, Briles bears the burden to establish that Lozano's claims are time-barred. *See Ligon v. Casey*, No. 01-22-00247-CV, 2023 WL 4769533, at *11 (Tex. App.—Houston [1st Dist.] July 27, 2023, no pet. h.). However, as explained in detail below, *Lozano* bears the burden of establishing tolling under either the discovery rule or the fraudulent concealment doctrine. She cannot do so; her claims are barred.

A.    **Discovery rule.**

"Under Texas law, the discovery rule provides a very limited exception to statutes of limitations." *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 764 (5th Cir. 2015). While a defendant bears the burden to negate the discovery rule at the summary judgment stage, "the party seeking to benefit from the discovery rule to avoid the statute of limitations has the burden of pleading and proving the requirements of the discovery rule in a *trial on the merits*." *Silo Rest. Inc. v. Allied Prop. & Cas. Ins. Co.*, 420 F. Supp. 3d 562, 574–75 (W.D. Tex. 2019) (emphasis added). Thus, *Lozano* now bears the burden of establishing the discovery rule exception.

The discovery rule "defers the accrual of the cause of action until the injury was or could have reasonably been discovered." *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 929–30 (Tex. 2011). In order for the discovery rule to apply, Lozano must establish that "the nature of the plaintiff's injury

[was] both inherently undiscoverable and objectively verifiable." *Id.* Lozano is unable to establish that her injury was objectively verifiable. "An injury is objectively verifiable if the presence of an injury and the producing wrongful act cannot be disputed." *McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, 241 F. Supp. 3d 737, 770 (N.D. Tex. 2017). "To meet this standard, the evidence must rise to a higher level of certainty than the preponderance of the evidence for liability." *Id*. While analyzing the objectively verifiable prong regarding a sexual abuse claim, the Texas Supreme Court held that expert testimony supporting the plaintiff's claim, without more, was insufficient. *See S.V.*, 933 S.W.2d at 15. The Court held:

> The kinds of evidence that would suffice would be a confession by the abuser, … a criminal conviction, … contemporaneous records or written statements of the abuser such as diaries or letters; medical records of the person abused showing contemporaneous physical injury resulting from the abuse; photographs or recordings of the abuse; an objective eyewitness's account; and the like. Such evidence would provide sufficient objective verification of abuse, even if it occurred years before suit was brought, to warrant application of the discovery rule.

Other examples provided of an objectively verifiable injury included a sponge left inside a patient after surgery, a child born with muscular dystrophy after a doctor informed the parents that the mother did not carry the gene for the disease, a negligent vasectomy confirmed by subsequent pregnancy, and stock transfer records and board meeting minutes proving officer's and director's misdealing. *Id*. at 7.

Here, Lozano asserts that her negligence claims against Briles are based on Briles' "affirmative involvement in manipulating and misinforming Lozano of her rights or lack thereof, discouraging Lozano from taking further action with respect to the domestic violence she suffered and concealing Baylor football players' and school officials' misconduct with respect to Chafin's violent assaults of her." (Doc. No. 50 at 39). However, there is no objectively verifiable evidence

of those allegations. The Findings of Fact indicate that at most there was an inadequate system of discipline in the football program in general. There is nothing in the Findings that support Lozano's allegations that Briles misinformed Lozano of her rights, discouraged her from taking action with respect to the domestic violence she suffered, or concealed anything with regards to Chafin's assaults of her. In fact, every witness testified that they did not inform Briles of Lozano's allegations in 2014 or 2015 and Briles testified that he did not know about the allegations until 2016. Thus, Lozano has not presented objectively verifiable evidence of Briles' alleged wrongful conduct. Therefore, Lozano cannot establish that she is entitled to the discovery rule exception.

> ### B.     Fraudulent concealment.

The doctrine of fraudulent concealment tolls the statute of limitations to prevent a defendant from "deceitfully concealing wrongdoing until limitations has run." *Holland v. Thompson*, 338 S.W.3d 586, 596 (Tex. App.—El Paso 2010, pet. denied). Fraudulent concealment "only tolls the statute of limitations until the fraud is discovered or could have been discovered with reasonable diligence." *Shell Oil Co.*, 356 S.W.3d at 927. In order to prove fraudulent concealment, a plaintiff must show that the defendant "actually knew a wrong occurred, had a fixed purpose to conceal the wrong, and did conceal the wrong." *Id.* As the party raising fraudulent concealment, Lozano, "has the burden to raise a fact question for each element of fraudulent concealment." *ExxonMobil Corp. v. Lazy R Ranch, LP*, 511 S.W.3d 538, 544 (Tex. 2017).

Several Texas appellate courts have held that to establish a fraudulent concealment claim, the plaintiff must establish the existence of the underlying tort. *See Holland*, 338 S.W.3d at 596. ("The elements of fraudulent concealment are (1) the existence of the underlying tort; (2) the defendant's knowledge of the tort; (3) the defendant's use of deception to conceal the tort; and (4) the plaintiff's reasonable reliance on the deception."); *Hay v. Shell Oil Co.*, 986 S.W.2d 772, 778

(Tex. App.—Corpus Christi–Edinburg 1999, pet. denied); *DiGrazia v. Old*, 900 S.W.2d 499, 502 (Tex. App.—Texarkana 1995, no writ).

Here, Lozano cannot establish her negligence claims. Thus, she cannot prove fraudulent concealment. *See Holland*, 338 S.W.3d at 598 ("We conclude that since the record does not support the existence of an underlying tort, the doctrine of fraudulent concealment does not apply.").

Further, Lozano cannot establish fraudulent concealment because, as stated above, there is no legally sufficient evidence to support that Briles had actual knowledge of the alleged assaults until 2016, he did not know Lozano, he did not know that she was in a relationship with Chafin, he never had a conversation with her regarding the alleged assaults, he did not discourage her from reporting the alleged assaults, nor did he conceal any misconduct of Chafin or school officials. Indeed, the evidence conclusively establishes the opposite. Her claims against Briles (Doc. No. 50 at 39) are utterly without merit and absolutely lacking in legally sufficient support.

Further, Briles cannot have imputed knowledge of the Lozano assaults through his staff because fraudulent concealment requires that the defendant have actual knowledge that the plaintiff was wronged. *See ExxonMobil Corp.*, 511 S.W.3d at 544 ("Fraudulent concealment requires showing that the defendant actually knew the plaintiff was in fact wronged, and concealed that fact to deceive the plaintiff."); *Earle v. Ratliff*, 998 S.W.2d 882, 888 (Tex. 1999) (same); *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996) ("[O]ne cannot fraudulently conceal facts of which one has no actual knowledge."); *Hay*, 986 S.W.2d at 778 (same); *Tex. Gas Expl. Corp. v. Fluor Corp.*, 828 S.W.2d 28, 32–33 (Tex. App.—Texarkana 1991, writ dism'd) (holding no fraudulent concealment without knowledge and what a defendant should have known is insufficient).

To the extent Lozano claims that the Findings of Fact establish fraudulent concealment, those claims are false. The Findings are insufficient to show because none support her allegation that Briles had actual knowledge of the Lozano assaults. As discussed above, Lozano bears the burden of establishing that Briles had actual knowledge that she was wronged and nothing in the Findings of Fact demonstrates this. *See ExxonMobil Corp.*, 511 S.W.3d at 544. Thus, Lozano cannot establish fraudulent concealment and her negligence claims against Briles are barred by the statute of limitations.

## II.   Negligence Claims.

### A.   Pleaded acts of negligence—negligent training and supervision claims fail as a matter of law.[1]

Lozano urges that Briles negligently trained and supervised his staff by failing to ensure that they properly supervised, controlled, restrained, and monitored student athletes. (Doc. No. 50 at 36). Further, Lozano claims that Briles failed to train football and athletics staff to competently respond to allegations of sexual assault and domestic violence by football players and failed to require staff to report allegations of sexual assault by football players to an appropriate university contact. *Id*. at 37.

These claims against Briles fail as a matter of law because those claims can only be asserted against an employer. Briles was not the employer of the football and athletic staff; Baylor University was. "Under Texas law, the duty to supervise employees is a non-delegable duty of an employer." *Thomas v. Grundfos, CBS*, No. 4:18-CV-0557, 2019 WL 7838172, at *2 (S.D. Tex. Sept. 20, 2019), report and recommendation adopted, No. CV H-18-557, 2020 WL 553665 (S.D. Tex. Feb. 4, 2020). "Thus, [a] supervisor's individual liability under state law arises only when the

---

[1] Because this Court is exercising supplemental jurisdiction over Lozano's claims against Briles, the Court analyzes the claims under Texas law. *See Doe 12 v. Baylor Univ*., 336 F. Supp. 3d 763, 786 (W.D. Tex. 2018) ("A federal court exercising supplemental jurisdiction over state law claims must apply the substantive law of the state in which it sits.").

supervisor owes a duty of reasonable care to the injured party that is independent of the employer's duty." *Id*.

As the Texas Supreme Court held, "[a] corporate officer or agent can be liable to others, including other company employees, for his or her own negligence. However, individual liability arises only when the officer or agent owes an independent duty of reasonable care to the injured party apart from the employer's duty." *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996). Federal courts applying Texas law have held that a negligent supervision claim asserted against a supervisor is improper because only the employer has a duty to supervise. *See Udoewa v. Plus4 Credit Union*, No. CIV A H-08-3054, 2009 WL 1856055, at *5 (S.D. Tex. June 29, 2009), aff'd, 457 Fed. Appx. 391 (5th Cir. 2012) ("Udoewa's negligence claim against Stark [President and CEO] is flawed [because] . . . only the corporate employer has a duty to supervise."); *Berry v. Lee*, 428 F. Supp. 2d 546, 559–60 (N.D. Tex. 2006) (dismissing negligent supervision claim against non-employer defendants).[2]

## B.    Lozano's negligence claims fails as a matter of law.

"The elements of a common-law negligence claim are: (1) a legal duty; (2) a breach of that duty; and (3) damages proximately resulting from the breach." *Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137, 144 (Tex. 2022). Lozano's negligence claim against Briles fails as a matter of law on two separate grounds: (1) Briles did not owe Lozano a duty; and (2) even assuming

---

[2] Courts analyzing negligence law from other jurisdictions have held similarly. *See Driskill v. Great S. Life Ins. Co.*, No. CIV.A. 3:03-CV-0857D, 2003 WL 23318664, at *2 (N.D. Tex. Aug. 22, 2003) ("The court has been unable on its own to locate any authority that supports the proposition that a negligent supervision claim can be made against a supervisor as opposed to the employer itself."); *Mitchell v. Rite Aid of Maryland, Inc.*, 257 Md. App. 273, 333, 290 A.3d 1125, 1160 (2023), *cert. denied*, 483 Md. 579, 296 A.3d 419 (2023) (In pressing a claim for negligent hiring, **supervision**, or retention, the plaintiff must prove the existence of five elements: "**(1) the existence of an employment relationship;** (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring, supervising or retaining the employee as the proximate cause of plaintiff's injuries.") (emphasis added); *Lutz v. Chitwood*, 337 B.R. 160, 170 (S.D. Ohio 2005) ("[T]he Trustee has not cited the Court to any cases where an Ohio court has recognized a claim of negligent supervision against an individual employee . . . .")..

*arguendo* that Briles did owe Lozano a duty; Lozano failed to show proximate cause, cause in fact, or damages.

### 1.    No duty: Briles had no special relationship with Lozano or Chafin, nor did he assume any duty.

Lozano argues that she had a special relationship with Briles because Lebby enlisted Lozano to tutor Chafin and to manage his behavior and because Briles instituted an "ad hoc internal system of discipline for football players.) (Doc. No. 50 at 34-35). As one district court explained:

> Whether a legal duty exists is therefore a threshold question; if there is no duty, there can be no liability. As a general matter, there is no duty to control the conduct of third persons. However, that general rule does not apply when a special relationship exists between the actor and the third person that imposes a duty on the actor to control the third person's conduct. Such special relationships traditionally include those between an employer and employee or between a parent and child.

*Doe 12 v. Baylor Univ.*, 336 F. Supp. 3d 763, 787 (W.D. Tex. 2018). While analyzing whether there was a duty of good faith and fair dealing, the Fifth Circuit noted that "[t]he only Texas court that appears to have considered the question found that there was no special relationship [in an ordinary student-professor relationship]." *Hux v. S. Methodist Univ.*, 819 F.3d 776, 782 (5th Cir. 2016). Further, several courts have found no special relationship between a student and a university. *See Boyd v. Tex. Christian Univ., Inc.*, 8 S.W.3d 758, 760 (Tex. App.—Fort Worth 1999, no pet.) ("Here, Appellants contend the relationship between a private university and its adult students is recognized by Texas law as a 'special relationship' under the doctrine of 'in loco parentis.' However, the cases cited by Appellants in support of this proposition are readily distinguishable and our review of the relevant case law reveals no authority favorable to Appellants' position."); *Doe 12*, 336 F. Supp. 3d at 787 (noting that "[i]ntermediate Texas courts have declined to hold that the relationship between a private university and its adult students

constitutes a special relationship… as have most courts surveying state law on this issue"); *Roe v. Patterson*, No. 4:19-CV-179-SDJ, 2022 WL 672692, at *5 (E.D. Tex. Mar. 7, 2022) ("Roe does not identify and the Court is not aware of any Texas cases supporting the idea that any university, . . . has a special relationship with its students.").

Thus, under Texas precedent there is no support for finding that Briles and Lozano had a special relationship merely because she was allegedly "entrusted to the care" of Baylor.[3]

Lozano's negligent undertaking claim also fails. "The requisite elements of a claim for negligent undertaking are that: (1) the defendant undertook to perform services that it knew or should have known were necessary for the plaintiff's protection; (2) the defendant failed to exercise reasonable care in performing those services; and, either (a) the plaintiff relied upon the defendant's performance, or (b) the defendant's performance increased the plaintiff's risk of harm." *Vance v. Hurst Joint Venture LP*, 657 S.W.3d 141, 156 (Tex. App.—El Paso 2022, no pet.). First, the evidence does not show that Lebby enlisted Lozano to tutor/manage Chafin's behavior. At best, the evidence shows that Lebby asked Lozano if she would help Chafin practice good study habits and be supportive. Second, there is *no evidence* that Briles *knew* Lebby allegedly made this suggestion. Third, and most importantly, even assuming *arguendo* that Briles should have known that Lebby allegedly made the suggestion, the claim fails because both the alleged requests that Lozano tutor Chafin and Briles' alleged in-house discipline system were not performed for Lozano's benefit. *See Mission Petroleum Carriers, Inc. v. Solomon*, 106 S.W.3d 705, 709 n.4 (Tex. 2003) ("Solomon concedes that this is not a voluntary assumption of duty case because the urine

---

[3] Similarly, to the extent that Lozano's Complaint could be read to allege that Briles had a duty to control Chafin due to a special relationship, there is no support for finding that Briles and Chafin had a special relationship merely because Chafin was a Baylor student and football player.

collection was not performed gratuitously or for consideration and was not intended to protect or benefit Solomon.")

Thus, any assumption of duty claim, if there is any, fails when the act taken by the defendant was not intended to protect or benefit Lozano—it clearly would not have been. *See id.*; *see also Murray v. Nabors Well Serv.*, 622 S.W.3d 43, 54 (Tex. App.—El Paso 2020, no pet.) (stating that "Texas law is clear that to succeed in a negligent undertaking claim, the services the defendant undertakes to perform are for the benefit of the plaintiff, whether the plaintiff is the person being assisted or a third party.") There is no evidence that Briles' discipline system was intended to benefit Lozano or third-party students.

The risk, foreseeability, and likelihood of injury weigh against finding that Briles had a duty to Lozano. Foreseeability is the dominant, but not controlling, factor. *Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602, 619 (W.D. Tex. 2017). First, there is no evidence that Briles knew of Lozano's allegations of abuse against Chafin until May 2016. Second, Briles' knowledge that Chafin had potential substance abuse issues did not make it foreseeable to Briles that Chafin would assault someone. *See Roe v. Patterson*, No. 4:19-CV-179-SDJ, 2023 WL 2632803, at *8 (E.D. Tex. Mar. 25, 2023) (knowledge of arrests for alcohol-related charges could not be reasonably construed to put a school on notice that the student was violent or a sexual predator). Thus, it was not foreseeable to Briles that Chafin posed a threat or risk to Lozano or that there was a likelihood that Lozano would be injured by Chafin.

It would be an enormous burden for the Court to find that Briles, or someone in Briles' position, should have known about Lozano's allegations just because a few members of the athletic staff knew of the allegations. If one staff member's knowledge of an allegation could be imputed

to every supervisor of the staff member and result in the supervisor having a duty to the person making the allegation, the magnitude of the burden on the supervisor would be enormous.

The superior knowledge factor also weighs against finding that Briles had a duty to Lozano. As mentioned above, Briles had no knowledge of Lozano's allegations against Chafin until 2016. On the other hand, after the first alleged assault occurred, Lozano had more knowledge of the risks that Chafin posed to her than any of the Defendants in this case. *See Roe*, 2023 WL 2632803, at *14 (finding that after an alleged sexual assault took place, there was no question that the student victim had "appreciably more knowledge" of the risks that the student assailant posed to her than the school did.).

Finally, the right-to-control factor also weighs against imposing a duty on Briles. *See Univ. of Denver v. Whitlock*, 744 P.2d 54, 59–60 (Colo. 1987) ("At one time, college administrators and faculties stood in loco parentis to their students, which created a special relationship that imposed a duty on the college to exercise control over student conduct and, reciprocally, gave the students certain rights of protection by the college. However, in modern times there has evolved a gradual reapportionment of responsibilities from the universities to the students, and a corresponding departure from the in loco parentis relationship."). Not only did Briles have no control over what Chafin did in his personal time, Briles also did not have control over whether a player would be suspended from the team.[4] This indicates that the burden of finding a new duty under the Texas Multifactor Test is high.

---

[4] Defendant notes that the majority of Texas courts that have analyzed whether a new duty should be recognized under the Multifactor Test have found no new duty. Thus, the factors enumerated by the Texas Supreme Court weigh against finding a new duty in circumstances such as the ones present here. A few examples are: *Houston Area Safety Council, Inc. v. Mendez*, 671 S.W.3d 580, 590 (Tex. 2023) ("[W]e hold that the third-party testing entities hired by an employer do not owe a common-law negligence duty to their clients' employees."); *Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137, 150–51 (Tex. 2022); *Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 508 (Tex. 2017) ("[W]e conclude that an employer in a situation like the one presented here owes no duty to supervise its employees."); *Jones v. Wright*, 667 S.W.3d 444, 453 (Tex. App.—Beaumont 2023, no pet.) ("We decline the invitation to create another exception to the no-duty rule."); *Aikens v. Dueling*, No. 02-21-00320-CV, 2022 WL 3651976, at *6 (Tex. App.—Fort

### 3. No Duty: Briles did not owe Lozano a duty independent of the alleged duties owed to her by Baylor

"[I]ndividual liability arises only when [an] officer or agent owes an independent duty of reasonable care to the injured party apart from the employer's duty." *Leitch*, 935 S.W.2d at 117. Here, Briles did not owe Lozano an independent duty because he did not have a special relationship with her or Chafin, he did not assume a duty to help her, and he did not have a duty under the Texas Multifactor Test.

Briles also did not owe Lozano a duty independent of the alleged duties owed to her by Baylor because there is no evidence that he had any personal involvement in creating any condition that led to Lozano's injuries. *See Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex. 1984) ("A corporation's employee is personally liable for tortious acts which he directs or participates in during his employment."); *Lyle v. 24 Hour Fitness, USA, Inc.*, No. A–14–CA–300 LY, 2014 WL 5094126, at *5 (W.D. Tex. Oct. 10, 2014), adopted, 2014 WL 12877368 (Nov. 4, 2014) (in personal injury case against playground operator and its manager for accident in which child was injured on playground equipment, no potential claim against manager because "the evidence and pleadings fail to show any personal involvement by Rivera in creating the conditions which led to L.T.'s injury").

Further, the evidence shows that the only claims Lozano can assert against Briles are based on his alleged nonfeasance: that he failed to report, failed to supervise, and failed to protect. There is no evidence of misfeasance. In cases involving employee nonfeasance, as opposed to misfeasance, generally there will not be individual employee liability to third parties.[5] *See Garcia*

---

Worth Aug. 25, 2022, no pet.); *Southlake Plastic Surgery, P.A. v. Allergan, Inc.*, No. 02-19-00256-CV, 2020 WL 3969956, at *10 (Tex. App.—Fort Worth June 11, 2020, no pet.).

[5] Plaintiff has alleged defendant acted in the "course of employment" concerning his failures, but on the other hand, has attempted to urge he is being sued in his "individual capacity" in other occasions. However, there is absolutely no

*v. Nordex USA, Inc.*, No. 1:19-CV-187, 2019 WL 10093091, at *4 (S.D. Tex. Dec. 10, 2019) ("[I]n circumstances involving alleged passive conduct by an employee, federal district courts have concluded that Texas law did not impose an independent duty on the employees *as to third parties*.") (emphasis added).

**4.     Lozano cannot establish proximate causation or damages.[6]**

Even assuming *arguendo* that the Court finds that Briles had a duty to Lozano, Lozano's claim fails because no action or inaction of Briles proximately caused Lozano's injuries.

Lozano asserts that but for the negligent acts and omissions of Briles, she would not have been injured. (Doc. No. 50 at 38). Generally, Lozano alleged that Briles' negligent acts and omissions consisted of failing to monitor/supervise Chafin, failing to competently investigate Lozano's allegations against Chafin, and failing to require football/athletic staff to respond to and report allegations of assault made against football players. *Id*. at 36–37.

"Proximate cause has two elements: cause in fact and foreseeability." *W. Investments, Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005). The elements "cannot be established by mere conjecture, guess, or speculation." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). "The test for cause in fact is whether the act or omission was a substantial factor in causing the injury without which the harm would not have occurred." *Id*; *see also Rodriguez-Escobar v. Goss*, 392 S.W.3d 109, 113 (Tex. 2013) ("For a negligent act or omission to have been a cause-in-fact of the harm, the act or omission must have been a substantial factor in bringing about the harm, and absent the act or omission—i.e., but for the act or omission—the harm would

---

potential for any duty owed outside his employment with Baylor as a football coach. Indeed, the actions he is purported to failed to due relate to report issues to officials at Baylor.

[6] For the purposes of this section, Briles analyzes proximate cause as if he knew of the Lozano allegations through imputed knowledge. However, Briles had no knowledge and should not have known of Lozano's allegations until May 2016.

not have occurred."). "Cause in fact is not shown if the defendant's negligence did no more than furnish a condition which made the injury possible." *Doe*, 907 S.W.2d at 477.

Here, there is no basis for concluding that Briles' alleged actions or inactions were a substantial factor in bringing about Lozano's injuries, without which Lozano's injuries would not have occurred. Lozano first complains that Briles did not competently investigate her allegations against Chafin. However, it is evident in the above timeline that by the time Briles allegedly should have known of the Lozano allegations through his staff, every party to whom Briles could have reported the allegations already knew of the allegations or found out about the allegations within the next two days.

The earliest date that Briles allegedly should have known about the Lozano allegations was April 9, 2014, when Shillinglaw learned of the allegations through text messages from Lozano's mother. By this point, Briles' supervisors (McCaw and Patulski) knew about the Lozano allegations. Within the next two days, the associate vice-president of Student Life at Baylor, Baylor's Judicial Affairs department, and the Waco Police Department all learned of the Lozano allegations. Thus, Briles' reporting would not have changed the outcome.

Further, by April 9, 2014, the first two assaults had already occurred (March 6, 2014, and April 6, 2014). Lozano testified that the last incident occurred in late April 2014. Thus, prior to the time that the last assault occurred, every possible entity referred to above, that Briles could have reported the Lozano allegations to already knew about the allegations. Thus, Briles' alleged failure to report or investigate the incident could not have caused the third assault. Similarly, Lozano's allegation that Briles failed to require his athletic staff to report allegations of assault fails to establish proximate cause for the same reason. Anyone to whom Shillinglaw should have

reported the allegations on April 9, 2014, already knew about the allegations or found out about them within the next two days (Judicial Affairs/ Waco P.D).

The Texas Supreme Court has held no proximate cause when an action or inaction by the defendant would have had no effect on the plaintiff's injuries. *See W. Investments, Inc*., 162 S.W.3d at 551 (finding that defendant's failure to hire a security company to patrol an apartment complex did not proximately cause plaintiff's injuries when the assailant was a tenant at the apartment complex and the victim did not take any actions that reasonably would have alerted security guards had they been present); *Doe*, 907 S.W.2d at 477–78 ("We conclude that if the Boys Club breached a duty to investigate, screen, or supervise volunteers, this breach was not the cause in fact of the plaintiffs' injuries. Assuming the Boys Club had investigated Mullens's criminal record, revelation of the two misdemeanor DWI convictions would not have precluded Mullens's presence at the club."); *E. Tex. Theatres, Inc. v. Rutledge*, 453 S.W.2d 466, 468–69 (Tex. 1970).

Lozano's allegation that Briles' failure to supervise/monitor Chafin caused her injuries does not establish proximate cause. As mentioned above, Briles did not have authority to suspend a player from the football team. Further, the third assault occurred at Chafin's off-campus apartment. Briles did not have the duty, the ability, or the authority to monitor/supervise what Chafin did at his apartment. Thus, Lozano did not and cannot establish that Briles' failure[7] to monitor Chafin was a cause in fact of her injuries and her negligence claim against Briles fails as a matter of law.

---

[7] To the extent Lozano argues that her injuries were caused by Briles' alleged inadequate system of discipline for the football players, Briles' alleged negligent acts are too attenuated to establish proximate cause. *See Rodriguez-Escobar v. Goss*, 392 S.W.3d 109, 113 (Tex. 2013); *Doe v. Boys Clubs of Greater Dallas, Inc*., 907 S.W.2d 472, 477 (Tex. 1995) ("The evidence must go further, and show that such negligence was the proximate, and not the remote, cause of resulting injuries.... and justify the conclusion that such injury was the natural and probable result thereof.").

Additionally, the expert testimony of Lozano's expert, Dr. Braddock, amounts to no evidence as it is wholly based upon speculation and lacked a proper foundation for evidence of future medical treatment and costs. As such, the evidence was legally insufficient to support any finding of future medical costs. Indeed, at one point during her trial testimony, Dr. Braddock admitted that she really could not say for sure whether the plaintiff would need any future counseling at based upon her current knowledge of Ms. Lozano's status.

### E.      Lozano waived their claim by pleading an incorrect theory.

Plaintiff waived her claim by failing to plead a premises cause of action. Consequently, pleading and obtaining a jury finding of the elements of a negligence claim would be immaterial as a matter of law and would not, therefore, to impose liability as a matter of law against Briles or any Defendant. *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523 (Tex. 1997); *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749 (Tex. 1998).

### F.      No Punitive Damages—as a matter of law.

The evidence establishes conclusively or, there is legally insufficient evidence, to support the requirements of Chapter 41 of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code § 41.001 (3), (11). Additionally, Lozano's claims are barred by statute under the circumstances where harm is alleged to result from a criminal act of a third party. *See* Tex. Civ. Prac. & Rem. Code § 41.005. Clearly, as a matter of law, Briles does not fall within any of the exceptions set forth in the statute and Lozano has no evidence that he does. *See* Tex. Civ. Prac. & Rem. Code § 41.005(b). The statute exempts Briles from any potential punitive damage claim.

Therefore, the evidence demonstrates conclusively there is no claim for punitive damages.

## PRAYER AND CONCLUSION

Lozano sued Briles in 2018, more than four years after the alleged injury occurred resulting from her incidents with her then boyfriend, Chafin. Since then, and over the past five more years, over 20 depositions, and massive paper discovery--there is not a shred of evidence to consider showing that Briles caused or contributed in any way to the scuffles that occurred between Lozano and Chafin at a Bar in Waco, and, on another occasion at Chafin's apartment. After days of testimony, however, the cold reality is that the case should never have been brought, probably against anyone, but certainly, there was wholly an absence of support to have filed the claim against Coach Briles—simply because, in essence, he had been Chafin's coach.

This Court having considered the evidence, and based upon the law, should grant Art Briles' Motion for Judgment as a Matter of Law on all grounds, which are numerous, and all have merit, and order that Lozano take nothing for the time-barred and unsubstantiated claims asserted.

WHEREFORE, PREMISES CONSIDERED, Defendant Briles respectfully prays that for the reasons set forth herein, the Court (1) grant this Motion for Judgment as a Matter of Law; (2) dismiss all claims against Briles by Plaintiff Dolores Lozano; (3) award Briles his costs of court; and (4) award Briles all other relief to which he is justly entitled.

Respectfully submitted,

/s/ David W. Green
DARRELL L. BARGER
Texas Bar No. 01733800
dbarger@hartlinebarger.com
DAVID W. GREEN
Texas Bar No. 08347475
dgreen@hartlinebarger.com

HARTLINE BARGER LLP
1980 Post Oak Blvd., Suite 1800

Houston, Texas 77056
(713) 759-1990 (telephone)
(713) 652-2419 (facsimile)

and

COLIN L. POWELL
Texas Bar No. 24092984
cpowell@hartlinebarger.com

Hartline Barger LLP
8750 North Central Expressway, Suite 1600
Dallas, Texas 75231
(214) 369-2100 (telephone)
(214) 369-2118 (facsimile)

and

**J. REID SIMPSON**
Texas State Bar No. 24072343
Federal ID No. 1259919
**YETTER COLEMAN LLP**
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000
(713) 632-8002 (Fax)
jrsimpson@yettercoleman.com

ATTORNEYS FOR DEFENDANT
ART BRILES

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of this document is being served pursuant to the Federal Rules of Civil Procedure on October 19th, 2023.

/s/ David W. Green
David W. Green