IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| DOLORES LOZANO, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 6:16-CV-00403-RP |
| | § | |
| BAYLOR UNIVERSITY; ART BRILES; | § | |
| IAN MCCAW, | § | |
| Defendants. | § | |

## DEFENDANT BAYLOR UNIVERSITY'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FRCP 50(a)

TO THE JUDGE OF THE HONORABLE COURT:

Defendant Baylor University ("Baylor") hereby files its Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(a).

## I.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 50(a), a district court may "grant a motion for judgment as a matter of law in a jury trial before a case is submitted to the jury with respect to a claim" raised by a party in the case if three conditions are met. *MultiPlan, Inc. v. Holland*, 937 F.3d 487, 494 (5th Cir. 2019). First, the "party has been fully heard on an issue during [the] trial." *Id.* (quoting Fed. R. Civ. Proc. 50(a)). Second, "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." *Id.* And third, "under the controlling law, the claim or defense can be maintained or defeated only with a favorable finding on that issue." *Id.* (cleaned up).

## II.    ARGUMENT

All requirements for judgment as a matter of law have been met. First, Lozano has been fully heard. Trial began October 16, 2023, and she rested her case the afternoon of October 19, 2023, before this motion was filed. Second, for each of the issues addressed below, a reasonable jury would

not have a legally sufficient evidentiary basis to find for Lozano.  Finally, Lozano can maintain the following claims or requests for damages only if she obtains favorable findings.  Judgment as a matter of law is warranted.

Specifically, Baylor seeks judgment as a matter of law in its favor on the following issues:

A)  Lozano cannot recover exemplary damages for gross negligence.

B)  Lozano cannot recover damages for loss of dignity under Title IX.

C)  Lozano's negligence claims are barred by limitations.

D)  Lozano cannot recover mental anguish damages.

These issues are briefed below.

Baylor also seeks judgment as a matter of law on other issues, including all those denied at the summary judgment stage.  Baylor's argument on these issues is truncated, however, primarily because most of these issues have been fully briefed in Baylor's Motion for Summary Judgment and Reply in support of same, both of which are hereby incorporated by reference.  Dkt. 204, 227.

## A.  The evidence cannot support a jury finding that Baylor was grossly negligent and/or liable for punitive damages.

Lozano's proposed jury charge seeks exemplary damages for gross negligence, but she is legally precluded from relying on evidence of punitive damages as a matter of law.[1]  First, her live complaint does not assert a claim for gross negligence.  Second, there is no evidence that would support a finding of gross negligence.  Gross negligence requires proof that "1) when viewed objectively from the defendant's standpoint at the time of the event, the act or omission involved an *extreme degree of risk*,

---

[1] Title IX is a Spending Clause statute, and such statutes are contractual in nature and do not admit of punitive damages in their enforcement. *Cummings v. Premier Rehab Keller, PLLC*, 596 U.S. 212, 216 (2022) (citing *Barnes v. Gorman*, 536 U.S. 181, 189 (2002)). Thus, punitive damages are not allowed for a violation of Title IX.  *Barnes*, 536 U.S. at 187 (2002) (punitive damages not available for violation of Title VI); *Mercer v. Duke Univ.*, 50 F. App'x 643, 644 (4th Cir. 2002) (citing *Barnes* for conclusion that "punitive damages are not available for private actions brought to enforce Title IX"); *see also, e.g., Doe v. Katy Indep. Sch. Dist.*, 427 F. Supp. 3d 870, 882 (S.D. Tex. 2019) (holding punitive damages under Title IX "are unavailable as a matter of law.").

considering the probability and magnitude of the potential harm to others and 2) the defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with *conscious indifference* to the rights, safety, or welfare of others." *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012) (emphasis added). There is no evidence of either element. There was no evidence that Lozano was in imminent danger or at extreme risk. And there is no evidence of conscious indifference. Rather, the only evidence is that if Baylor was told about the first alleged assault before the second, it responded compassionately to Lozano and properly encouraged her to seek counseling and go to the police. (The evidence further shows that Lozano did neither.) And when informed about the second alleged assault, the only evidence is that Baylor offered Lozano multiple resources – medical treatment, counseling, the option of a no-contact directive, academic assistance, and the opportunity to file a complaint with Judicial Affairs – only some of which Lozano accepted. A reasonable jury could not find legally sufficient evidence to find in Lozano's favor on her gross negligence claim.

Finally, assuming for the sake of argument that Lozano had the pleading and proof to support a gross-negligence claim, Lozano may not rely on evidence related to punitive damages she is legally precluded from being awarded. *See Weisgram v. Marley Co.*, 528 U.S. 440, 453-54 (2000) ("Inadmissible evidence contributes nothing to a 'legally sufficient basis.'"). Texas law is clear that "[i]n an action arising from harm resulting from assault, theft, or other criminal act, a court may not award exemplary damages against a defendant because of the criminal act of another." Tex. Civ. Prac. & Rem. Code § 41.005; *see also Kinney v. Brink's Incorporated*, No. 4:15-CV-03512, 2018 WL 375393, at *2 (S.D. Tex. Jan. 11, 2018) ("This act has been applied to preclude an award of exemplary damages against an employer based on the criminal act of another, even if the employer's actions concurrently caused the employee's death.") (citing *Miles v. Jerry Kidd Oil Co.*, 363 S.W.3d 823 (Tex. App.—Tyler 2012, no pet.); *Bhatti v. Concepts Am. Inc.*, 2016 WL 3880747, at *16-*17 (N.D. Tex. July 18, 2016) (holding even if defendant bar's conduct was a concurrent cause of plaintiff's harm along with third-party bar patron's assault,

section 41.005(a) barred plaintiff's claim for punitive damages); *In re Islamorada Fish Co. Tex., LLC*, 319 S.W.3d 908, 913 (Tex. App.—Dallas 2010, orig. proceeding) (vacating on mandamus trial court's order compelling discovery of restaurant defendant's net worth in Dram Shop case alleging defendant's responsibility for third party customer's drunk driving because "section 41.005(a) applies to bar recovery of punitive damages in this case as a matter of law"). Thus, the Court may not award punitive damages against Baylor arising from alleged harm caused by Chafin's alleged criminal act of assault, even if its actions concurrently caused any alleged harm.

Because Lozano presented no evidence of gross negligence, and because punitive damages are unavailable for Chafin's alleged crimes, the Court should grant judgment as a matter of law to Baylor on the issue of gross negligence and foreclosing the availability of punitive damages to Lozano.

**B. <u>The evidence cannot support a jury finding that Baylor is liable under Title IX for "loss of dignity" damages.</u>**

Lozano is legally precluded from relying on evidence of damages related to a "loss of dignity" for her Title IX claim because U.S. Supreme Court precedent is clear that emotional distress damages are not recoverable under Title IX, and dignitary damages are thereby precluded as a form of emotional distress damages.[2]  *See Cummings v. Premier Rehab Keller, PLLC*, 596 U.S. 212, 217-20, 230 (2022) (holding emotional distress not available under Rehabilitation Act cases and suggesting they would not be available under any spending-clause statute); *Doe 1, et al., v. Baylor*, 6:16-CV-173-RP, Dkt. 1093 at 3 (March 21, 2023) (holding that *Cummings* precludes a plaintiff from recovering emotional distress damages under Title IX).

Since its issuance, numerous federal courts have held that *Cummings*' prohibition on emotional distress damages encompasses damages for dignitary harm. In *Fantasia*, the plaintiff sought

---

[2] Lozano's complaint does not seek damages for loss of dignity, providing yet another reason that there can be no legally sufficient evidence supporting such an award.  *See* above at Part III.A.

4

compensatory damages for dignitary harm under the Rehabilitation Act and the ACA, but the court held that such harm was only compensable in tort damages, and *Cummings* did not permit the recovery of such damages. *Fantasia v. Montefiore New Rochelle*, 2022 WL 20540940, at *3–*4 (S.D.N.Y. June 16, 2022); *see also Vega-Ruiz v. Northwell Health Sys.*, 2023 WL 2587508, at *3 (E.D.N.Y. Mar. 20, 2023) (adopting reasoning of *Fantasia* to hold "plaintiff's claims for 'dignitary harm' … are no longer available"); *Hejmej v. Peconic Bay Med. Ctr.*, 2022 WL 5429675, at *9 (E.D.N.Y. July 5, 2022) (plaintiffs "failed to demonstrate that damages for 'dignitary harm' fall within the ambit of the 'usual contract remedy' damages deemed recoverable [in *Cummings*]"). One court has called an attempt to recover damages for loss of dignity as "a veiled attempt to recover impermissible emotional distress damages." *Nieves v. Plaza Rehab. & Nursing Ctr.*, 2023 WL 4763945, at *9 (S.D.N.Y. July 26, 2023).

Since loss-of-dignity damages are unavailable under Title IX, there is no legally sufficient evidence on which a jury could base loss-of-dignity damages. The Court should grant judgment as a matter of law to Baylor foreclosing the availability of those damages to Lozano.

### C. The evidence cannot support a jury finding that Lozano filed her negligence claim against Baylor within the 2-year statute of limitations.

A two-year statute of limitations applies to Lozano's negligence claims. Dkt. 105 at 41 (citing Tex. Civ. Prac. & Rem. Code § 16.003(a). Lozano filed suit on October 11, 2016. Dkt. 1. All claims that accrued more than two years prior to this date—or before October 11, 2014—are time-barred.

In Texas, a claim generally accrues when a defendant's wrongful conduct causes a claimant to suffer a legal injury, which gives the claimant the right to seek a judicial remedy. *Regency Field Servs., LLC v. Swift Energy Operating, LLC,* 622 S.W. 3d 807, 814 (Tex. 2021). A legal injury is "an injury giving cause of action by reason of its being an invasion of a plaintiff's right." *Id.* (quoting *Hous. Water-Works Co. v. Kennedy*, 70 Tex. 233, 8 S.W. 36, 37 (Tex. 1888)). Texas's accrual rule is fairly strict:

> *Once the defendant's wrongful conduct causes a legal injury, the injured party's claims based on that wrongful conduct accrue—and the limitations period begins to run—even if* (1) the claimant does not yet know that a legal injury has

occurred, (2) the claimant has not yet experienced, or does not yet know the full extent of, the legal injury, (3) *the claimant does not yet know the specific cause of the injury or the party responsible for it*, (4) the wrongful conduct later causes additional legal injuries, or (5) the claimant has not yet sustained or cannot yet ascertain any or all of the damages resulting from the legal injuries.

*Id.* For her negligence claims, Lozano's legal injuries are the alleged assaults that occurred in the early morning hours of April 6, 2014 and an unknown date in late April, 2014. Thus, Lozano's negligence claims accrued – at the latest – on April 30, 2016. Because she did not file suit until more than two years later, Lozano's negligence claims are time-barred.

The discovery rule does not defer the accrual of Lozano's cause of action. It applies in two types of cases: (i) where the nature of the injury is "inherently undiscoverable" and "objectively verifiable," and (ii) where there has been fraudulent concealment. *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996). Physical assault and the injuries that arise as a result are not inherently undiscoverable. Nor is Baylor's allegedly unreasonable response. The evidence shows that Lozano knew the fact of her physical injury—and suspected that football players got special treatment—in the spring of 2014. *See Mellon Serv. Co. v. Touche Ross & Co.*, 17 S.W.3d 432, 436 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (citation omitted) ("cause of action accrues when the fact of injury is known"); *Doe v. Roman Catholic Archdiocese of Galveston-Hous. ex rel Dinardo*, 362 S.W.3d 803, 814 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("Doe's knowledge of the alleged abuse is the relevant knowledge for purposes of the accrual date of his claims against both Brinkman *and the archdiocese*."). Yet she did not file suit until more than two years later. Moreover, the nature of Lozano's injury, at least as it relates to Baylor, was not objectively verifiable. *See S.V.*, 933 S.W.2d at 15. Her claims are barred.[3]

---

[3] Accrual does not turn on whether or when the responsible parties are known. *Id.*; *see also, e.g., Marshall v. First Baptist Church*, 949 S.W.2d 504, 507 (Tex. App.—Houston [14th Dist.] 1997, no pet.) (plaintiff's assertion that he did not realize the church's role in causing his problems "misconstrues the meaning of the inherently undiscoverable requirement"). Once the injury is discovered, "the limitations clock is running, even if the claimant does not yet know: the specific cause of the injury; the party responsible for it; the full extent of it; or the chances of avoiding it." *PPG Indus., Inc. v. JMB/Hous. Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 93–94 (Tex. 2004).

The doctrine of fraudulent concealment, which applies when a defendant is under a duty to disclose information but fraudulently conceals the existence of a cause of action from the injured party, is inapplicable too. *See Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex. 1983); *see also Shell Oil Co. v. Ross*, 356 S.W.3d 924, 927 (Tex. 2011) (plaintiff must show defendant "actually knew a wrong occurred, had a fixed purpose to conceal the wrong, and did conceal the wrong"). First, there is no evidence that Baylor concealed anything from Lozano. In fact, Baylor could not have concealed the facts giving rise to Lozano's negligence claims—"in essence, that she reported [two] physical assaults, [multiple] Baylor officials were aware of her reports, and no one at Baylor responded to help." *See* Dkt. 105; *see also Doe v. Roman Catholic Archdiocese of Galveston-Hous.*, 362 S.W.3d at 814 (church's failure to disclose sexual abuse did not toll limitations). Second, the doctrine of fraudulent concealment has a "reasonable diligence" requirement—and Lozano presented no evidence that she conducted any diligence, much less reasonably so. *See Shell Oil*, 356 S.W.3d at 927.

Because no reasonable jury would have a legally sufficient evidentiary basis to find that Lozano's negligence claims are not time barred, the Court should grant judgment as a matter of law in Baylor's favor.

### D. **The evidence cannot support a jury finding that Baylor is liable for "mental anguish" damages.**

Mental anguish damages are unavailable under Title IX. *See* above. While they can be available for negligence, here there is no evidence to support such an award. Due to the Court's past rulings, Lozano's claims related to the first alleged assault fall under Title IX. Her claims related to the second and third alleged assaults are negligence claims. But Lozano's expert, Dr. Julia Babcock, repeatedly tied Lozano's mental anguish damages just to PTSD, which she repeatedly testified could only have arisen from the alleged choking during the first alleged assault. Since the first alleged assault is actionable, if at all, only under Title IX, Lozano cannot recover damages for mental anguish.

E. **Other grounds for judgment as a matter of law.**

    1.    **Negligence.**

Baylor refers the Court to, and hereby incorporates by reference, the briefing at Dkt. 204, pages 22-28, and Dkt. 227 at 11-18.  There is legally insufficient evidence to support a jury finding that Baylor owed a duty to Lozano, that Baylor breached that duty, or that any negligent act or omission on Baylor's part caused injury to Lozano.

There is no evidence that Baylor owed a duty to Lozano to protect her from being assaulted by Chafin.  There is no evidence that any Baylor employee knew before the first alleged assault in Chafin's apartment (March 6, 2014) that Chafin posed a risk of violence to anyone.  Further, there is no evidence that any Baylor employee ever had knowledge superior to Lozano's regarding Chafin's conduct toward her. No other violent incidents involving Chafin were ever reported—to Baylor or the police—before or after the alleged assaults reported by Lozano.  And Lozano was present for the alleged assaults, unlike anybody from Baylor.  Lozano had the superior knowledge, not Baylor.

Moreover, there is no evidence that any Baylor employee "affirmatively" worsened the situation for Lozano.  Nobody forced or even urged Lozano to be around Chafin in the spring of 2014.  Nobody prevented or discouraged her from going to the police or from seeking a no-contact directive or a protective order.

And there is no evidence that any of the alleged assaults took place in a context in which Baylor exercised control over Chafin or Lozano. The first alleged assault took place in the private bathroom and bedroom of Chafin's apartment, and Lozano herself admitted it would have been intrusive for Baylor to monitor students in the privacy of their own rooms.  The second alleged assault took place off-campus, in a parking lot across the street from a popular bar.  And the third alleged assault took place, once again, in the privacy of Chafin's apartment.

Finally, there is no evidence showing that Baylor's past handling of dating violence allegations against football players affirmatively increased the likelihood that Lozano would be the victim of dating violence by her boyfriend. Indeed, Lozano has not even offered any specific evidence related to Baylor's past handling of dating violence allegations. And Lozano has also not pointed to any pattern of occurrence, recency, and concealment regarding Chafin specifically or football players generally with respect to dating violence. *Cf. Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 757-58 (Tex. 1998) (discussing foreseeability in context of premises liability; "The previous crimes must be sufficiently similar to the crime in question as to place the landowner on notice of the specific danger."); *Taylor v. Louis*, 349 S.W.3d 729, 734–35 (Tex. App.— Houston [14th Dist.] 2011, no pet.) (finding that defendant's knowledge of ex-husband's "past dangerous propensities, steroid use, and anger issues" was insufficient to make his attack on her then boyfriend foreseeable.). She has not shown that Chafin or other players were not disciplined for alcohol or drug use – but more importantly there is no evidence linking her alleged assaults to drinking or drugs. Rather, the evidence conclusively shows that the alleged assaults took place, if at all, in the context of a highly emotional and tumultuous relationship. In this case, there is no evidence establishing any special circumstances that would justify deviating from the general rule that precludes liability when one student assaults another student.

Even if Lozano could show that Baylor owed her a duty that it breached, a reasonable jury could not find that the breach was the proximate cause of Chafin's alleged conduct. There is no evidence that second and third alleged assaults would not have occurred had Baylor employees been trained differently. There is no evidence that the second alleged assault would not have occurred had Baylor employees learned of the first alleged assault. On the contrary, the only evidence is that the second alleged assault occurred, if at all, in the middle of the night off-campus in the parking lot of a local bar. Nor is there evidence that the third alleged assault would not have happened had Baylor employees responded differently to the second alleged assault. Indeed, the evidence indicates that

Lozano repeatedly declined the resources Baylor or the police made available to her to pursue disciplinary action, a no-contact order, or protective order, and, instead, resumed a relationship with Chafin.   Contrary to showing that Baylor's acts or omissions caused the second or third alleged assaults, the evidence in fact shows that Lozano was too busy and/or simply did not want to take advantage of the resources Baylor offered to her. The evidence does not give rise to any reasonable inference supportive of proximate cause in this case.

Because Lozano's evidence cannot sustain a jury finding that any negligent act or omission by Baylor proximately caused injury to Baylor, the Court should grant judgment as a matter of law to Baylor on her negligence claim.

### 2.    Title IX.

Baylor hereby refers to and incorporates by reference its briefing on law and facts from Dkt. 204, at pages 8-22, Dkt. 227, at pages 7-11, 16-18.

There is legally insufficient evidence to support a finding that Lozano timely filed her Title IX claim.   *See* briefing on law and facts, which were established at trial, at Dkt. 204, pages 8-13; Dkt 227, pages 2-4; Part III.C., above; *Lewis v. Danos*, No. 22-30670, ___ F.4th ___, 2023 WL 6630297 (5th Cir. Oct. 12, 2023) (no fraudulent concealment when school's attorney told plaintiff that perpetrator had not violated Title IX because attorney was not plaintiff's counsel and plaintiff did not allege that she thought attorney represented her; given obviousness of perpetrator's conduct, plaintiff showed lack of diligence in not seeking her own counsel or further questioning attorney's conclusion).

There is also legally insufficient evidence to support a jury finding in Lozano's favor on her "heightened risk" claim.   *See* Dkt. 204, at pages 13-22.

In addition, Lozano alleges that Baylor maintained an official policy of deliberate indifference to student reports of sexual misconduct and that this alleged policy caused Devin Chafin to assault her on March 6, 2014.  But the evidence cannot support a jury finding in Lozano's favor on her official

policy claim.  *See* Dkt. 227 at 8-11.  Title IX prohibits sex discrimination in the education programs and activities of educational institutions that received federal funds.  20 U.S.C. § 1681(a); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 280 (1998).  It is not violated merely because students engage in sex-based misconduct or fail to follow university rules.  *I.L. v. Houston Indep. Sch. Dist.*, 776 F. App'x 839, 843-844 (5th Cir. 2019); *see generally Davis v. Monroe Cnty. Bd. of Educ.,* 526 U.S. 629, 648-649 (1999).[4] Rather, Title IX is violated only if a university employee with authority to take corrective action has actual knowledge of sex-based misconduct and the employee responds with deliberate indifference that subjects a student to behavior so severe, pervasive, and objectively offensive that it effectively denies the student equal access to educational opportunities and benefits.  The institution's "own deliberate indifference" must cause the discrimination. *Davis*, 526 U.S. at 642-643; *Lozano v. Baylor Univ.*, 408 F. Supp. 3d 861, 880 (W.D. Tex. 2019).   There is no such evidence in this case.

Baylor's Title IX liability based on an official policy requires proof of a policy statement, regulation, or decision officially adopted by Baylor's officers or those whose edicts may fairly be said to represent official policy. *Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 754 (5th Cir. 1993) (quoting *Monell v. Dep't of Soc. Svs. of N.Y.*, 436 U.S. 658, 690 (1978)).  A policy may also arise in the form of a widespread practice that, although not formally adopted by Baylor, is so common and well-settled as to represent official policy as an expected, accepted practice.  *See Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009).  A successful showing of a widespread practice requires similarity and specificity; the prior acts must be fairly similar to the act alleged in the case. *See generally Hicks-Fields v. Harris County*, 860 F.3d 803, 810 (5th Cir. 2017). In discrimination cases, incidents involving third parties are not relevant unless the third parties are similarly situated to the plaintiff. *See generally Wyvill*

---

[4] In addition, the university must have substantial control over the offending student and the context in which the sexual misconduct occurred. *Davis,* 526 U.S. 629 at 643-645.  As explained above, there is no evidence of substantial control here.

*v. United Companies Life Ins. Co.*, 212 F.3d 296, 303 (5th Cir. 2000) (holding in a Title VII case that incidents involving other employees "cannot establish that discrimination was a company's standard operating procedure unless those employees are similarly situated to the plaintiff"). The relevance of evidence of discrimination against other employees depends in part on "how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008). Once again, Plaintiff has presented no evidence of a policy or widespread practice of deliberate indifference to sex-based discrimination.

In addition, as an institution of higher education, Baylor can receive information and act only through individuals. *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 659 (5th Cir. 1997); *I.F. v. Lewisville Indep. Sch. Dist.*, 2017 WL 4506804, at *3 (E.D. Tex., June 20, 2017) (approving jury instruction in Title IX retaliation case that "LISD is a legal entity and can only know about a report, and can only act or not act through its officers and employees, who are authorized to take action about such a report or to decide whether to take action on the report under the circumstances existing at the time"). Therefore, Lozano must prove: (i) an official with authority to change policy[5] had actual knowledge of a widespread practice of employee deliberate indifference to reports of sex-based dating violence that was so common and well-settled as to represent official policy as an expected, accepted practice of the university,[6] (ii) the official knew that the alleged policy created a particularized and

---

[5] The Fifth Circuit distinguishes officials who have the power to "reformulate district sexual harassment policies or publicly 'repudiate th[e] conduct'" from those who merely have the duty to report wrongdoing. *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 365 (5th Cir. 2020). This approach "locates the acts of subordinates to the board at a point where the board's liability and practical control are sufficiently close to reflect its intentional discrimination. … ; it decides who acts for the board." *Rosa H.*, 106 F.3d at 660 (emphasis added); *see also Simpson*, 500 F.3d at 1177-78 & 1184-85 (identifying employees who are policymakers and those whose edicts or acts may fairly be characterized as representing official policy); *D.G. v. Tucson Unified Sch. Dist.*, 2020 WL 7041348, *8 (D. Ariz., Nov. 30, 2020) (applying *Simpson*).

[6] "'[W]ithout actual knowledge, the policy itself would not be *deliberately* indifferent.'" *Doe v. Plainfield Comm. Consol. Sch. Dist.*, 2023 WL 2428870 (N.D. Ill., March 9, 2023) (citations omitted) (emphasis in original).

substantial risk of serious harm to the plaintiff,[7] and (iii) the official was deliberately indifferent to the risk, which caused injury to the plaintiff.[8]  She has offered no such proof.  Although she has highlighted some cases in which Baylor made mistakes and failed certain students, there is no evidence that those mistakes were part of a settled policy.  Rather, the policy-makers who testified stated they had not known about those failings until Pepper Hamilton told them—and they were deeply saddened by them.  This is not deliberate indifference.

The plaintiff must prove that the university maintained the policy despite the knowledge of a substantial risk of serious harm. *See, e.g., Barlow v. State of Washington*, 2022 WL 2256318 (9th Cir., June 23, 2022) ("Barlow's evidence at most shows that the University policies that permitted Culhane to transfer campuses were deficient; the evidence does not show that the University maintained those policies despite a known or obvious risk of sexual misconduct.").  Negligent oversight is not enough. *Rosa H.*, 106 F.3d at 659 (official must know of the "danger of harassment and choose[] not to alleviate that danger").  Responses that are "inept, erroneous, ineffective, or negligent" do not constitute deliberate indifference and will not support liability. *I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 369 (5th Cir. 2019) (citations omitted).  Once again, Baylor's failings do not constitute deliberate indifference.

---

[7] *Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 53 F.4th 334, 341-42 (5th Cir. 2022) (holding in a pre-assault deliberate indifference case that actual knowledge of a particularized risk to the plaintiff is an essential element and that the risk to the plaintiff must be "substantial"). Even if the school failed to properly implement Title IX, the plaintiff did not "connect this failure to the District's knowledge about her in particular." *Id.*

[8] The inquiry is "whether the defendant-institution's policy or custom inflicted the injury of which the plaintiffs complain." *Jane Doe 1 et al v. Baylor Univ.*, 240 F. Supp. 3d 646, 661 (W.D. Tex. 2017); *Doe v. Union Coll.*, 2020 WL 1063063 (N.D.N.Y., March 3, 2020) (pre-assault plaintiff must show that school knew its policies and responses to sexual assault were deficient and that the school's "subsequent failure to remedy these policies" was the proximate cause of her assault); *see also Trudeau v. Univ. of N. Tex.*, 2021 WL 2908164, at *2 (5th Cir. July 9, 2021) (applying "but for" causation in a Title IX retaliation case); *Sheppard v. Visitors of Va. St. Univ.*, 993 F.3d 230, 237 (4th Cir. 2021) (applying "but for" causation in a Title IX discriminatory discipline case).

Because Lozano's evidence cannot sustain a jury finding that Baylor violated Title IX by maintaining an official policy of deliberate indifference to student reports of sexual misconduct that caused Devin Chafin to physically assault her, the Court should grant judgment as a matter of law to Baylor on that claim.

## CONCLUSION AND PRAYER

Defendant Baylor University prays that this Court will grant its motion and render judgment as a matter of law in favor of Baylor on each of Lozano's claims, enter a take nothing judgment against Lozano, and award Baylor all taxable costs of court.

Respectfully submitted,

Lisa A. Brown
State Bar of Texas No. 03151470
**Thompson & Horton LLP**
Phoenix Tower, Suite 2000
3200 Southwest Freeway
Houston, Texas 77027-7554
lbrown@thompsonhorton.com
(713) 554-6741 (telephone)

Holly G. McIntush
State Bar of Texas No. 24065721
8300 N. MoPac Expwy, Suite 220
Austin, Texas 78759
hmcintush@thompsonhorton.com
(512) 615-2350 (telephone)
(512) 682-8860 (fax)

K. Adam Rothey
State Bar of Texas No. 24051274
Leila H. Gary
State Bar of Texas No. 24058790
**Thompson & Horton LLP**
500 N. Akard Street, Suite 3150
Dallas, Texas 75201
(972) 441-4527 (telephone)
arothey@thompsonhorton.com
lgary@thompsonhorton.com

**Weisbart Springer Hayes LLP**
212 Lavaca Street, Suite 200
Austin, Texas 78701
512.652.5780
512.682.2074 fax

By: */s/ Sara E. Janes*
    Julie A. Springer
    State Bar No. 18966770
    jspringer@wshllp.com
    Sara E. Janes
    State Bar No. 24056551
    sjanes@wshllp.com

COUNSEL FOR DEFENDANT
BAYLOR UNIVERSITY

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was served upon opposing counsel on October 20, 2023, via the Court's ECF/CMF electronic filing and service system as follows:

Sheila Haddock
Alexander Zalkin
Irwin Zalkin
The Zalkin Law Firm, P.C.
10590 W. Ocean Air Drive, Suite 125
San Diego, California 92130
(858) 259-3011 (Tel.)
(858) 259-2015 (Fax)
sheila@zalkin.com
alex@zalkin.com
irwin@zalkin.com

Zeke O. Fortenberry
Fortenberry Firm PLLC
18333 Preston Rd, Suite 375
Dallas, TX 75252
(469)626-7373 (Tel.)
zeke@fortenberryfirm.com

Thomas P. Brandt
Stephen D. Henninger
Fanning, Harper, Martinson, Brandt &
Kutchin, P.C.
Two Energy Square
4849 Greenville Ave., Ste. 1300
Dallas, Texas 75206
(214) 369-1300 (Tel.)
(214) 987-9649 (Fax)
tbrandt@fhmbk.com
shenninger@fhmbk.com

Colin L. Powell
Hartline Barger LLP
8750 North Central Expressway, Suite 1600
Dallas, Texas 75231
(214) 369-2100 (Tel.)
(214) 369-2118 (Fax)
cpowell@hartlinebarger.com

Darrell L. Barger
David W. Green
Hartline Barger LLP
1980 Post Oak Blvd., Suite 1800
Houston, Texas 77056
(713) 759-1990 (Tel.)
(713) 652-2419 (Fax)
dbarger@hartlinebarger.com
dgreen@hartlinebarger.com

*/s/ Sara E. Janes*
Sara E. Janes

16