IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| DOLORES LOZANO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 6:16-CV-403-RP |
| | § | |
| BAYLOR UNIVERSITY, | § | |
| ART BRILES, *in his individual capacity*, and | § | |
| IAN McCAW, *in his individual capacity*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

On October 20, 2023, this Court granted motions for judgment as a matter of law by Defendants Art Briles ("Briles") and Ian McCaw ("McCaw") and granted in part and denied in part Defendant Baylor University's ("Baylor") (together, "Defendants") motion for judgment as a matter of law. This written order follows to provide additional analysis.

## I. BACKGROUND

Lozano was a student at Baylor University from 2010 to 2014.[1] While she was at Baylor, she was in a relationship with a Baylor football player named Devin Chafin ("Chafin"). Towards the end of their relationship, Chafin allegedly assaulted Lozano three separate times in the spring of 2014. Lozano shared what happened with Baylor coaches, employees/administrators, and a chaplain. She also sought medical and mental health care and reported what happened to the Waco Police Department. About two years later, in mid-May 2016, Lozano learned of Baylor's Title IX compliance issues and other failures from the media. Baylor also publicly released the results of an investigation conducted by Pepper Hamilton, a law firm retained by Baylor to review its Title IX

---

[1] Because the facts alleged in this case have been extensively covered in other orders, the Court provides only a brief summary in this order.

1

compliance and other related issues. The Findings of Fact outlined the specific failings of the football program and identified significant concerns about the culture of the football program relating to accountability for athlete misconduct. After learning about Baylor's failings, Lozano connected those failings to the injuries she suffered when she had been assaulted, repeatedly, by Chafin in 2014. Lozano sued Baylor in 2016, bringing Title IX claims and state law claims for negligence. (Dkt. 1). In 2018, Lozano added Briles and McCaw to the lawsuit, bringing negligence claims against them. (2d Am. Compl., Dkt. 50).

This case proceeded to a jury trial in October 2023. (*See* Minute Entry, Dkt. 303). After presenting testimony and other evidence over several days, Lozano rested her case on October 19, 2023. (Dkt. 317). That night, Briles filed his motion for judgment as a matter of law, (Dkt. 314), and Lozano filed a written response to Briles's motion at about 4:00 a.m. the next morning. (Dkt. 315). That same morning, Baylor filed its motion for judgment as a matter of law. (Dkt. 316). In court, McCaw presented an oral motion for judgment as a matter of law, and Defendants presented arguments in support of their motions. (*See* Minute Entry, Dkt. 318). Lozano argued in opposition to all three motions. (*Id.*).

## II. LEGAL STANDARD

Judgment as a matter of law is proper "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. (50)(a)(1); *Casey v. Toyota Motor Eng'g Manufacturing North Am. Inc.*, 770 F.3d 332, 326 (5th Cir. 2014). The decision to grant a Rule 50 motion is "a conclusion of law based upon a finding that there is insufficient evidence to create a fact question for the jury." *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1323 (5th Cir. 1994). To prevail on a Rule 50 motion, "the party opposing the motion must at least establish a conflict in substantial evidence on each essential element of [its] claim." *N. Cypress Med. Ctr. Operating Co. v.*

*Aetna Life Ins.*, 898 F.3d 461, 473 (5th Cir. 2018) (quoting *Goodner v. Hyundai Motor Co.*, 650 F.3d 1034, 1039 (5th Cir. 2011)). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Conn. Gen. Life Ins. Co. v. Humble Surgical Hosp., L.L.C.*, 878 F.3d 478, 485 (5th Cir. 2017)).

## III. DISCUSSION

### A. Title IX Claims

Baylor sought judgment as a matter of law on the issue of Lozano's recovery for loss of dignity under Title IX, and the Court denied Baylor's request. Baylor argued that Lozano could not be awarded damages for loss of dignity following the Supreme Court's decision in *Cummings v. Premier Rehab Keller, PLLC*, 596 U.S. 212 (2022). In *Cummings*, the Supreme Court held that emotional distress damages are not available under the Rehabilitation Act and suggested that emotional distress damages are not available under any spending-clause statute. In another Title IX case against Baylor, this Court ruled that, pursuant to *Cummings*, those plaintiffs could not recover emotional distress damages. *Jane Doe v. Baylor Univ.*, No. 6:16-cv-173, (W.D. Tex. filed June 15, 2016) (Order, Dkt. 1093). The Court did not specifically address loss of dignity damages. Baylor presented no persuasive authority demonstrating that loss of dignity damages would be unavailable to Lozano under Title IX, and Lozano disputed whether courts generally have consistently held that compensatory damages for dignitary harm are unavailable. In the absence of precedential or persuasive authority, the Court could not grant judgment as a matter of law on the issue of loss of dignity damages.

If the law develops and loss of dignity damages are not available in a Title IX action, the Court's potential error in denying Baylor's judgment as a matter of law did not harm Baylor for several reasons. First, Lozano did not argue to the jury that they should award damages for loss of

3

dignity. Second, the Court did not instruct the jury to include dignitary harm as a type of injury that could be awarded damages under Title IX. Third, the jury verdict form does not include loss of dignity as a type of damages that could have been awarded to Lozano. Fourth and finally, the jury did not award Lozano any damages at all for her Title IX claim. While the jury found that Lozano had proven her Title IX claim against Baylor, the jury awarded "$0.00" in damages. Even if we assume the jury—that had no knowledge of loss of dignity damages and had not been asked to award them—believed they could award loss of dignity damages, the jury did not award any damages under Title IX. Since no Title IX damages were awarded, Baylor cannot claim that the denial of its motions for judgment as a matter of law on loss of dignity damages has caused it harm.

At the end of its motion for judgment as a matter of law, Baylor also argued that Lozano had no evidence that Baylor violated Title IX by maintaining a policy or practice of deliberate indifference to student reports of behavior that fell under Title IX. (Baylor JMOL, Dkt. 316, at 10–11). Baylor further argued that no Baylor "policy caused Devin Chafin to assault her on March 6, 2014" and recycled paragraph upon paragraph of legal argument about what Lozano must have proved, disregarding the standard previously set for by this Court. Baylor did not provide analysis about what evidence Lozano failed to present and instead argued that "Baylor's failings do not constitute deliberate indifference." (*Id.* at 13). Based on the substantial evidence presented to the jury, the Court found that a reasonable jury would have a legally sufficient evidentiary basis to find for Lozano on her Title IX claim against Baylor.

**B. Negligence, Statute of Limitations, and Mental Anguish**

In their motions for judgment as a matter of law, Defendants argued Lozano's negligence claims should be dismissed and that they are entitled to judgment as a matter of law on their statute of limitations affirmative defense. For Lozano's negligence claims, the Court denied Baylor's motion and granted Briles and McCaw's motions, leaving only Baylor in the case. The Court denied Baylor's

motion for judgment as a matter of law based on its statute of limitations defense. Baylor additionally argued that Lozano cannot seek mental anguish damages, which the Court denied.

**1. Negligence Claims Against Baylor**

According to Baylor, Lozano presented "no evidence" that Baylor owed a duty to Lozano, breached its duty, and caused her injury because of its breach. From Lozano's evidence, the jury could have inferred that Baylor was aware of Chafin's previous criminal acts, school infractions, and other troubling behavior and therefore had a duty to Lozano. Lozano also presented ample evidence that Baylor was aware of the first alleged assault as Lozano and Baylor employees and former employees, among others, testified that she reported it to Baylor employees, including coaches. Baylor also claimed that there was no evidence that it had affirmatively worsened the situation for Lozano because Baylor had not "forced" Lozano to be around Chafin in the spring of 2014 and did not discourage Lozano from contacting the police. (*Id.*). Even assuming those assertions to be true, whether Baylor forced Lozano to be around Chafin or discouraged her from reporting the alleged assaults to the police are not the only two considerations, and Lozano presented evidence from which a reasonable jury could have found or inferred that Baylor did affirmatively worsen her situation by failing to respond appropriately to her reports of alleged assaults by a Baylor football player. Finally, Baylor contended that "there is no evidence showing that Baylor's past handling of dating violence allegations against football players affirmatively increased the likelihood that Lozano would be the victim of dating violence." (*Id.* at 9). Once again, Baylor attempted to improperly narrow the inquiry. As required by the law, Lozano presented evidence of sufficiently similar incidents involving Baylor athletes. Throughout Lozano's case, Lozano submitted sufficient evidence to the jury that Baylor had a duty to Lozano and breached that duty to her detriment such that the jury could find Baylor liable.

Baylor additionally asserted that there was no evidence supporting proximate cause as to the second and third alleged assaults. "There is no evidence that second and third alleged assaults would not have occurred had Baylor employees been trained differently. There is no evidence that the second alleged assault would not have occurred had Baylor employees learned of the first alleged assault." (*Id.*). To the contrary, Lozano's evidence showed that Baylor did learn of the first alleged assault before the second alleged assault. And the jury could have reasonably inferred from the evidence that Baylor had not adequately trained its employees based on Baylor's actions, or inactions, when Lozano shared with Baylor that she had been assaulted by another student. Because Lozano's evidence could have sustained a jury finding that Baylor acted negligently, the Court denied Baylor's motion for judgment as a matter of law as to negligence.

**2. Negligence Claims Against Briles and McCaw**

The Court granted Briles and McCaw's motions for judgment as a matter of law as to Lozano's negligence claims against them. In her amended complaint, Lozano alleged that Briles and McCaw (1) negligently trained and supervised their respective staffs by failing to ensure they properly supervised, controlled, restrained, and monitored athletes, (2) failed to train their staffs to competently respond to allegations of dating violence and sexual assault by football players, and (3) failed to require their staffs to appropriately report such allegations. (2d Am. Compl., Dkt. 50, at 36–37). "The elements of a common-law negligence claim are: (1) a legal duty; (2) a breach of that duty; and (3) damages proximately resulting from the breach." *Elephant Ins. Co. v. Kenyon*, 644 S.W.3d 137, 144 (Tex. 2022). Lozano's negligence claims against Briles and McCaw failed as a matter of law on two separate grounds: (1) Briles and McCaw did not owe Lozano a duty of care; and (2) even assuming that they did owe Lozano a duty, Lozano failed to show proximate cause.

To determine whether a defendant has a duty of care, Texas courts consider "the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the

6

magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant." *Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 506 (Tex. 2017). Foreseeability is the dominant factor. *Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602, 619 (W.D. Tex. 2017). Lozano presented insufficient evidence that Briles and McCaw knew of Chafin's alleged assaults of Lozano until May 2016 or were aware of behavior by Chafin that should have made it reasonably foreseeable to Briles and McCaw that Chafin posed a risk to Lozano or that there was a likelihood that Lozano would be injured by Chafin. Lozano also presented no evidence that Briles and McCaw owed an independent duty to Lozano outside of their roles at Baylor.

Even if Briles and McCaw owed a duty to Lozano, Briles and McCaw could not have been the proximate cause of Lozano's injuries and damages. "Proximate cause has two elements: cause in fact and foreseeability." *W. Investments, Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005). The elements "cannot be established by mere conjecture, guess, or speculation." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). "The test for cause in fact is whether the act or omission was a substantial factor in causing the injury without which the harm would not have occurred." *Id.*; *see also Rodriguez-Escobar v. Goss*, 392 S.W.3d 109, 113 (Tex. 2013) ("For a negligent act or omission to have been a cause-in-fact of the harm, the act or omission must have been a substantial factor in bringing about the harm, and absent the act or omission—i.e., but for the act or omission—the harm would not have occurred."). Assuming Briles and McCaw should have known about the alleged assaults sooner, Briles and McCaw would have known about them at the same time that others, like Colin Shillinglaw who worked for the football program, learned of the alleged assaults and reported them. Lozano failed to show that, had Briles and McCaw known of the first and/or second alleged assaults earlier and reported them, those actions would have stopped the subsequent alleged assaults. *See Doe*, 907 S.W.2d at 477–78 ("We conclude that if the Boys Club breached a duty to investigate, screen, or supervise volunteers, this breach was not the cause in fact of the plaintiffs'

injuries. Assuming the Boys Club had investigated Mullens's criminal record, revelation of the two misdemeanor DWI convictions would not have precluded Mullens's presence at the club."). Because Lozano did not present sufficient evidence to support proximate cause, Lozano's negligence claims against Briles and McCaw were dismissed as a matter of law.

### 3. Baylor's Statute of Limitations Defense

In its answer, Baylor raised an affirmative defense that Lozano's negligence claims were not timely filed, (Am. Answer, Dkt. 117, at 4), and then in its motion for judgment as a matter of law argued that the evidence could not support a jury finding in favor of Lozano, (Baylor JMOL, Dkt. 316, at 5–7).[2] Baylor contended that Lozano lacked evidence to support tolling under the discovery rule or the fraudulent concealment doctrine. The Court denied Baylor's request because Baylor had not presented evidence from which a reasonable jury could have found that Baylor proved its affirmative defense.

Baylor had the burden to establish its affirmative defense at trial. To win its motion for judgment as a matter of law, Baylor needed to show that a reasonable jury would have a sufficient evidentiary basis to find that Lozano was on notice of her negligence claims more than two years before she filed her lawsuit.[3] In its motion, Baylor did not provide the Court with any specific

---

[2] To the extent Baylor raised its statute of limitations defense as to Title IX in one sentence of its motion for judgment as a matter of law, (Baylor JMOL, Dkt. 316, at 10), the Court rejected that argument for the same or similar reasons Baylor was not entitled to judgment as a matter of law on its statute of limitations defense as to Lozano's negligence claims.

[3] "Absent tolling, the limitations period runs from the moment a plaintiff's claim 'accrues,'" and while the limitations period is borrowed from state law, "the particular accrual date of a federal cause of action is a matter of federal law." *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 762 (5th Cir. 2015) (quoting *Frame v. City of Arlington*, 657 F.3d 215, 238 (5th Cir. 2011)). "[U]nder federal law, a claim accrues and the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Id.* (quoting *Spotts v. United States*, 613 F.3d 559, 574 (5th Cir. 2010)). "[A] plaintiff's awareness encompasses two elements: (1) The existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions." *Id.* (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001)). "'[A]wareness' [of the existence of the injury and causation] . . . does not mean actual knowledge; rather, all that must be shown is the existence of 'circumstances [that] would lead a reasonable person to investigate further.'" *Id.* (quoting *Piotrowski*, 237 F.3d at 576). Thus, for awareness of causation, a plaintiff "must have knowledge of facts that would lead a reasonable person (a) to

evidence showing how it met its burden. Baylor included this broad statement: "The evidence shows that Lozano knew the fact of her physical injury—and suspected that football players got special treatment—in the spring of 2014." (*Id.* at 6). Baylor does not explain how the fact that Lozano's suspicion that football players got special treatment shows that she was on notice of her negligence claims in Spring 2014. During the hearing, Baylor again had the opportunity to cite to the evidence and pointed to none. Baylor failed to meet its burden by pointing to evidentiary support for its defense, and the Court was not required to comb the record developed during Lozano's case to find the evidence that would support Baylor's defense. Based on the lack of evidence, a reasonable jury would not have had a sufficient evidentiary basis to find that Baylor had established its affirmative defense.[4]

### 4. Lozano's Claim for Mental Anguish Damages

Baylor argued it was entitled to judgment as a matter of law as to any mental anguish damages for Lozano's negligence claims. Baylor presented a narrow theory that Lozano's expert, Dr. Julie Babcock, tied Lozano's mental anguish damages "just to PTSD, which she repeatedly testified could only have arisen from the alleged choking during the first alleged assault." (*Id.* at 7). According to Baylor, since Lozano's negligence claims against Baylor only relate to the second and third alleged assaults, and not the first alleged assault, Lozano cannot obtain any mental anguish damages because only the first alleged assault gave rise to mental anguish damages. Baylor's contention does not reflect the evidence presented to the jury. Lozano and Dr. Babcock testified about the effects of the alleged assaults on Lozano's mental health, and neither Lozano nor Dr. Babcock limited their

---

conclude that there was a causal connection . . . or (b) to seek professional advice, and then, with that advice, to conclude that there was a causal connection between the [defendant's acts] and injury." *Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir. 1983).

[4] Additionally, even if Baylor had satisfied its burden, Lozano presented sufficient evidence that she was not aware of the causal connection between her injuries and Baylor's conduct until 2016 under either or both the discovery rule or fraudulent concealment.

testimony in such a way that only the first alleged assault caused Lozano to suffer mental anguish. Moreover, to the extent Baylor argued that only PTSD can lead to mental anguish, the Court rejected that theory as unsupported. For those reasons, the Court denied Baylor's motion for judgment as a matter of law as to mental anguish damages for Lozano's negligence claims against Baylor.

### C. Gross Negligence Claims

Finally, Baylor moved for judgment as a matter of law as to Lozano's claim for gross negligence. Baylor argued, in part, that her live complaint did not assert a claim for gross negligence. In the body of her live complaint, Lozano did not include a claim for gross negligence. (2d Am. Compl., Dkt. 50). In her original complaint, Lozano devoted pages to her gross negligence claim, labeled "Count 3." (Orig. Compl., Dkt. 1). Likewise, in her amended complaint, Lozano brought a gross negligence claim, this time as "Count 4." (Am. Compl., Dkt. 16, at 21–23). However, when she filed her second amended complaint, Lozano removed her gross negligence claim. (*See* 2d Am. Compl., Dkt. 50). Because Lozano dropped her gross negligence claim, the Court may not need to consider the substance of Baylor's argument. *See Carreon v. Gamez*, No. 5:19-CV-124, 2021 WL 1428485, at *2 (S.D. Tex. Mar. 24, 2021) ("In this case, Defendant has moved for summary judgement on . . . Plaintiff's claim of gross negligence . . . . But before the pending motion was ripe for review, Plaintiff filed a Second Amended Complaint, in which Plaintiff dropped . . . all gross negligence claims . . . . Accordingly, the Court DENIES AS MOOT Defendant's motion as to [gross negligence].").

Assuming without deciding that Lozano had a live claim for gross negligence, the Court agreed with Baylor that Lozano lacked evidence to support gross negligence. Gross negligence requires proof that "1) when viewed objectively from the defendant's standpoint at the time of the event, the act or omission involved an extreme degree of risk, considering the probability and

magnitude of the potential harm to others and 2) the defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others." *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012). As to the first factor, Lozano did not present sufficient evidence that, from Baylor's standpoint in spring 2014, its conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Lozano. While there was sufficient evidence for a reasonable jury to determine that Baylor acted negligently, the evidence was lacking to show Baylor's actions involved an extreme degree of risk. The Court thus granted judgment as a matter of law to Baylor on the issue of gross negligence and foreclosed the availability of punitive damages.

## IV. CONCLUSION

For these reasons and as stated on the record during the trial, **IT IS ORDERED** that Briles's motion for judgment as a matter of law, (Dkt. 314), is **GRANTED**, and Lozano's claims against Briles are **DISMISSED**. **IT IS FURTHER ORDERED** that McCaw's oral motion for judgment as a matter of law, (*see* Minute Entry, Dkt. 318), is **GRANTED**, and Lozano's claims against McCaw are **DISMISSED**.

**IT IS FINALLY ORDERED** that Baylor's motion for judgment as a matter of law, (Dkt. 316), is **GRANTED IN PART and DENIED IN PART**. The Court granted Baylor's motion as to Lozano's gross negligence claim, if any. The Court denied Baylor's motion as to (1) Lozano's IX claims against Baylor, (2) Lozano's negligence claims against Baylor, (4) Lozano's possible request for loss of dignity damages relating to her Title IX claim, (5) Lozano's mental anguish damages, and (5) Baylor's statute of limitations defense.

**SIGNED** on November 21, 2023.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE