IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| DOLORES LOZANO, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | §     6:16-CV-403-RP |
| | § |
| BAYLOR UNIVERSITY, | § |
| ART BRILES, *in his individual capacity*, and | § |
| IAN MCCAW, *in his individual capacity*, | § |
| | § |
| Defendants. | § |

## ORDER

Before the Court is Defendant Baylor University's ("Baylor") renewed motion for judgment as a matter of law, (Dkt. 354), Plaintiff Dolores Lozano's ("Lozano") response, (Dkt. 371), and Baylor's reply, (Dkt. 373). Having reviewed the record, the briefs, and the relevant law, the Court will deny Baylor's motion.

## I. BACKGROUND

Lozano was a student at Baylor University from 2010 to 2014.[1] While she was at Baylor, she was in a relationship with a Baylor football player named Devin Chafin ("Chafin"). Towards the end of their relationship, Chafin allegedly assaulted Lozano three separate times in the spring of 2014. Lozano shared what happened with Baylor coaches, employees/administrators, and a chaplain. She also sought medical and mental health care and reported what happened to the Waco Police Department. About two years later, in mid-May 2016, Lozano learned of Baylor's Title IX compliance issues and other failures from the media. Baylor also publicly released the results of an investigation conducted by Pepper Hamilton, a law firm retained by Baylor to review its Title IX compliance and other related issues. The Findings of Fact by Pepper Hamilton outlined the specific

---

[1] Because the facts of this case have been extensively covered in other orders and were presented in a multi-week trial, the Court provides only a brief summary in this order.

failings of the football program and identified significant concerns about the culture of the football program relating to accountability for athlete misconduct. After learning about Baylor's failings, Lozano connected those failings to the injuries she suffered when she had been assaulted, repeatedly, by Chafin in 2014. Lozano sued Baylor in 2016, bringing Title IX claims and state law claims for negligence. (Dkt. 1). In 2018, Lozano added two Baylor football coaches Art Briles ("Briles") and Ian McCaw ("McCaw") as defendants in the lawsuit, bringing negligence claims against them. (2d Am. Compl., Dkt. 50).

This case proceeded to a jury trial in October 2023. (*See* Minute Entry, Dkt. 303). After Lozano's case-in-chief, the Court granted Briles and McCaw's motions for judgment as a matter of law, dismissing Briles and McCaw from the case, (Dkts. 314, 318, 340), and granted in part and denied in part Baylor's motion for judgment as a matter of law, (Dkts. 316, 318, 340). In its order, the Court denied Baylor's request for judgment as a matter of law on Lozano's recovery for loss of dignity under Title IX because (1) Baylor provided no persuasive authority that dignity damages are not available after the Supreme Court suggested that emotional distress damages are not available under spending clause statutes like Title IX, *see Cummings v. Premier Rehab Keller, PLLC*, 596 U.S. 212 (2022), and (2) Baylor had not demonstrated any harm. The Court also denied Baylor's assertion that Lozano had no evidence of Baylor violating Title IX by maintaining a policy or practice of deliberate indifference to student reports of behavior that fell under Title IX based on the substantial evidence presented to the jury at trial. The Court also rejected Baylor's arguments about the insufficiency of the evidence related to the negligence claims brought against Baylor, Baylor's statute of limitations defense, and Lozano's claim for mental anguish damages. Finally, the Court granted Baylor's motion for judgment as a matter of law as to Lozano's gross negligence claim, finding that Lozano dropped her gross negligence claim, and, even if she had not dropped the claim, Lozano lacked evidence to

support a gross negligence claim. That ruling foreclosed the availability of punitive damages. Following the Court's order, the trial proceeded only as to Baylor.

On October 24, 2023, the jury returned a verdict. The verdict form contained eight questions. The first question addressed Baylor's Title IX statute of limitations defense and asked the jury whether Baylor had proven by a preponderance of the evidence that, prior to October 11, 2014, Lozano knew or should have known of her Title IX injury and the causal connection between her injury and Baylor's actions. (Verdict, Dkt. 330). The jury answered no. (*Id.* at 1). Because the jury answered no, they did not proceed to the next related question about fraudulent concealment. (*Id.*). For Lozano's Title IX claim, the jury found Baylor liable, answering yes to whether Lozano had proven by a preponderance of the evidence that Baylor maintained a policy of deliberate indifference to reports of sexual harassment that created a heightened risk that Lozano would be injured and thereby caused injuries to Lozano. (*Id.* at 2). The jury, however, awarded no damages. (*Id.*). Next, the jury again rejected Baylor's statute of limitations defense, this time as to Baylor's negligence claim. (*Id.* at 3). Likewise, because the jury found that Baylor did not prove its statute of limitations defense, they did not proceed to the next question about fraudulent concealment. (*Id.*). Finally, the jury found that Baylor's negligence proximately caused one or more of the occurrences that resulted in Lozano's injuries only as it related to the occurrences that happened in April 2014. There, the jury awarded $270,000 in total damages on Lozano's negligence claim: $40,000 for physical pain and mental anguish sustained in the past; $190,000 for physical pain and mental anguish that Lozano will, in reasonable probability, sustain in the future; and $40,000 for future health care expenses. (*Id.*).

Baylor now brings its renewed motion for judgment as a matter of law on four bases: (1) there is legally insufficient evidence to support the jury's finding of negligence; (2) there is legally insufficient evidence to support the jury's finding on the statute of limitations and fraudulent

3

concealment as to negligence; (3) there is legally insufficient evidence to support the jury's finding on Title IX; and (4) there is legally insufficient evidence to support the jury's finding on the statute of limitations and fraudulent concealment as to Title IX.

## II. LEGAL STANDARD

"A motion for judgment as a matter of law . . . in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014) (quoting *SMI Owen Steel Co. v. Marsh USA, Inc.*, 520 F.3d 432, 437 (5th Cir. 2008) (per curiam) (citation and internal quotation marks omitted)). Under Rule 50(b) "[a] motion for judgment as a matter of law should be granted if there is no legally sufficient evidentiary basis for a reasonable jury to find for a party." *Id.* (citation and internal quotation marks omitted). At this stage, a court's "review of a jury's verdict is 'especially deferential.'" *OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, 841 F.3d 669, 675 (5th Cir. 2016) (quoting *SMI Owen Steel Co. v. Marsh U.S.A., Inc.*, 520 F.3d 432, 437 (5th Cir. 2008)). The court "view[s] the entire record in the light most favorable to the non-movant, drawing all factual inferences in favor of the non-moving party, and 'leaving credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts to the jury.'" *Aetna Casualty & Surety Co. v. Pendleton Detectives of Mississippi, Inc.*, 182 F.3d 376, 378 (5th Cir. 1999) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1300 (5th Cir. 1994)). The court may grant a motion for JMOL "[o]nly when the facts and reasonable inferences are such that a reasonable juror could not reach a contrary verdict." *Baltazor v. Holmes*, 162 F.3d 368, 373 (5th Cir. 1998). "If reasonable persons could differ in their interpretation of the evidence, the motion should be denied." *Id.*

## III. DISCUSSION

A.     The Evidence Supported the Jury's Finding of Negligence

At trial, Lozano testified about three assaults: (1) an assault by Chafin in March 2014; (2) an assault by Chafin on April 5, 2014 at Scruffy Murphy's; and (3) an assault by Chafin at his apartment some time between late April and Lozano's graduation in May. Because the March assault was previously dismissed, the jury was asked only about the two April incidents. For the assault that happened at Scruffy Murphy's (the second of the three assaults), Baylor argues it owed no duty to Lozano because that assault occurred off campus and, even if Baylor breached its duty, its breach was not the proximate cause of Lozano's injuries. To the extent Baylor again argues that it owed no legal duty to Lozano when she was assaulted by a fellow Baylor student because that assault occurred off campus, Baylor rehashes a losing argument that the Court has previously rejected. *See, e.g.*, *Lozano v. Baylor Univ.*, 408 F. Supp. 3d 861, 894 (W.D. Tex. 2019) ("Applying the multi-factor test, Lozano has asserted a plausible claim that Baylor had a duty to her."); (MSJ Order, Dkt. 240, at 22–24).

Moving to causation, Baylor argues that its breach was not the proximate cause of injury to Lozano. Baylor's core contention is that Lozano did not report the March assault to Baylor personnel "to demonstrate that Baylor in fact was not even aware of the March 6 incident prior to the Scruffy's incident." (JMOL Mot., Dkt. 354, at 3). When considering Baylor's first motion for judgment as a matter of law during trial, the Court found that based on the evidence presented by Lozano at trial, the "jury could have inferred that Baylor was aware of Chafin's previous criminal acts, school infractions, and other troubling behavior." (Order, Dkt. 340, at 5). In addition, the evidence included testimony from Lozano, Chafin, McCaw, Briles, Baylor football coach Jeff Lebby ("Lebby"), and Bethany McCraw and exhibits like Briles's email on April 27, 2012 and the Notice of Sanctions on September 13, 2013.[2] The jury could have reasonably relied on any or all of the

---

[2] For example, Lozano testified that she reported the first assault to Baylor employees Coach LaPrise Williams ("Williams") and Wes Yeary and reported the second assault to additional Baylor employees including at least Baylor coaches, Baylor counselors, Baylor professors, and Baylor health professionals. (Trial

5

evidence presented at trial to determine—directly or by inference—that Baylor knew about the first assault before the second assault occurred and knew about the first and/or second assaults before the third assault occurred. Likewise, the jury could have reasonably inferred from the evidence that Baylor had not adequately trained its employees based on Baylor's actions, or inactions, when Lozano shared with many Baylor employees that she had been assaulted by another student.[3] The evidence was legally sufficient to support the jury's finding that Baylor was negligent, and Baylor has failed to show that a reasonable jury could not have found that Baylor's breach of its duty to Lozano proximately caused Lozano's injuries related to the second and third incidents.

### B. The Evidence Supported the Jury's Rejection of Baylor's Statute of Limitations Defense as to Negligence

Baylor argues that Lozano did not timely bring her negligence claims and asserts that the jury did not have a legally sufficient evidentiary basis to find that Lozano's negligence claims are not time barred. However, the jury was not asked whether Lozano proved that her negligence claim was not time barred. Rather, Baylor raised the statute of limitations defense and bore the burden to prove that Lozano's claims were time barred. The jury was asked whether Baylor proved by a

---

Testimony, Dkt. 371-5, at 2–13). Chafin testified that (1) Baylor coaches asked Lozano to help him with his study skills and academic performance; (2) Baylor coaches already knew about his marijuana use and imposed consequences for his drug and alcohol use; (3) Baylor coaches were aware that Lozano sought an abortion after he "had gotten [her] pregnant" which was a "a lot for [him] . . . to deal with;" and, after the first assault, he told Lebby that he had laid hands on Lozano. (Trial Tr., Dkt. 371-2, at 2–9; Trial Tr., Dkt. 371-7, at 8–9). Briles testified that he received an email in April 2012, after Baylor had recruited him to play football at Baylor but before Chafin matriculated at Baylor, saying that Chafin, as a high school football player, ran a stop sign and hit their car and there was mention of "marijuana smoke." (Trial Tr., Dkt. 371-1, at 118–19). McCaw testified that he learned that Lozano had been assaulted by Chafin in spring 2014. (Trial Tr., Dkt. 371-7, at 34–35).

[3] In addition to the evidence addressed in the previous footnote, there was additional evidence that the jury heard that supported its finding of negligence and particularly the element of causation. For example, Baylor employee Nancy Post ("Post") testified that she learned about the first assault in spring 2014 from the acrobatics and tumbling coach LaPrise Williams ("Williams"), who told Post that Lozano had bruises on her arm that had been caused by an assault by Chafin. (Trial Tr., Dkt. 371-9, at 2–3). After learning that information, Post testified that she did not notify her supervisor, did not document the report, and told Williams that it was not her place to interject herself into Lozano and Chafin's dating relationship. (*Id.* at 4). She took those steps—and failed to take steps—in accordance with "the guidance we had at the time" from Baylor. (*Id.* at 7).

preponderance of the evidence that prior to October 11, 2024, Lozano knew or should have known of her injury caused by Baylor's negligence. (Verdict, Dkt. 330, at 3). The jury answered no. (*Id.*).

To prevail on a statute of limitations defense, a defendant must both establish when the cause of action accrued and negate the discovery rule. *Draughon v. Johnson*, 631 S.W.3d 81, 88 (Tex. 2021). Baylor relies on *McGowan v. S. Methodist Univ.*, 715 F. Supp. 3d 937 (N.D. Tex. 2024), for the proposition that physical assault and the injuries that arise as a result of the assault are "not inherently undiscoverable." *Id.* at 947. In *McGowan*, the court found that hip injuries suffered by college athletes were not inherently undiscoverable even though plaintiffs argued that they could not have known that the college caused their injuries until they learned about the college's failures from an audit report. *Id.* at 947–48. *McGowan* is not instructive. First, the case is not precedent that this Court is bound to follow. Second, the court in *McGowan* was making a determination on a summary judgment motion, not deciding a post-trial motion for judgment as a matter of law after a jury heard evidence and found that the defense was not proven. Third, the facts are not analogous. In *McGowan*, the plaintiffs knew they suffered hip injuries "in connection with their participation with SMU rowing at the time they incurred the injuries." *Id.* at 948. Whereas here, the jury was presented with evidence that Lozano suffered her assault injuries, which were not only physical, but did not know at the time that her injuries were connected to Baylor's athletic department's (in)actions or Baylor's lack of adequate training of its coaches and staff.

Baylor's argument that Lozano did not need to have "every piece of information" available to know that "Baylor football players generally, and Chafin specifically, were not suffering consequences of assaultive or other criminal behavior" rings hollow. (Baylor JMOL, Dkt. 354, at 9). Baylor does not, and cannot, argue that Lozano had any such information when she was assaulted. Baylor also appears to make an argument about fraudulent concealment, (Baylor JMOL, Dkt. 354, at

7

10–11), which the Court will not address since the jury did not accept Baylor's statute of limitations defense and accordingly did not reach the fraudulent concealment question on the verdict form.

### C. The Evidence Supported the Jury's Finding of Title IX Liability

In about one page of its motion, Baylor advances two arguments related to the jury's finding of liability under Title IX.[4] First, Baylor contends that Lozano failed to establish that a heightened risk of sexual harassment was known or obvious to officials with authority to effect Title IX policy per the jury instructions. (Baylor JMOL, Dkt. 354, at 11–12). Baylor continues that "a reasonable jury could not find that, prior to Lozano's assaults, the alleged policy of indifference was known or obvious to employees and officials with the authority to effect the policy." (*Id.* at 12). Baylor appears to misunderstand the inquiry. The jury was instructed to determine whether the risk of sexual harassment, not the policy, was known or obvious to officials. (Jury Charge, Dkt. 321, at 8). In the jury charge, "policy" was defined as an official policy or a widespread practice which could be demonstrated by the conduct of Baylor officials or employees with authority to effect the policy. (*Id.*). The jury was also instructed that "sexual harassment can be verbal or physical" and "includes sexual misconduct, sexual assault, domestic abuse, dating violence, and stalking." (*Id.*). The jury found Baylor liable under Title IX after hearing and seeing evidence that Baylor officials and employees knew about the risk of sexual harassment, including that female students had reported that they were victims of sexual harassment, football players were not being disciplined for violating university policies, and Baylor employees were concealing acts of misconduct and violence committed by football players.[5] The jury weighed the substantial evidence and found that a

---

[4] In one sentence, Baylor mentions that the final judgment in this case should be "clarified" that Lozano takes nothing from Baylor on the Title IX claim. (Baylor JMOL, Dkt. 354, at 11). Baylor does not move the Court to do so; Baylor does not provide any support for its request for clarification; and Baylor does not explain how its post-trial motion for judgment as a matter of law is the appropriate vehicle to amend the final judgment. For those reasons, the Court declines to clarify the final judgment at this time.
[5] For example, the Pepper Hamilton report, which was an exhibit and read into the record by Cary Gray ("Gray")—who also provided the jury with additional context and information—addressed the years 2012-15

heightened risk of sexual harassment was known or obvious to officials with authority to effect Title IX policy, and it is not for the Court to question this finding of fact.

Second, Baylor challenges the sufficiency of the evidence supporting causation for Title IX liability. (*Id.*). The gist of Baylor's one-paragraph argument is that the first assault was a moment of anger and highly personal and not connected to Baylor's policy of deliberate indifference because it was about Lozano's abortion and "hurtful" things she said to Chafin during their argument—a description that tends to imply that Lozano was to blame for being assaulted and injured. Baylor also seems to ignore that the jury did not consider Lozano's assaults in a vacuum but rather learned about those assaults in the context of days and days of testimony about the criminal activities and misconduct of football players, including sexual harassment, that was already known to football program officials who did little more than make those players do extra workouts as punishment. Setting aside Baylor's characterizations of the testimony and Baylor's misunderstanding of the application of Title IX, Baylor has not met its burden of showing that no reasonable jury could have

---

and found that Baylor failed "to identify and respond to a pattern of sexual violence by a football player, to take action in response to reports of a sexual assault by multiple football players, and to take action in response to a report of dating violence. Pepper's findings also reflect significant concerns about the tone and culture within Baylor's football program as it relates to accountability for all forms of athlete misconduct." (Trial Tr., Dkt. 371-3, at 5–6). Briles testified that between 2010-14, the football program was aware of misconduct and criminal activity including felonies by football players and meted out punishment, like extra workouts, to football players who had violated Baylor's code of conduct or the law. (Trial Tr., Dkt. 371-1, 2–7). McCraw similarly testified that she was aware of at least one instance in which a football player with a code violation who was handled "outside of process," which McCraw found frustrating and concerning, and that the university's president could step in and do something outside of the process as he had ultimate decision-making power. (Trial Tr., Dkt. 371-8, at 13–15). For the 2010-14 timeframe, McCaw testified about knowing that football players who had violated the Baylor code of conduct and had been arrested for criminal activity, including Chafin in 2012, and that those instances of misconduct were handled in-house by the football program and not reported. (Trial Tr., Dkt. 371-7, at 6–10). McCaw also testified that there had been a "longstanding problem of sexual assaults on Baylor's campus" and that it was a "widespread problem" during 2013-14. (*Id.* at 39–40). In addition and again as examples, the jury also reviewed exhibits that supported their Title IX finding such as the Findings of Fact, Pepper Hamilton report, and texts and emails between Baylor employees—all of which tended to show that Baylor employees knew there was a heightened risk of sexual harassment at Baylor in the years leading up to Lozano's assaults.

heard the evidence presented and inferred that Baylor's policy of deliberate indifference created a heightened risk that Lozano would be injured and that she was injured.[6]

### D.      The Evidence Supported the Jury's Rejection of Baylor's Statute of Limitations Defense as to Title IX

Baylor contends that "[t]here is legally insufficient evidence to support a finding that Lozano timely filed her Title IX claim"—again inverting the inquiry from whether a reasonable jury could have found that Baylor did not prove its statute of limitations defense to whether a reasonable jury could have found that Lozano did not prove she timely filed her lawsuit. Baylor had the burden of proof, not Lozano, to convince the jury of its statute of limitations defense. After including its take on statute of limitations case law under Title IX, Baylor states: "Based on the facts discussed above on page 9, Lozano had sufficient knowledge and no information was concealed from her." (Baylor JMOL, Dkt. 354, at 13). Baylor filed a 13-page motion with a 20-page limit and yet did not provide more than a reference to another page of its motion and did not provide any analysis for its argument..[7]

## IV. CONCLUSION

---

[6] As already explained in this order and previous orders, Baylor officials and employees were aware of Chafin's misconduct and criminal activities and his dating relationship with Lozano. Baylor had a policy of deliberate indifference that created a heightened risk that Lozano would be injured by Chafin as demonstrated by evidence like, by way of example, when the jury heard McCaw testify that there was a "longstanding problem of sexual assaults on Baylor's campus" and that it was a "widespread problem" during the 2013-14 school year. (Trial Tr., Dkt. 371-7, at 39–40). He also testified that those assaults were handled internally by the football program and not reported. (*Id.* at 6–10). Gray testified about Baylor's handling of five Title IX cases addressed by the Pepper Hamilton report and that learning about those cases and Baylor's mishandling of them was "beyond – it's really hard to describe how horrible it was" and felt like a "punch in the gut." (Trial Tr., Dkt. 371-3, at 18). Gray was felt sure there were more women who had similar experiences. (*Id.* at 19). He described an instance in the report where Briles was trying to keep a football player from Judicial Affairs and instances when Briles was connecting football players with criminal defense attorneys. (*Id.* at 22, 24). These are just a few examples of the large volume of evidence presented to the jury that could have led the jury to conclude that Baylor's policy of deliberate indifference created a heightened risk that Lozano would be injured and that she was injured.

[7] In any event, there was ample legally sufficient evidence presented to the jury that Lozano's claim did not accrue until she learned later about Baylor's connection to the assaults she experienced at the hands of a Baylor football player.

For these reasons, **IT IS ORDERED** that Baylor's renewed motion for judgment as a matter of law, (Dkt. 354), is **DENIED**.

**SIGNED** on March 26, 2025.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE