IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| DOLORES LOZANO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 6:16-CV-403-RP |
| | § | |
| BAYLOR UNIVERSITY, | § | |
| ART BRILES, *in his individual capacity*, and | § | |
| IAN MCCAW, *in his individual capacity*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is Plaintiff Dolores Lozano's ("Lozano") motion for attorney's fees, (Dkt.

348), Defendant Baylor University's ("Baylor") response, (Dkt. 353), and Lozano's reply, (Dkt. 363).

Having reviewed the record, the briefs, and the relevant law, the Court will grant Lozano's motion.

## I. BACKGROUND

Lozano was a student at Baylor University from 2010 to 2014.[1] While she was at Baylor, she

was in a relationship with a Baylor football player named Devin Chafin ("Chafin"). Towards the end

of their relationship, Chafin allegedly assaulted Lozano three separate times in the spring of 2014.

Lozano shared what happened with Baylor coaches, employees/administrators, and a chaplain. She

also sought medical and mental health care and reported what happened to the Waco Police

Department. About two years later, in mid-May 2016, Lozano learned of Baylor's Title IX

compliance issues and other failures from the media. Baylor also publicly released the results of an

investigation conducted by Pepper Hamilton, a law firm retained by Baylor to review its Title IX

compliance and other related issues. Pepper Hamilton's Findings of Fact outlined the specific

failings of the football program and identified significant concerns about the culture of the football

---

[1] Because the facts alleged in this case have been extensively covered in other orders, the Court provides only a brief summary here.

program relating to accountability for athlete misconduct. After learning about Baylor's failings, Lozano connected those failings to the injuries she suffered when she had been assaulted, repeatedly, by Chafin in 2014. Lozano sued Baylor in 2016, bringing Title IX claims and state law claims for negligence. (Dkt. 1). In 2018, Lozano amended her complaint to add negligence claims against two former members of the Baylor athletic program: head football coach Art Briles and athletic director Ian McCaw. (2d Am. Compl., Dkt. 50).

The case proceeded to a jury trial in Waco, Texas in October 2023. (*See* Minute Entry, Dkt. 303). After Lozano closed her case in chief, Briles filed a motion for judgment as a matter of law, (Dkt. 314), Baylor filed a motion for judgment as a matter of law, (Dkt. 316), and McCaw moved in court for a motion for judgment as a matter of law, (*see* Minute Entry, Dkt. 318). The Court granted Briles and McCaw's motions for judgment as a matter of law and dismissed Lozano's claims against them. The Court also granted in part and denied in part Baylor's motion for judgment as a matter of law. (*Id.*). The trial then continued only as to Baylor.

On October 24, 2023, the jury returned a verdict as to Lozano's remaining two causes of action against Baylor: (1) Title IX and (2) negligence. The jury considered Baylor's statute of limitations defenses for both Title IX and negligence and found that Baylor did not prove by a preponderance of the evidence that, prior to October 2014, Lozano knew or should have known of her injury and the causal connection between her injury and Baylor's actions. (Verdict, Dkt. 330). The jury rejected both of Baylor's statute of limitations defenses. (*Id.*). The jury found Baylor liable for negligence and awarded Lozano a total of $270,000 in damages. (*Id.* at 4–5).

The jury also found Baylor liable under Title IX, deciding that Lozano had proven by a preponderance of the evidence that Baylor maintained a policy of deliberate indifference to reports of sexual harassment that created a heightened risk that Lozano would be injured and thereby caused injuries to Lozano. (*Id.* at 2). The next question asked the jury what sum of money, if any, if

paid now in cash, would fairly and reasonably compensate Lozano for her damages under Title IX, if any, that resulted from Baylor's discriminatory policy. (*Id.*). The question stated that Title IX damages included the loss, if any, of educational opportunities and benefits at Baylor and did not include compensation for emotional distress, pain and suffering, and mental anguish nor lost wages, loss of earning capacity, or employment opportunities. (*Id.*). The jury awarded Lozano no Title IX damages. (*Id.*). For reference, the relevant portion of the jury verdict is excerpted below.

### QUESTION NO. 3

Has Dolores Lozano proven by a preponderance of the evidence that Baylor University maintained a policy of deliberate indifference to reports of sexual harassment that created a heightened risk that Dolores Lozano would be injured and thereby caused injuries to Dolores Lozano?

Answer "Yes" or "No":

Answer: Yes

If you answered "yes" to Question No. 3, then proceed to Question No. 4.

If you answered "no" to Question No. 3, then proceed to Question No. 5.

### QUESTION NO. 4.

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Plaintiff Dolores Lozano for her damages under Title IX, if any, that resulted from Baylor University's discriminatory policy?

Title IX damages include the loss, if any, of educational opportunities and benefits at Baylor University. Title IX damages do not include compensation for emotional distress, pain and suffering, and mental anguish. Title IX damages in this case do not include lost wages or loss of earning capacity or employment opportunities.

Answer in dollars and cents:

Answer: $ 0.00

After resolving post-trial motions, the Court entered final judgment. (Dkt. 344). Relevant to this motion, the Court entered judgment in favor of Lozano and against Baylor based on the jury's finding of liability as to the Title IX claim. (*Id.* at 2). Consistent with the verdict, the Court did not award Lozano's Title IX damages. (*Id.*). Now Lozano has moved for attorney's fees as a prevailing party under Section 1988(b).

## II. LEGAL STANDARD

An award of attorney's fees is entrusted to the "sound discretion" of the district court. *Tex. Commerce Bank Nat'l Ass'n v. Capital Bancshares, Inc.*, 907 F.2d 1571, 1575 (5th Cir. 1990). Nevertheless, "[i]t remains important ... for the district court to provide a concise but clear explanation of its reasons for the fee award." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 329 (5th Cir. 1995) (emphasis omitted). In a civil rights case like this, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). The purpose of Section 1988(b) "was to ensure effective access to the judicial process for persons with civil rights grievances" by creating an incentive for attorneys to take these cases. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). Private citizens are to act as "private attorney generals," encouraging judicial enforcement of civil rights laws and advancing Congress's goals. *Id.*

The Fifth Circuit uses a two-step process to calculate recoverable attorney's fees. *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). First, courts use the lodestar method to calculate an appropriate fee award by multiplying the number of hours reasonably spent on the case by an appropriate hourly rate in the community for such work. *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). The party seeking fees is "charged with the burden of showing the reasonableness of the hours billed and, therefore, [is] also charged with proving that [its attorney(s)] exercised billing judgment." *Id.* "The court should exclude all time that is excessive, duplicative, or inadequately documented [and] [t]he hours surviving this vetting process are those reasonably

4

expended in litigation." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). While plaintiff's counsel

need not record in great detail how each minute of their time was expended, they should identify the

general subject matter of their time expenditures. *Hensley*, 461 U.S. at 437 n.12.

After calculating the lodestar, the court may decrease or enhance the amount based on the

relative weights of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714

(5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). The Fifth Circuit

has instructed that "of the *Johnson* factors, the court should give special heed to the time and labor

involved, the customary fee, the amount involved and the result obtained, and the experience,

reputation and ability of counsel." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998).

### III. DISCUSSION

The question presented to this Court is not an easy one: does a plaintiff qualify as the

prevailing party under Section 1988(b) when the jury found the defendant liable under Title IX and

state law negligence but awarded damages only as to the negligence claim? The Court does not have

the luxury of following clear precedent, and the law surrounding who is a prevailing party in a Title

IX case with a verdict like the one here is not clear cut. In the discretion of this Court, after

reviewing relevant law and after having overseen this case for more than eight years, the Court will

find that Lozano is the prevailing party under Section 1988(b) for purposes of attorney's fees.

### A.    Prevailing Party under Section 1988(b)

What is well-settled is the purpose of Section 1988(b) and the definition of prevailing party

in general terms. The Civil Rights Attorney's Fees Awards Act of 1976, as amended, provides in

relevant part: "In any action or proceeding to enforce a provision of sections 1981, 1982, 1983,

1985, and 1986 of this title, title IX of Public Law 92–318 . . . or title VI of the Civil Rights Act of

1964 . . . , the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as

part of the costs." 42 U.S.C. § 1988(b). Section 1988(b) "was enacted for a specific purpose: to

5

restore the former equitable practice of awarding attorney's fees to the prevailing party in certain civil rights cases, a practice [the Supreme Court] had disapproved in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240 (1975)." *Farrar v. Hobby*, 506 U.S. 103, 118–19 (1992) (J. O'Connor, concurring). "The purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances.'" *Hensley*, 461 U.S. at 429 (quoting H.R. Rep. No. 94–1558, p. 1 (1976)).

In *Lackey v. Stinnie*, 145 S. Ct. 659 (2025), the Supreme Court recently considered prevailing party status in a case where the plaintiffs challenged a state law and achieved a preliminary injunction enjoining the law, but before the case reached final judgment, the challenged law was repealed by the legislature. *Id.* at 664. The question presented was whether the plaintiffs were prevailing parties who qualified for an award of attorney's fees under Section 1988(b) even though they did not prevail in the judgment phase. The Court held that the plaintiffs were not prevailing parties because they won a "transient victory on a preliminary injunction" and did not obtain enduring judicial relief on the merits. *Id.* at 669.

While the posture of that case is different than the posture of this case, the *Lackey* Court's general discussion of the definition of a prevailing party is instructive here. Looking to the meaning of the term prevailing party at the time Section 1988(b) was adopted, the Court relied on the 1968 Black's Law Dictionary which defined prevailing party as the party "who successfully prosecutes the action or successfully defends against it.'" *Id.* at 667 (quoting Black's Law Dictionary 1352 (rev. 4th ed. 1968)). Prevailing party status "does not depend upon the degree of success at different stages of the suit, but whether, at the end of the suit, or other proceeding, the party who has made a claim against the other, has successfully maintained it." *Id.* "A prevailing party, in other words, is the 'party ultimately prevailing when the matter is finally set at rest.'" *Id.* (quoting Black's Law Dictionary 1352).

**B.      Lack of Damages Does Not Automatically Preclude an Award of Attorney's Fees When Lozano Proved Liability on her Title IX Claim**

The verdict in this case was mixed. The jury found Baylor liable under Title IX, answering in the affirmative on the verdict form that Lozano proved by a preponderance of the evidence that Baylor maintained a policy of deliberate indifference to reports of sexual harassment that created a heightened risk that Lozano would be injured and thereby caused injuries to Lozano. (Verdict, Dkt. 330). But the jury did not award damages. (*Id.*). The fact that the jury did not award damages does not diminish the jury's finding of liability. The jury found that Baylor violated Title IX and that Baylor's violation caused Lozano to be injured. The issue then is whether a plaintiff can qualify as the prevailing party for purposes of awarding attorney's fees under Section 1988(b) if a plaintiff establishes a resulting injury without successfully demonstrating the amount of damages flowing from defendant's wrongful conduct.

In *DHI Group, Inc. v. Kent*, the Fifth Circuit considered a case where the jury found a RICO violation but not a RICO injury and affirmed the district court's denial of attorney's fees. No. 21-20474, 2022 WL 3755782 (5th Cir. Aug. 30, 2022). The Fifth Circuit explained: "On the issue of RICO liability the jury was only instructed as to whether the statute was violated. Injury was addressed in a separate question assessing RICO damages. Though the jury found zero damages— **which does not preclude attorney's fees**—there is no indication that they understood RICO liability required both a violation and an injury, or that an injury could exist apart from damages." *Id.* at *8 (emphasis added). The Fifth Circuit recognized that injury and damages are separate and reasoned that an injury is required to qualify for attorney's fees but damages are not required. Because the liability question in this case asked about injury to Lozano (causation), the jury necessarily found both a violation and an injury when they found Baylor liable. Based on the Fifth Circuit's reasoning, because Lozano proved an injury, the lack of damages does not seem to preclude attorney's fees.

7

Another court considered the lack of damages in a Title IX case with a verdict of zero damages and found that plaintiff was the prevailing party. In *Doe v. Purdue University*, the plaintiff won her Title IX claims against Purdue and a group of individual defendants with the jury awarding $10,000 in damages against Purdue and $0 in damages against the individual defendants. No. 4:18-CV-89-JEM, 2023 WL 2734329, at *2 (N.D. Ind. Mar. 31, 2023), *appeal dismissed sub nom. Roe v. Trustees of Purdue Univ.*, No. 22-2890, 2024 WL 1694809, at *1 (N.D. Ind. Jan. 17, 2024). In response to plaintiff's motion for attorney's fees, the individual defendants argued that she was not a prevailing party because she did not obtain a monetary judgment against them. *Id.* at *2. The Court disagreed and found that the plaintiff was the prevailing party for the purposes of Section 1988(b) attorney's fees. While the verdict in that case was not identical to the one in this case, the Northern District of Indiana grappled with the same issues and, in its discretion, decided that the lack of damages as to one of two groups of defendants did not preclude the plaintiff from qualifying as the prevailing party as to all the defendants in that case.

Although it may be unusual as a general matter for a jury to find liability, including injury, and not award damages, the posture may become more common in Title IX cases. Shortly before this case was tried to a jury, the Supreme Court held that emotional distress damages are no longer recoverable in a private action to enforce the Rehabilitation Act of 1973 or the Affordable Care Act, both Spending Clause statutes. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 230 (2022). The Court also identified Title VI and Title IX as Spending Clause statutes, like the Rehabilitation Act of 1973 and the Affordable Care Act, and courts, including this one, have applied the reasoning of *Cummings* to Title IX claims and found that emotional distress damages are not available to plaintiffs bringing a private action to enforce Title IX.

Eliminating emotional distress damages inevitably will reduce or preclude the ability of a plaintiff in a Title IX case to obtain damages even if the plaintiff has proven an injury. Before

*Cummings*, "damages awards [were] largely, if not entirely, made up of pain and suffering damages compensable due to the plaintiffs' emotional distress, in amounts ranging from hundreds of thousands to millions of dollars." Note, *Without Remedies: The Effect of Cummings and the Contract-Law Analogy on Antidiscrimination Spending Clause Plaintiffs*, 138 HARV. L. REV. 1407, 1422 (2025). After *Cummings*, "awards are either significantly lower or rely on other causes of action to bring in emotional distress damages." *Id.* The post-*Cummings* verdicts suggest that damages in Title IX cases are now available when the plaintiff experiences economic loss (like lost tuition) or brings a pendent state law claim like negligence for which emotional distress damages are available. "These pathways to recovery lead to strange results." *Id.* This case is an example of those strange results. Lozano proved Baylor violated the law and that Baylor's violation injured her but, like most Title IX plaintiffs, had largely relied on emotional distress damages to compensate her injury. After *Cummings*, limited remedies, if any, for Title IX plaintiffs will inevitably lead to mixed verdicts, which will complicate district court determinations of attorney's fees awards.

### C.    Lozano Partially Succeeded on Her Title IX Claim and Achieved Benefits from Litigation

Satisfied that the lack of damages on her Title IX claim would not preclude Lozano from qualifying as the prevailing party, the Court turns to whether she qualifies as the prevailing party because the Court's judgment in this case materially altered the legal relationship of the parties. *Tex. State Tchrs.*, 489 U.S. at 792–93. The Supreme Court has identified one measure: whether plaintiff has "succeed[ed] on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit." *Hensley*, 461 U.S. at 433; *Lackey*, 145 S. Ct. at 668 ("We have held that, for the purposes of § 1988(b), a plaintiff 'prevails' when a court grants enduring judicial relief that constitutes a 'material alteration of the legal relationship of the parties.'") (quoting *Tex. State Tchrs.*, 489 U.S. at 792–93). A party crosses the threshold in circumstances like when the plaintiff is awarded nominal damages, *Farrar*, 506 U.S. at 112, or wins on a material even if not predominant

claim, *Tex. State Tchrs.*, 489 U.S. at 791–93. A party does not qualify as a prevailing party when a court merely enters a declaratory judgment that does not modify the defendant's behavior toward the plaintiff. *Rhodes v. Stewart*, 488 U.S. 1, 3–4 (1988). "'[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar*, 506 U.S. at 114 (quoting *Hensley*, 461 U.S. at 436).

In this case, unlike the plaintiff in *Farrar*, Lozano succeeded on a significant issue in litigation that brought some benefit and "served the 'private attorney general' role which Congress meant to promote in enacting § 1988." *Tex. State Tchrs.*, 489 U.S. at 793. She did more than obtain "moral satisfaction" that flows from a favorable jury finding. *Farrar*, 506 U.S. 112. Lozano brought a Title IX claim against Baylor to the jury, and the jury found liability, including injury. Her Title IX claim was a significant claim, and the litigation and the jury's finding of liability against Baylor "accomplished some public goal other than occupying the time and energy of counsel, court, and client." *Farrar*, 506 U.S. at 121–22. For example, Lozano advanced a theory of heightened risk in Title IX cases, and the Court adopted Lozano's proposed framework even in the absence of guidance from the Fifth Circuit. (*See* Order, 6:16-cv-173, Dkt. 988, at 23–24 (adopting the framework proposed by Lozano and other Title IX plaintiffs who also had suits against Baylor for all Baylor cases on the court's docket including Lozano's case)). Because of Lozano's litigation against Baylor, the Court confronted novel theories and established legal precedent.[2] In fact, in her motion, Lozano points to the many cases that have relied on opinions issued by this Court in Lozano's case. (Mot. Atty's Fees, Dkt. 348, at 12) (citing *Doe v. Bd. of Supervisors of Univ. of La. Sys.*, 650 F. Supp. 3d 452 (M.D. La. 2023) (heightened risk, statute of limitations, off-campus assault);

---

[2] In its opposition brief, Baylor makes the argument that Lozano's case "did not establish a novel new legal principle but, rather, has applied legal principles established in other cases." (Resp., Dkt. 353, at 8). Baylor's new stance is the opposite of what it consistently argued during litigation about the Court's best attempts to resolve the many disputes and interpretations of law proposed by the parties by applying legal principles established in other cases whenever possible.

*Owens v. Louisiana State Univ.*, No. 21-242-WBV-SDJ, 2023 WL 9051299 (M.D. La. Dec. 31, 2023) (heightened risk, discovery rule, statute of limitations); *Doe 1 v. Huntington Indep. Sch. Dist.*, 9:19-cv-00133-ZJG, 2020 WL 10317505 (E.D. Tex. Oct. 5, 2020) (heightened risk); *Owens v. Louisiana State Univ.*, No. 21-242-WBV-SDJ, 2023 WL 8880382 (M.D. La. Dec. 22, 2022) (policy-based claim, dating violence); *see also Snyder Hill v. Ohio State Univ.*, 48 F.4th 686 (6th Cir. 2022), *cert. denied* 143 S.Ct. 2659 (2023) (citing Lozano and adopting the court's reasoning regarding accrual date of heightened risk claim)). Lozano's litigation against Baylor, now spanning 8 years and counting, further developed Title IX jurisprudence in the Fifth Circuit and beyond. The jury's finding of Baylor's liability under Title IX marks a legal victory even if not a complete victory. The recognition of Baylor's culpability under Title IX coupled with the validation of Lozano's legal theories demonstrates that the litigation achieved some of its intended goals, ultimately affirming that Baylor violated Lozano's civil rights.[3]

### D. Practical and Equitable Considerations Warrant an Award of Attorney's Fees

Employing its discretion, the Court also notes practical and equitable considerations that, in this case, weigh towards designating Lozano as the prevailing party for purposes of Section 1988(b) attorney's fees. First, the fundamental objective of Section 1988(b) is to encourage private enforcement of civil rights by ensuring meaningful legal representation for plaintiffs challenging discriminatory practices. The Court therefore finds that a narrow, mechanistic interpretation focusing solely on monetary damages would undermine the remedial purposes of Section 1988(b). Second, as noted above, *Cummings* likely deprived Lozano of a remedy for her Title IX claim. The *Cummings* decision came late in the course of years of intense litigation, but Lozano and her attorneys chose to continue their fight to hold Baylor accountable for what Lozano believed was a Title IX

---

[3] Lozano also argues that her success on her negligence claim, which led to a damages award of $270,000, also supports an award of attorney's fees under Section 1988(b). Lozano is correct that her Title IX claim and pendent state law claim arose out of a common nucleus of facts, but this Court declines to designate Lozano as the prevailing party under Section 1988(b) on the basis that her successful state law negligence claim.

violation. The jury ultimately agreed, finding Baylor liable for Lozano's injuries. The jury's hands were tied, by *Cummings*, in awarding damages as they were instructed not to consider emotional distress damages. Third, it is difficult to see how a plaintiff who has successfully overcome the statute of limitations defense and proved the liability of the defendant for causing her injuries could fail to qualify as the prevailing party as envisioned by Congress in enacting Section 1988(b). To conclude otherwise would not only be counterintuitive and unfair but also inconsistent with the underlying purpose of Section 1988(b) which was to ensure plaintiffs who win significant legal claims in federal court are afforded the opportunity to recover reasonable attorney's fees. Fourth, focusing solely on the award of damages when making a Section 1988(b) determination risks undermining the jury's critical finding of liability. A jury's finding of liability should be a factor in a court's evaluation of whether attorney's fees are warranted. Ignoring the jury's finding in favor of a narrow focus on damages renders the jury's verdict, no matter how significant, almost meaningless. Finally, it must be assumed that the jury's conclusion—that Baylor violated the law and caused Lozano injuries even though it did not find damages—was intentional and a product of deliberation. To disregard the jury's findings in this attorney's fees analysis would disrespect the jury's efforts in deliberation and its resolution of the parties' disputes. Although none is determinative, these considerations inform the Court's conclusion that Lozano qualifies as the prevailing party for the purposes of awarding attorney's fees under Section 1988(b).

> **D.    Having Established Lozano as the Prevailing Party, the Court Awards Reasonable Attorney's Fees to Lozano**

Courts in the Fifth Circuit use the "lodestar method" to calculate an appropriate fee award. *Cruz v. Maverick Cnty.*, 957 F.3d 563, 574 (5th Cir. 2020). The lodestar amount is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, namely, the market rate in the community for the work. *Id.* "[T]here is a 'strong presumption' that the lodestar figure is reasonable." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010). After

calculating the lodestar amount, a court may enhance or decrease the amount of fees based on the factors set forth in *Johnson*, 488 F.2d 714. The party seeking fees has the burden to show the reasonableness of the hours billed and the exercise of reasonable billing judgment. *Walker v. U.S. Dep't of Hous. & Urb. Dev.*, 99 F.3d 761, 769 (5th Cir. 1996).

Lozano requests that she be awarded fees for the work performed by three attorneys and one paralegal with a total lodestar of $875,835.

| Legal team member | Hours worked | Hourly billing rate | Lodestar |
|---|---|---|---|
| Attorney Sheila Haddock | 959.70 | $650.00 | $623,805 |
| Attorney Zeke Fortenberry | 359.20 | $650.00 | $233,480 |
| Attorney Irwin Zalkin | 16 | $800.00 | $12,800 |
| Paralegal Stephanie Paleo | 57.5 | $100.00 | $5,750 |

Lozano excluded time spent working on matters related to the other defendants (City of Waco, McCaw, and Briles), "[s]ignificant" time spent by paralegals, an associate, and law clerks, and time spent on routine matters like scheduling and emails. (Mot. Atty's Fees, Dkt. 348, at 15). In support of her request, Lozano submitted time sheets, attorney declarations—which provide detailed descriptions of the attorneys' and paralegal's legal experience and the hours and work performed in this case—and reference materials for comparing Lozano's counsel's hourly rates with the rates of attorneys doing similar work, including attorneys who worked for Baylor in related litigation. Having reviewed the extensive supporting documents, the Court finds that the hourly rates of the attorneys and paralegal are reasonable and in line with rates for attorneys with comparable skill, experience, and reputation in the Western District of Texas.

While the Court finds the hourly rates reasonable, the Court will significantly reduce the award because Lozano achieved only partial success: she obtained a jury finding of liability, including

injury, but no damages on her federal claim, and while she obtained damages on her state law claim, her successful negligence claim cannot form the basis of an award under Section 1988(b). Because Lozano achieved only partial success, the lodestar is excessive. "In determining a reasonable attorney's fee award based on the plaintiff's degree of success, '[t]here is no precise rule or formula'; instead, the district court 'necessarily has discretion in making this equitable judgment.'" *Combs v. City of Huntington, Texas*, 829 F.3d 388, 396 (5th Cir. 2016) (quoting *Hensley*, 461 U.S. at 436–37). Proportionality is an appropriate consideration, *id.*, but not particularly useful in this instance since no damages were awarded. Many courts reduce the total amount of the lodestar by a percentage, which the Court will do here. The Court finds a 50% reduction appropriately accounts for Lozano's degree of success. With that substantial reduction, the Court finds a sum of $437,917.50 to be a reasonable award of attorney's fees under Section 1988(b).

In addition, the reasonableness of attorney's fees is considered in light of the following *Johnson* factors: (1) the time and labor required to represent the client; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 n.18 (5th Cir. 2006) (citing *Johnson*, 488 F.2d at 717–19). The *Johnson* factors are important for the Court's consideration, but no factor is dispositive. *Montgomery v. State Farm Lloyds*, No. 23-11126, 2024 WL 2369415, at *1 (5th Cir. May 23, 2024). The Court finds no reason for adjusting the fee award based on the *Johnson* factors.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Lozano's motion for attorney's fees is

**GRANTED**. The Court awards Lozano $437,917.50 in reasonable attorney's fees, recoverable from

Baylor.

**SIGNED** on March 28, 2025.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE